CLAUDIA CENTER – 158255
SILVIA YEE – 222737
CARLY A. MYERS – 317833
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND
3075 Adeline Street, Suite 210
Berkeley, California  94703
Telephone:   (510) 644-2555
Email:       ccenter@dredf.org
             syee@dredf.org
             cmyers@dredf.org

ERNEST GALVAN – 196065
MICHAEL S. NUNEZ – 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:       egalvan@rbgg.com
             mnunez@rbgg.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| GRACE ELIZABETH SMITH and RUSSELL RAWLINGS, on behalf of themselves and all others similarly situated, and CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, a California nonprofit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> MARY WATANABE, in her capacity as Director of the California Department of Managed Health Care; CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE; and KAISER FOUNDATION HEALTH PLAN, INC, <br><br> Defendants. | Case No. 4:21-cv-07872-HSG <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** |

[3820968.2]

1      Individual and representative Plaintiffs Grace Elizabeth ("Beth") Smith and Russell

2  Rawlings, on behalf of themselves and all others similarly situated, along with Plaintiff

3  California Foundation for Independent Living Centers ("CFILC"), an organization, allege:

4                                    **INTRODUCTION**

5      1.     Plaintiffs bring this action to challenge the exclusion of wheelchairs as an

6  essential health benefit by Defendant California Department of Managed Health Care

7  ("DMHC"), and the discriminatory exclusions, $2,000 caps, and "home use" restrictions

8  denying meaningful coverage of wheelchairs by health plans administered by Defendant

9  Kaiser Foundation Health Plan, Inc. ("Kaiser").

10     2.     Plaintiffs Smith and Rawlings are people with disabilities who are enrolled

11  in or covered by an individual or small group Kaiser health insurance plan in the State of

12  California. They bring this complaint on behalf of themselves and those similarly situated.

13     3.     Plaintiff CFILC is a nonprofit organization that serves and supports more

14  than twenty Independent Living Centers across the state and leads a number of state-wide

15  programs for Californians for disabilities. Plaintiff CFILC's constituents include people

16  with disabilities who are enrolled in or covered by an individual or small group Kaiser

17  health insurance plan in the State of California.

18     4.     Plaintiffs Smith and Rawlings and Plaintiff CFILC's constituents require

19  wheelchairs due to their disabilities, but their Kaiser health plans either exclude or place a

20  $2,000 annual limitation and "home use" rule[1] on the coverage of medically necessary

21  wheelchairs. The actual cost of a medically necessary wheelchair can exceed $40,000—

22  meaning that people with disabilities must either seek alternative sources of health

23  insurance coverage; pay the remaining cost out-of-pocket, if they can; or go without the

24  mobility device that they need. This can leave individuals bankrupt, immobile, and/or

25  resorting to the use of an inferior or broken wheelchair that puts their health and safety at

26  

27  [1] Under its "home use" rule, Kaiser will only cover wheelchairs intended and appropriate
for use inside the user's home. Thus, for example, if an individual can move around their

28  home with a walker or by crawling, but they need a wheelchair to travel even 15 feet
outside their home, then the wheelchair would not be covered.

1   risk.

2       5.      In enacting the Affordable Care Act ("ACA"), Congress sought to ensure

3   that all individuals, including individuals with disabilities, have equal and comprehensive

4   access to health insurance coverage. As a key component of the ACA's reforms, Section

5   1557 prohibits discrimination on the basis of disability in "any health program or activity,

6   any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a).

7   Discrimination within the meaning of Section 1557 includes when a health insurance

8   plan's "benefit design"—the structure and content of its health benefit package—

9   discriminates against people with disabilities. 42 U.S.C. § 18031(c)(1)(A); 45 C.F.R. §

10  147.104(e).

11      6.      The ACA also requires all individual and small group health plans to cover

12  essential health benefits ("EHBs"), including "rehabilitative and habilitative services and

13  devices," without exclusions or annual dollar limitations. 42 U.S.C. §§ 18022, 300gg-11.

14  Each State selects an "EHB-benchmark plan" as a reference point for the health care

15  benefits that such health plans, called "Qualified Health Plans," must cover. 45 C.F.R. §

16  156.100. The EHB-benchmark plan cannot have a benefit design that discriminates on the

17  basis of disability. 45 C.F.R. §§ 156.110(d), 156.125.

18      7.      The State of California selected, and DMHC codified, an EHB-benchmark

19  plan that fails to include wheelchairs as a covered essential health benefit. *See* Cal. Code

20  Regs. tit. 28, § 1300.67.005.

21      8.      All Kaiser qualified health plans either completely exclude or impose a

22  $2,000 annual dollar limitation and "home use" rule on the coverage of wheelchairs.

23      9.      Neither California's benchmark plan nor any Kaiser qualified health plan

24  provides any exceptions or modifications to ensure that people with disabilities have

25  meaningful access to appropriate wheelchairs.

26      10.     The exclusion of wheelchairs from the California EHB-benchmark plan, as

27  codified by Defendant DMHC, discriminates against people with disabilities within the

28  meaning of Section 1557. Likewise, Defendant Kaiser's exclusions, $2,000 caps, and

1   "home use" rule on the coverage of wheelchairs violate Section 1557.

2        11.    Kaiser's exclusions, $2,000 caps, and "home use" rule on the coverage of

3   wheelchairs constitute an illegal denial of an essential health benefit. Kaiser's $2,000

4   limitations constitute an illegal annual dollar limitation on an essential health benefit.

5   These unlawful policies violate the Public Health and Safety Act ("PHSA") and may be

6   enjoined through the Employee Retirement Income Security Act ("ERISA").

7        12.    Through this lawsuit, Plaintiffs seek enforcement of their rights and the

8   coverage of medically necessary wheelchairs for themselves, their constituents, and/or all

9   others similarly situated. They seek injunctive relief requiring DMHC and Kaiser to amend

10  their wheelchair policies and practices in order to achieve compliance with federal laws.

11  These changes are necessary to remedy violations of law and ensure that persons with

12  disabilities have access to the equipment they need to move around, leave their homes,

13  maintain employment, and participate in their communities.

14                    **JURISDICTION AND VENUE**

15       13.    This Court has jurisdiction over the parties to this action. Plaintiffs Smith

16  and Rawlings and members of the proposed Class are residents of California. Plaintiff

17  CFILC is a resident of California, as are its constituents. Defendant Kaiser Foundation

18  Health Plan, Inc. is incorporated in, has their principal place of business in, and engaged in

19  the misconduct alleged herein in the State of California. Jurisdiction over the California

20  Department of Managed Health Care and DMHC Director Mary Watanabe is proper under

21  28 U.S.C. § 1343.

22       14.    This Court has subject matter jurisdiction over this action. Federal question

23  jurisdiction exists based on the assertion of claims under the Affordable Care Act and the

24  Employee Retirement Income Security Act.

25       15.    Venue for this action is proper in the Northern District because Defendant

26  Kaiser Foundation Health Plan, Inc. is headquartered in Oakland, California and thus

27  resides in this District. When there are multiple defendants to an action who all reside in

28  the same State, then venue is proper in any district in which any defendant resides. 28

U.S.C. § 1391(b)(1).

**PARTIES**

**I.    The Plaintiffs**

16.    Individual and representative Plaintiff Beth Smith is a resident of Albany, California and requires the use of a power wheelchair for mobility. Ms. Smith is a 62-year-old woman who has cerebral palsy and a traumatic brain injury. Ms. Smith is enrolled in a Kaiser Permanente Small Group Gold 80 HMO plan, which she obtained through her employer. Ms. Smith's Kaiser plan imposes a $2,000 annual dollar limitation and "home use" rule on its coverage of medically necessary wheelchairs.

17.    Individual and representative Plaintiff Russell Rawlings is a resident of Sacramento, California and requires the use of a power wheelchair for mobility. Mr. Rawlings is a 44-year-old man who has cerebral palsy. Mr. Rawlings is enrolled in a Kaiser Permanente Small Group Platinum HMO A plan, which he obtained through his employer. Mr. Rawlings' Kaiser plan imposes a $2,000 annual dollar limitation and "home use" rule on its coverage of medically necessary wheelchairs.

18.    The California Foundation for Independent Living Centers is a nonprofit corporation duly organized under the laws of California. Its mission is to increase access and equal opportunity for people with disabilities by supporting and building the capacity of Independent Living Centers ("ILCs") throughout the State of California and by leading a number of state-wide programs for Californians with disabilities. Plaintiff CFILC has standing to challenge the policy that is the subject of this complaint. CFILC is led by a board that is majority (more than 51%) people with disabilities, and each board member is an Executive Director of an ILC. CFILC serves and supports more than twenty ILCs across the state of California. Each ILC is led by a board that is majority (more than 51%) people with disabilities. ILCs provide services and resources to support community living and independence of people with disabilities. Plaintiff CFILC is accountable to and responsive to its constituents, who include Californians with disabilities and the board, staff, and volunteers of each ILC. CFILC's constituents include people with disabilities

who are enrolled in individual or small group Kaiser health insurance plans and who cannot obtain the wheelchair or wheelchair repair they need because of Kaiser's discriminatory policies limiting its coverage of medically necessary wheelchairs. These constituents have standing to challenge the policy that is the subject of this complaint, and there is no need for individual constituents to participate in this litigation. Access to appropriate wheelchairs is essential to the full integration and inclusion of people with disabilities, and this litigation advances CFILC's purposes.

**II.     The Defendants**

19.     Defendant California Department of Managed Health Care is the state agency that oversees all private managed health care plans in the State of California. Among other duties, DMHC is responsible for implementing and enforcing the EHB-benchmark standards in all individual and small group managed health care plans, and ensuring that such plans are otherwise in compliance with federal and state laws.

20.     Defendant Mary Watanabe is the Director of DMHC. She is sued only in her official capacity. Director Watanabe is responsible for directing, organizing, and administering DMHC's policies and practices. As Director of DMHC, Defendant Watanabe is responsible for enforcing the EHB-benchmark standards in all individual and small group managed health care plans, and ensuring that they are otherwise in compliance with federal and state laws.

21.     Defendant Kaiser Foundation Health Plan, Inc. is a not-for-profit corporation organized and existing under the laws of the State of California with its headquarters in Oakland, California. It is one of the largest health insurance companies in the country, offering employer-sponsored, small group, and individual health care plans across eight states. Kaiser is also the largest health insurer in California, where it offers health plans both through Covered California (the State's ACA-mandated health insurance marketplace) and off-exchange. Kaiser administers the health care plans enrolled in by the individual Plaintiffs and the Plaintiff Class.

**CLASS ACTION ALLEGATIONS**

22.    This action is brought by Plaintiffs on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent the following class (the "Class"):

> All persons with disabilities who are or who will be enrolled in or covered by an individual or small group Qualified Health Plan administered by Kaiser Foundation Health Plan, Inc. in the State of California and who need or will need a wheelchair or wheelchair repair.

23.    Based on Kaiser's presence statewide, there are likely thousands of Class Members.

24.    Many questions of law and fact in this action are common to the Class and include the following:

a.    Whether Defendants' wheelchair policies discriminate on the basis of disability within the meaning of Section 1557 of the ACA;[2]

b.    Whether Defendants' wheelchair policies violate Sections 2727 and 2731 of the Public Health and Safety Act ("PHSA"),[3] as amended by the ACA, and entitle Class Members to equitable relief pursuant to Section 502(a)(3) of ERISA;[4] and

c.    Whether Plaintiffs and Class Members are entitled to an Order enjoining the Defendants from implementing or continuing their wheelchair policies in their current form.

25.    The individual Plaintiffs' claims are typical of the Class Members' claims. Each of the individual Plaintiffs and Class Members are disabled, need a wheelchair for mobility, reside in California, and are enrolled in an individual or small group Kaiser health insurance plan. Each of them need equitable relief in order to obtain, or in the future obtain, the wheelchair or wheelchair repair that they need to function.

---

[2] 42 U.S.C. § 18116.
[3] 42 U.S.C. §§ 300gg-6(a), 300gg-11(a).
[4] 29 U.S.C. § 1132(a)(3).

26.     The Plaintiffs can and will fairly and adequately represent and protect the interests of the class. Plaintiffs have no interests that conflict with or are antagonistic to the interests of Class Members. Plaintiffs have retained attorneys who are competent and experienced in class actions, and particularly those that relate to the rights of people with disabilities. No conflict exists between the Plaintiffs and Class Members.

27.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy. Many questions of law and fact are common to the class, and the requested injunctive relief will affect the health care benefits of all Class Members.

28.     In the absence of a class action, Kaiser enrollees with disabilities will continue to be deprived of the wheelchairs that they need to function, maintain their jobs, and participate in their communities.

## OVERVIEW OF AFFORDABLE CARE ACT

29.     The Affordable Care Act ("ACA") significantly reformed the U.S. healthcare system—improving access to and the comprehensiveness of both public and private health insurance coverage. Prior to the ACA, people with disabilities were commonly denied or terminated from health coverage, faced annual and lifetime benefit limits, and could not find affordable coverage.[5] Even if a disabled individual could find health insurance, it would often exclude coverage of pre-existing conditions, fail to offer essential benefits, or otherwise limit benefits based on health status or disability. With the ACA, Congress explicitly outlawed these longstanding discriminatory policies.[6] While Congress did not

---

[5] *See, e.g.,* H. Stephen Kaye, *Disability-Related Disparities in Access to Health Care Before (2008–2010) and After (2015–2017) the Affordable Care Act,* 109 Am. J. Pub. Health, no. 7, 1015–21 (July 2019); Valarie K. Blake, *An Opening for Civil Rights in Health Insurance After the Affordable Care Act,* 36 B.C. J. L. & Soc. Just. 235 (2016) (describing pre-ACA health insurance discrimination and how the ACA addressed those issues).

[6] Sara Rosenbaum et al., *Crossing the Rubicon: The Impact of the Affordable Care Act on the Content of Insurance Coverage for Persons with Disabilities,* 25 Notre Dame J. L. Ethics & Pub. Pol'y 235 (2014) (describing ACA nondiscrimination provisions and focusing on the function of essential health benefits).

require a health plan to offer every possible service, it did require it to offer certain

minimum features to meet the basic healthcare needs of all Americans, without dropping

them unexpectedly or denying care because of their race, age, sex, or disability.

30.     Section 1557 of the ACA, prohibiting discrimination in health programs or

activities receiving federal financial assistance, is a key component of the ACA's

comprehensive reforms. *See* 42 U.S.C. § 18116(a). Section 1557 prohibits discrimination

on the basis of race, color, national origin, sex, age, and disability. *Id.* It references the

"grounds" and "enforcement mechanisms" of other major civil rights statutes, including

Section 504 of the Rehabilitation Act.[7] Section 1557 compliments and enforces other ACA

provisions, which prohibit pre-existing condition exclusions, mandate coverage of

essential health benefits, and prohibit qualified health plan "benefit designs that have the

effect of discouraging the enrollment [of] individuals with significant health needs,"

among other protections. *See* 42 U.S.C. §§ 300gg-3(b)(1), 18022, 18031(c)(1)(A).

31.     The U.S. Department of Health and Human Services issued regulations

implementing Section 1557. The regulations define actionable discrimination to include

discriminatory health plan "benefit designs." It provides: "A health insurance issuer . . .

[cannot employ] benefit designs that will have the effect of discouraging the enrollment of

individuals with significant health needs in health insurance coverage or discriminate

based on an individual's race, color, national origin, present or predicted disability, age,

sex, expected length of life, degree of medical dependency, quality of life, or other health

conditions.." 45 C.F.R. § 147.104(e). Plans that, for example, "place[e] most or all drugs

---

[7] Because the ACA significantly changed the obligations of covered entities, pre-ACA
case law is not necessarily dispositive when determining the scope of Section 1557's
protections and remedies. Additionally, the fact that Congress refers to the definitions of
protected classes and enforcement procedures of the referenced statutes does not mean that
all case law is incorporated. A statute's incorporation of another's enforcement
mechanisms does not necessarily incorporate its substance. *See CONRAIL v. Darrone*, 465
U.S. 624 (1984).

1  that treat a specific condition on the highest cost tiers;"[8] or "exclude bone marrow

2  transplants regardless of medical necessity"[9] would run afoul of Section 1557's prohibition

3  on discriminatory benefit design, federal guidance explains.

4      32.    The U.S. Court of Appeals for the Ninth Circuit has also affirmed that

5  Section 1557 "specifically prohibits discrimination in plan benefit design." *Schmitt v.*

6  *Kaiser Foundation Health Plan of Washington*, 965 F.3d 945, 949 (9th Cir. 2020). It

7  explains:

8      While [the ACA] does not guarantee individually tailored health care plans,

9      it attempts to provide adequate health care to as many individuals as possible

10      by requiring insurers to provide essential health benefits. And it imposes an

       affirmative obligation not to discriminate in the provision of health care—in

11      particular, to consider the needs of disabled people and not design plan

12      benefits in ways that discriminate against them. Thus, the ACA allows a

       claim for discriminatory benefit design … *Id.* at 955.

13

14  *See also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1211–12 (9th Cir. 2020) (affirming

15  that a "meaningful access" claim must be evaluated in relation to the purposes of the

16  statute that establishes the benefit, including those guaranteed by the ACA).

17      33.    The ACA also required health care plans to improve the scope of their

18  covered benefits. With Section 1302 of the ACA, and amendments to the Public Health

19  and Safety Act ("PHSA"), Congress required all individual and small group health plans—

20  whether offered on- or off-exchange—to cover ten categories of essential health benefits,

21  including "rehabilitative and habilitative services and devices," without exclusions or

22  annual dollar limitations. 42 U.S.C. §§ 18022, 300gg-6, 300gg-11; 45 C.F.R. §

23  _____

24  [8] HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. 10,750, 10,822 (Feb. 17, 2015).

25  [9] Center for Medicare and Medicaid Services, Qualified Plan Certification Review Tools,

26  Information and Guidance, https://www.qhpcertification.cms.gov/s/Review%20Tools (last accessed Oct. 7, 2021), internal link to "Review Process Guide (Updated 4/30/2021),"

27  https://www.qhpcertification.cms.gov/s/ReviewProcessGuide_2022v1.1.xlsm?v=1 (last accessed Oct. 7, 2021) (spreadsheet, 15th tab, named "Non-Discrimination Guidance",

28  Row 20).

147.126(a)(2). Wheelchairs are the quintessential rehabilitative and habilitative device within the meaning of the PHSA, as amended by the ACA, upon which thousands of disabled individuals rely for their basic mobility.

34.     Upon passage of the ACA, Congressman George Miller expressed his understanding of "rehabilitative and habilitative services and devices" as "benefits [that] are of particular importance to people with disabilities and chronic conditions . . . include durable medical equipment" and "will not be limited to 'in-home' use only." 111 Cong. Rec. 1882 (March 21, 2010).

35.     The ACA's nondiscrimination and EHB requirements work to ensure that health insurers offer benefits to meet the basic healthcare needs of all individuals, regardless of race, age, sex, national origin, and disability. However, this does not mean that the ACA requires all health plans to cover all treatments for all people at minimal or no cost to the individual. Plans can still use clinically indicated, reasonable medical management techniques when approving or denying services. 45 C.F.R. § 156.125. Plans can vary in terms of enrollee cost-sharing, plan premiums, the network of providers offered, and other factors. Insurers may offer plan-specific co-payments, co-insurance, and deductibles that are consistent with annual out-of-pocket limits. 42 U.S.C. §§ 18022(c), 300gg-6.[10] Insurers can also vary premium rates based on factors such as coverage of an individual or family, rating area, age (with limitations), and tobacco use. *Id.* § 300gg.[11] On the healthcare marketplaces, the ACA offers plans divided into bronze, silver, gold, and platinum "metal categories," each of which has progressively less cost-sharing and progressively higher premiums. 42 U.S.C. § 18022(a), (d).

---

[10] As with any method used by insurers to limit their own costs, cost-sharing may not discriminate on the basis of disability. This could include financially prohibitive cost sharing targeted at benefits disproportionately relied upon by people with disabilities.
[11] Premium rates cannot be based on health status, disability, or other factors. 42 U.S.C. § 300-gg.

**STATEMENT OF FACTS**

**I.     Mobility Disabilities and Wheelchairs**

36.     A person with an impairment that affects movement or mobility has a disability that substantially limits one or more major life activities. This encompasses not only people with impairments that directly limit their ability to walk or stand, but also people who, for example, have a severe breathing impairment or balance limitation that limits their mobility.

37.     Durable medical equipment ("DME") means rehabilitation and habilitation devices that are designed for repeated use and used for the treatment of a medical condition or injury or to preserve the patient's functioning and ability to perform activities of daily living. DME includes, but is not limited to, manual and power wheelchairs, scooters, oxygen equipment, crutches, walkers, electric beds, shower and bath seats, and mechanical patient lifts.

38.     A wheelchair is a type of wheeled DME that is designed for the main purpose of locomotion. Wheelchairs come in many forms. Some wheelchairs are manually propelled by the user or pushed by another person. Other wheelchairs are powered by electric motors or batteries. Both manual and power wheelchairs can be individually configured. Wheelchair systems can include adaptive seating, alternative positioning, adjustable tilt or recline, transitional sizing (e.g., for a growing child), and other technology that requires evaluation, fitting, design, adjustment, and programming.

39.     An appropriate wheelchair is the standard of care for people with disabilities who cannot walk or who have difficulty walking. An appropriate wheelchair is one that meets the user's needs and environmental conditions, provides a proper fit and postural support, has properly configured technology, and is safe and durable.[12] Medical

---

[12] World Health Org., *Guidelines on the Provision of Manual Wheelchairs in Less Resourced Settings* 21 (2008), *available at* https://www.who.int/disabilities/publications/technology/English%20Wheelchair%20Guidelines%20(EN%20for%20the%20web).pdf.

1    professionals determine what type of wheelchair is appropriate for the user.

2        40.    Wheelchairs require regular maintenance and repairs, as necessary. An adult

3    may use the same wheelchair for up to ten years. Like many medical devices requiring

4    long-term use, components can experience wear-and-tear or break. Timely and quality

5    wheelchair repairs are necessary to ensure that a wheelchair user remains safe and mobile.

6        41.    Wheelchairs enable people with disabilities to become mobile, remain

7    healthy, and participate fully in community life. An appropriate wheelchair can increase an

8    individual's physical function, level of activity, and control over their own bodies and

9    movements. With proper fitting and customization, it can improve respiration and

10   digestion, prevent life-threatening pressure sores, minimize joint sprain and pain, and

11   reduce the progression of an individual's impairment or secondary conditions. It also

12   increases access to health care by facilitating travel to the doctor's office, physical and

13   occupational therapy, mental health providers, and the pharmacy. Maintenance of health,

14   in turn, improves quality of life and decreases future health care expenses.[13]

15       42.    Wheelchairs also enable people with disabilities to access education,

16   employment, family life, and their communities. With an appropriate wheelchair, an

17   individual can move around and outside of their homes—increasing independence and

18   enabling travel to, from, and around their school, work, the grocery store, the library, and

19   any other place a person may need or want to go. Wheelchairs enable people with

20   disabilities to earn an income that supports themselves and their families, pursue a career

21   of their interest, and gain access to employer-sponsored health insurance. They reduce an

22   individual's need to turn to public benefits or an institution in order to survive.

23       43.    An appropriate wheelchair can cost anywhere from $500 to $50,000. A

24   _____

25   [13] *See, e.g.*, World Health Org., *supra* note 12 at 23; Alicia M. Koontz, et al., *Wheeled Mobility*, 2015 Biomed. Research Int'l (Apr. 1, 2015) (Editorial) (introducing Special Issue

26   focused on wheelchairs), *available at* https://www.hindawi.com/journals/bmri/si/701370/;
     Silvia Yee, Mary Lou Breslin, et al., *Compounded Disparities: Health Equity at the*

27   *Intersection of Disability, Race, and Ethnicity*, Nat'l Acads. Sci., Eng'g, & Med. (2017),
     *available at* https://dredf.org/wp-content/uploads/2018/01/Compounded-Disparities-

28   Intersection-of-Disabilities-Race-and-Ethnicity.pdf.

1   standard manual wheelchair costs an average of $1,000; but those intended for everyday

2   use more typically cost between $3,000 and $5,000. A power wheelchair costs between

3   $1,500 and $50,000, depending on the customizations and technology that the user needs.

4   Plaintiff Smith needs a power wheelchair that costs $17,000. Plaintiff Rawlings needs a

5   power wheelchair that costs in excess of $8,000.

6   **II.   Coverage of Wheelchairs in California's EHB-Benchmark Plan**

7       44.     The ACA requires all private health insurance plans offered in the individual

8   or small group markets to cover ten categories of enumerated essential health benefits

9   ("EHBs") and the items and services within each category. 42 U.S.C. § 18022(a), (b)(1).

10   These plans must cover, as an EHB, "rehabilitative and habilitative services and devices."

11   *Id.* § 18022(b)(1)(G).

12       45.     The ACA directs the Secretary of the U.S. Department of Health and Human

13   Services ("HHS") to further define the EHBs through regulations. *Id.* § 18022(b). The

14   defined benefits must include "[r]ehabilitative and habilitative services and devices," *id.* §

15   18022(b)(1)(G), and must meet certain minimum statutory standards, *id.* § 18022(b)(1)–

16   (4). In defining the benefits, the Secretary "shall … not make coverage decisions,

17   determine reimbursement rates, establish incentive programs, or design benefits in ways

18   that discriminate against individuals because of their age, disability, or expected length of

19   life." *Id.* § 18022(b)(4)(B). The Secretary "shall … take into account the health care needs

20   of diverse segments of the population, including women, children, persons with

21   disabilities, and other groups" and "ensure that health benefits established as essential not

22   be subject to denial to individuals against their wishes on the basis of the individuals' age

23   or expected length of life or of the individuals' present or predicted disability, degree of

24   medical dependency, or quality of life." *Id.* § 18022(b)(4)(C), (D).

25       46.     The regulations adopted by HHS allow each State to select an "EHB-

26   benchmark plan" as a reference point for EHB coverage. *See* 45 C.F.R. § 156.100. The

27   EHB-benchmark plan establishes a baseline of the items and services that each plan, at a

28   minimum, must cover. An EHB-benchmark plan must include "[r]ehabilitative and

habilitative services and devices." *Id.* § 156.110(a)(7). HHS defines habilitative benefits as "[h]ealth care services and devices that help a person keep, learn, or improve skills and functioning for daily living." *Id.* § 156.115(a)(5)(i). HHS's EHB Final Rule states that "rehabilitative and habilitative services and devices" are intended to help a person "attain, [] regain, maintain, or prevent deterioration of a skill or function" that was either "never learned or acquired due to a disabling condition" or "lost or impaired due to illness, injury, or disabling condition."[14] An EHB-benchmark plan may "[n]ot include discriminatory benefit designs." *Id.* § 156.110(d). Discriminatory benefit designs include when a plan's coverage policies, or the implementation of such policies, "discriminates based on an individual's age, expected length of life, present or predicted disability, degree of medical dependency, quality of life, or other health conditions." *Id.* §156.125(a).

47.     Implementing the ACA, California law requires all individual and small group plans to cover essential health benefits. California selected the "Kaiser Foundation Health Plan Small Group HMO 30 plan . . . [as] offered during the first quarter of 2014," and as supplemented by additional State requirements, as its EHB-benchmark plan. Cal. Health & Safety Code § 1367.005(a)(2)(A); Cal. Ins. Code § 10112.27(a)(2)(A).

48.     California law requires "rehabilitative and habilitative services and devices" to be covered as an EHB. Cal. Health & Safety Code § 1367.005(a)(1); Cal. Ins. Code § 10112.27(a)(1). California defines "habilitative services" as "health care services and devices that help a person keep, learn, or improve skills and functioning for daily living." Cal. Health & Safety Code § 1367.005(p)(1); Cal. Ins. Code § 10112.27(q)(1).

49.     California law provides that, "[w]ith respect to habilitative services, in addition to any habilitative services and devices [covered by the EHB-benchmark plan, i.e., the Kaiser plan] coverage shall also be provided as required by federal rules,

---

[14] HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. 10,750, 10,811 (Feb. 17, 2015) (codifying and explaining the final EHB regulations).

1  regulations, and guidance issued pursuant to Section 1302(b) of [the ACA]."[15] Cal. Health

2  & Safety Code § 1367.005(a)(3); Cal. Ins. Code § 10112.27(a)(1), (3).

3       50.    California law further prohibits a "health care service plan" from

4  "employ[ing] benefit designs that will have the effect of discouraging the enrollment of

5  individuals with significant health needs or discriminate based on an individual's race,

6  color, national origin, present or predicted disability, age, sex, gender identity, sexual

7  orientation, expected length of life, degree of medical dependency, quality of life, or other

8  health conditions." Cal. Health & Safety Code § 1399.851(a)(3); Cal. Ins. Code §

9  10965.5(a)(3).

10       51.    DMHC is charged with enforcing the EHB-benchmark standards in all

11  individual and small group managed health care plans in the State of California. *See* Cal.

12  Code Regs. tit. 28, § 1300.67.005 (requiring all individual and small group contracts

13  subject to Cal. Health & Safety Code § 1367.005 to comply with DMHC's EHB

14  regulations, including requiring the plans to file an "EHB Filing Worksheet" that records

15  how the plan's benefit design complies with the regulations).

16       52.    DMHC issued regulations detailing which health care services and devices a

17  plan must cover in order to comply with California's EHB-benchmark standard. *See id.*

18  The DMHC regulations codify the benefit design of the Kaiser Small Group HMO 30 plan,

19  as offered during the first quarter of 2014. Cal. Code Regs. tit. 28, § 1300.67.005(c)(2),

20  (d)(5). If an item or service is not listed in DMHC's EHB regulations, then the department

21  does not consider it to be an EHB and does not enforce its coverage pursuant to Cal.

22  Health & Safety Code § 1367.005.

23  _____

24  [15] Section 1302(b) of the ACA provides, in part, that the EHB package must "take into

25  account the health care needs of . . . persons with disabilities" and "ensure that [EHBs] not be subject to denial . . on the basis of the individuals' . . . present or predicted disability, degree of medical dependency, or quality of life." 42 U.S.C. § 18022(b)(4). Section

26  1302(b) implementing regulations prohibit EHB "benefit design[s]" that "discriminate[]

27  based on an individual's age, expected length of life, present or predicted disability, degree of medical dependency, quality of life, or other health conditions." 45 C.F.R. §§

28  156.110(d), 156.125.

53.     DMHC's regulations provide that only a narrow list of durable medical equipment is required to be covered[16] as EHBs:

(i) Standard curved handle or quad cane and replacement supplies

(ii) Standard or forearm crutches and replacement supplies

(iii) Dry pressure pad for a mattress

(iv) IV pole

(v) Enteral pump and supplies

(vi) Bone stimulator

(vii) Cervical traction (over door)

(viii) Phototherapy blankets for treatment of jaundice in newborns[, and]

(ix) Dialysis care equipment []

Cal. Code Regs. tit. 28, § 1300.67.005(d)(5)(C).

54.     Coverage of these items is further limited to only those intended "for use in the enrollee's home." *Id*. § 1300.67.005(d)(5).[17] Durable medical equipment for home use is "an item that is intended for repeated use, primarily and customarily used to serve a medical purpose, generally not useful to a person who is not ill or injured, and appropriate for use in the home*." Id*. § 1300.67.005(d)(5)(A).

55.     Wheelchairs—a quintessential DME item on which thousands of disabled Californians rely for basic mobility—are excluded from DMHC's essential health benefit list. There are no exceptions or modifications to ensure that people with disabilities have meaningful access to appropriate wheelchairs. DMHC does not explain, or even make mention, of this omission, even though wheeled mobility devices make up the greatest portion of assistive devices in use and even though independence in mobility is one of the

---

[16] Note that "coverage" includes "repair or replacement of covered equipment." Cal. Code Regs. tit. 28, § 1300.67.005(d)(5)(B).

[17] DMHC's "home use" rule finds no support in the ACA or its regulations. Actually, legislative history supports the opposite—that Congress intended there to be no "home use" rule imposed on durable medical equipment. *See* 111 CONG. REC. 1882 (March 21, 2010) (statement of Congressman George Miller).

1  most important determinants of quality of life for individuals with disabilities.[18]

2       56.    By excluding wheelchairs from its list of EHBs, DMHC permits health

3  issuers offering plans in the individual and small group markets, including Kaiser, to

4  continue to place discriminatory exclusions and annual dollar limitations on the coverage

5  of medically necessary wheelchairs.

6  **III.    Kaiser's Coverage of Wheelchairs in Individual and Small Group Plans**

7       57.    In plan year 2020, [19] Kaiser offered 11 individual and 20 small group plans

8  through Covered California, and at least 10 individual and 26 small group plans off-

9  exchange. All of these plans either completely exclude coverage of wheelchairs, or impose

10  a $2,000 annual dollar limitation and "home use" rule on the coverage of wheelchairs.[20]

11       58.    In plan year 2021, Kaiser offered 11 individual and 26 small group plans

12  through Covered California, and at least 10 individual and 32 small group plans off-

13  exchange. All of these plans either completely exclude coverage of wheelchairs, or impose

14  a $2,000 annual dollar limitation and "home use" rule on the coverage of wheelchairs.[21]

15

16  ---

[18] *See*, *e.g.*, Koontz, *supra* note 13.

17  [19] A "plan year" is determined by the date in which the health insurance contract commenced.

18  [20]  *See California Individual & Family 2020 Plan Documents*, Kaiser Permanente (2020),

19  http://info.kaiserpermanente.org/healthplans/plandocuments/california/individual/archive.html (last visited Oct. 7, 2021) (2020 Individual Plans); *Covered California for Small*

20  *Business Plans Kaiser,* Covered California (2021), https://www.coveredca.com/forsmallbusiness/plans/kaiser/ (expand "2020 Summary of

21  Benefits and Coverage and EOC" tab) (last visited Oct. 7, 2021) (2020 Covered California Small Group Plans); *California Small Business 2020 Plan Documents*, Kaiser Permanente

22  (2020),

23  http://info.kaiserpermanente.org/healthplans/plandocuments/california/smallbusiness/archive.html (last visited Oct. 7, 2021) (2020 Small Group Plans Offered Off-Exchange).

24  [21]  *See California Individual & Family 2021 Plan Documents*, Kaiser Permanente (2021),

25  http://info.kaiserpermanente.org/healthplans/plandocuments/california/individual/index.html (last visited Oct. 7, 2021) (2021 Individual Plans); *Covered California for Small*

26  *Business Plans Kaiser,* Covered California (2021),

27  https://www.coveredca.com/forsmallbusiness/plans/kaiser/ (expand "2021 Summary of Benefits and Coverage and EOC" tab) (last visited Oct. 7, 2021) (2021 Covered California

28  Small Group Plans); *California Small Business 2021 Plan Documents*, Kaiser Permanente

59.     Kaiser's benefit design separates DME into two categories: "base" DME and "supplemental" DME.[22] Kaiser covers base DME, which includes a list that closely approximates the narrow set of DME enumerated in DMHC regulations: "canes and crutches; bone stimulator; cervical traction, over door; nebulizers and supplies; infusion pumps and supplies; [and] blood glucose monitors." Kaiser either excludes or imposes a $2,000 annual dollar limitation on the sum of all supplemental DME, which it says includes "oxygen tanks; CPAP (continuous positive airway pressure) machines; wheelchairs; [and] hospital beds."[23]

60.     For Kaiser's $2,000 annual dollar limitations, Kaiser explains:

For DME covered under the "Supplemental DME items" section (including

_____

(2021), http://info.kaiserpermanente.org/healthplans/plandocuments/california/smallbusiness/ (last visited Oct. 7, 2021) (2021 Small Group Plans Offered Off-Exchange).

[22] On information and belief, Kaiser created the base and supplemental DME distinction. It is not commonplace among health care providers, medical suppliers, or other health insurers. The most obvious distinction between the categories is cost; less expensive items are called "base" DME and more expensive items are called "supplemental" DME. Another distinction is that the list of supplemental DME includes items that are generally needed over a lifetime by a smaller group of people that have chronic conditions and identifiable diagnoses. Neither category is inherently more or less "medically necessary" than the other.

[23] *See,* Kaiser Permanente, *2021 Small Business Plan Highlights* at 26, *available at* https://account.kp.org/static/bcssp/pdfs/shared/cal/2021/KP_CA_SB_Plan_Highlights_Jan_2021.pdf (Kaiser's DME Benefits Flyer, describing the items Kaiser considers to be "base" DME and "supplemental" DME) (last visited Oct. 7, 2021); *see, e.g.,* Kaiser Permanente Platinum 90 HMO Individual Plan, *2020 Combined Membership Agreement, Evidence of Coverage, and Disclosure Form,* http://info.kaiserpermanente.org/healthplans/plandocuments/california/pdfs/2020/KPIF-On-Exchange/2020_Kaiser_Permanente-Platinum_90_HMO_FINAL_ADA.pdf (last visited Oct. 7, 2021) (example of a Kaiser Individual plan that excludes all "supplemental" DME, including wheelchairs); Kaiser Permanente Gold 80 HMO 250/25 Small Business Plan, *2020 Combined Membership Agreement, Evidence of Coverage, and Disclosure Form,* http://info.kaiserpermanente.org/healthplans/plandocuments/california/pdfs/2020/Small_Business/NCR/2020_Sample_NCR_Small_Grp_EOC_Gold_80_HMO_250-25_Child_Dental_12152.pdf (last visited Oct. 7, 2021) (example of a Kaiser Individual plan that places a $2000 annual limitation on "supplemental" DME, including wheelchairs).

repair and replacement of covered equipment), there is a benefit limit per Member per Accumulation Period. . . . We will calculate accumulation toward the benefit limit by adding up the Charges for the durable medical equipment you received in the Accumulation Period that are subject to the limit (including any of these items we covered under any other Health Plan evidence of coverage offered by your Group, whether or not the other evidence of coverage had a benefit limit), and subtracting any Cost Share you paid for those items. If you reach the benefit limit, we will not cover any more durable medical equipment in that Accumulation Period if they are subject to the benefit limit.[24]

There are no exceptions or modifications to ensure that people with disabilities have meaningful access to appropriate wheelchairs.

61.   Additionally, Kaiser only covers "DME for Home Use," which it defines as DME that meets the following criteria:

- The item is intended for repeated use

- The item is primarily and customarily used to serve a medical purpose

- The item is generally useful only to an individual with an illness or injury [and]

- The item is appropriate for use in the home.[25]

Thus, for example, if an individual with a disability can use crutches or crawl to get around their home, but he or she requires a wheelchair to travel any distance outside their home, then the wheelchair would be denied under this policy.

**IV.   The Experiences of the Individual Plaintiffs and the Plaintiff Class**

62.   Because of her disabilities, Plaintiff Beth Smith requires the use of a power wheelchair. Ms. Smith needs a power wheelchair in order to move around her home, visit her family, and engage in community life. She also needs a wheelchair to travel to her place of employment, Through the Looking Glass ("TLG"). TLG is a community-based nonprofit organization that provides research, training, and services for families with a

---

[24] *See, e.g.*, Kaiser Permanente Gold 80 HMO 250/25 Small Business Plan, *supra* note 23 at 45.

[25] *See, e.g., id.* at 44.

1   child, parent or grandparent that has a disability or medical issue. As a Licensed Clinical

2   Social Worker with a background in Early Childhood Development and Child Life, Ms.

3   Smith works as a clinical supervisor at TLG. She needs a wheelchair not only to get to her

4   office, but to move around her office and engage with clients in need once she is there.

5         63.    Plaintiff Smith has an urgent need for a replacement wheelchair. Her current

6   chair is nine-years-old and regularly malfunctions, requiring repair. Ms. Smith has paid

7   out-of-pocket for multiple replacement batteries and a new seat for the chair. Additionally,

8   Ms. Smith has felt forced to arrange at-home repairs—relying on friends, family, and

9   hardware store screws to keep her chair running. These at-home repairs are only a

10  temporary solution, and Ms. Smith fears that her chair could fail at any moment, which in

11  the wrong environment or situation could be dangerous.

12        64.    In April 2021, Plaintiff Smith was evaluated for a replacement wheelchair by

13  National Seating and Mobility, Inc. ("NSM"), a mobility equipment provider that Kaiser

14  contracts with. NSM provided Ms. Smith with a quote of approximately $15,000 for her

15  medically necessary power wheelchair. In the quote, it states: "The client has a $2,000

16  DME limit; Kaiser will only fund $2,000."

17        65.    On April 20, 2021, after receiving the letter from NSM, Ms. Smith filed an

18  appeal with her Kaiser health plan. In it, she explained her disability and critical need for a

19  new wheelchair, and she asked Kaiser to cover the cost of her medically necessary

20  wheelchair without the $2,000 limit.

21        66.    On May 19, 2021, Kaiser responded to Ms. Smith's appeal and denied her

22  request. In Kaiser's letter, it states that Ms. Smith's health plan classifies wheelchairs as

23  "supplemental" DME and it imposes a $2,000 annual benefit limit on the cost of her

24  wheelchair and any other "supplemental" DME items. It states that Ms. Smith would be

25  responsible for the remaining cost of her wheelchair, which would be approximately

26  $13,000.

27        67.    Because of his disabilities, Plaintiff Russell Rawlings requires the use of a

28  power wheelchair. Mr. Rawlings needs a power wheelchair in order to move around his

1  home, access healthcare and other essential services, engage in community life, and access

2  the full scope of his employment. Mr. Rawlings is the Statewide Community Organizer at

3  CFILC. In his leadership position, Mr. Rawlings facilitates a statewide network of

4  advocates, creating a productive space for the organizers of Independent Living Centers to

5  gather and collaborate. He needs a power wheelchair to travel to and from his office

6  (COVID-19 protocol permitting) and attend job-related meetings and conferences across

7  the State.

8          68.     Plaintiff Rawlings has an urgent need for a new power wheelchair. His

9  current chair is approximately eight-years-old, requires frequent repair, and lacks adequate

10  motor power. It also lacks power tilt and has improper seating positioning (Mr. Rawlings'

11  feet, for example, cannot reach the peddles on his current chair). This places his health and

12  safety at risk.

13          69.     The medically necessary power wheelchair that Mr. Rawlings needs costs

14  approximately $10,000.

15          70.     Mr. Rawlings' Kaiser plan classifies wheelchairs as "supplemental" DME. It

16  imposes a $2,000 annual dollar limitation on the sum of his wheelchair and any other

17  "supplemental" DME that he may need. This means that Kaiser does not cover more than

18  $2,000 of Mr. Rawlings' medically necessary wheelchair. Plaintiff Rawlings did not file a

19  grievance with Kaiser regarding its coverage of the wheelchair he needs as such a

20  grievance would be futile, given the response that Ms. Smith received to her grievance.

21          71.     Members of the Plaintiff Class, as well as constituents of Plaintiff CFILC,

22  face similar barriers to obtaining the wheelchairs that their medical professionals prescribe

23  and that they need for social integration, access to education, employment, transportation,

24  and family life, and equal access to public spaces. Without access to appropriate mobility

25  equipment, an individual's health, functioning, and independence can be compromised.

26  Without access to an appropriate wheelchair, some people are unable to leave their homes

27  or even get out of bed. Others face institutionalization because they cannot function in

28  their own homes without a wheelchair and do not have family support.

72.    As a result of DMHC's exclusion of wheelchairs from its list of essential health benefits, and Kaiser's implementation of exclusions, $2,000 caps, and a "home use" rule on the coverage of wheelchairs, the health, safety, and daily functioning of the entire Plaintiff Class is put at risk.

**FIRST CAUSE OF ACTION**
**(Disability Discrimination in Violation of**
**Section 1557 of the Affordable Care Act (42 U.S.C. § 18116)**
**Against All Defendants)**

73.    Plaintiffs reallege each allegation in each of the paragraphs above as if fully set forth herein.

74.    Section 1557 of the ACA provides that "[a]n individual shall not, on the ground prohibited under . . . section 794 of title 29 [Section 504 of the Rehabilitation Act] . . ., be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance . . . ." 42 U.S.C. § 18116. Discrimination includes discriminatory "benefit designs." 45 C.F.R. § 147.104(e).

75.    Defendants are health programs or activities receiving federal financial assistance and are thus "covered entities" for the purposes of Section 1557.

76.    Plaintiffs are "qualified persons with a disability" under both Section 504 and Section 1557.

77.    It is discrimination by proxy to exclude wheelchairs from the EHB-benchmark. "[Proxy discrimination] arises when the defendant enacts a law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group."[26] The use of a wheelchair is a proxy for disability. All wheelchair users have a "physical or mental

---

[26] *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 958 (9th Cir. 2020) (citing *Davis v. Guam*, 932 F.3d 822, 837 (9th Cir. 2019)).

1  impairment that substantially limits one or more major life activities," 42 U.S.C. §

2  12102(1)(A), including "walking," *id.* § 12102(2)(A).

3      78.   The U.S. Department of Justice has adopted regulations implementing the

4  ADA discussing "predictable assessment" of disability which state that "individualized

5  assessment of some types of impairments will, in virtually all cases, result in a

6  determination of coverage" as a person with a disability.  28 C.F.R. § 35.108(d)(2)(ii).

7  "Given their inherent nature, these types of impairments will, as a factual matter, virtually

8  always be found to impose a substantial limitation on a major life activity." *Id.* As an

9  example, "mobility impairments requiring the use of a wheelchair substantially limit

10 musculoskeletal function." *Id.* § 35.108(d)(2)(iii)(D).

11     79.   It is also discrimination in benefit design to exclude wheelchairs from the

12 EHB-benchmark. This policy directly denies the benefits of effective coverage to people

13 with disabilities. Without adequate coverage for medically-necessary wheelchairs,

14 individuals with disabilities are limited in their daily functioning, yet people without

15 disabilities experience no such limitation.

16     80.   Defendant DMHC has discriminated within the meaning of Section 1557 by

17 codifying EHB-benchmark regulations that have a benefit design that excludes coverage of

18 medically necessary wheelchairs that people with disabilities uniquely rely on to maintain

19 their health, daily functioning, and independence. These regulations, which all individual

20 and small group plans in the State of California model their benefit designs after, inhibit

21 people with disabilities from accessing the basic devices they need to leave their homes,

22 live integrated lives, maintain employment, and live in their communities. As a result, the

23 individual Plaintiffs, others similarly situated, and the constituents of Plaintiff CFILC are

24 denied meaningful access to durable medical equipment including wheelchairs.

25     81.   Defendant Kaiser Foundation Health Plan, Inc. has discriminated within the

26 meaning of Section 1557 by having and implementing a benefit design that discriminates

27 on the basis of disability by excluding or limiting coverage specifically for wheelchair

28 users (a proxy for disability), and by having and implementing a benefit design that

1    discriminates against people with disabilities. This benefit design denies the individual

2    Plaintiffs, others similarly situated, and the constituents of Plaintiff CFILC meaningful

3    access to durable medical equipment including wheelchairs.

4            82.    Further, by imposing a "home use" rule on wheelchairs, all Defendants

5    discriminate against people with disabilities within the meaning of *Olmstead v. L.C.*, 527

6    U.S. 581 (1999). Limiting the coverage of wheelchairs to only those intended for use

7    within the home unjustifiably limits people with disabilities from "enjoy[ing] the benefits

8    of community living." *Olmstead*, 527 U.S. at 599. It places people with disabilities in the

9    position of being dependent on others for activities such as shopping or getting healthcare

10   services and exacerbates their risk of being homebound or institutionalized.

11           83.    Further, all Defendants refuse and fail to provide exceptions or reasonable

12   modifications to ensure that people with disabilities have meaningful access to appropriate

13   wheelchairs, in violation of Section 1557.

14           84.    By codifying and enforcing policies that exclude or severely limit coverage

15   of medically necessary wheelchairs, which are "rehabilitative and habilitative services and

16   devices" that people with disabilities rely on to maintain their health, daily functioning,

17   and independence, DMHC and Kaiser have created and perpetuated an EHB benefit design

18   that discriminates on the basis of disability, in violation of 42 U.S.C. § 18116.

19                          **SECOND CAUSE OF ACTION**
                     **(Claim to Enjoin Kaiser's Wheelchair Policies Under**
20                    **Section 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3))**
                     **Against Defendant Kaiser Foundation Health Plan, Inc.)**
21

22           85.    Plaintiffs reallege each allegation in each of the paragraphs above as if fully

23   set forth herein.

24           86.    Section 2727 of the PHSA, as amended by the ACA, provides that an issuer

25   offering health insurance coverage in the individual or small group markets shall ensure

26   that such coverage includes the EHB package required under ACA Section 1302(a). 42

27   U.S.C. § 300gg-6(a).

28           87.    Section 2731 of the PHSA, as amended by the ACA, provides that an issuer

offering individual or group health insurance coverage may not establish annual limits on the dollar value of EHBs for any participant or beneficiary. 42 U.S.C. § 300gg-11(a); *see also* 45 C.F.R. § 147.126(a)(2).

88.     Section 2727 [42 U.S.C. § 300gg-6] and Section 2731 [42 U.S.C. § 300gg-11(a)] of the PHSA are enforceable through ERISA. Section 502(a)(3) of ERISA permits civil actions "to enjoin any act or practice which violates any provision of this title" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). Section 715 of ERISA—a provision of the referenced "title"— expressly incorporates the content of both Section 2727 and Section 2731 of the PHSA. 29 U.S.C. § 1185d(a)(1). Thus, a plan participant or beneficiary may bring a civil action against a health issuer to enforce these EHB provisions.

89.     Defendant Kaiser Foundation Health Plan, Inc. is an issuer offering health insurance coverage in the individual and small group markets and thus must adhere to Sections 2727 and 2731 of the PHSA.

90.     Kaiser's exclusions of wheelchairs in many of its individual plans offered in plan years 2020 and 2021 violate Section 2727 of the PHSA, as enforced through Section 502(a)(3) of ERISA. Wheelchairs are "rehabilitative and habilitative services and devices" within the meaning of the ACA and its implementing regulations. Kaiser's exclusion of such devices from its plans illegally excludes EHBs that both Congress and HHS intended to include in the EHB package. Plaintiffs thus request equitable relief to enjoin Kaiser's violation of the EHB statute.

91.     Kaiser's $2,000 annual dollar limitations on wheelchairs in its small group plans offered in plan years 2020 and 2021 violate Section 2731 of the PHSA, as enforced through Section 502(a)(3) of ERISA. Wheelchairs are EHBs within the category of "rehabilitative and habilitative services and devices." The law is clear that annual dollar limitations are prohibited on EHBs. Plaintiffs thus request equitable relief to enjoin Kaiser's continued use of $2,000 limitations on the coverage of wheelchairs

1

**PRAYER FOR RELIEF**

2        WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated,

3    request of this Court the following equitable relief:

4        1.        An Order certifying that the action may be maintained as a Class Action and

5    appointing Plaintiffs and Plaintiffs' undersigned counsel to represent the Class;

6        2.        An Order enjoining Defendants from implementing or continuing its policies

7    in their current form, or such other appropriate injunctive relief;

8        3.        An Order awarding Plaintiffs' reasonable attorneys' fees and costs; and

9        4.        An Order awarding Plaintiffs' such other and further relief as this Court

10    deems to be just and proper.

11

12    DATED:  November 19, 2021            /s/ Carly A. Myers
                                          CLAUDIA CENTER (SBN: 158255)
13                                        SILVIA YEE (SBN: 222737)
                                          CARLY A. MYERS (SBN: 317833)
14                                        DISABILITY RIGHTS EDUCATION
                                          AND DEFENSE FUND
15
                                          /s/ Ernest Galvan
16                                        ERNEST GALVAN (SBN: 196065)
17                                        MICHAEL NUNEZ (SBN: 280535)
                                          ROSEN BIEN GALVAN & GRUNFELD LLP
18
19                                        Counsel for Plaintiffs and the Proposed Class
20
21
22
23
24
25
26
27
28