SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MOE KESHAVARZI, Cal. Bar No. 223759
A. ALEXANDER KULJIS, Cal. Bar No. 299951
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:   213.620.1780
Facsimile:   213.620.1398
E mail         mkeshavarzi@sheppardmullin.com
               akuljis@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN T. BROOKS, Cal. Bar No. 167793
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:   619.338.6500
Facsimile:   619.234.3815
Email:        jbrooks@sheppardmullin.com

Attorneys for Defendant
KAISER FOUNDATION HEALTH PLAN, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| GRACE SMITH and RUSSELL RAWLINGS, on behalf of themselves and all others similarly situated, and CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, a California nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MARY WATANABE, in her capacity as Director of the California Department of Managed Health Care; CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE; and KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>Defendants. | Case No. 4:21-cv-07872-HSG<br><br>**DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:        April 28, 2022<br>Time:        2:00 p.m.<br>Room:       2<br>Judge:       Hon. Haywood S. Gilliam, Jr. |

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ................................................................................................ 6

II. BACKGROUND AND PROCEDURAL HISTORY ........................................ 7

    A.    The Affordable Care Act and Coverage for Essential Health Benefits.......... 7

    B.    Coverage for Durable Medical Equipment Under Plaintiffs' Plans................ 9

    C.    Plaintiffs' First Amended Complaint ............................................................. 9

III. MR. RAWLINGS AND THE FOUNDATION LACK STANDING.......................... 10

    A.    Mr. Rawlings Lacks Standing Because He Has Not Alleged Injury ............ 10

    B.    The Foundation Lacks Organizational or Associational Standing................ 11

IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR DISCRIMINATION UNDER SECTION 1557 .................................................................................. 13

    A.    Plaintiffs Must Allege That Kaiser Acted "Solely" With Discriminatory Intent............................................................................. 13

    B.    Plaintiffs Cannot Plausibly Allege Conduct By Kaiser Based "Solely" on Their Disability............................................................................. 15

    C.    Plaintiffs Fail to Allege Facts Sufficient to Create a Plausible Inference of Proxy Discrimination ................................................. 16

V. PLAINTIFFS FAIL TO STATE A CLAIM FOR INJUNCTIVE RELIEF UNDER SECTION 502(a)(3) OF ERISA.......................................................... 18

    A.    Plaintiffs Lack Standing to Raise ERISA Claims ........................................ 19

    B.    Plaintiffs Fail to State a Claim Under Section 502(a) of ERISA Because Wheelchairs Are Not Essential Health Benefits ............................. 20

VI. CONCLUSION ............................................................................................... 21

1

## TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4

*Am. Diabetes Ass'n v. United States Dep't of the Army*
    938 F.3d 1147 (9th Cir. 2019)............................................................................. 11

5

6

*Assa'ad-Faltas v. Virginia*
    738 F.Supp. 982 (E.D. Va. 1989)........................................................................ 14

7

8

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of
    Transp.*
    713 F.3d 1187 (9th Cir. 2013)........................................................................ 11, 12

9

10

*Bax v. Doctors Med. Ctr. of Modesto, Inc.*
    393 F.Supp.3d 1000 (E.D. Cal. 2019)................................................................. 14

11

12

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544...................................................................................................... 11

13

14

*Buko v. American Medical Lab., Inc.*
    830 F.Supp. 899 (E.D. Va. 1993)........................................................................ 14

15

16

*CVS Pharm., Inc. v. Doe*
    142 S. Ct. 480 (Nov. 12, 2021) .......................................................................... 13

17

18

*Doe v. BlueCross BlueShield of Tennessee, Inc.*
    926 F.3d 235 (6th Cir. 2019).............................................................................. 14

19

20

*Doe v. CVS Pharm., Inc.*
    982 F.3d 1204 (2020)................................................................................... 13, 14

21

*Hudson v. Chertoff*
    2007 WL 2288062 (C.D. Cal. 2007).................................................................... 16

22

23

*Krauel v. Iowa Methodist Med. Ctr.*
    95 F.3d 674 (8th Cir. 1996)................................................................................ 17

24

25

*La Associacion De Trabajadores De Lake v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010)............................................................................ 11

26

27

*Local 6-0682 Int'l Union of Paper v. Nat'l Indus. Grp. Pension Plan*
    342 F.3d 606 (6th Cir. 2003).............................................................................. 19

28

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)........................................................................................... 10

*Madsen v. Boise State Univ.*
  976 F.2d 1219 (9th Cir. 1992)............................................................................. 10, 11

*Nat'l Fedn. of the Blind of Cal. v. Uber Techs., Inc.*
  103 F.Supp.3d 1073 (N.D. Cal. 2015) ...................................................................... 13

*New Jersey State AFL-CIO v. New Jersey*
  747 F.2d 891 (3rd Cir. 1984) ................................................................................... 19

*Norcross v. Sneed*
  755 F.2d 113 (8th Cir. 1985) .................................................................................... 14

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*
  713 F.Supp.2d 734 (N.D. Ill. 2010) .................................................................... 12, 13

*Parrino v. FHP, Inc.*
  146 F.3d 699 (9th Cir. 1998) .................................................................................... 12

*Schmitt v. Kaiser Foundation Health Plan of Washington*
  965 F.3d 945 (9th Cir. 2020).................................................... 13, 14, 15, 16, 17, 18

*SEPTA v. Gilead Scis., Inc.*
  102 F.Supp.3d 688 (E.D. Pa. 2015) .................................................................... 14, 17

*Smart-TD Local 161 v. Wedriveu, Inc.*
  2021 WL 3565429 (W.D. Wash. 2021) ..................................................................... 20

*Smith v. Pac. Properties & Dev. Corp.*
  358 F.3d 1097 (9th Cir. 2004).................................................................................. 11

*Valley Forge Christian College v. Americans United for Separation of Church & State Inc.*
  454 U.S. 464 (1982) ................................................................................................. 10

*Wicomico Nursing Home v. Padilla*
  910 F.3d 739 (4th Cir. 2018).................................................................................... 14

Statutes

29 U.S.C. § 794................................................................................................................. 14

29 U.S.C. § 1002............................................................................................................... 19

29 U.S.C. § 1132(a)(3) ..................................................................................................... 19

42 U.S.C. § 300gg-6(a)..................................................................................................... 20

42 U.S.C. § 300gg-11 ....................................................................................................... 20

42 U.S.C. § 18022(b)(1) ................................................................................................ 7, 8

Cal. Health & Safety Code § 1367.005 ........................................................................ 8

Other Authorities

29 C.F.R. § 1630.2(g)(1)(iii) ........................................................................................ 16

45 C.F.R. § 156.20........................................................................................................ 8

45 C.F.R. § 156.110...................................................................................................... 8

45 C.F.R. § 156.115(a)(1)............................................................................................. 8

45 C.F.R. § 156.125(a) ............................................................................................... 15

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 14

U.S. Const. Article III § 2 .......................................................................................... 10

## I.

## INTRODUCTION

The thrust of the complaint is that, by limiting coverage for wheelchairs to $2,000, Kaiser discriminated against Plaintiffs based on disability and violated ERISA. The Court should reject these contentions because the complaint fails to allege any facts supporting an inference of discrimination or any violation of ERISA.

As a threshold matter, most of the claims fail for lack of standing. Mr. Rawlings admits he never made a request to Kaiser for wheelchair coverage in excess of his $2,000 limit—a failure which defeats his standing under a long line of cases. The California Foundation for Independent Living Centers—which is not a member of any Kaiser plan—fails to allege either individual standing or representative standing. And none of the Plaintiffs—including Ms. Smith—has standing to raise ERISA claims because Plaintiffs don't allege that their plans are covered by ERISA.

The complaint fails on the merits as well. To state a discrimination claim, Plaintiffs had to allege facts showing that Kaiser designed its benefit plan with the *sole* purpose of discriminating against disabled persons. This they fail to do. The complaint demonstrates both that (i) Kaiser's health plans include all the coverage required by the Affordable Care Act ("ACA") and mandated by the California Legislature, and (ii) the benefit design under Kaiser's plans evenhandedly imposes reasonable coverage limits—consistent with the ACA's goal of making healthcare more affordable—without regard to members' disability status. What the complaint is really asking is for the Court to force Kaiser to tailor coverage to Plaintiffs' individual needs for expensive motorized wheelchairs—a result that is neither supported by law nor consistent with the ACA's goal of keeping healthcare affordable.

The ERISA claim fails as well. Plaintiffs fail to even allege the existence of a plan governed by ERISA. But even if they had, the legal premise of the ERISA claim— namely, the notion that the ACA *requires* coverage for wheelchairs—is simply wrong. Congress left it to the states to decide the extent of required coverage through the

"benchmark" process.  And Plaintiffs admit that the benchmark plan chosen by the California Legislature—the plan that by law defines the benefits that must be covered under the ACA—does not cover wheelchairs and other items of durable medical equipment ("DME").  (FAC ¶¶ 47, 52, 55).  By providing $2,000 in coverage for wheelchairs and other non-mandatory DME items, Kaiser evenhandedly extends coverage beyond the minimums required by law.  Therefore, Plaintiffs' ERISA claim fails.

Plaintiffs cannot cure these deficiencies.  They cannot allege that discriminatory intent was the sole reason for adopting the coverage limitations, especially because the $2,000 limitation (i) is so manifestly related to the ACA's goal of keeping coverage affordable, and (ii) applies equally to all items of non-mandatory DME, without regard to whether those items are used by disabled or non-disabled persons.  And their ERISA claim cannot be saved by amendment because it depends on a false legal premise.  Therefore, Kaiser respectfully requests that the Court dismiss the complaint with prejudice.

## II.

## BACKGROUND AND PROCEDURAL HISTORY

### A.    The Affordable Care Act and Coverage for Essential Health Benefits

A complex framework of healthcare statutes and regulations underpins this case.  In 2010, Congress enacted the ACA to increase the number of Americans covered by health insurance and decrease the cost of health care.  The ACA mandates that all individual and small group plans cover ten broad categories of essential health benefits ("EHBs"), including "[r]ehabilitative and habilitative services and devices."  *See* 42 U.S.C. § 18022(b)(1)(G).[1]

The ACA, however, does not compel plans to cover everything that might fall under the broad rubric of rehabilitative or habilitative services or devices.  Instead, the ACA

---

[1] The additional categories enumerated in the statute include: "Ambulatory patient services"; "Emergency services"; "Hospitalization"; "Maternity and newborn care"; "Mental health and substance use disorder services, including behavioral health treatment"; "Prescription drugs"; "Laboratory services"; "Preventive and wellness services and chronic disease management"; and "Pediatric services, including oral and vision care." 42 U.S.C. §18022(b)(1).

1  directs the Secretary of Health and Human Services to define, subject to certain

2  constraints, the specific "items and services" that must be covered within the enumerated

3  categories of EHBs.  42 U.S.C. § 18022(b)(1).  The only Congressional limitation on the

4  Secretary's power in that regard is that the scope of coverage for EHBs must be "equal to

5  the scope of benefits provided under a typical employer plan[.]"  42 U.S.C.

6  §18022(b)(2)(A).

7      The HHS Secretary, in turn, adopted the "benchmark" approach to specify what

8  must be covered within each EHB category.  45 C.F.R. §§ 156.20, 156.110; 156.111; (*see*

9  *also*, FAC ¶ 45).  Under the benchmark approach, each state is required to select one

10  typical benefit plan that health plans throughout the state could use as a model.  *Id.*  A plan

11  providing EHBs must offer benefits that are "substantially equal" to the "benchmark" plan

12  set by the state.  45 C.F.R. § 156.115(a)(1).

13      The California Legislature selected the Kaiser Small Group HMO 30 plan as the

14  state's "Benchmark Plan" in 2012.  Currently, the 2014 version of Kaiser's Small Group

15  HMO 30 plan is California's Benchmark Plan.  *See* Cal. Health & Safety Code §1367.005;

16  (*see also,* FAC ¶ 48).  The Benchmark Plan identifies 13 categories of covered DME,

17  including blood glucose monitors, canes and crutches, infusion pumps, and nebulizers.

18  Although wheelchairs are a type of DME (*see*, FAC ¶ 38), wheelchairs are not listed as

19  covered DME in the Benchmark Plan.  (*see,* FAC ¶ 53).

20      In 2015, California Insurance Commissioner Dave Jones urged the Legislature to

21  change the Benchmark Plan from Kaiser's Small Group HMO 30 plan to CalPERS HMO

22  plan.  The Commissioner argued that this change would expand EHBs to include, among

23  other things, wheelchairs.  (RJN, Ex. B, p. 14).  The Legislature rejected the

24  recommendation to adopt the CalPERS HMO plan because it would have led to increased

25  premiums.  (RJN, Ex. A, p. 10).

26      If an item or service is not listed in the Benchmark Plan, then the DMHC does not

27  consider it to be an EHB.  (*See* FAC ¶ 52).  The Commissioner's letter and the

28  Legislature's response further confirm that wheelchairs are *not* EHBs in California.

**B.** **Coverage for Durable Medical Equipment Under Plaintiffs' Plans**

As the FAC admits, the ACA does not require health plans to cover all treatment for all people, and plans can use various mechanisms to control costs and premiums if they still cover EHBs.  (*See* FAC ¶ 35).  Plaintiffs' Kaiser plans do so here.  Ms. Smith's and Mr. Rawlings' plans separate coverage for DME into two categories:  base DME and supplemental DME.  Wheelchairs are not enumerated in the list of base DME items and thus are covered as supplemental DME.  (*See* FAC ¶¶ 66, 70).  Under both plans, all supplemental DME items, and consequently wheelchairs, are subject to a $2,000 annual limit.  (*Id.*).  Thus, the coverage for wheelchairs under Plaintiffs' plans exceeds that required by the ACA, since the California Benchmark Plan doesn't include *any* coverage for supplemental DME items, like wheelchairs.

**C.** **Plaintiffs' First Amended Complaint**

In the FAC, Ms. Smith alleges that she requires a replacement power wheelchair that will cost approximately $15,000.  (FAC ¶ 63).  She alleges that she asked Kaiser to cover the total cost of the replacement, but Kaiser responded that it would only cover the wheelchair up to the $2,000 limit in her plan.  (FAC ¶¶ 64-66).

Mr. Rawlings also alleges that he needs a new power wheelchair costing approximately $10,000.  (FAC ¶¶ 68-69).  However, Mr. Rawlings did not ask Kaiser to cover the cost of his replacement wheelchair nor did he file a grievance seeking to appeal any denied coverage.  (FAC ¶ 70).  In other words, Mr. Rawlings does not allege that Kaiser actually denied coverage for his replacement wheelchair.  Instead, Mr. Rawlings alleges that he did not request coverage for a replacement wheelchair because such a request would be futile given the response Ms. Smith received to her request.  (*Id.*)

Plaintiffs assert that Kaiser's coverage limitations—particularly as it affects their desire for greater coverage for wheelchairs—discriminate against individuals with disabilities.  (FAC ¶¶ 57-61, 72).  Plaintiffs also allege that wheelchairs are EHBs and that Kaiser's plans fail to provide that benefit as required by the ACA and ERISA because the plans include limitations on coverage for supplemental DME.  (FAC ¶¶ 33-35, 44-56, 91).

## III.

## MR. RAWLINGS AND THE FOUNDATION LACK STANDING

As a threshold matter, the Court should dismiss Mr. Rawlings' claims and the Foundation's claims because neither has standing.

### A.      Mr. Rawlings Lacks Standing Because He Has Not Alleged Injury

The Court should dismiss Mr. Rawlings' claim because he lacks standing.  Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies."  U.S. Const. art. III § 2.  A litigant must have "standing" to challenge the action at issue in the lawsuit.  *See Valley Forge Christian College v. Americans United for Separation of Church & State Inc.*, 454 U.S. 464, 471 (1982).  The threshold element, injury in fact, requires "an invasion of a legally protected interest [that] is (a) concrete and particularized, . . . and (b) actual and imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

"There is a long line of cases [which] hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit."  *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220-21 (9th Cir. 1992) (citing cases).  In *Madsen*, plaintiff brought an Rehabilitation Act discrimination claim against a university charging a fee for a handicap parking permit.  *Id.* at 1220.  The court affirmed dismissal because the plaintiff never actually applied for a permit or a fee waiver, holding that plaintiff lacked standing.  *Id.* at 1221-22.  The court reasoned that requiring a plaintiff to actually confront the challenged policy is practical because it establishes the existence of a well-defined controversy between the parties and it "presents a bright line separating those who have suffered from the challenged policy and those who have not."  *Id.* at 1222.

Like the plaintiff in *Madsen*, Mr. Rawlings fails to allege injury in fact.  The FAC admits that Mr. Rawlings never made a claim to Kaiser for coverage for the purchase of a wheelchair.  (FAC ¶ 70).  There are simply no allegations that Kaiser ever denied or

limited his coverage for a wheelchair.  Although he claims that requesting coverage would have been futile, the conclusory allegation of futility is not sufficient to survive a motion to dismiss.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (the complaint must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Therefore, he fails to state any concrete, particularized or actual injury sufficient to confer standing.

**B.**    **The Foundation Lacks Organizational or Associational Standing**

There are two means by which an organization, such as the Foundation, can demonstrate that it has standing to bring a suit:  organizational standing and associational standing.

An organization has direct organizational standing if the challenged action caused a "(1) frustration of its organizational mission; and (2) diversion of its resources[.]"  *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004); *La Associacion De Trabajadores De Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  Here, however, the Foundation does not allege that its mission was frustrated or that it diverted any resources due to Kaiser's alleged coverage limitations, so the Foundation has not alleged organizational standing.

The Foundation also fails to allege associational standing.  An organization has associational standing to sue on behalf of its members where:  "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019).  General allegations asserting that the organization's members would suffer harm are not sufficient. *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1195 (9th Cir. 2013).  Rather, the organization must plead "specific allegations establishing that at least one *identified member* . . . would suffer

harm." *Id.* at 1194 (emphasis in original).  The FAC fails to establish associational standing for several reasons.

First, the FAC does not identify, with specific allegations, a single constituent that would suffer harm.  The FAC does not allege that either Ms. Smith or Mr. Rawlings are constituents of the Foundation.  The Foundation generally alleges that its constituents require wheelchairs due to their disabilities and that their health plans include coverage limitations that affect coverage for wheelchairs.  (FAC ¶ 4).  But it does not identify any affected constituents.  These general allegations do not confer standing.

Second, the Foundation fails the first and third element because at least some—if not all—of the Foundation's constituents are bound by arbitration clauses in their membership agreements with Kaiser.  Both Ms. Smith and Mr. Rawlings' Kaiser plans contain binding arbitration agreements.  (*See e.g.*, Espinal Decl. in Support of Motion to Compel Arbitration and Motion to Dismiss, Ex. B, pp. 93-95; Ex. E, pp. 263-65; *See also*, Kaiser's Motion to Compel Arbitration, pp. 7-9).[2]  All of Kaiser's plans contain similar arbitration provisions, so all of the Foundation's constituents would be similarly bound.  Organizations suing in a representative capacity, like the Foundation here, are bound by the same limitations that bind their members.  *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F.Supp.2d 734, 743-44 (N.D. Ill. 2010) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65-66 (1997).  "[I]f an organization's members are bound to arbitrate, so too is the association[.]" *Id.* at 744.  To hold otherwise would allow members to circumvent their binding arbitration agreements through a lawsuit brought by an organization on their behalf.  Therefore, the organization does not have associational standing to sue on behalf of members that have arbitration agreements.

---

[2] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may consider documents relied upon or referenced in the Complaint.  The FAC references Ms. Smith's and Mr. Rawlings' plans.  (FAC ¶¶ 65-66, 70).  Their plans therefore may be properly considered in this motion to dismiss.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

Further, because at least some—if not all—constituents entered binding arbitration agreements, the Foundation cannot establish the third element of associational standing. Determining whether individual constituents entered into binding arbitration agreements would require individual participation of the Foundation's constituency. *See e.g.,Id.* at 743-44 (holding that professional association did not have standing to sue on behalf of its members because at least some of its members had signed arbitration agreements requiring the participation of individual members); *cf. Nat'l Fedn. of the Blind of Cal. v. Uber Techs., Inc.*, 103 F.Supp.3d 1073, 1079 (N.D. Cal. 2015) (recognizing that organization had standing to sue only on behalf of members not bound by arbitration agreements).

Unlike *Nat'l Fedn. of the Blind*, the Foundation here does not allege that it brings its claims only on behalf of members not bound by arbitration agreements with Kaiser. (FAC ¶¶ 4, 12, 18.) Therefore, individual participation is required, and the Foundation has not plead associational standing.

## IV.

## PLAINTIFFS FAIL TO STATE A CLAIM FOR DISCRIMINATION UNDER SECTION 1557

Standing problems aside, Plaintiffs' discrimination claim fails on the merits. Plaintiffs needed to allege facts supporting an inference that Kaiser limited wheelchair coverage *solely* for discriminatory reasons—a burden they don't remotely meet.

### A.      Plaintiffs Must Allege That Kaiser Acted "Solely" With Discriminatory Intent

To state a claim for disability discrimination under Section 1557, a plaintiff must "allege facts adequate to state a claim under Section 504 of the Rehabilitation Act." *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1210 (2020).[3] In *Schmitt v. Kaiser Foundation Health Plan of Washington*, 965 F.3d 945 (9th Cir. 2020), the 9th Circuit "left open the question of whether the ACA created a healthcare-specific anti-discrimination standard that allowed plaintiffs to choose standards from a menu provided by other anti-discrimination statutes."

---

[3] Certiorari granted in part, by *CVS Pharm., Inc. v. Doe*, 141 S. Ct. 2882 (Jul. 2, 2021); certiorari dismissed by *CVS Pharm., Inc. v. Doe*, 142 S. Ct. 480 (Nov. 12. 2021).

1    *Doe*, 982 F.3d at 1209; citing *Schmitt*, 965 F.3d at 954.  *Doe* rejected that proposition:

2    "We answer now in the negative."  *Doe*, 982 F.3d at 1209.  That holding is consistent with

3    the only other circuit to have addressed the issue to date.  *See Doe v. BlueCross BlueShield*

4    *of Tennessee, Inc.*, 926 F.3d 235 (6th Cir. 2019); accord, *SEPTA v. Gilead Scis., Inc.*, 102

5    F.Supp.3d 688, 699 (E.D. Pa. 2015).  Thus, to state a claim for discrimination on the basis

6    of their disability under ACA section 1557, a plaintiff must allege facts sufficient to state a

7    claim under Section 504 of the Rehabilitation Act.

8         Section 504 of the Rehabilitation Act provides, "[n]o otherwise qualified individual

9    with a disability . . . shall, ***solely*** by reason of her or his disability, be excluded from the

10   participation in, be denied the benefits of, or be subjected to discrimination under any

11   program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794 (emphasis

12   added).  Thus, to state a claim for relief under Rehabilitation Act section 504, Plaintiffs

13   must allege that:  (1) they are a qualified individual with a disability; (2) who was denied

14   the benefits of, or subjected to discrimination under a health program or activity that

15   receives federal funds; and (3) such denial of benefits, or discrimination was *solely*

16   because of their disability.  *SEPTA*, 102 F.Supp.3d at 699; *Schmitt*, 965 F.3d at 954.

17        The addition of the word "solely" in Rehabilitation Act section 504 is a meaningful

18   difference from the requirements of other anti-discrimination statutes; it means that

19   plaintiffs must show that no other factor besides disability played a role in the challenged

20   decision or policy.  It is not enough, as it can be under other discrimination statutes, to

21   allege that disability is a mere "motivating" cause of the defendant's conduct.  *See, e.g.,*

22   *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018); *Norcross v. Sneed*,

23   755 F.2d 113, 117, n.5 (8th Cir. 1985); *see also*, *Bax v. Doctors Med. Ctr. of Modesto,*

24   *Inc.*, 393 F.Supp.3d 1000, 1012 (E.D. Cal. 2019) ("A claim under the ACA is enforced

25   through Section 504 of the Rehabilitation Act and is subject to the same standards"); *Buko*

26   *v. American Medical Lab., Inc.*, 830 F.Supp. 899, 905 (E.D. Va. 1993), affirmed by 28

27   F.3d 1208 (4th Cir. 1994); *Assa'ad-Faltas v. Virginia*, 738 F.Supp. 982, 987 (E.D. Va.

28   1989), affirmed by, 902 F.2d 1564 (4th Cir. 1990).

**B.      Plaintiffs Cannot Plausibly Allege Conduct By Kaiser Based "Solely" on Their Disability**

Plaintiffs' claim fails because it does not plausibly allege that the purported discrimination—Kaiser's benefit design for supplemental DME—occurred *solely* because of disability status.  Not only is there no allegation to that effect, but the FAC is replete with admissions that demonstrate alternative, non-discriminatory reasons for limiting DME coverage.  These reasons include, most saliently, the goal of keeping premiums affordable.

Not only is affordability a non-discriminatory motive, it is a motive explicitly permitted (indeed, encouraged) under the ACA.  The applicable regulations acknowledge that nothing in ACA section 1557 "prevent[s] [a plan] from appropriately utilizing reasonable medical management techniques." 45 C.F.R. § 156.125(a). "The final rule does not . . . require covered entities to cover any particular procedure or treatment.  It also does not preclude a covered entity from applying neutral, nondiscriminatory standards that govern the circumstances in which it will offer coverage to all its enrollees in a nondiscriminatory manner." *Schmitt*, 965 F.3d at 958.  As the Ninth Circuit opined in *Schmitt*, it is reasonable for a health plan to limit coverage for certain high cost services and items because there is a reasonable, non-discriminatory basis for doing so:  keeping coverage affordable. *See id.*  That is precisely what Kaiser's neutral coverage limitations on supplemental DME do and is in accord with the ACA's goal of controlling the cost of premiums while providing affordable health care to as many individuals as possible.

Further destroying any inference that Kaiser acted solely (or at all) with discriminatory intent, the $2,000 coverage limitation applies evenhandedly.  Even as to wheelchairs, the limitation applies equally to both disabled persons who need wheelchairs permanently and non-disabled persons who may need wheelchairs, for example, when recovering from injury or a surgery.[4]  Moreover, the limitation doesn't just apply to wheelchairs; rather, it applies across the board to all items of supplemental DME.  This

---

[4] Generally, temporary impairments do not qualify as disabilities under the Rehabilitation Act. *Hudson v. Chertoff*, 2007 WL 2288061, *5, (C.D. Cal. 2007); *see also*, 29 C.F.R. § 1630.2(g)(1)(iii) (impairment must not be "transitory and minor.").

includes items that aren't even remotely related to disabilities requiring wheelchairs, such as CPAP and other respiratory devices, fully motorized hospital beds, certain electronic monitoring devices, and custom orthotics related to footwear. Thus, because Kaiser's coverage limitations for supplemental DME apply to other types of DME items and are not targeted at wheelchairs alone, Plaintiffs cannot plausibly link the development of those coverage limitations *solely* to discriminatory intent against disabled individuals requiring a wheelchair.

**C.** **Plaintiffs Fail to Allege Facts Sufficient to Create a Plausible Inference of Proxy Discrimination**

Plaintiffs' appeal to "proxy discrimination" does not save their complaint. Even accepting the notion that wheelchairs are a proper proxy for disability, that still doesn't get Plaintiffs where they need to go: an inference that the *sole* reason for limiting coverage was to discriminate against the disabled. For all the reasons above, the admissions on the face of the complaint negate any such inference.

Further, Plaintiffs' proxy theory fails for more technical reasons as well. "[Proxy discrimination] arises when the defendant enacts a law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Schmitt*, 965 F.3d at 958. The FAC alleges that "the use of a wheelchair is a proxy for disability" and that it is discrimination by proxy to have a benefit design that excludes or limits "coverage *specifically* for wheelchair users[.]" (FAC ¶¶ 77, 81) (italics supplied). But Plaintiffs' proxy theory suffers at least three fatal flaws.

*First*, coverage limitations are not discriminatory if they apply equally to all beneficiaries—*even if* the limitation disproportionally affects individuals with a particular disability. *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 678 (8th Cir. 1996) ("[i]nsurance distinctions that apply equally to all insured employees, that is, to individuals

1  with disabilities and to those who are not disabled, do not discriminate on the basis of

2  disability.").

3      *SEPTA*, 102 F.Supp.3d 688, is on point.  There, a plaintiff diagnosed with Hepatitis

4  C alleged that the defendant drug manufacturer violated ACA section 1557 by charging an

5  unreasonably excessive price for Hepatitis C treatment.  *Id.* at 694-95.  The court

6  dismissed the claim, holding that plaintiff's allegations did not state a viable claim under

7  either the Rehabilitation Act or the ACA.  *Id.* at 700.  The court explained that none of

8  plaintiff's theories showed that defendant changed its approach to pricing depending on

9  whether the potential consumer had Hepatitis C.  *Id.*  Therefore, *even though it was likely*

10 *that only patients with Hepatitis C would seek defendant's drugs for treating the disease*,

11 the court held that plaintiff had not sufficiently alleged that defendant was excluding

12 individuals from purchasing its drugs on the basis of disability.  *Id.*

13      Here, Plaintiffs do not—and cannot—allege that Kaiser's coverage limitations

14 depend on whether a person is disabled.  Thus, even assuming that some aspects of

15 Kaiser's supplemental DME coverage limitations disproportionately affect individuals

16 with a particular disability—like high Hepatitis C drug prices' disproportionate effect on

17 persons disabled by Hepatitis C—Plaintiffs still fail to allege an adequate proxy because

18 the limitations apply equally to all members.

19      *Second*, Plaintiffs' alleged proxy is overinclusive.  An alleged proxy is

20 overinclusive if the coverage limitation applies both to individuals in the protected class

21 and to those not in the protected class.  *See Schmitt*, 965 F.3d at 959.  As explained above,

22 Kaiser's coverage limitations for supplemental DME are plainly not limited to members

23 with disabilities or members that require a wheelchair; they apply to everyone regardless

24 of disability status.  Further, even looking narrowly at coverage for wheelchairs—ignoring

25 Plaintiffs' admission that the limitation applies to all sorts of DME—the $2,000 limitation

26 applies both to disabled and non-disabled persons who need a wheelchair.  The proposed

27 proxy is therefore improper because it is overinclusive.

28

*Third*, the proposed proxy is also underinclusive.  Plaintiffs "cannot define the [proxy] so narrowly as to require an insurer to curate coverage for each individual's health care needs."  *Schmitt*, 965 F.3d at 959, quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985).  Thus, an alleged proxy is underinclusive, where some portion of disabled insureds can meet their treatment needs through the challenged coverage provisions.  *See id.*

Here, the FAC admits that some portion of wheelchair users can fully meet their needs within the $2,000 coverage limitation.  Plaintiffs allege that an appropriate wheelchair can cost anywhere from $500 to $50,000, including power wheelchairs, which Plaintiffs allege start at $1,500.  (FAC ¶ 43).  Plaintiffs further admit that the average standard manual wheelchair costs $1,000.  (*Id.*)  Thus, per the FAC, Plaintiffs' plans would cover the medically necessary wheelchair costs of the average member with a disability needing a standard manual wheelchair.  Further, the FAC's allegations show that Plaintiffs' plans would also cover power wheelchairs for at least some disabled members, because power wheelchairs start at $1,500, below the $2,000 annual threshold.  Thus, because at least some disabled members can meet their wheelchair needs through the coverage allowed under Plaintiffs' plans, the alleged proxy is underinclusive.

In sum, the FAC's allegations simply come nowhere close to the level of "fit" needed to show an inference of discriminatory intent.  And even if Plaintiffs had alleged a proxy with a good "fit," the proxy analysis still does not remotely support an inference that Kaiser acted solely with a discriminatory motive.  Therefore, the FAC fails to state a claim under Section 1557 of the ACA.

**V.**

## PLAINTIFFS FAIL TO STATE A CLAIM FOR INJUNCTIVE RELIEF UNDER SECTION 502(a)(3) OF ERISA

The FAC's second claim alleges a claim for equitable relief based on ERISA's "catch-all" provision, Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

Specifically, Plaintiffs seek an injunction (1) to "enjoin Kaiser's violation of the EHB statute" because Kaiser is allegedly excluding coverage for wheelchairs; and (2) to "enjoin Kaiser's continued use of $2,000 limitations on the coverage of wheelchairs."  (FAC ¶¶ 90, 91.)  The court should dismiss this claim because Plaintiffs fail to meet the threshold standing requirements to bring an ERISA claim and, standing aside, cannot allege that Kaiser fails to cover all required EHBs.

A.    **Plaintiffs Lack Standing to Raise ERISA Claims**

As a threshold matter, Plaintiffs lack standing to raise ERISA because ERISA limits standing to persons who are a "participant, beneficiary, or fiduciary" in an ERISA plan.  29 U.S.C. § 1132(a)(3).  The list of entities empowered to bring suit under section 1132 is exclusive.  *Local 6-0682 Int'l Union of Paper v. Nat'l Indus. Grp. Pension Plan*, 342 F.3d 606, 609, n.1 (6th Cir. 2003).  ERISA defines "participants" as employees or former employees who are, or may be, eligible to receive benefits, 29 U.S.C. § 1002(7), and "beneficiaries" as people designated by a participant who may become eligible to receive benefits, 29 U.S.C. § 1002(8).  *New Jersey State AFL-CIO v. New Jersey*, 747 F.2d 891, 892-93 (3rd Cir. 1984).  Here, none of the Plaintiffs alleges that they are a participant, beneficiary, or fiduciary of a Kaiser ERISA plan.  Indeed, they fail to allege the existence of an ERISA plan at all.  Because the FAC fails to plead this threshold requirement, Plaintiffs' claim for violation of ERISA fails and the Court need not delve further.

Nor can the Foundation cure this deficiency by amending the FAC because the Foundation cannot be a participant or a beneficiary and it does not bring any claims as a fiduciary.  *See id.*; *Smart-TD Local 161 v. Wedriveu, Inc.*, 2021 WL 3565429, *2-3 (W.D. Wash. 2021) (holding that union could not bring an ERISA claim on behalf of its members because it did not fall within one of the exclusive categories authorized to by Section 1132(a)).

**B.     Plaintiffs Fail to State a Claim Under Section 502(a) of ERISA Because Wheelchairs Are Not Essential Health Benefits**

Standing aside, Plaintiffs' ERISA claim fails because Plaintiffs fail to allege a plausible ERISA violation.  The gist of the ERISA claim is that Kaiser's limitations on coverage for supplemental DME—which meet or exceed the coverage prescribed by California's Benchmark Plan chosen by the state Legislature—violate Sections 2727 and Section 2731 of the Public Health and Safety Act ("PHSA"), as amended by ACA. Section 2727 states that "[a] health insurance issuer that offers health insurance coverage in the individual or small group market shall ensure that such coverage includes the essential health benefits package required under section [1302(a) of the Patient Protection and Affordable Care Act.]"  42 U.S.C. § 300gg-6(a).  Section 2731 prohibits "lifetime limits on the dollar value of benefits" or "annual limits on the dollar value of benefits" in member plans.  42 U.S.C. § 300gg-11(a).  However, a health plan is not prohibited "from placing annual or lifetime per beneficiary limits on specific covered benefits that are *not* essential health benefits. . ."  42 U.S.C. § 300gg-11(b) (italics supplied).

Accordingly, to state an ERISA claim based on not covering or limiting coverage for wheelchairs, Plaintiffs would have to allege facts showing that wheelchairs are EHBs. This they cannot do for all the reasons detailed above.  The ACA simply does not mandate coverage for wheelchairs.  Coverage for wheelchairs is not mentioned, let alone required, by either the Federal statutes or regulations.  Rather, the specification of EHBs is delegated to each state under the benchmark process.  Even Plaintiffs concede that the Benchmark Plan for California does not include coverage for wheelchairs.  (FAC ¶ 55) ("wheelchairs . . . are excluded from DMHC's Essential Benefit List).

Indeed, when choosing the state Benchmark Plan, the Legislature did not merely overlook coverage for wheelchairs.  In 2015, the California Insurance Commissioner advocated to the Legislature for the selection of a different benchmark plan with enhanced coverage for supplemental DME.  (RJN, Ex. B).  The Commissioner acknowledged that wheelchairs were not EHBs and would continue to not be EHBs with the selection of the

2014 Kaiser Small Group HMO 30 Benchmark Plan.  (*Id.*)  On notice that coverage for wheelchairs would continue to not be included as an EHB, the Legislature nevertheless chose the 2014 Kaiser Small Group HMO 30 plan as the Benchmark Plan, reflecting the Legislature's concern that increasing coverage for certain items and services beyond the mandated EHBs would lead to increased premiums for all Californians.

In sum, the ACA delegated the task of determining the specific services and items that constitute EHBs to the state.  Both the California Legislature and DMHC decided not to include wheelchair coverage as an EHB in the state's Benchmark Plan, which Plaintiffs admit in the FAC.  (FAC ¶ 55).  Thus, wheelchairs are not EHBs.  Therefore, Plaintiffs have not alleged any plausible violation of ERISA.

## VI.

## CONCLUSION

For the foregoing reasons, Defendant Kaiser respectfully requests that its motion to dismiss be granted in its entirety with prejudice.

Dated:  February 4, 2022

By _____/s/ A. Alexander Kuljis_____

MOE KESHAVARZI
JOHN T. BROOKS
A. ALEXANDER KULJIS

Attorneys for Defendant
KAISER FOUNDATION HEALTH PLAN, INC.