1  Rob Bonta
   Attorney General of California
2  Jennifer G. Perkell
   Supervising Deputy Attorney General
3  Joshua N. Sondheimer (SBN 152000)
   Hadara R. Stanton (SBN 227040)
4  Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 510-4420
6   Fax:  (415) 703-5480
    E-mail:  Joshua.Sondheimer@doj.ca.gov
7  *Attorneys for Defendants Mary Watanabe, in her*
   *official capacity as Director of the California*
8  *Department of Managed Health Care and the*
   *California Department of Managed Health Care*
9
                    IN THE UNITED STATES DISTRICT COURT
10
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                             OAKLAND DIVISION
12

13

14 | **GRACE SMITH and RUSSELL** | 4:21-cv-07872-HSG
   | **RAWLINGS, on behalf of themselves and** |
15 | **all others similarly situated, and** |
   | **CALIFORNIA FOUNDATION FOR** |
16 | **INDEPENDENT LIVING CENTERS, a** | **DEFENDANTS DMHC AND DIRECTOR**
   | **California nonprofit corporation,** | **WATANABE'S NOTICE OF MOTION**
17 |                                    | **AND MOTION TO DISMISS FIRST**
   |                            Plaintiffs, | **AMENDED COMPLAINT (Fed. R. Civ. P.**
18 |                                    | **12(b)(1) & 12(b)(6)); MEMORANDUM OF**
   |                           v.       | **POINTS AND AUTHORITIES**
19 |
20 | **MARY WATANABE, in her capacity as** | Date:   April 28, 2022
   | **Director of the California Department of** | Time:   2:00 pm
21 | **Managed Health Care; CALIFORNIA** | Dept:   Courtroom 2, 4th Floor
   | **DEPARTMENT OF MANAGED HEALTH** | Judge:  The Honorable Haywood S. Gilliam, Jr.
22 | **CARE; and KAISER FOUNDATION** |
   | **HEALTH PLAN, INC.,** |
23 |
   |                           Defendants. |
24

25

26

27

28

---

1

# TABLE OF CONTENTS

2

**Page**

3   Notice of Motion and Motion to Dismiss .................................................................................. 1

4   Statement of Issues to Be Decided ........................................................................................... 1

    Memorandum of Points and Authorities ................................................................................... 1

5   Introduction ............................................................................................................................... 1

6   Background ................................................................................................................................ 3

7           I.      Summary of Plaintiffs' Allegations .......................................................... 3

8           II.     Legal Background ..................................................................................... 4

                   A.      Federal and State Law Define "Essential Health Benefits" ..................... 4

9                  B.      California Defines EHB to Include Coverage of Durable Medical
                           Equipment for Home Use ................................................................. 6

10          III.    Plaintiffs' Allegations Against DMHC ..................................................... 7

11  Legal Standard for Motion to Dismiss ...................................................................................... 7

12  Argument ................................................................................................................................... 9

            I.      Plaintiffs' Action Against DMHC Is Barred by the Eleventh Amendment ........... 9

13          II.     Plaintiffs Lack Article III Standing for Their Claims Against DMHC ................ 11

14                 A.      Plaintiffs Fail to Allege that DMHC Has Caused Plaintiffs Any
                           Injury ...................................................................................... 11

15                 B.      Any Alleged Injury to Plaintiffs Cannot be Redressed by a
                           Favorable Decision Against DMHC Here In Any Event .......................... 12

16          III.    Plaintiffs' Claim Against DMHC Is Time-Barred ................................................ 13

17          IV.     Plaintiffs Fail to and Cannot State a Claim for Disability Discrimination
                    Against DMHC Under Section 1557 ..................................................... 14

18
                   A.      Plaintiffs Cannot State a Claim for Discrimination Because They
19                         Cannot Establish They Were Denied "Meaningful Access" to an
                           ACA-Covered Benefit ...................................................................... 14

20                 B.      Non-Discriminatory Plan Benefit Design Does Not Require
                           Coverage of All Devices Needed by Persons with Disabilities ................ 17
21
                   C.      Plaintiffs Fail to Allege Facts Sufficient to Support a Claim of
22                         "Discrimination by Proxy" ................................................................. 18

    Conclusion ............................................................................................................................... 19
23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Alexander v. Choate*
    469 U.S. 287 (1985) ................................................................................................. 15, 17

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................................................. 8

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................................................. 8

*Bostock v. Clayton Cty., Georgia*
    140 S. Ct. 1731 (2020) ............................................................................................ 13

*Cent. Delta Water Agency v. United States*
    306 F.3d 938 (9th Cir. 2002) ................................................................................... 11

*Cetacean Community v. Bush*
    386 F.3d 1169 (9th Cir. 2004) ................................................................................. 7, 11

*ChryslerCorp v. Brown*
    441 U.S. 281 (1979) ................................................................................................. 16

*Conservation Force v. Salazar*
    646 F.3d 1240 (9th Cir. 2011) ................................................................................. 8

*Davis v. Commonwealth Election Comm'n*
    844 F.3d 1087 (9th Cir. 2016) ................................................................................. 19

*Davis v. Guam*
    932 F.3d 822 (9th Cir. 2019) ................................................................................... 18

*Doe v. BlueCross BlueShield of Tennessee, Inc.*
    926 F.3d 235 (6th Cir. 2019) ................................................................................... 14

*Doe v. CVS Pharmacy, Inc.*
    982 F.3d 1204 (9th Cir. 2020) ................................................................................. 14, 15

*Hall v. United States Dep't of Agric.*
    984 F.3d 825 (9th Cir. 2020) ................................................................................... 7

*Hans v. Louisiana*
    134 U.S. 1 (1890) ..................................................................................................... 9

ii

1

### TABLE OF AUTHORITIES
#### (continued)

2

**Page**

3

*Levine v. Vilsack*
    587 F.3d 986 (9th Cir. 2009)...................................................................................... 11

4

5

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) .................................................................................................. 11

6

7

*Mark H. v. Lemahieu*
    513 F.3d 922 (9th Cir. 2008).............................................................................. 15, 16

8

*Maximum Comfort Inc. v. Sec'y of Health & Hum. Servs.*
    512 F.3d 1081 (9th Cir. 2007).................................................................................. 17

9

10

*Michelle v. Cal. Dep't of Corr. & Rehab.*
    No. 118CV01743 NONE-JLT (PC), 2021 WL 1516401
    (E.D. Cal. Apr. 16, 2021) ........................................................................................... 9

11

12

*Morris v. Williams*
    433 P.2d 697 (Cal. 1967) ......................................................................................... 12

13

14

*Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch*
    773 F.3d 1037 (9th Cir. 2014) .................................................................................. 11

15

16

*Nat'l Audubon Soc'y, Inc. v. Davis*
    307 F.3d 835 (9th Cir. 2002)..................................................................................... 10

17

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
    567 U.S. 519 (2012) .................................................................................................... 4

18

19

*Pareto v. F.D.I.C.*
    139 F.3d 696 (9th Cir. 1998)....................................................................................... 8

20

21

*Payan v. Los Angeles Cmty. Coll. Dist.*
    11 F.4th 729 (9th Cir. 2021)...................................................................................... 14

22

*Preskar v. U.S.*
    248 F.R.D. 576 (E.D. Cal. 2008) .............................................................................. 13

23

24

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*
    506 U.S. 139 (1993) .................................................................................................... 9

25

26

*Rochester Pure Waters Dist. v. E.P.A.*
    960 F.2d 180 (D.C. Cir. 1992) .................................................................................. 13

27

*Safe Air for Everyone*
    373 F.3d 1035, 1039 (9th Cir. 2004)........................................................................... 8

28

iii

Defendants DMHC & Director Watanabe's Notice of Motion & Motion to Dismiss First Amended Complaint;
Memorandum of Points & Authorities (4:21-cv-07872-HSG)

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*
    343 F.3d 1036 (9th Cir. 2003) ................................................................................. 8

4

*Schmitt v. Kaiser Found. Health Plan of Wash.*
    965 F.3d 945 (9th Cir. 2020) ........................................................................... 3, 18

5

6

*Seminole Tribe of Florida v. Florida*
    517 U.S. 44 (1996) ................................................................................................. 9

7

*Snoeck v. Brussa*
    153 F.3d 984 (9th Cir. 1998) .............................................................................. 10

8

9

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) ................................................................................ 8

10

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*
    594 F.2d 730 (9th Cir. 1979) .......................................................................... 7, 10

11

12

*Vega-Ruiz v. Northwell Health*
    992 F.3d 61 (2d Cir. 2021) ................................................................................. 13

13

14

*Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*
    114 F.3d 976 (9th Cir. 1997) .............................................................................. 16

15

16

*Ex parte Young*
    209 U.S. 123 (1908) ........................................................................................... 10

17

18

**CONSTITUTIONAL PROVISIONS**

19

Eleventh Amendment ..................................................................................... 1, 2, 9, 10

20

21

**COURT RULES**

22

Federal Rule of Civil Procedure
    Rule 12(b)(1) ................................................................................................ 1, 7, 9
    Rule 12(b)(6) .................................................................................................. 1, 8

23

24

25

26

27

28

iv

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

**FEDERAL STATUTES**

4

United States Code, Title 42

5
   § 1365x(n) ................................................................................................ 17
   § 18022 .................................................................................................... 5, 6

6
   § 18022(b) .................................................................................................. 4
   § 18022(b)(1)(G) ........................................................................................ 4

7
   § 18022(b)(2)(A) ........................................................................................ 4
   § 18116 .................................................................................................... 7, 9

8
   § 18116(a) ................................................................................................ 10
   § 2000d-7 ................................................................................................ 10

9

10

**FEDERAL REGULATIONS**

11

Code of Federal Regulations, Title 45

12
   § 156.20 ..................................................................................................... 4
   § 156.100 ................................................................................................ 4, 5

13
   § 156.110 ................................................................................................... 6
   § 156.110(a) ............................................................................................... 4

14
   § 156.111 ................................................................................................... 4

15
   § 156.115(a)(5)(i) ...................................................................................... 6

16

**FEDERAL REGISTER**

17

*Nondiscrimination in Health Programs and Activities*

18
   81 Fed. Reg. 31375 (May 18, 2016) ...................................................... 17

19

20

**CALIFORNIA STATUTES**

21

California Civil Procedure Code

   § 338(a) .................................................................................................... 13

22

Statutes of California

23
   2012, c. 854 .............................................................................................. 5

24
   2015, c. 648 ............................................................................................ 14

25

26

27

28

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3    California Health & Safety Code
     § 1367.005 ........................................................................................................... 7
4    § 1367.005(a) ..................................................................................................... 18
5    §§ 1367.005(a)(1), (2) .......................................................................................... 5
     §§ 1367.005(a)(1)-(5) ........................................................................................... 5
6    § 1367.005(a)(2) ................................................................................................ 15
     §§ 1367.005(a)(2), (4), (5) ..................................................................................... 5
7    §§ 1367.005(a)(3), (o)(1) ....................................................................................... 6
     § 1367.005(n) .................................................................................................... 12
8    § 1367.005(n)(2), (3) ........................................................................................... 12

9

10   **CALIFORNIA REGULATIONS**

11   California Code of Regulations, Title 28
     § 1300.67.005 ............................................................................................... 6, 13
12   § 1300.67.005(d) ................................................................................................. 7
     § 1300.67.005(d)(5) ........................................................................................ 7, 15
13   § 1300.67.005(d)(5)(B) ......................................................................................... 7
     § 1300.67.005(d)(5)(C) ......................................................................................... 7
14

15   **OTHER AUTHORITIES**

16   Affordable Care Act ................................................................................... *passim*

17   ERISA .................................................................................................................. 3

18

19   Medicare Act .................................................................................................... 17

20   Rehabilitation Act ...................................................................................... *passim*

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on Thursday, April 28, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Judge Haywood S. Gilliam, Jr., in the United States District Court for the Northern District of California, located in the Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA 94162, Defendants Mary Watanabe, in her official capacity as Director of the California Department of Managed Health Care (DMHC) and DMHC (collectively, the Department or DMHC), will and hereby do move the court to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made on the grounds that: (1) the Court lacks subject matter jurisdiction over Plaintiffs' claims against DMHC; (2) Plaintiffs lack Article III standing; (3) their action against the DMHC is barred by the applicable statute of limitations; and (4) that plaintiffs' First Amended Complaint fails to state a cause of action upon which relief may be granted. DMHC, therefore, requests that Plaintiffs' First Amended Complaint be dismissed without leave to amend.

The motion will be and is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, Declaration of Sarah Ream, and Request for Judicial Notice; the pleadings and papers filed herein; and the argument of counsel at the time of the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiffs' action against DMHC is barred by the Eleventh Amendment.

2. Whether Plaintiffs meet Article III standing requirements.

3. Whether Plaintiffs' action is barred by the applicable statute of limitations.

3. Whether Plaintiffs have failed to state a claim for relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs' action improperly seeks to wield a nondiscrimination provision of the Affordable Care Act (ACA) to obtain a court order mandating that California health plans provide unlimited coverage for wheelchairs for persons with disabilities, unrelated to medical treatment, that neither

1

1    Congress nor the California Legislature determined are required health care benefits under the

2    ACA or state law.  Contrary to Plaintiffs' sympathetic but fundamentally misguided claims, the

3    ACA's nondiscrimination requirement does not independently impose benefit mandates, but

4    rather serves only as a bar to discrimination against protected groups in the design of those

5    particular benefits that *are* mandated or otherwise provided in plans to which the ACA's

6    requirements apply.  As wheelchairs are not a mandated benefit under California law, neither the

7    Legislature, DMHC, nor any health plan unlawfully discriminates against persons with

8    disabilities by not identifying wheelchairs as an element of the minimum package of covered

9    benefits in ACA-qualified plans.

10       The Court should be under no misimpression:  if Plaintiffs' claims are allowed, this would

11   have profound and far-reaching implications for the provision of health care in this State, if not

12   nationally, that Congress clearly did not contemplate.  States and health plans would be subject to

13   potential mandates to cover and fund virtually any type of service or item—whether related to

14   medical treatment or not, and indefinitely and at whatever cost—that may be beneficial to the

15   particular needs or well-being of any disabled person.  This is not what Congress intended in

16   protecting individuals against discrimination under the ACA in any health program or activity

17   that accepts federal funding.  Plaintiffs' action must be dismissed.

18       The Court need not, however, reach the question of whether Plaintiffs have stated a

19   cognizable claim against DMHC, because the case fails on threshold questions of this Court's

20   jurisdiction.  Firstly, the Eleventh Amendment bars Plaintiffs' action in this Court against DMHC

21   and its Director.  Moreover, Plaintiffs cannot establish standing to sue.  The only conduct by

22   DMHC challenged in the First Amended Complaint concerns its "codification," by regulation, of

23   durable medical equipment coverage, as mandated by the California Legislature in the its

24   adoption of a "base-benchmark health plan pursuant to requirements under the ACA.  The

25   benchmark plan sets out the particular health care services and items to be covered as "essential

26   health benefits" (EHB) under the ACA.  Plaintiffs fail to allege any independent action by DMHC

27   that has caused Plaintiffs any injury or that may be redressed by this action.  For these additional

28   reasons, this lawsuit must be dismissed.

1    Plaintiffs fail, in any event, to allege any facts that would support a reasonable inference of

2    intentional discrimination.  As the Ninth Circuit recently concluded in a case raising similar

3    claims in connection with coverage of treatment for hearing loss, to support a claim of

4    discrimination in defining benefits, a plaintiff must allege "facts giving rise to an inference of

5    intentional discrimination *besides the exclusion itself*."  *Schmitt v. Kaiser Found. Health Plan of*

6    *Wash*., 965 F.3d 945, 959 (9th Cir. 2020).  As Plaintiffs fail to allege any facts beyond the

7    coverage limitation to which they object, Plaintiffs fail allege facts sufficient to raise any

8    inference of deliberate discrimination under the ACA.

9    Plaintiffs' lawsuit, therefore, should be dismissed without leave to amend.

10   **BACKGROUND**

11   **I.    SUMMARY OF PLAINTIFFS' ALLEGATIONS**

12   Plaintiffs are two disabled individuals and a foundation that supports Independent Living

13   Centers and programs for persons with disabilities in California.  First Amended Complaint

14   (FAC) ¶¶ 16-18.  The individual Plaintiffs, Beth Smith and Russell Rawlings, are enrolled in

15   small group health plans with Kaiser Permanente.  FAC ¶ ¶ 16, 17.  Their health care coverage is

16   provided by an agreement between the Kaiser Foundation Health Plan, Inc., and Plaintiffs'

17   employers.  *See id*.  Plaintiffs allege that Kaiser "either excludes [wheelchair] coverage or

18   imposes a $2,000 annual dollar limitation on the sum of all supplemental DME [durable medical

19   equipment]."  FAC ¶ 59.

20   Plaintiffs have sued Kaiser Foundation Health Plan, Inc. (Kaiser)[1] and the DMHC and its

21   Director alleging violation of the nondiscrimination provision of the ACA for not mandating or

22   providing unlimited coverage of wheelchairs.  FAC ¶¶ 1, 73-84.  Plaintiffs appear to challenge a

23   "home use" limitation on DME coverage under DMHC regulations and their Kaiser plans.  *See*

24   FAC ¶¶ 54, 57-61, 82.  Plaintiffs also assert a separate claim against Kaiser under ERISA that

25   also disputes the $2,000 cap for "supplemental DME" coverage that is an additional benefit

26   beyond the "base DME" benefit under their plans.  FAC ¶¶ 59-60.

27

28   [1] Kaiser is represented separately in this action, and will file its own Motion to Dismiss.

3

II.   **LEGAL BACKGROUND**

    A.   **Federal and State Law Define "Essential Health Benefits"**

       Congress enacted the federal Patient Protection and Affordable Care Act of 2010 (ACA) to "increase the number of Americans covered by health insurance and decrease the cost of health care." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012).  As relevant here, the ACA required small group health insurance plans to cover, beginning in 2014, ten broad categories of essential health benefits (EHBs), including "Rehabilitative and habilitative services and devices."  42 U.S.C. § 18022(b)(1)(G).  Congress directed the Secretary of the United States Health & Human Services Agency (Secretary or HHS) to provide definitions of those EHBs, subject to certain standards, including that the scope of coverage be "equal to the scope of benefits provided under a typical employer plan."  42 USC § 18022(b), (b)(2)(A).  Regulations issued by the HHS pursuant to this authority provided further general definitions of each of the ten EHB categories.  Ultimately, however, the Secretary left it to the States to determine what specific services and items must be covered under each benefit category.  45 C.F.R. §§ 156.110(a), 156.20.

       In particular, States were required either to identify required minimum coverage by selecting, under one of four alternatives among existing commercial and government health plan options, a "base-benchmark plan" as the principal standard for essential health benefit coverage in each state, or else to utilize a default base-benchmark plan if none was selected.  45 C.F.R. § 156.100.[2]  To the extent that the base-benchmark plan did not include coverage of EHB or certain pediatric oral and vision benefits, the plan was required to be supplemented.  *Id.* §§ 156.100(b), (c).  The base-benchmark plan, as supplemented, is then referred to as the "EHB-benchmark" plan, constituting the "standardized set of essential health benefits that must be met" by a health plan or insurer.  *Id.* § 156.20.

---

[2] For plan years beginning January 1, 2020, states have the option to change their base-benchmark plans using the new options outlined in federal regulations and guidance. 45 C.F.R. § 156.111.  The Legislature has not changed the State's base-benchmark plan pursuant to this authority.

4

In 2012, the California Legislature selected from the delineated options provided under proposed federal regulations the Kaiser Foundation Health Plan Small Group HMO 30 plan as the State's base-benchmark plan.  Cal. Stats. 2012, c. 854 (A.B. 1453), § 2.  In 2015, the Legislature passed Senate Bill (SB 43) to conform California's essential health benefits coverage to new ACA requirements.  To choose the State base-benchmark plan, the Legislature considered a separately commissioned analysis comparing the health services covered by a number of different plans as options for California's EHB-benchmark effective January 1, 2017.  Bill Analysis, Office of Senate Floor Analyses (S.B. 43, 2015-2016 Reg. Sess.) at 6 (Sept. 1, 2015).  The Legislature elected to use the "small group market" health plan option for its base-benchmark plan, under which the largest plan by enrollment of any of the three largest products in the State's small group marked may be selected.  *See* 45 C.F.R. § 156.100(a)(1).  Pursuant to this process, the Legislature selected a 2014 version of the Kaiser Foundation Health Plan Small Group HMO 30 plan, which also would have been the default plan for the State.  *See* S.B. 43 Bill Analysis, at 6; Cal. Health & Safety Code § 1367.005(a)(1), (2).  The Legislature supplemented the plan with additional benefits to constitute the State's EHB-benchmark plan.  See Cal. Health & Safety Code, §§ 1367.005(a)(2), (4), (5).

California law generally includes the following in its definition of essential health benefits:  the ten categories of health benefits identified in the ACA (42 U.S.C. § 18022), as covered by the 2014 Kaiser Foundation Health Plan Small Group HMO 30 plan; all benefits required to be covered by the plan pursuant to statutes enacted before December 31, 2011 (i.e., all existing state coverage mandates including all basic health care services); and everything else covered by the benchmark plan, even if that coverage is above and beyond what was otherwise required to be covered.  Cal. Health & Safety Code § 1367.005(a)(1)-(5).  Benefits required to be covered solely by virtue of being included within the base-benchmark plan are referred to as "other health benefits."  *Id.* § 1367.005(a)(5).

5

**B.     California Defines EHB to Include Coverage of Durable Medical Equipment for Home Use**

Wheelchairs are not identified as a required item of EHB coverage in either the federal statute or regulations.  See 42 U.S.C. § 18022; 45 C.F.R. § 156.110.  Habilitative services and devices are broadly defined in federal regulation as "services and devices that help a person keep, learn, or improve skills and functioning for daily living."  45 C.F.R. § 156.115(a)(5)(i).  Federal regulations permit the scope of habilitative services and devices to be defined by the State either in its base-benchmark plan or independently, providing that "[i]f the base-benchmark plan does not include coverage for habilitative services, the State may determine which services are included in that category."  45 C.F.R. § 156.110(f).

The California Legislature adopted the federal definition of habilitative services and devices in state statute and requires that they be covered as required under state and federal law, including to the extent identified in the State base-benchmark plan.  Cal. Health & Safety Code §§ 1367.005(a)(3), (o)(1) ("'Habilitative services' means health care services and devices that help a person keep, learn or improve skills and functioning for daily living.").[3]

The base-benchmark plan adopted by the Legislature includes coverage for "durable medical equipment for home use."  See RJN, Exh. A (Kaiser Plan at 29).  The definition of "durable medical equipment for home use" specifies that this coverage refers to items needed primarily for a "medical purpose" related to illness or injury, and lists the covered items.  *Id*.  As the plan provides, "durable medical equipment for home use is an item that is intended for repeated use, primarily and customarily used to serve a medical purpose, generally not useful to a person who is not ill or injured, and appropriate for use in the home."  *Id.*  This benefit is "limited to the standard item of equipment that adequately meets [the enrollee's] medical needs."  *Id.*

DMHC regulations identify these and other benefits as mandatory by their inclusion in the Kaiser base-benchmark plan.  Cal. Code Regs. tit. 28, § 1300.67.005.  These regulations specify that benefits identified in the base-benchmark plan, that would *not* be mandatory if *not* included in the base-benchmark plan, must nevertheless be covered as EHB as "[o]ther health benefits."

---

[3] The FAC cites to the provision of a version of the statute in effect until December 31, 2021.  *See* FAC ¶ 48, citing former Cal. Health and Safety Code § 1367.005(p)(1).

1   *Id.*, § 1300.67.005(d).  As relevant here, these "other health benefits" include "[d]urable medical

2   equipment for home use," which is defined identically as in the Kaiser base-benchmark plan as

3   items intended for repeated use for a "medical purpose" and that is generally "not useful to a

4   person who is not ill or injured."  *Id.*, §§ 1300.67.005(d)(5), (d)(5)(B).  The regulation further

5   specifies that with respective to the durable medical equipment for home use, "[t]he plan may

6   limit coverage to the standard equipment or supplies that adequately meets the enrollee's medical

7   needs."  *Id.* § 1300.67.005(d)(5)(B).  The regulations require that plans cover DME items that are

8   "substantially equal" to a list of DME items nearly identical to those identified in the Kaiser base-

9   benchmark plan.  *Id.* § 1300.67.005(d)(5)(C).

10  **III.    PLAINTIFFS' ALLEGATIONS AGAINST DMHC**

11          Plaintiffs' sole cause of action against DMHC for disability discrimination in violation of

12  Section 1557 of the ACA (42 U.S.C. § 18116) alleges that "[i]t is discrimination by proxy to

13  exclude wheelchairs from the EHB-benchmark," and that unspecified DMHC regulations

14  discriminate against people with disabilities because they do not include coverage of wheelchairs.

15  FAC ¶¶ 73-84.  Plaintiffs contend that these "policies" violate Section 1557.  FAC ¶ 84.

16  Plaintiffs do not challenge any state statute, including the Legislature's 2015 statutory adoption of

17  the current State EHB-benchmark plan under California Health and Safety Code section

18  1367.005.

19                          **LEGAL STANDARD FOR MOTION TO DISMISS**

20          When a plaintiff lacks standing under the Article III "case or controversy" requirement,

21  federal courts lack subject matter jurisdiction over the suit, and the case must be dismissed under

22  Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *Cetacean Community v. Bush*, 386 F.3d

23  1169, 1174 (9th Cir. 2004).  To satisfy requirements for standing, a plaintiff must establish three

24  familiar and "irreducible" elements:  (1) injury-in-fact, (2) causation, and (3) redressability.  *Hall

25  v. United States Dep't of Agric.*, 984 F.3d 825, 833 (9th Cir. 2020) (quoting *Lujan v. Defenders of

26  Wildlife*, 504 U.S. 555, 560 (1992).

27          A motion under Rule 12(b)(1) motion can be made as a "speaking motion," supported by

28  evidence challenging the court's jurisdiction.  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,

7

594 F.2d 730, 733 (9th Cir. 1979).  Thus, the court may consider evidence outside the complaint

without converting the motion into a summary judgment motion.  *See Safe Air for Everyone,* 373

F.3d 1035, 1039 (9th Cir. 2004).  "Once the moving party has converted the motion to dismiss

into a factual motion by presenting affidavits or other evidence properly brought before the court,

the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its

burden of establishing subject matter jurisdiction. *Savage v. Glendale Union High Sch., Dist. No.*

*205, Maricopa Cty.*, 343 F.3d 1036, 1040 (9th Cir. 2003).  In a speaking motion, "[t]he court need

not presume the truthfulness of the plaintiff's allegations."  *Safe Air,* 373 F.3d at 1039.

Under Rule 12(b)(6), a district court properly dismisses a complaint for failure to state a

claim upon which relief may be granted if "there is a 'lack of a cognizable legal theory or the

absence of sufficient facts alleged under a cognizable legal theory.'"  *Conservation Force v.*

*Salazar,* 646 F.3d 1240, 1242 (9th Cir. 2011) (citations omitted).  To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

facial plausibility "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference" that the defendant may be liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009), citing *Twombly,* 550 U.S. at 556.

In considering a motion to dismiss, the Court must accept as true all material allegations in

the complaint, as well as all reasonable inferences to be drawn from them.  *Pareto v. F.D.I.C.*,

139 F.3d 696, 699 (9th Cir. 1998).  However, courts are not "required to accept as true allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The ultimate

determination of "whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Iqbal*, 556 U.S. at 679.

8

1

2

## ARGUMENT

**I.    PLAINTIFFS' ACTION AGAINST DMHC IS BARRED BY THE ELEVENTH AMENDMENT**

Plaintiffs' action against DMHC is barred by the Eleventh Amendment of the United States Constitution because DMHC is a state agency and has not waived its immunity to suit.  Plaintiffs' action against DMHC, therefore, must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

The Eleventh Amendment operates as a limit to the court's subject matter jurisdiction. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 64 (1996) ("[T]he Eleventh Amendment [stands] for the constitutional principle that state sovereign immunity limit[s] the federal courts' jurisdiction under Article III.)  The Amendment prohibits federal courts from hearing suits brought by private citizens against state governments without the state's consent.  *Hans v. Louisiana,* 134 U.S. 1, 15 (1890).  State immunity extends to state agencies and to state officers who act on behalf of the state and can therefore assert the state's sovereign immunity.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142–46, 113 (1993).  DMHC is a state agency, and Director Watanabe is sued in her official capacity as its Director.  FAC ¶¶ 19-20.  Therefore, the Eleventh Amendment bars Plaintiffs' putative federal class action lawsuit against DMHC and Director Watanabe.

Plaintiffs allege that DMHC has discriminated against plaintiffs under Section 1557 of the ACA.  However, that provision does not operate to waive the State's Eleventh Amendment immunity here because DMHC does not receive federal funds.  Section 1557 provides that no individual shall, on grounds barred by various anti-discrimination statutes—including the Rehabilitation Act barring discrimination on the basis of disability—be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance.  42 U.S.C. § 18116.  Under this provision, a state "health program or activity" allegedly responsible for discrimination must have accepted federal funds for its immunity to be deemed waived under federal law abrogating state immunity in connection with statutes prohibiting discrimination by recipients of federal financial assistance.  *See Michelle v. Cal. Dep't of Corr. & Rehab.*, No. 118CV01743 NONE-JLT (PC), 2021 WL 1516401, at *11

9

1  (E.D. Cal. Apr. 16, 2021) (applying "residual clause" of 42 U.S.C. § 2000d-7, and holding "[B]y

2  receiving federal funds . . . CDCR and CCHS waived their immunity from suit for violations of

3  ACA's nondiscrimination provision;"). Here, no such abrogation or waiver would apply because

4  DMHC does not receive any federal financial assistance.  Declaration of Sarah Ream ¶ 3.[4]

5  DMHC, therefore, is not a "health program or activity, any part of which is receiving Federal

6  financial assistance" to which Section 1557 could apply.  42 U.S.C. § 18116(a).

7      Plaintiffs' allegations fail to demonstrate that Director Watanabe had any sufficient nexus

8  with DMHC's challenged conduct to support application of any exception to Eleventh

9  Amendment immunity of state officials acting in their official capacity.  A suit against a state

10  official for prospective injunctive or declaratory relief is barred by the Eleventh Amendment's

11  guarantee of state immunity from suit in federal court unless the official has "some connection"

12  with the enforcement of the allegedly wrongful conduct.  *Ex parte Young*, 209 U.S. 123 (1908);

13  *see Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (finding action against

14  officials barred by Eleventh Amendment "as there is no showing that they have the requisite

15  enforcement connection" to challenged ballot proposition).  Absent such a connection, the suit is

16  merely making the official a party "as a representative of the State, and thereby attempting to

17  make the State a party."  *Ex parte Young*, 209 U.S. at 157.  The official's connection to the

18  challenged action necessary to overcome Eleventh Amendment immunity "must be fairly direct; a

19  generalized duty to enforce state law or general supervisory power over the persons responsible

20  for enforcing the challenged provision will not subject an official to suit."  *Snoeck v. Brussa*, 153

21  F.3d 984, 986 (9th Cir. 1998) (quoting *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704

22  (9th Cir. 1992).)

23      Plaintiffs do not allege any alleged discriminatory conduct by Director Watanabe, or facts

24  sufficient to demonstrate any direct connection with DMHC's adoption of allegedly

25  discriminatory EHB-benchmark regulations.  Rather, Plaintiffs merely allege that the Director has

26  overall general authority over the Department's affairs, allegedly including "enforcement" of the

27

28  [4] As noted above, DMHC may submit evidence in support of its challenge to the Court's subject matter jurisdiction. *Thornhill,* 594 F.2d at 733.

10

1   EHB-benchmark standards.  *See* FAC ¶ 20.  However, as identified above, DMHC, under prior

2   chief officers, merely implemented EHB-benchmark standards established by the Legislature, and

3   Director Watanabe lacks authority to take action contrary to state law.  Plaintiffs fail to establish

4   that the Director has any direct connection with DMHC's challenged action sufficient to

5   overcome the State's immunity from federal suit.

6       Plaintiffs' action against DMHC, therefore, must be dismissed for lack of subject matter

7   jurisdiction.

8   **II.   PLAINTIFFS LACK ARTICLE III STANDING FOR THEIR CLAIMS AGAINST DMHC**

9       To demonstrate standing under Article III to maintain their lawsuit against DMHC,

10  Plaintiffs must allege facts sufficient to establish: (1) that they suffered a particularized and

11  concrete injury that is either actual or imminent; (2) that the injury is fairly traceable to the

12  Defendant's challenged conduct; and (3) that the injury is likely to be redressed by a favorable

13  court decision.  *Levine v. Vilsack*, 587 F.3d 986, 991-992 (9th Cir. 2009); *see also Lujan,* 504

14  U.S. at 560-61.  Plaintiffs fail to and cannot allege facts demonstrating that any alleged injury is

15  the result of unlawful conduct by DMHC or that any such injury may properly be redressed by a

16  favorable decision against DMHC.  Thus, Plaintiffs lack Article III standing.

17      "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and

18  an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *Cetacean*

19  *Community*, 386 F.3d at 1174.  The burden of establishing the required elements of standing

20  "falls upon the party asserting federal jurisdiction."  *Cent. Delta Water Agency v. United States*,

21  306 F.3d 938, 947 (9th Cir. 2002).  The standing elements are "not merely pleading

22  requirements," but are an "indispensable part of the plaintiff's case."  *Id.*

23      **A.   Plaintiffs Fail to Allege that DMHC Has Caused Plaintiffs Any Injury**

24      To demonstrate standing, Plaintiffs must allege facts sufficient to demonstrate a causal

25  connection between their alleged injury and Defendant DMHC's conduct.  *Nat'l Ass'n for the*

26  *Advancement of Multijurisdiction Practice v. Berch*, 773 F.3d 1037, 1044 (9th Cir. 2014) (citing

27  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-158 (2014)).  Plaintiffs' allegations fail to

28  demonstrate any such causal relationship.

11

1   Plaintiffs specifically allege that DMHC has discriminated against them by "codifying

2   EHB-benchmark regulations" that do not mandate coverage of wheelchairs.  FAC ¶ 80.  But

3   Plaintiffs themselves acknowledge that it was the State Legislature that adopted relevant EHB-

4   benchmark plan, and that the DMHC regulations merely "codify" the coverages identified in the

5   Kaiser base-benchmark plan and state law, as it was required to do.  FAC ¶ 7, 47, 52; Cal. Health

6   and Safety Code § 1367.005(n).  The Legislature directed DMHC to implement the EHB-

7   benchmark statute in emergency regulations, identifying the regulations as "an emergency and

8   necessary for the immediate preservation of the public peace, health, safety, or general welfare.

9   Cal. Health and Safety Code § 1367.005(n)(2), (3).  DMHC lacks authority, of course, to deviate

10  from statutory mandates issued by the Legislature.  *Morris v. Williams*, 433 P.2d 697, 707 (Cal.

11  1967) (noting that regulations that alter or amend a statute or enlarge or impair its scope are

12  invalid).

13  Nowhere do Plaintiffs allege that DMHC regulations fail to incorporate or improperly

14  change the EHB requirements adopted by the Legislature.  Plaintiffs do not, and cannot, allege

15  that DMHC independently adopted the coverage limitations to which they object or made any

16  independent determinations in establishing or defining the scope of essential health benefits to be

17  included in California's small group plans.  Thus, Plaintiffs fail to demonstrate that their alleged

18  injury is in any way caused by or results from any action or inaction by DMHC which is not

19  otherwise required by law to take.

20      **B.    Any Alleged Injury to Plaintiffs Cannot be Redressed by a Favorable**
             **Decision Against DMHC Here In Any Event**
21
22      For similar reasons, Plaintiffs' alleged injury also cannot be redressed by a favorable

23  decision against DMHC.  Plaintiffs assert their action seeks "injunctive relief requiring DMHC

24  and Kaiser to amend their wheelchair policies and practices in order to achieve compliance with

25  federal laws."  FAC ¶ 12.  However, as coverage required under DMHC's EHB regulations are

26  dictated by the EHB-benchmark plan established by the Legislature, and Plaintiffs do not

27  challenge the state statute under which the Legislature adopted the Kaiser base-benchmark plan

28

12

1    and other coverage requirements, there is no relief this Court may grant on Plaintiffs' complaint

2    that would redress Plaintiffs' injury.

3         Plaintiffs cannot obtain an order from this Court mandating that the DMHC require health

4    plans to cover services that the Legislature has not included as an essential health benefit.

5    *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020) ("If judges could add to, remodel,

6    update, or detract from old statutory terms inspired only by extratextual sources and our own

7    imaginations, we would risk amending statutes outside the legislative process reserved for the

8    people's representatives.") ; *Preskar v. U.S.*, 248 F.R.D. 576, 584 (E.D. Cal. 2008) (federal courts

9    lacked authority to unilaterally amend California Penal and Education Codes); *see, e.g.,*

10   *Rochester Pure Waters Dist. v. E.P.A.*, 960 F.2d 180, 184 (D.C. Cir. 1992) (it is "beyond dispute"

11   that a federal court cannot order obligation of funds where no state appropriation).  DMHC lacks

12   any ability to cause the Legislature to adopt an unlimited wheelchair coverage requirement.  For

13   these reasons, Plaintiffs fail to and cannot demonstrate that a favorable decision is likely to

14   provide redress for any injury they have alleged.

15   **III.   PLAINTIFFS' CLAIM AGAINST DMHC IS TIME-BARRED**

16        Plaintiffs' challenge to DMHC's EHB regulation for not including wheelchairs as an

17   essential health benefit is time-barred, in any event.  Claims under Section 1557 are subject to the

18   four-year default statute of limitations for civil actions under all acts of Congress enacted after

19   1990. 28 U.S.C. § 1658(a); *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 66 (2d Cir. 2021)

20   (holding that the four-year statute of limitations applies to Section 1557 claims, not the three-year

21   limitation for claims under the Rehabilitation Act).[5]  Even under the most generous four-year

22   statute of limitations, Plaintiffs' lawsuit is years too late.

23        Plaintiffs' discrimination claim against DMHC accrued, at the latest, when DMHC last took

24   any action that could be part of Plaintiffs' claim; here, which would be its promulgation of the

25   EHB regulation, which was last amended on November 28, 2016.  Cal. Code Regs. tit. 28,

26   § 1300.67.005.  The legislation adopting the Kaiser base-benchmark plan and other EHB

27

28   _____

     [5] Under California law, the applicable statute of limitations would be the three-year
     default for "actions upon a liability created by statute."  Cal. Civ. Proc. Code § 338(a).

                                          13

1   requirements on which the DMHC regulation is based was signed into law *earlier*, of course, on

2   October 8, 2015.  Stats. 2015, c. 648 (S. 43), § 2.  Thus, whether the three-year state or the four-

3   year federal statute of limitations applies, this action is time-barred against any state entity.[6]

4   **IV.   PLAINTIFFS FAIL TO AND CANNOT STATE A CLAIM FOR DISABILITY
         DISCRIMINATION AGAINST DMHC UNDER SECTION 1557**

5

6          **A.   Plaintiffs Cannot State a Claim for Discrimination Because They Cannot
              Establish They Were Denied "Meaningful Access" to an ACA-Covered
              Benefit**

7

8          Plaintiffs allege discrimination on the basis that they were denied meaningful access to a

9   covered benefit.  But because the item they assert they are being denied—wheelchairs intended

10  for use outside the home—is not, in fact, a covered benefit, this claim must fail as a matter of law.

11         The ACA's anti-discrimination provision does not establish a new discrimination standard.

12  Rather, to state a claim for a Section 1557 violation on the basis of disability, a plaintiff "must

13  allege facts sufficient to state a claim under Section 504 of the Rehabilitation Act." *Doe v. CVS*

14  *Pharmacy, Inc*., 982 F.3d 1204, 1210 (9th Cir. 2020); *see also Doe v. BlueCross BlueShield of*

15  *Tennessee, Inc*., 926 F.3d 235, 239 (6th Cir. 2019).  Section 504 of the Rehabilitation Act

16  provides that: "[n]o otherwise qualified individual with a disability in the United States . . . shall,

17  solely by reason of her or his disability, be excluded from the participation in, be denied the

18  benefits of, or be subjected to discrimination under any program or activity receiving Federal

19  financial assistance."  29 U.S.C. § 794(a).

20         To establish a violation of the Rehabilitation Act, a plaintiff must show that (1) he or she is

21  a "qualified individual with a disability," (2) he or she was "either excluded from participation in

22  or denied the benefits of" the "services, programs, or activities" of an entity, "or was otherwise

23  discriminated against by the [...] entity," (3) the entity that denied him or her the services received

24  federal financial assistance, and (4) "such exclusion, denial of benefits, or discrimination was by

25  reason of his [or her] disability."  *Payan v. Los Angeles Cmty. Coll. Dist*., 11 F.4th 729, 737-38

26

27         [6] The only dates alleged for Plaintiffs are April and May 2021 evaluations, letters and
    appeals with Kaiser regarding Plaintiff Smith's requested wheelchair.  FAC ¶¶ 64-66.  Plaintiff
28  Smith does not appear to challenge this denial in this lawsuit, but, in any event, these dates are not
    relevant to the claim against DMHC.

                                                   14

(9th Cir. 2021) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).  The

Ninth Circuit analyzes Rehabilitation Act claims under the standards articulated in *Alexander v.*

*Choate*, 469 U.S. 287 (1985).  *CVS Pharmacy,* 982 F.3d at 1210; *see also Mark H. v. Lemahieu*,

513 F.3d 922, 937 (9th Cir. 2008).

        In *Choate*, Medicaid beneficiaries alleged that Tennessee's proposal to reduce the number

of annual days of inpatient hospital care covered by its state Medicaid program, from 20 to 14,

would have a discriminatory impact on disabled beneficiaries.  469 U.S. at 289-90.  In

considering "whether the effect upon the handicapped that this reduction will have is cognizable

under § 504 of the Rehabilitation Act of 1973 or its implementing regulations," the Supreme

Court held "that it is not."  *Id*. at 289.  The Court concluded that, "Section 504 does not require

the State to alter this definition of the benefit being offered simply to meet the reality that the

handicapped have greater medical needs.  To conclude otherwise would be to find that the

Rehabilitation Act requires States to view certain illnesses, i.e., those particularly affecting the

handicapped, as more important than others and more worthy of cure through government

subsidization."  *Id*. at 303-04.

        Here, the Legislature has defined the medical equipment that must be covered as an

essential health benefit in adopting the EHB-benchmark plan.  *See* Cal. Health & Safety Code

§ 1367.005(a)(2); *see also* Cal. Code Regs. tit. 28, § 1300.67.005(d)(5).  That there may be

additional items that would uniquely benefit those with certain disabilities does not mean that a

state must cover that equipment.  "Under the test outlined in *Choate*, we first consider the nature

of the benefit [plaintiffs] were allegedly denied," and "[s]econd, we analyze whether the plan

provided meaningful access to the benefit."  *CVS Pharmacy, Inc.*, 982 F.3d at 1210-1211.  The

question is thus whether Plaintiffs have "adequately alleged they were denied meaningful access

to an ACA-provided benefit."  *Id*. at 1211.  Here, Plaintiffs' allegations fail at the first prong, as

they fail to establish that the item they seek is an ACA-provided benefit.  This necessarily means

that they cannot establish that they were denied meaningful access to a covered benefit.

        Plaintiffs' reliance on the statement of a member of Congress reflecting his understanding

that coverage of durable medical equipment would not be limited to in-home use is misplaced.

15

Congress did not mandate that plans cover any particular class of habilitative items in the express provisions of the ACA; to the contrary, as discussed above, Congress expressly left it to HHS to define the particular benefits and items to be covered as essential health benefits.  In any event, "[t]he remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." *ChryslerCorp v. Brown*, 441 U.S. 281, 311 (1979).  Had Congress intended to expressly cover wheelchairs as an essential health benefit, it could have so stated or explicitly instructed the Secretary to require it.  But it did not.  There is no support in either the statute or regulations that the ACA intended to cover wheelchairs without limitation.  Thus, there is no basis for Plaintiffs' claim that they have been denied meaningful access to an item that is not an ACA-covered benefit under California law.

Moreover, even if Congress had specified particular items that must be covered, any failure by a state to mandate such coverage, while potentially a violation of the Act, would not necessarily constitute *discrimination* on the basis of disability—the only claim alleged by Plaintiffs against DMHC.  Under the standards of the Rehabilitation Act, a defendants' alleged discriminatory conduct must be shown to have been taken "by reason of" plaintiff's disability. *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).  Thus, to support a claim of discrimination under section 504 of the Rehabilitation Act, Plaintiffs must demonstrate that they have been subject to *intentional* discrimination on the basis of disability. *Mark H.,* 513 F.3d at 938.  However, the First Amended Complaint is devoid of any allegations to support any inference whatsoever that the DMHC has deliberately sought to discriminate against persons with disabilities in identifying the coverages set out in the base-benchmark plan as mandatory essential health benefit.  Indeed, Plaintiffs allege nothing more than that DMHC performed a ministerial act of "codifying" in the EHB-benchmark regulations the benefit design mandated by the Legislature.  *See* FAC ¶80.

**B.**     **Non-Discriminatory Plan Benefit Design Does Not Require Coverage of All Devices Needed by Persons with Disabilities**

In addition to Plaintiffs' failure to allege any facts showing that DMHC has discriminatorily excluded Plaintiffs from access to a covered benefit, they also cannot establish, as a more general matter, that a plan benefit design requires coverage of all available devices.

Plaintiffs allege that not including wheelchairs in the EHB-benchmark plan is discriminatory because their own insurance plans offered by their employers include home use limitations and a cap of $2,000 for durable medical equipment.  FAC ¶¶ 63-72.[7]  However, non-discrimination principles do not require coverage of all devices needed by persons with disabilities.  As HHS stated in adopting regulations pursuant to Section 1557, covered entities are not required "to cover any particular procedure or treatment."  *Nondiscrimination in Health Programs and Activities*, 81 Fed. Reg. 31,375, at 31,434 (May 18, 2016).  Indeed, durable medical equipment is defined under the Medicare Act to include "wheelchairs . . . used in a patient's home," similarly to under the base-benchmark plan adopted by the Legislature.  42 U.S.C. § 1365x(n).  In upholding a 14–day limitation on inpatient coverage though the plaintiff needed a longer hospital stay, the Supreme Court confirmed in *Alexander v. Choate* that Medicaid programs need "not guarantee that each recipient will receive that level of health care precisely tailored to his or her needs."  *Choate*, 469 U.S. at 303.  Similarly, here, it is not discrimination by the state Legislature under the ACA to not include unlimited wheelchair coverage as an essential health benefit.

Section 1557 of the ACA cannot be used to compel DMHC to include services that have not been designated as essential health benefits.  Any such holding would require that any service or device that has not been designated by the State as an essential health benefit, and that is needed by a disabled person, must be covered in order to avoid discrimination.  Indeed, the purpose of the ACA's EHB requirement is to set the minimum threshold of services and items

---

[7] Plaintiffs fail to support their conclusory allegations that the replacement wheelchairs they seek are "medically necessary."  FAC ¶¶65, 69.  Plaintiffs fail to allege any facts sufficient to establish their medical necessity.  *See, e.g., Maximum Comfort Inc. v. Sec'y of Health & Hum. Servs.*, 512 F.3d 1081, 1087–88 (9th Cir. 2007) (holding HHS Secretary could require information beyond equipment supplier's certificate of medical necessity to determine whether wheelchairs were medically necessary for purposes of reimbursement under Medicare Part B).

1  that must be covered, not to require the provision of all health care services and items that may be

2  beneficial to each individual's health and well-being.  *See Schmitt*, 965 F.3d at 949 (noting that

3  EHB provisions intended to allow individuals to meet the ACA requirement that they maintain

4  "minimum essential coverage").

5       In sum, Plaintiff have failed to allege, nor could they, any facts showing that DMHC has

6  engaged in any type of intentional discrimination on the basis of disability.  To the contrary,

7  Plaintiffs allege only that wheelchairs outside the homes have not been included as an essential

8  health benefit under the law and that certain people who are disabled need wheelchairs outside the

9  home.  These allegations fail to establish discriminatory exclusion of Plaintiffs by DMHC from a

10  covered benefit.  Accordingly, Plaintiffs' discrimination claim must be dismissed.

11

12  **C.    Plaintiffs Fail to Allege Facts Sufficient to Support a Claim of "Discrimination by Proxy"**

13       Plaintiffs' conclusory allegation that "to exclude wheelchairs from the EHB-benchmark" is

14  "discrimination by proxy" also fails to state a cognizable claim.  FAC ¶ 77.  This is because

15  Plaintiffs fail to allege any facts that "would raise an inference of proxy discrimination or other

16  theory of relief" sufficient to state a claim.  *Schmitt*, 965 F.3d at 960.

17       As in *Schmitt*, Plaintiffs "allege no facts giving rise to an inference of intentional

18  discrimination by the exclusion itself."  *Id.* at 959.  Indeed, as fully explained above, DMHC's

19  EHB regulation in no way "excludes" coverage of wheelchairs.  Again, the EHB requirements are

20  "minimum" benefit requirements for qualifying health plans.  *See* Cal. Health and Safety Code

21  § 1367.005(a).  And, as Plaintiffs' description of their own employer-sponsored Kaiser plans—

22  which permit coverage of medically necessary wheelchairs for home use—demonstrates, a health

23  plan may choose to provide coverage for DME, including for wheelchairs, that is broader than the

24  minimum EHB requirements.  FAC ¶¶ 16-17.

25       In addition, in cases finding "discrimination by proxy," courts have looked to "historical

26  and legislative context of the particular classification at issue."  *See Davis v. Guam*, 932 F.3d 822,

27  834 (9th Cir. 2019) (citing *Rice v. Cayetano*, 528 U.S. 495 (2000)).  Others have considered

28  whether there was any "stated intent" to make distinctions based on a protected characteristic.

18

1   *See Davis v. Commonwealth Election Comm'n*, 844 F.3d 1087, 1093 (9th Cir. 2016)).  But here,

2   Plaintiffs fail to allege anything in the historical background that would support a reasonable

3   inference that DMHC sought to discriminate or ever "stated" any intent to discriminate against

4   particular persons with disabilities.

5                                  **CONCLUSION**

6        For all these reasons, DMHC respectfully requests that the Court dismiss Plaintiffs' lawsuit.

7

8   Dated:  February 4, 2022                    Respectfully submitted,

9                                               ROB BONTA
                                                Attorney General of California
10                                              JENNIFER G. PERKELL
                                                Supervising Deputy Attorney General

11

12                                              /s/ *Joshua Sondheimer*
                                                JOSHUA N. SONDHEIMER
13                                              HADARA R. STANTON
                                                Deputy Attorneys General
14                                              *Attorneys for Defendants Director*
                                                *Watanabe and Department of Managed*
15                                              *Health Care*

16   SF2021402009 x

17

18

19

20

21

22

23

24

25

26

27

28

                                      19

# CERTIFICATE OF SERVICE

Case Name:   **Grace Smith et al. v. Mary**          No.     **4:21-cv-07872-HSG**
**Watanabe, et al.**

I hereby certify that on <u>February 4, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS DMHC AND DIRECTOR WATANABE'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(1) & 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES**

- **DEFENDANTS DMHC AND DIRECTOR WATANABE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

- **DECLARATION OF SARAH REAM IN SUPPORT OF DEFENDANTS DMHC AND DIRECTOR WATANABE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

- **PROPOSED] ORDER GRANTING DEFENDANT DMHC AND DIRECTOR WATANABE'S MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 4, 2022</u>, at San Francisco, California.

Joshua Sondheimer                                        /s/ *Joshua Sondheimer*
Declarant                                                Signature

SF2021402009
POS.docx