CLAUDIA CENTER – 158255
SILVIA YEE – 222737
CARLY A. MYERS – 317833
DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND
3075 Adeline Street, Suite 210
Berkeley, California  94703
Telephone:     (510) 644-2555
Email:          ccenter@dredf.org
                syee@dredf.org
                cmyers@dredf.org

ERNEST GALVAN – 196065
MICHAEL S. NUNEZ – 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email:          egalvan@rbgg.com
                mnunez@rbgg.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| GRACE ELIZABETH SMITH and RUSSELL RAWLINGS, on behalf of themselves and all others similarly situated, and CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, a California nonprofit corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>MARY WATANABE, in her capacity as Director of the California Department of Managed Health Care; CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE; and KAISER FOUNDATION HEALTH PLAN, INC,<br><br>    Defendants. | Case No. 4:21-cv-07872-HSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date: April 28, 2022<br>Time: 2:00 PM<br>Room: 2<br>Judge: Hon. Haywood S. Gilliam, Jr. |

1

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION...............................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED................................................................2

FACTUAL BACKGROUND ............................................................................................2

ARGUMENT .....................................................................................................................4

I.   THE COURT SHOULD NOT COMPEL ARBITRATION................................................4

   A.  Plaintiffs' ACA Section 1557 Claim Is Not Subject to the FAA and Cannot Be
      Compelled to Arbitration .......................................................................................4

     1.  The FAA Does Not Apply to Plaintiffs' Section 1557 Claim.................................4

     2.  Kaiser's Arbitration Clause Is Also Not Enforceable Under the CAA ..................7

   B.  Kaiser's Arbitration Clause Is Not Enforceable Under The Federal Arbitration Act ... 8

     1.  Kaiser's Arbitration Clause Is Not A Valid and Enforceable Agreement ............. 8

        a.   Kaiser's Arbitration Clause Is Unconscionable Under State Contract Law ..... 8

        b.   Kaiser's Arbitration Clause Inhibits The Effective Vindication of Plaintiffs'
           Statutory Rights................................................................................... 12

        c.   Federal Rules Prohibit Arbitration of Plaintiffs' ERISA Section 502(a)(3)
           Claim ................................................................................................ 13

     2.  The Terms of Kaiser's Arbitration Clause Do Not Encompass Plaintiffs' ERISA
        Section 502(a) Claim............................................................................. 19

        a.   Kaiser's Arbitration Agreement Exempts Plaintiffs' ERISA Claim from
           Arbitration ......................................................................................... 19

        b.   Kaiser's Contract Expressly Allows for Civil Actions Under ERISA Section
           502(a) ............................................................................................... 20

II.   IF ANY CLAIM IS COMPELLED, IT SHOULD BE ON A CLASS BASIS.................22

III.  IF ANY CLAIM IS COMPELLED, THE COURT SHOULD PROCEED WITH THE
     NON-COMPELLED CLAIMS.........................................................................24

CONCLUSION ................................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ................................................................................................................. 4

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ................................................................................................. 4, 5, 8, 12

*Amin v. Advanced Sterilization Prods. Servs.*,
    No. SACV 18-1528 JVS (JDEx), 2019 WL 2912862 (C.D. Cal. Jan. 7, 2019) ....................... 21

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal. 4th 83 (2000) ................................................................................................................ 9

*Arthur Anderson LLP v. Carlisle*,
    556 U.S. 624 (2009) ................................................................................................................. 8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 339 (2011) ................................................................................................................ 22

*Bailey v. Chevron Corp. Omnibus Health Care Plan*,
    No. SACV 13-1366-JLS (ANx), 2014 WL 2219216 (C.D. Cal. May 7, 2014)................... 16, 18

*Cobarruviaz v. Maplebear, Inc.*,
    143 F.Supp. 3d 930 (N.D. Cal. 2015) ...................................................................................... 23

*CompuCredit v. Greenwood*,
    565 U.S. 95 (2012) .................................................................................................................. 12

*De La Torre v. CashCall, Inc.*,
    5 Cal. 5th 966 (2018)................................................................................................................. 9

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985) ................................................................................................................ 24

*Doe v. Mut. of Omaha Ins. Co.*,
    179 F.3d 557 (7th Cir. 1999) ..................................................................................................... 6

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997)........................................................................................................ 9, 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ......................................................................................................... 7, 12, 13

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008) ................................................................................................................ 21

*Hunter v. Kaiser Found. Health Plan, Inc.*,
    434 F.Supp.3d 764 (N.D. Cal. 2020) ...................................................................................... 23

*Impex Enters. v. Sony Pictures Worldwide Acquisitions, Inc.*,
    777 F. App'x 236 (9th Cir. 2019) .................................................................................. 21

*Jock v. Sterling Jewelers Inc.*,
    646 F.3d 113 (2d Cir. 2011) ........................................................................................ 22

*Jones v. Waffle House*,
    866 F.3d 1257 (11th Cir. 2017) ................................................................................... 23

*Kashmiri v. Regents of Univ. of Cal.*,
    156 Cal. App. 4th 809 (2007) ...................................................................................... 21

*Katz v. Cellco P'Ship*,
    794 F.3d 341 (2d Cir. 2015) ........................................................................................ 24

*Lamps Plus, Inc. v. Varela*,
    139 S.Ct. 1407 (2019) ........................................................................................... 22, 23

*Lifescan v. Premier Diabetic Servs.*,
    363 F.3d 1010 (9th Cir. 2004) .................................................................................. 8, 19

*Madden v. Kaiser Foundation Hospitals*,
    17 Cal. 3d 699 (1976) .................................................................................................. 11

*McNeil v. Time Ins. Co.*,
    205 F.3d 179 (5th Cir. 2000) ......................................................................................... 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
    473 U.S. 614 (1985) ................................................................................................. 5, 12

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) ....................................................................................... 8

*OTO, L.L.C. v. Kho*,
    8 Cal. 5th 111 (2019) ....................................................................................... 9, 10, 11

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013) ..................................................................................................... 22

*PacifiCare Health Sys. v. Book*,
    538 U.S. 401 (2003) ..................................................................................................... 12

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
    490 U.S. 477 (1989) ..................................................................................................... 12

*S. Commc'ns Servs., Inc. v. Thomas*,
    720 F.3d 1352 (11th Cir. 2013) ................................................................................... 23

*Sanzone-Ortiz v. Aetna Health of Cal., Inc.*,
    No. 15-cv-03334-WHO, 2016 WL 7732625 (N.D. Cal. Aug. 24, 2016) ................... 15

*Sanzone-Ortiz v. Aetna Health of Cal., Inc.*,
  No. 15-cv-03334-WHO, 2015 WL 9303993 (N.D. Cal. Dec. 22, 2015)............................. 16, 17

*Shearson/American Express v. McMahon*,
  482 U.S. 220 (1987) ...................................................................................... 4, 5, 7, 12

*Shroyer v. New Cingular Wireless Servs.*,
  498 F.3d 976 (9th Cir. 2007) .................................................................................... 9

*Snyder v. Federal Insurance Co.*,
  No. 2:08–cv–153, 2009 WL 700708 (S.D. Ohio Mar. 13, 2009) ........................................ 14, 16

*Sosa v. Parco Oilfield Servs.*,
  No. 2:05-CV-153, 2006 WL 2821882 (E.D. Tex. Sep. 27, 2006) ................................ 14, 16, 18

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ................................................................................................ 22

*Wyndham Vacation Resorts, Inc. v. Garcia*,
  No. 15-cv-01540-WHO, 2016 WL 4529457 (N.D. Cal. Aug. 30, 2016).................................. 23

**Statutes**

29 U.S.C. § 1003(a)(1) ................................................................................................ 15

29 U.S.C. § 1132(a) ........................................................................................ 16, 17, 20

29 U.S.C. § 1132(a)(1)(b) ............................................................................................ 16

29 U.S.C. § 1132(a)(3) ................................................................................................ 16

29 U.S.C. § 1133(2) .................................................................................................... 14

29 U.S.C. §§ 1133, 1135 .............................................................................................. 14

42 U.S.C. § 18116 ........................................................................................................ 6

42 U.S.C. § 18116(a) .................................................................................................... 5

42 U.S.C. § 18116(b) .................................................................................................... 5

9 U.S.C. § 2 ................................................................................................................ 8

9 U.S.C. § 2 (2012) ...................................................................................................... 4

9 U.S.C. §§ 10–11 ...................................................................................................... 21

Cal. Civ. Code § 1670.5(a) ............................................................................................ 9

Cal. Code Civ. Proc. § 1281.2 ...................................................................................... 24

1

Cal. Code Civ. Proc. § 1281.2(b), (c)......................................................................... 7

2

Cal. Code Civ. Proc. § 1859..................................................................................... 21

3

Cal. Health & Safety Code §§ 1342, 1367(h)(1)................................................... 9, 12

4

**Regulations**

5

29 C.F.R. § 2560.503-1 ..................................................................................... 14, 15

6

29 C.F.R. § 2560.503-1(1) ...................................................................................... 14

7

8

29 C.F.R. § 2560.503-1(c)(2) .................................................................................. 16

9

29 C.F.R. § 2560.503-1(c)(2), (c)(4)........................................................................ 16

10

29 C.F.R. § 2560.503-1(c)(2), (c)(4)(i).................................................................... 17

11

29 C.F.R. § 2560.503-1(c)(4) .................................................................................. 14

12

29 C.F.R. § 2560.503-1(l) ....................................................................................... 19

13

29 C.F.R. § 2560.503-1(m)(4)(i)......................................................................... 15, 17

14

29 C.F.R. § 2560.503-1(m)(6)................................................................................. 15

15

16

DOL Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Internal Claims and Appeals and External Review Processes Under the Patient Protection and Affordable Care Act, 75 Fed. Reg. 43,330, 43,332 (July 23, 2010) ..................................... 15, 17

17

18

HHS Nondiscrimination in Health Programs and Activities; Final Rule, 81 Fed. Reg. 31,376, 31,377–79 (May 18, 2016)........................................................................................ 5

19

**Other Authorities**

20

Restatement (Second) of Contracts § 5(2) (1981).......................................................... 22

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT KAISER'S MOTION TO COMPEL

# INTRODUCTION

The Court should deny Defendant Kaiser Foundation Health Plan, Inc.'s Motion to Compel Individual Arbitration and Stay Proceedings. In their Motion, Kaiser argues under the Federal Arbitration Act ("FAA") that a valid and enforceable arbitration agreement exists between Parties and it encompasses the disputes at issue. Plaintiffs disagree.

First, Plaintiffs' claim under Section 1557 of the Affordable Care Act ("ACA") is not an arbitrable "controversy" under the FAA. Congress did not intend to permit the waiver of an individual's statutory right to pursue judicial remedies when it created Section 1557's antidiscrimination protections. This contrary congressional intent overrides the FAA's presumption of arbitrability. Further, to the extent the California Arbitration Act ("CAA") would then apply, the CAA gives the Court discretion to deny arbitration when there is a third-party to the action and there is a possibility of conflicting rules, as there is here.

Second, even if the FAA applied here, the agreement is not valid or enforceable against any of Plaintiffs' claims. Arbitration agreements must adhere to state contract law principles and relevant federal law. Here, Kaiser's arbitration agreement is unconscionable, as it both denied Plaintiffs any meaningful opportunity to negotiate and it incorporates terms and procedural mechanisms that are unfair to Plaintiffs. Additionally, the agreement inhibits the effective vindication of Plaintiffs' statutory rights, as it denies them a competent forum to adjudicate their statutory claims and it limits the availability and effectiveness of the equitable relief they seek.

Third, the terms of Kaiser's arbitration agreement do not encompass Plaintiffs' claim under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"). Kaiser's agreement expressly exempts claims subject to the "ERISA claims procedure regulation" from its purview, and it expressly allows Plaintiffs to file a civil action under ERISA Section 502(a). Claims are subject to the referenced regulation if they arise out of an employer-sponsored group health plan and are the result of an adverse benefit determination, including a denial based on a determination that a benefit is not a covered benefit (in whole or in part). Here, Plaintiffs' claims arise out of the small group health plans they obtained from their employers, and they are the result of a determination that wheelchairs are not a fully covered benefit. Therefore, under the plain language of the contract,

1   Plaintiffs' ERISA Section 502(a) claim cannot be subject to arbitration.

2       For these reasons, the Court should not compel arbitration of Plaintiffs' claims and should

3   not stay the case. However, if any claim is compelled to arbitration, it should be on a class-basis.

4   Contrary to the Defendant's assertion, Kaiser's arbitration agreement is not "silent" on class

5   arbitration; its broad terms implicitly authorize it. Further, in the event that this Court determines

6   that one claim is arbitrable, and the other is not, then the litigation related to the nonarbitrable claim

7   should proceed without undue delay.

8                    **STATEMENT OF ISSUES TO BE DECIDED**

9       1.      Whether Plaintiffs' claim under Section 1557 of the Affordable Care Act is precluded

10  from arbitration under the Federal Arbitration Act because of a contrary congressional command;

11      2.      Whether Defendant Kaiser's arbitration clause is a valid and enforceable agreement,

12  as applied to all of Plaintiffs' claims, under the FAA;

13      3.      Whether the terms of Defendant Kaiser's arbitration clause encompass Plaintiffs'

14  claim under Section 502(a) of the Employee Retirement Income Security Act;

15      4.      Whether, if any claim is compelled to arbitration, such claims should be compelled

16  on a class basis; and

17      5.      Whether, if any claim is compelled to arbitration, the Court should proceed with the

18  judicial proceedings of nonarbitrable claims.

19                          **FACTUAL BACKGROUND**

20      Ms. Smith's and Mr. Rawlings' Evidence of Coverage ("EOC") documents contain a

21  provision titled "Binding Arbitration." (Espinal Decl. Supp. Def.'s Mot. to Compel, Ex. B at 93, Ex.

22  E at 263). The EOC states that a claim is subject to this provision if all of the following requirements

23  are met:

24  - The claim arises from or is related to an alleged violation of any duty incident to
25    or arising out of or relating to this *EOC* or a Member Party's relationship to Kaiser
     Foundation Health Plan, Inc. ("Health Plan"), including any claim for medical or
26    hospital malpractice (a claim that medical services or items were unnecessary or
     unauthorized or were improperly, negligently, or incompetently rendered), for
27    premises liability, or relating to the coverage for, or delivery of, services or items,
     irrespective of the legal theories upon which the claim is asserted

28  - The claim is asserted by one or more Member Parties against one or more Kaiser
     Permanente Parties or by one or more Kaiser Permanente Parties against one or

2

1       more Member Parties [and]

2       - **Governing law does not prevent the use of binding arbitration to resolve the claim.**

3
(Espinal Decl., Ex. B at 93–94, Ex. E at 263) (emphasis added).

4
        The arbitration clause contains a few relevant exceptions. First, "claims that cannot be

5
subject to binding arbitration under governing law" are not subject to arbitration. (Espinal Decl., Ex.

6
B at 94, Ex. E at 264). Second, "claims subject to … the ERISA claims procedure regulation" need

7
not be submitted to arbitration. (Espinal Decl., Ex. A at 7) (enrollment form). Finally, in a provision

8
titled "Additional Review," which immediately precedes the "Binding Arbitration" provision, the

9
EOCs provide:

10
        You may have certain additional rights if you remain dissatisfied after you have
11      exhausted our internal claims and appeals procedure, and if applicable, external
        review:

12
        - **If your Group's benefit plan is subject to the Employee Retirement Income**
13      **Security Act ("ERISA"), you may file a civil action under section 502(a) of**
        **ERISA.** To understand these rights, you should check with your Group or contact
14      the Employee Benefits Security Administration (part of the U.S. Department of
        Labor) at 1-866-444-EBSA (1-866-444-3272)
15
        - If your Group's benefit plan is not subject to ERISA (for example, most state or
16      local government plans and church plans), you may have a right to request review
        in state court

17
(Espinal Decl., Ex. B at 93, Ex. E at 263) (emphasis added).

18
        In the event that a claim is subject to arbitration, the EOCs state that Plaintiffs "give up the

19
right to a jury or court trial and accept the use of binding arbitration." (*Id.*) The arbitration, it

20
mandates, shall be conducted by the Office of the Independent Administrator ("OIA"), an entity that

21
to Plaintiffs' knowledge was created and designed by Defendant Kaiser Permanente. (Espinal Decl.,

22
Ex. B at 94, Ex. E at 264). The arbitration shall be conducted according to the "Rules of Procedure,"

23
which were developed by OIA "in consultation with Kaiser Permanente." (Espinal Decl., Ex. B at

24
94, Ex. E at 264). The OIA Rules of Procedure outline how OIA's arbitrators will be selected, the

25
steps for the proceeding, and the processes for awarding monetary relief.[1] The Rules make no

26

27
---

28      [1] *See* Plaintiffs' Request for Judicial Notice ("PRJN") Exhibit 15, Rules for Kaiser Permanente
        Member Arbitrations, Office of the Independent Administrator (last amended Jan. 1, 2020),
        https://www.oia-kaiserarb.com/pdfs/Rules.pdf.

1    mention of the availability or enforcement of injunctive relief. Further, at the conclusion of any

2    arbitration, Kaiser's EOCs provide: "each party shall bear the party's own attorneys' fees, witness

3    fees, and other expenses incurred in prosecuting or defending against a claim regardless of the nature

4    of the claim or outcome of the arbitration." (Espinal Decl., Ex. B at 93, 95, Ex. E at 263, 265).

5    **ARGUMENT**

6    **I.      THE COURT SHOULD NOT COMPEL ARBITRATION**

7    **A.      Plaintiffs' ACA Section 1557 Claim Is Not Subject to the FAA and Cannot Be**
         **Compelled to Arbitration**

8    The FAA provides that "[a] written provision in … a contract evidencing a transaction

9    involving commerce to settle by arbitration a controversy thereafter arising out of such contract …

10   shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

11   the revocation of any contract." 9 U.S.C. § 2 (2012). A claim is subject to the FAA only if the

12   "contract" and the "controversy" at issue are within the scope of the FAA. *See id.*; *Allied-Bruce*

13   *Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995); *Shearson/American Express v. McMahon*, 482

14   U.S. 220, 266–27 (1987). A "contract" is within the scope of the FAA if it affects interstate

15   commerce. *Dobson*, 513 U.S. at 268. A "controversy" is within the scope of the FAA if it arises out

16   of the contract *and* there is no "contrary congressional command … to preclude a waiver of judicial

17   remedies for the statutory rights at issue." *McMahon*, 482 U.S. at 226–27; *see also Am. Express Co.*

18   *v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). If either the contract or the controversy is outside

19   the purview of the FAA, then a claim cannot be compelled to arbitration under the federal statute.[2]

20   *1.      The FAA Does Not Apply to Plaintiffs' Section 1557 Claim*

21   The FAA applies only if the "contract" and "controversy" are within its scope. Plaintiffs do

22

23   ───────────────

24   [2] To the extent that the Defendant claims that "the FAA applies here in part because the parties
     agreed it would apply," (Def.'s Mem. P. & A. 10), this statement is misleading. Kaiser's EOCs state:
     "Arbitrations shall be governed by this 'Binding Arbitration' section, Section 2 of the Federal

25   Arbitration Act, and the California Code of Civil Procedure provisions relating to arbitration …."
     (Espinal Decl., Ex. B at 95, Ex. E at 265). "Arbitrations" and the arbitrability of claims are distinct

26   matters; the former relates to the procedures of an arbitration, while the latter relates to the law
     governing the applicability of the arbitration clause. Even if "arbitrations" can be read broadly to

27   include arbitrability, the Defendants cannot circumvent U.S. Supreme Court precedent defining
     when and how the FAA applies. Additionally, the contractual provision also references "the

28   California Code of Civil Procedure provisions relating to arbitration" (i.e., the California Arbitration
     Act ("CAA"). Thus, the contract provides that both the FAA and the CAA apply here.

not dispute that Kaiser's contracts affect commerce. However, Plaintiffs' ACA Section 1557 claim is not a "controversy" within the purview of the FAA. Congress did not intend to permit the waiver of an individual's statutory right to pursue judicial remedies when it created Section 1557's nondiscrimination protections.

The U.S. Supreme Court has repeatedly recognized the doctrine of contrary congressional intent. *See, e.g.*, *Italian Colors*, 570 U.S. at 233; *McMahon*, 482 U.S. at 226–27; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985). The Court explains: "[The FAA's] mandate may be overridden by a contrary congressional command.… If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' … or from an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. at 226–27.

Section 1557 of the ACA prohibits discrimination on the basis of race, sex, age, and disability by "any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance." 42 U.S.C. § 18116(a). "The enforcement mechanisms provided for and available under [the nondiscrimination laws referenced by Section 1557] shall apply for purposes of violation of this subsection." *Id*. Further, "[n]othing in this title …   shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under [the referenced nondiscrimination laws]." *Id.* § 18116(b).

The purpose of the ACA and Section 1557 was to expand access to health care, eliminate barriers to access, and "ensure that health services are available broadly on a nondiscriminatory basis to individuals throughout the country." HHS Nondiscrimination in Health Programs and Activities; Final Rule, 81 Fed. Reg. 31,376, 31,377–79 (May 18, 2016) (explaining Congress' underlying purposes for the ACA and Section 1557). Prior to the ACA, private health insurers were allowed to engage in many practices that were discriminatory, yet had not been found to be illegal. They commonly imposed benefit caps for particular conditions or general caps on lifetime benefits, such as $10,000 caps on AIDS-related care. Individuals harmed by such limits attempted to challenge them on the basis of disability discrimination, but judges repeatedly ruled against such

plaintiffs, finding that insurance regulation was only within the purview of state insurance commissions or that health insurers were shielded from liability because of a "safe harbor" in the Americans with Disabilities Act.[3] *See, e.g.*, *McNeil v. Time Ins. Co.*, 205 F.3d 179, 182 (5th Cir. 2000); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 588 (7th Cir. 1999). The ACA explicitly changed this view of disability discrimination in health insurance—purposefully creating legal standards for health insurance benefit design, establishing a basic structure for comprehensive health coverage through the broad categories of essential health benefits, and including oversight and enforcement mechanisms to ensure that individuals will have an effective forum to vindicate their rights to nondiscrimination in health insurance.

Section 1557 of the ACA was the culmination of these legislative goals—creating a civil right of action in federal court to enforce an individual's nondiscrimination rights in the context of health care. After decades of enduring unchecked discrimination by health plans, Section 1557 finally gave individuals a forum to effectuate their rights. Now, Kaiser attempts to undermine those rights by compelling Plaintiffs' discrimination claim into a forum created and designed by Kaiser, one that has a panel of arbitrators inexperienced in Section 1557 and any other discrimination claim,[4] and one that limits remedies otherwise available to them under the statute.[5] This is contrary to Congress' intent in enacting Section 1557: to provide health care consumers an equal footing with health insurers. Pursuant to the standard outlined in *McMahon* and affirmed in *Italian Colors*, here,

---

[3] Importantly, Section 1557 references Section 504 of the Rehabilitation Act, which has no such safe harbor provision. 42 U.S.C. § 18116.

[4] An examination of the annual reports for Kaiser's arbitration system finds that "[n]inety-five percent (95%) of the cases [heard by Kaiser's arbitrators] involved allegations of medical malpractice. Less than one percent (<1%) presented benefit and coverage allegations. The remaining cases were based on allegations of premises liability and other torts." PRJN Exhibit 16, *Annual Report of the Office of the Independent Administrator of the Kaiser Foundation Health Plan, Inc. Mandatory Arbitration System for Disputes with Health Plan Members* (January 1, 2020 - December 31, 2020) [hereinafter 2020 Annual Report], at viii, 12, https://www.oia-kaiserarb.com/pdfs/2020-Annual-Report.pdf; *see also Annual Reports*, Office of the Independent Administrator, https://www.oia-kaiserarb.com/8/-reports/annual-reports (listing annual reports dating back to 1999, all with substantially similar claims breakdowns).

[5] Kaiser's arbitration agreement expressly prohibits the recovery of attorneys' fees. (Espinal Decl., Ex. B at 93, 95, Ex. E at 263, 265). It is also unclear whether injunctive relief is available. *Id.* Even if it were, however, it is clear that the arbitrators have little to no experience enforcing or monitoring such relief. *See* PRJN Exhibit 16, 2020 Annual Report, at 26; *see also infra* Section I.B.1.a for further discussion.

1    there is an "inherent conflict between arbitration and the statute's underlying purposes." *See*

2    *McMahon*, 482 U.S. at 226–27. Because of this contrary congressional intent, Plaintiffs' ACA

3    Section 1557 claim is not a "controversy" within the purview of the FAA.[6] As such, the claim cannot

4    be compelled to arbitration under the federal arbitration statute, and the Court should deny Kaiser's

5    Motion to Compel on the ACA Section 1557 claim.

6           ### 2.    *Kaiser's Arbitration Clause Is Also Not Enforceable Under the CAA*

7           If a claim cannot be arbitrated under the FAA pursuant to the contrary congressional

8    command doctrine, then that should end the inquiry. However, to the extent the arbitration

9    agreement, as it applies to the ACA Section 1557 claim, is then governed by the California

10   Arbitration Act ("CAA"), this Court has discretion to deny its enforcement. The CAA, in relevant

11   part, instructs a court to enforce an arbitration clause unless it determines that "grounds exist for

12   recission of the agreement" or "[a] party to the arbitration agreement is also a party to a pending

13   court action or special proceeding with a third party, arising out of the same transaction or series of

14   related transactions and there is a possibility of conflicting rulings on a common issue of law or

15   fact." Cal. Code Civ. Proc. § 1281.2(b), (c).

16          First, there are grounds to rescind Kaiser's arbitration agreement. Not only does it violate

17   the contrary congressional command doctrine, but it violates state contract law. As explained in

18   detail in the next section, the contract is unconscionable under California law. *See infra* Section

19   I.B.1.a.

20          Second, even if the contract were valid under the CAA, the proceedings here involve a third

21   party and present a risk of conflicting rulings on a common issue of law, deeming it unenforceable.

22   Plaintiffs have alleged a violation of ACA Section 1557 against not only Kaiser, but also the

23   California Department of Managed Health Care. The nondiscrimination violation arises from the

24   same factual scenario—the California EHB benchmark plan, which *is* the Kaiser plan, discriminates

---

[6] ACA Section 1557 claims are distinguishable from those at issue in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (holding that Age Discrimination in Employment Act ("ADEA") claims are subject to the FAA). Here, Congress specifically legislated to provide health care consumers an effective judicial forum to enforce their civil rights against health insurers. Unlike the ADEA, Section 1557 does not create a separate, independent federal forum for adjudicating claims, nor does it require administrative exhaustion for disability-based claims. *See infra* Note 16. Because of these meaningful differences, Section 1557 should not be treated the same as the ADEA.

against people with disabilities by excluding or limiting coverage of medically necessary wheelchairs. Whether this benefit design violates ACA Section 1557 is a common question of law. If the claims are split, with one going to arbitration and one proceeding in district court, there is a real possibility of conflicting rulings. Therefore, the Court should deny Kaiser's Motion to Compel on the ACA Section 1557 claim and, in its discretion, order all parties to proceed in a single judicial action.

**B.** **Kaiser's Arbitration Clause Is Not Enforceable Under the Federal Arbitration Act**

Even if the FAA applies to the claims at issue here, the arbitration clause is not enforceable. The FAA provides that an arbitration agreement shall be valid and enforceable "**save upon such grounds as exist at law or in equity for the revocation of any contract.**" 9 U.S.C. § 2 (emphasis added). An arbitration agreement is enforceable under the FAA only if: (1) a valid and enforceable arbitration agreement exists and (2) the terms of the arbitration agreement encompass the dispute at issue. *See, e.g.*, *Lifescan v. Premier Diabetic Servs.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

*1.* *Kaiser's Arbitration Clause Is Not A Valid and Enforceable Agreement*

In evaluating the validity and enforceability of an arbitration agreement, a court must consider whether it adheres to relevant law and equity principles, including state contract law and applicable federal rules. *See, e.g.*, *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (recognizing state contract law defenses to an FAA-governed arbitration clause); *Italian Colors*, 570 U.S. at 235 (recognizing an equitable exemption to arbitration enforcement).

*a.* *Kaiser's Arbitration Clause Is Unconscionable Under State Contract Law*

Arbitration agreements must adhere to state law principles that govern the formation of contracts, including unconscionability. *See Carlisle*, 556 U.S. at 624; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) ("It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable."). Under California law, courts may refuse to enforce any contract found "to have been unconscionable at the time it was made" or "limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). California law further provides that all health

service plan contracts be "fair, reasonable, and consistent with the objectives" of the Knox-Keene Act ("to promote the delivery and the quality of health and medical care to the people of the State of California"). Cal. Health & Safety Code §§ 1342, 1367(h)(1). Health care plans like Kaiser "are therefore especially obligated not to impose contracts on their subscribers that are one-sided and lacking in fundamental fairness." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 984 (1997).

"[U]nconscionability has both a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). California uses a "sliding scale" approach, allowing for less substantive unconscionability when there is more procedural unconscionability and vice versa. *Id.* at 114; *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 130 (2019) (holding that when there is "substantial procedural unconscionability [], even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable"); *see also Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 981–82 (9th Cir. 2007) (affirming this is the correct standard for FAA-governed contracts).

A contract is procedurally unconscionable if it is adhesive in nature or involves the oppression of one party such that there was a lack of negotiation and meaningful choice. *Armendariz*, 24 Cal. 4th at 113; *OTO*, 8 Cal. 5th at 126; *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 982 (2018). In *Engalla v. Permanente Medical Group*, the California Supreme Court considered whether a contract between Kaiser's Medical Group and a "corporation of considerable size" with "a small number of employees" was unconscionable. 15 Cal. 4th at 985. While ultimately rejecting the defense for a lack of evidence of substantive unconscionability, the court acknowledged that the contract had "characteristics of an adhesion contract" because the corporation "did not have the strength to bargain with Kaiser to alter the terms of the contract." *Id.* at 985–86.

A contract is substantively unconscionable if its terms are "overly harsh," "unduly oppressive," or "unfairly one-sided." *OTO*, 8 Cal. 5th at 129–30. In *OTO v. Kho*, the California Supreme Court held that a contract between a company and its employee was substantively unconscionable when the arbitral process provided for in the employment contract was an

1    ineffective means for resolving wage disputes, when considering "the context of the rights and

2    remedies that otherwise would have been available to the parties." *Id.* at 130. "We must examine

3    both the features of dispute resolution adopted as well as the features eliminated," it explained. *Id.*

4    When considered alongside the "substantial" procedural unconscionability, the substantive

5    unfairness of the arbitral forum rendered the arbitration agreement unenforceable. *Id.* at 136–37.

6          Here, Kaiser's arbitration clause is both procedurally and substantively unconscionable.

7    Procedurally, the provision is a contract of adhesion. Both Plaintiff Smith and Plaintiff Rawlings

8    are enrolled in Kaiser plans they obtained through their small nonprofit employers. Neither Ms.

9    Smith nor Mr. Rawlings had any opportunity to negotiate the terms of their health insurance plans.

10   The plans were presented to them and, as individuals who need health coverage in order to access

11   medically necessary services and devices, they had no option but to accept the contract presented to

12   them. To the extent that Ms. Smith or Mr. Rawlings had the option to enroll in other health plans,

13   there was no choice to avoid Kaiser's arbitration clause; to our knowledge, *all* of Kaiser's plans

14   offered to small employers contain this provision.[7] Plaintiffs' employers also had no bargaining

15   power with Kaiser. Ms. Smith's employer, Through the Looking Glass ("TLG"), had 73 employees

16   in 2019 and annual revenue of less than $3.5 million;[8] Mr. Rawlings' employer, the California

17   Foundation for Independent Living Centers ("CFILC"), had 18 employees in 2019 and annual

18   revenue of less than $4.5 million.[9] Kaiser employs over 28,000 people and has  annual revenue over

19   $60 billion.[10] TLG and CFILC had little to no bargaining strength against Kaiser, nor an opportunity

20   to negotiate the terms of the contract. Kaiser's small group plans were offered to these organizations

21   on a "take it or leave it basis." Under the precedents set by the California Supreme Court, this

22   bargaining structure is extremely oppressive—far more than the contract at issue in *Engalla,* 15 Cal.

23   4th at 985 (involving a private corporation of "considerable size"), and certainly more than in

---

24   [7] This inequity applies to the entire class the Plaintiffs seek to represent. Not only small group plans
25   (i.e., plans offered to employers with under 100 employees), but also every single individual plan
     that Kaiser offered through California's exchange ("Covered California") in Plan Years 2020 and
26   2021 contains this arbitration clause. *See* FAC ¶¶ 57–58.

     [8] PRJN Exhibit 18, TLG Form 990, Return of Organization Exempt from Income Tax (2019).

27   [9] PRJN Exhibit 19, CFILC Form 990, Return of Organization Exempt from Income Tax (2019).

28   [10] PRJN Exhibit 20, Kaiser Foundation Health Plan, Inc. Form 990, Return of Organization Exempt
     from Income Tax (2019).

*Madden v. Kaiser Foundation Hospitals*, 17 Cal. 3d 699 (1976) (involving a contract between the California State Employees Retirement System and Kaiser Foundation Hospitals).

Substantively, Kaiser's arbitration clause is also unconscionable. First, its terms are inherently unfair because they instruct that all arbitrations will be conducted by an entity that was created and designed by Kaiser, only hears disputes involving Kaiser, and relies on a set of procedural rules that were explicitly developed "in consultation with Kaiser." (Espinal Decl., Ex. B at 94, Ex. E at 264). This arbitral process raises concerns of conflict of interest and bias in its structure. Including the word "Independent" in the name of the entity cannot cure it from undue influence by the party that designed it. Second, the arbitration clause and the Rules of Procedure it incorporates by reference limit rights and remedies that would otherwise be available to the Plaintiffs in a judicial forum. Most notably, the Rules make no mention of injunctive relief, a remedy available under Section 1557 of the ACA and Section 502(a) of ERISA. Especially in the context of a statewide class action that, if successful, would potentially require changes to policy in an array of Kaiser's plans, the lack of reference to injunctive relief could severely impact the Plaintiffs and Plaintiff Class' rights to enforce their nondiscrimination rights. Additionally, the arbitration clause expressly prohibits Plaintiffs from recovering attorneys' fees and costs if they are prevailing parties, another form of relief that would otherwise be available under both statutes at issue here. (*See id.* Ex. B at 95, Ex. E at 265). Fee-shifting provisions are essential to ensuring that civil rights plaintiffs, especially those who are indigent, can enforce their rights.[11] By barring the recovery of fees and expenses, the rights of the Plaintiffs here are inhibited. Like in *OTO v. Kho*, here, the elimination of key features of statutory rights and enforcement mechanisms, render the arbitration agreement substantively unconscionable. *See* 8 Cal. 5th at 130. Especially when considered in tandem with the egregious procedural unconscionability here, and with the Knox-Keene Act's heightened requirements of health plan contracts,[12] Kaiser's arbitration clause should be rendered unenforceable

---

[11] This is especially true in the context of Plaintiffs' claims here. Plaintiffs already cannot afford to pay for their medically necessary wheelchairs, which can cost upwards of $50,000 out-of-pocket. *See* FAC ¶¶ 43, 62–72. If they could not recover fees and costs, this would clearly deter them from enforcing their civil rights, as it would mean potentially having even less means to pay for their needed wheelchair or wheelchair repair if they lose.

[12] All health service plan contracts must be "fair, reasonable, and consistent with the objectives" of the Knox-Keene Act, which are "to promote the delivery and the quality of health and medical care

1  under California's unconscionability doctrine.

2         b.    *Kaiser's Arbitration Clause Inhibits The Effective Vindication of Plaintiffs' Statutory Rights*

3

4         A court may invalidate an arbitration agreement if it inhibits "the effective vindication of a

5  federal statutory right." *Italian Colors*, 570 U.S. at 235. This "public policy" exception to the FAA

6  applies when an arbitration agreement operates as a "prospective waiver of a party's right to pursue

7  statutory remedies" *Id.* (quoting *Mitsubishi Motors Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 637 n.19 (1985)). If an "arbitral forum [is] inadequate" such that it inhibits

8  a statute's "remedial and deterrent function," then the agreement is invalid. *Id*. While the U.S.

9  Supreme Court has yet to find a factual scenario where this doctrine applies,[13] the public policy

10 exemption should include statutory claims involving the basic civil rights of people with disabilities

11 and their right to access medically necessary health care.

12        Here, Kaiser's arbitration clause inhibits the effective vindication of Plaintiffs' statutory

13 rights under Section 1557 of the Affordable Care Act (prohibiting discrimination in health programs

14 and activities) and Section 502(a)(3) of ERISA (providing redress for violations of the ACA's

15 essential health benefit requirements). First, Kaiser's arbitration system will not provide Plaintiffs

16 with an adequate forum to adjudicate their statutory rights. As described in the previous section,

17 Kaiser's arbitration process is inherently biased, as its structure and rules were designed by Kaiser.

18 *See supra* Section I.B.1.a. Additionally, Kaiser's arbitrators are not experienced in hearing statutory

19 claims of this nature. An examination of the annual reports for Kaiser's arbitration system finds that

20 "[n]inety-five percent (95%) of the cases [heard by Kaiser's arbitrators] involved allegations of

21 medical malpractice. Less than one percent (<1%) presented benefit and coverage allegations. The

22

23 to the people of the State of California." Cal. Health & Safety Code §§ 1342, 1367(h)(1).

24 [13] The U.S. Supreme Court has primarily evaluated the doctrine under what it calls "low-value claims," such as antitrust laws. *See Italian Colors*, 473 U.S. at 237 n.5 (Sherman Antitrust Act);
25 *CompuCredit v. Greenwood*, 565 U.S. 95, 98 (2012) (Credit Repair Organizations Act); *PacifiCare Health Sys. v. Book*, 538 U.S. 401 (2003) (Racketeer Influenced and Corrupt Organizations Act);
26 *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 483 (1989) (Section 12(2) of the Securities Act); *McMahon*, 482 U.S. at 226 (Securities Exchange Act); *Mitsubishi*, 473 U.S.
27 at 614 (Sherman Antitrust Act). It has only evaluated one civil rights claim, under the Age Discrimination in Employment Act ("ADEA"). *See Gilmer*, 500 U.S. at 32. As explained in further
28 detail *infra* Note 16, *Gilmer* is distinguishable from the facts here because the ADEA creates a separate, independent federal forum for adjudicating claims; unlike Section 1557 of the ACA.

remaining cases were based on allegations of premises liability and other torts."[14] Kaiser arbitrators are simply not experienced in hearing statutory claims, and this lack of competency deprives Plaintiffs of an effective forum to enforce their rights.

Second, the remedies available in Kaiser's arbitral forum are inadequate. Plaintiffs seek statewide injunctive relief to correct Kaiser's discriminatory policies, which prevent people with disabilities from accessing medically necessary wheelchairs. As described in the previous section, Kaiser's arbitration clause and Rules make no mention of the availability of injunctive or equitable relief. *See supra* Section I.B.1.a. Similarly, its Annual Reports contain extensive discussion of monetary damages or "How Much Claimants Won," but no discussion of any provision of injunctive relief or enforcement thereof.[15] This makes sense, given that 99 percent of the claims these arbitrators hear involve medical malpractice or torts. *See id.* at 12. Even if injunctive relief were available under Kaiser's arbitration system, it is clear that their arbitrators have little experience enforcing or monitoring it. Additionally, as detailed in the previous section, Kaiser's arbitration clause facially denies Plaintiffs access to reimbursement of attorneys' fees and expenses should they prevail, a remedy which otherwise would be available to them in a judicial forum. *See supra* Section I.B.1.a. With the lives and livelihoods of Plaintiffs at stake here, it is unacceptable to deny them a competent and effective forum to vindicate their statutory rights to access medically necessary health care devices on a nondiscriminatory basis.[16] The arbitration agreement should be deemed invalid.

   c. *Federal Rules Prohibit Arbitration of Plaintiffs' ERISA Section 502(a)(3) Claim*

Federal law may also serve to limit the enforceability of an arbitration clause. Relevant here,

---

[14] PRJN Exhibit 16, 2020 Annual Report, at viii, 12; *see also Annual Reports*, Office of the Independent Administrator, https://www.oia-kaiserarb.com/8/-reports/annual-reports (listing annual reports dating back to 1999, all with substantially similar claims breakdowns).

[15] *See, e.g.*, PRJN Exhibit 16, 2020 Annual Report, at 26.

[16] The facts here are distinguishable from *Gilmer*, a case involving the arbitration of an Age Discrimination in Employment Act claim in the context of an employment contract. 500 U.S. at 32. The *Gilmer* decision hinged on the fact that an experienced, independent federal dispute resolution forum (the Equal Employment Opportunity Commission) was available and capable of providing class-wide and equitable relief, separate from the mandatory arbitration. *Id.* Here, there is no such corollary.

PLAINTIFFS' OPPOSITION TO DEFENDANT KAISER'S MOTION TO COMPEL

1  ERISA requires all employee benefit plans to afford participants a "reasonable opportunity" for "a

2  full and fair review" of a benefit denial. 29 U.S.C. § 1133(2). The statute charges the Secretary of

3  Labor with defining what exactly constitutes a full and fair review. *Id.* §§ 1133, 1135. Under this

4  authority, the U.S. Department of Labor ("DOL") promulgated a regulation requiring group health

5  plans subject to ERISA to "establish and maintain reasonable procedures governing the filing of

6  benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations

7  (hereinafter collectively referred to as claims procedures)." *See* 29 C.F.R. § 2560.503-1. Among

8  other requirements, claims procedures will be deemed "reasonable" only if:

9      **(c)(4) The claims procedures do not contain any provision for the mandatory**
10     **arbitration of adverse benefit determinations**, except to the extent that the plan or
    procedures provide that:

11         (i)   The arbitration is conducted as one of the two appeals described in
        paragraph (c)(2) of this section[17] and in accordance with the requirements
12         applicable to such appeals; and

13         (ii)  The claimant is not precluded from challenging the decision under
        section 502(a) of [ERISA] [29 U.S.C. § 1132(a)] or other applicable law.

14 *Id.* § 2560.503-1(c)(4) (emphasis added). If a plan fails to establish or follow the foregoing

15 reasonable claims procedures, then "a claimant shall be deemed to have exhausted the administrative

16 remedies available under the plan and shall be entitled to pursue any available remedies under

17 section 502(a) of [ERISA]." *Id.* § 2560.503-1(l).

18     The DOL regulation overrides the FAA's presumption of arbitrability in the context of group

19 health plans. *See Sosa v. Parco Oilfield Servs.*, No. 2:05-CV-153, 2006 WL 2821882, at *8 (E.D.

20 Tex. Sep. 27, 2006) ("It must be remembered that the FAA creates a presumption in favor of

21 arbitrability, *subject to other federal laws.…* It is the interplay between the FAA's presumption and

22 the language of the Department of Labor's regulations that causes the court to … deny[] arbitration

23 of the claim for benefits.") (emphasis added); *Snyder v. Federal Insurance Co.*, No. 2:08–cv–153,

24 2009 WL 700708, at *6 n.8 (S.D. Ohio Mar. 13, 2009) ("While the Court recognizes the 'liberal

25 federal policy favoring arbitration agreements,' even the most liberal policy cannot outweigh the

26

27 ------
[17] Paragraph (c)(2) provides: "The claims procedures do not contain any provision, and are not
administered in a way, that requires a claimant to file more than two appeals of an adverse benefit
28 determination prior to bringing a civil action under section 502(a) of the Act." 29 C.F.R. § 2560.503-
1(c)(2).

unambiguous law prohibiting mandatory arbitration provisions in ERISA-governed insurance plans.… The Secretary of Labor's explicit prohibition of mandatory arbitration provisions in ERISA-governed plans supersedes the FAA's liberal policy favoring arbitration agreements."). *But see Sanzone-Ortiz v. Aetna Health of Cal., Inc.*, No. 15-cv-03334-WHO, 2016 WL 7732625, at *1 (N.D. Cal. Aug. 24, 2016) (J. Orrick) (holding that the DOL regulation cannot override the FAA's presumption of arbitrability). Even if the DOL regulation does not override the FAA's presumption of arbitrability, however, the terms of Kaiser's arbitration agreement explicitly exempt claims that fall within the purview of the regulation.[18] *See infra* Section I.B.2.a for further discussion. Therefore, claims subject to the DOL's ERISA claims procedure regulation cannot be arbitrated.

A claim is subject to the DOL regulation if it arises out of a "group health plan" and it is the result of an "adverse benefit determination." *See* 29 C.F.R. § 2560.503-1. A "group health plan" is an employee welfare benefit plan that provides medical care within the meaning of ERISA. 29 C.F.R. § 2560.503-1(m)(6). A plan is subject to ERISA if it is established or maintained by "any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). An "adverse benefit determination" is a "denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." 29 C.F.R. § 2560.503-1(m)(4)(i). This includes denials based on "a determination that a benefit is not a covered benefit." DOL Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Internal Claims and Appeals and External Review Processes Under the Patient Protection and Affordable Care Act, 75 Fed. Reg. 43,330, 43,332 (July 23, 2010) (hereinafter "Claims Procedures Final Rule").

If a claim is subject to the DOL regulation, then it cannot be subject to arbitration unless: (1) the arbitration is conducted as one of *no more than* two appeals" of an adverse benefit determination and (2) "[t]he claimant is not precluded from challenging the decision under Section 502(a) of [ERISA] or other applicable law."[19] 29 C.F.R. § 2560.503-1(c)(2), (c)(4). "Appeals" include both

---

[18] Plaintiff Smith's enrollment form states that any claim must be decided by binding arbitration, "*except for* … claims subject to … the ERISA claims procedure regulation, and any other claims that cannot be subject to binding arbitration under governing law." (Espinal Decl., Ex. A at 7) (emphasis added).

[19] Notably, Kaiser's arbitration agreement does not mention the narrow circumstances under which a claim subject to the DOL regulation may be subject to arbitration. Instead, the agreement wholesale exempts "claims subject to … the ERISA claims regulation." (Espinal Decl., Ex. A at 7)

1  internal and external review procedures referenced in the plan contract. *See Bailey v. Chevron Corp.*

2  *Omnibus Health Care Plan*, No. SACV 13-1366-JLS (ANx), 2014 WL 2219216, at \*2–3 (C.D. Cal.

3  May 7, 2014) (applying the DOL regulation to a plan's internal and external review mechanisms).

4  *But see Sanzone-Ortiz v. Aetna Health of Cal., Inc.*, No. 15-cv-03334-WHO, 2015 WL 9303993, at

5  \*2–3 (N.D. Cal. Dec. 22, 2015) (asserting in dicta that only internal review mechanisms count for

6  purposes of the DOL regulation).[20]

7        Only three district courts have examined the applicability of the DOL regulation to claims

8  brought under Section 502(a) of ERISA, as codified at 29 U.S.C. § 1132(a). ERISA empowers plan

9  participants to bring a civil action "to recover benefits due to him under the terms of his plan," 29

10  U.S.C. § 1132(a)(1)(b), or "to enjoin any act or practice which violate any provision of [ERISA],"

11  29 U.S.C. § 1132(a)(3). In *Snyder v. Federal Insurance Co.*, the U.S. District Court for the Southern

12  District of Ohio considered whether a claim brought under 29 U.S.C. § 1132(a)(1)(b) to recover

13  accident insurance benefits under the terms of the plan could be subject to arbitration in lieu of the

14  regulation. 2009 WL 700708, at \*5–6. It held that the plain language of the arbitration agreement,

15  which subjected any "dispute" to binding arbitration, violated the regulation and thus could not be

16  enforced. *Id.* In *Sosa v. Parco Oilfield Servs.*, the U.S. District Court for the Eastern District of

17  Texas similarly held than an arbitration clause cannot be enforced against a claim brought under 29

18  U.S.C. § 1132(a)(1)(b) because of the DOL regulation. 2006 WL 2821882, at \*6–8. The claim arose

19  out of denial of occupational injury benefits, and the binding arbitration clause—even if it exempted

20  ERISA claims—would effectively preclude meaningful federal court review because the FAA's

21  grounds of review are exceedingly narrow, it reasoned. *Id.* at \*1, 7.

22        Finally, in *Sanzone-Ortiz v. Aetna Health of Cal., Inc.*, Judge Orrick of the U.S. District

23  Court for the Northern District of California evaluated whether the DOL regulation could block

24  arbitration of a claim brought under 29 U.S.C. § 1132(a)(3). *See* 2015 WL 9303993, at \*2–3. In

25  (emphasis added).

26  [20] If the DOL regulation only encompassed internal appeals, then it would render the regulation's
limit on arbitration illusory. Plans could simply impose two internal appeals plus a potentially

27  unlimited number of mandatory external appeals, followed by binding arbitration. This would defeat
the purposes of the regulation, which clearly specifies that "*a claimant [cannot be required] to file*

28  *more than two appeals* of an adverse benefit determination prior to bringing a civil action under
section 502(a)." 29 C.F.R. § 2560.503-1(c)(2) (emphasis added).

PLAINTIFFS' OPPOSITION TO DEFENDANT KAISER'S MOTION TO COMPEL

*Sanzone*, Judge Orrick asserted that, unlike claims brought under 29 U.S.C. § 1132(a)(1)(b), claims brought under 29 U.S.C. § 1132(a)(3), do not fall within the meaning of the DOL regulation. *Id.* He assumed, without explanation, that claims brought under 29 U.S.C. § 1132(a)(3) cannot arise from an "adverse benefit determination." *Id.* This interpretation contradicts the DOL's definition of "adverse benefit determination," which is concerned with whether a benefit was, in fact, denied— not with the legal grounds for a subsequent civil action. *Sanzone* appears to conflate the use of the term "civil action … to recover *benefits*" in 29 U.S.C. § 1132(a)(1)(b) (emphasis added) with the term "adverse *benefit* determination" in the DOL regulation (emphasis added). If DOL intended to only limit its regulation to claims made under 29 U.S.C. § 1132(a)(1)(b), it could have done so; instead, it more broadly asserts that a claimant cannot be precluded from challenging an adverse benefit determination "under Section 502(a) of [ERISA]" which includes 29 U.S.C. § 1132(a)(3). *See* 29 C.F.R. § 2560.503-1(c)(2), (c)(4)(i) (referencing 29 U.S.C. § 1132(a)). *Sanzone* should not be followed.

Here, Plaintiffs' ERISA claim is subject to the DOL regulation. First, both Plaintiff Smith and Plaintiff Rawlings are enrolled in ERISA-governed "group health plans." Their Kaiser plans provide medical care and they were established and are maintained by their employers, TLG and CFILC. Both employers provide services that affect interstate commerce; for example, TLG provides resources, trainings, and consultations across state lines, and CFILC helps provide assistive technologies, often sourced from out-of-state, to individuals in need. Thus, Plaintiffs' plans are governed by ERISA and within the purview of the DOL regulation. Second, Plaintiffs' claim arises from an "adverse benefit determination." Specifically, their Kaiser plans have "fail[ed] to provide" (in whole or in part) a benefit, i.e., wheelchairs. *See* 29 C.F.R. § 2560.503-1(m)(4)(i). This failure to provide a benefit was based on a determination that wheelchairs are "not a covered benefit." *See* Claims Procedures Final Rule, 75 Fed. Reg. at 43,332. For Plaintiff Smith and Plaintiff Rawlings, the denial of the benefit was "in part," because there is a $2,000 monetary cap on all durable medical equipment, including wheelchairs, in their plans. Therefore, like in *Sosa* and *Snyder*, the DOL regulation should operate to shield their claims under 29 U.S.C. § 1132(a) from arbitration.

Second, Kaiser's claims procedures would violate the DOL regulation if they did not exempt

adverse benefit determinations from arbitration. Kaiser's arbitration clause applies to any claim that "arises from or is related to an alleged violation of any duty incident to or arising out of or related to … a Member Party's relationship to Kaiser, including any claim … relating to the coverage for, or delivery of, services or items." (Espinal Decl., Ex. B at 93, Ex. E at 263). Adverse benefit determinations certainly "relate to" coverage of services or items and thus, Kaiser's procedures would mandate arbitration of such determinations.

Finally, Kaiser's arbitration does not fall within the DOL regulation's narrow exception. Specifically, its claims procedures fail the first prong of the regulatory exception. Kaiser's procedures detail two different internal tracks of appeal for adverse benefit determinations:  pre-service claims (detailed in the "Grievances" section) and post-service claims (detailed in the "Post-Service Claims and Appeals" section). (*See* Espinal Decl., Ex. B at 85–91, Ex. E at 255–61).  If arbitration were intended to serve as a second level of appeal, then its procedures should logically be included within these sections. *See Sosa*, 2006 WL 2821882, at *7 ("the arbitration provision [should be] contained in the section of the plan that governs review of adverse benefits determinations"). However, Kaiser's arbitration agreement is separate—found several pages after its provisions governing internal review, and following a number of external review mechanisms. (*See* Espinal Decl., Ex. B at 85–95, Ex. E at 255–65). Further, even if arbitration were considered an "appeal," then Kaiser's procedures would exceed the number of appeals permitted under the regulation. Kaiser requires the exhaustion of both "internal claims and appeals procedures" and "if applicable, external review" *before* permitting the claimant to file a civil action under Section 502(a). (Espinal Decl., Ex. B at 93, Ex. E at 263). Pre-service claims require the filing of a "grievance," and if the plan does not decide in the enrollee's favor, then it will send a letter "describing further appeal rights." (Espinal Decl., Ex. B at 89–91, Ex. E at 258–61). Post-service claims require a "claim" and subsequent "appeal." (Espinal Decl., Ex. B at 85–88, Ex. E at 255–58). Arbitration would be an impermissible third level of appeal. Further, this calculation does not even take into account mandatory external review—which may be considered an "appeal" for purposes of the DOL regulation. *See Bailey*, 2014 WL 2219216, at *2–3. Kaiser's procedures describe several external review mechanisms: Independent Review Organization review, Independent Medical

Review, Department of Managed Health Care complaints, and Office of Civil Rights complaints. (*See* Espinal Decl., Ex. B at 91–93, Ex. E at 261–63). The procedures *require* exhaustion of applicable external review, in addition to internal claims. (Espinal Decl., Ex. B at 93, Ex. E at 263). Thus, Kaiser would also fail the first prong of the regulation by requiring arbitration on top of any one of these applicable external reviews.

For these reasons, the DOL regulation prohibits the arbitration of Plaintiffs' ERISA claims and Plaintiffs should "be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA]." *See* 29 C.F.R. § 2560.503-1(l).

### 2. *The Terms of Kaiser's Arbitration Clause Do Not Encompass Plaintiffs' ERISA Section 502(a) Claim*

A dispute can only be subject to arbitration if it is encompassed by the agreement's terms. *See, e.g.*, *Lifescan*, 363 F.3d at 1012. Here, Kaiser's agreement expressly exempts claims subject to the ERISA claims procedure regulation from its purview and it expressly allows Plaintiffs to file a civil action under ERISA Section 502(a). Thus, the arbitration clause does not encompass Plaintiffs' ERISA Section 502(a) claim.

#### a. *Kaiser's Arbitration Agreement Exempts Plaintiffs' ERISA Claim from Arbitration*

Kaiser's agreements exempt from arbitration all claims that fall within the purview of the U.S. Department of Labor ("DOL") regulation governing ERISA claims procedures. Plaintiff Smith's enrollment form states, in relevant part, that any claim must be decided by binding arbitration, "*except for* … claims subject to … the ERISA claims procedure regulation, and any other claims that cannot be subject to binding arbitration under governing law." (Espinal Decl., Ex. A at 7) (emphasis added). Notably, the agreement does not mention the narrow circumstances under which a claim subject to the DOL regulation may be subject to arbitration; instead, it wholesale exempts claims (i.e., adverse benefit determinations by a group health plan) that fall within the purview of the regulation.

Plaintiffs acknowledge that Mr. Rawlings' enrollment form does not contain the same explicit exemption for "claims subject to the ERISA claims procedure regulation" as Ms. Smith's

1    does.[21] However, the EOCs for both Ms. Smith and Mr. Rawlings provide: "[c]laims that cannot be

2    subject to binding arbitration under governing law" are exempt. (Espinal Decl., Ex. A at 7, Ex. B at

3    93–94, Ex. E at 263–64). To the extent that Mr. Rawlings' agreement does not exempt claims subject

4    to the DOL regulation, it would violate "governing law." As reflected in the language contained in

5    Ms. Smith's enrollment form,[22] and as explained in detail in the previous section, claims subject to

6    the ERISA claims procedure regulation cannot legally be subject to arbitration. Therefore, Kaiser's

7    agreement does not encompass Plaintiffs' ERISA claim.

8              b.    *Kaiser's Contract Expressly Allows for Civil Actions Under ERISA*
                     *Section 502(a)*

9

10        Kaiser's contract, by its own terms, allows enrollees to file civil actions under Section 502(a)

11   of ERISA. In a section titled "Additional Review," which *precedes* the arbitration agreement, it

     provides:
12

13        You may have certain additional rights if you remain dissatisfied after you have
          exhausted our internal claims and appeals procedure, and if applicable, external
14        review: … **If your Group's benefit plan is subject to the Employee Retirement
          Income Security Act (ERISA), you may file a civil action under section 502(a)
15        of ERISA.**

16    (Espinal Decl., Ex. B at 93, Ex. E at 263) (emphasis added). Section 502(a) is ERISA's civil

17   enforcement provision and provides for rights of action in U.S. District Court against an employee

18   benefit plan. *See* 29 U.S.C. § 1132(a). By its plain language, this provision allows Plaintiffs to file

19   an ERISA Section 502(a)(3) claim in federal court.

20        The "Additional Review" provision cannot possibly be construed to allow for civil actions

21   only after arbitration of an ERISA claim. First, judicial review of an arbitral decision is

22   extraordinarily narrow. The FAA's review mechanisms, codified at 9 U.S.C. §§ 10–11,[23] are the

23   _____

24   [21] Mr. Rawlings enrolled in his health plan through a private health exchange called
     CaliforniaChoice. As such, his enrollment application form was different from Ms. Smith's and not
     written by Kaiser. (Espinal Decl., at 3, Ex. D, Ex. E).

25   [22] Ms. Smith's enrollment form was written by Kaiser and provides that any claim must be decided
26   by binding arbitration, "except for … claims subject to … the ERISA claims procedure regulation,
     and *any other* claims that cannot be subject to binding arbitration under governing law." (Espinal
     Decl., Ex. A at 7) (emphasis added).

27   [23] Sections 10 and 11 "address egregious departures from the parties' agreed-upon arbitration:
28   'corruption,' 'fraud,' 'evident partiality,' 'misconduct,' 'misbehavior,' 'exceed[ing] … powers,'
     'evident material miscalculation,' 'evident material mistake,' 'award[s] upon a matter not
     submitted;' … [and] 'imperfect[ions]' … only if they go to '[a] matter of form not affecting the

1   exclusive means of judicial review. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).

2   Parties to an arbitration agreement lack the ability under U.S. law to modify, through contract, the

3   scope of judicial review of an arbitral decision. *Id.* at 585–87. Thus, it would be impossible for

4   Plaintiffs to file "a civil action under section 502(a) of ERISA" after arbitration of the claim. Second,

5   an arbitration preceding the civil action would violate the ERISA claims procedure regulation, both

6   because it would create an impermissible additional level of review and because it would "preclude[

7   the beneficiary] from challenging the decision under Section 502(a) of [ERISA] or other applicable

8   law" under 29 C.F.R. § 2560.503-1(c)(4)(ii). *See id*. at 581, 585–87 (holding that the FAA is the

9   exclusive means of judicial review); *Sosa*, 2006 WL 2821882, at *7 (holding that an arbitration

10   agreement violates the DOL regulation, in part, because a mandatory arbitration "would effectively

11   preclude the beneficiary from challenging the denial of benefits in federal court.").

12       Finally, to the extent that this provision is inconsistent with Kaiser's arbitration clause, then

13   state contract law directs the specific provision to control over the general. *See* Cal. Code Civ. Proc.

14   § 1859 ("[W]hen a general and particular provision are inconsistent, the latter is paramount to the

15   former. So a particular intent will control a general one that is inconsistent with it."); *Kashmiri v.*

16   *Regents of Univ. of Cal.*, 156 Cal. App. 4th 809 (2007) (affirming this is the correct standard); *Impex*

17   *Enters. v. Sony Pictures Worldwide Acquisitions, Inc.*, 777 F. App'x 236, 237 (9th Cir. 2019)

18   (holding that provisions related to a specific issue are paramount to more general paragraphs

19   addressing arbitration); *Amin v. Advanced Sterilization Prods. Servs.*, No. SACV 18-1528 JVS

20   (JDEx), 2019 WL 2912862, at *8 (C.D. Cal. Jan. 7, 2019) (holding that an arbitration agreement

21   providing that all claims are covered does not take precedence over a specific exclusionary provision

22   in the contract). Here, Kaiser's Section 502(a) civil action provision is more specific than its

23   arbitration agreement, and thus, to the extent it is inconsistent with the arbitration agreement, it is

24   the controlling provision within the meaning of California contract law.

25       For these reasons, the Kaiser contract allows Plaintiffs to file a civil action under Section

26   502(a) of ERISA and the Motion to Compel this claim to arbitration should be denied.

27

28   —————————————
     merits.'" *See Hall St.*, 552 U.S. at 586.

PLAINTIFFS' OPPOSITION TO DEFENDANT KAISER'S MOTION TO COMPEL

II.     **IF ANY CLAIM IS COMPELLED, IT SHOULD BE ON A CLASS BASIS**

A party can be compelled under the FAA to submit to class arbitration if there is a contractual basis for concluding they agreed to do so. *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). In *Stolt-Nielson*, the U.S. Supreme Court held that if an agreement is "silent" on the issue, then class arbitration may not take place. *Id.* at 684. In *Lamps Plus, Inc. v. Varela*, the Court extended this holding to when an agreement is "ambiguous" on the issue. 139 S.Ct. 1407, 1416–17 (2019). Notably, the majority opinions in *Stolt-Nielson* and *Lamps Plus* never analyzed the text of the arbitration agreements to find them "silent" or "ambiguous." Instead, both cases involved unusual factual scenarios where the parties had either previously *stipulated* that they did not agree to class arbitration (*Stolt-Nielson*, 559 U.S. at 687 n.10) or the Court, deferring to the lower court opinion, simply "accept[ed] that the agreement should be regarded as ambiguous (*Lamps Plus*, 139 S.Ct. at 1415).

"[W]hat contractual basis may support a finding that the parties agreed to authorize class-action arbitration" remains an open question. *Stolt-Nielson*, 559 U.S. at 687 n.10. Under some circumstances, a party may be able to prohibit class arbitration by including explicit terms in its arbitration agreement. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 339, 340 (2011). But where an arbitration agreement does not explicitly address class arbitration, a court must determine the parties' intent to authorize class proceedings. *Stolt–Nielson*, 559 U.S. at 684, 687; *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 570-71 (2013).

The question of whether the parties authorized class arbitration is one of contractual interpretation. A party need not specify every term of the contract; some terms may be implied by operation of law. *See* Restatement (Second) of Contracts § 5(2) (1981); *Sutter*, 569 U.S. at 570-571 (clarifying that *Stolt-Nielsen* did not foreclose implicit authorizations of class arbitrations); *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 123 (2d Cir. 2011) (affirming that *Stolt-Nielson* "does not foreclose the possibility that parties may reach an 'implicit'—rather than express—'agreement to authorize class-action arbitration.'"). In *Lamps Plus*, the three dissenting justices, unlike the majority, independently analyzed the language of the arbitration agreement at issue, concluding that "[t]he phrase 'any and all disputes, claims, or controversies' encompasses both their individual and

PLAINTIFFS' OPPOSITION TO DEFENDANT KAISER'S MOTION TO COMPEL

their class variants—just as any other general category (e.g., any and all chairs) includes all particular types (e.g., desk and reclining)." *See* 139 S.Ct. at 1428 (Kagan, J., dissenting). The U.S. Court of Appeals for the Eleventh Circuit has agreed that language that broadly commits to arbitration "any" claim among the parties arising from or related to contractual relationship, coupled with a lack of any explicit prohibition on class arbitration, authorizes class arbitration. *See S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1359 (11th Cir. 2013) (upholding a clause construction award in favor of class arbitration where the agreement incorporated rules that covered "any disputes" between the parties).

Here, Kaiser's arbitration agreement is neither silent nor ambiguous on class arbitration. Its terms imply authorization of class arbitration. The agreement broadly states that any claim that "arises from or is related to an alleged violation of any duty incident to or arising out of or related to … a Member Party's relationship to Kaiser, including *any* claim … relating to the coverage for, or delivery of, services or items," is subject to arbitration. (Espinal Decl., Ex. B at 93, Ex. E at 263) (emphasis added). Pursuant to basic principles of contract interpretation, *Thomas*, and the instructive analysis set forth in Justice Kagan's *Lamps Plus* dissent, this broad authorization to arbitrate includes class arbitration. Kaiser drafted its arbitration provision with wide-ranging terms that commit its parties to arbitrate "any claim."[24] *See id.* Claims come in many forms, including individual and class-wide. If Kaiser intended to preclude class claims from arbitration, then— especially in light of the complex body of case law relating to class arbitration—it should have explicitly done so in its terms.[25] Thus, there is a contractual basis for concluding that the parties agreed to class arbitration. As such, should the Court compel any claims to arbitration, it should be on a class basis.

---

[24] Note that "any claim" is the functional equivalent of "all claims." *See Jones v. Waffle House*, 866 F.3d 1257, 1267 (11th Cir. 2017) ("[A]ny disputes means all disputes, because any means all.").

[25] To the extent that Defendant Kaiser cites non-binding district court opinions that have held differently, note that both *Wyndham Vacation Resorts, Inc. v. Garcia*, No. 15-cv-01540-WHO, 2016 WL 4529457, at *4 (N.D. Cal. Aug. 30, 2016) (Orrick, J.) and *Cobarruviaz v. Maplebear, Inc.*, 143 F.Supp. 3d 930, 946 (N.D. Cal. 2015) (Chen, J.) predate the Supreme Court's decision in *Lamps Plus*. Further, the opinion in *Hunter v. Kaiser Found. Health Plan, Inc.*, 434 F.Supp.3d 764 (N.D. Cal. 2020) (Orrick, J.) fails to engage in any meaningful analysis of the meaning of "ambiguity." It erroneously cites *Lamps Plus* to support a factual finding of ambiguity, when the *Lamps Plus* majority opinion did not engage in a factual analysis of ambiguity or set forth a test for such a finding. *See* 139 S.Ct. at 1415. *Hunter* should not be followed here.

PLAINTIFFS' OPPOSITION TO DEFENDANT KAISER'S MOTION TO COMPEL

### III.   IF ANY CLAIM IS COMPELLED, THE COURT SHOULD PROCEED WITH THE NON-COMPELLED CLAIMS

In the event that this Court determines that one claim is arbitrable, and the other is not, then the litigation related to the nonarbitrable claim should proceed. First, the arbitrability of one claim cannot "pull" an unarbitrable claim into arbitration. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985) (when a case contains both arbitrable and nonarbitrable claims, only the arbitrable claim is compelled, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.").

Second, judicial proceedings of a nonarbitrable claim should not be stayed pending arbitration of another claim. Under the FAA, a stay of proceedings should only be granted when "*all* claims are referred to arbitration." *See Katz v. Cellco P'Ship*, 794 F.3d 341, 343 (2d Cir. 2015) (emphasis added) (cited by Def.'s Mot. to Compel at 16). It would be inequitable to deny Plaintiffs the opportunity to pursue timely relief for violations of nonarbitrable claims in a judicial forum. Further, this case involves a third-party Defendant, the California Department of Managed Health Care ("DMHC"). Plaintiffs' claims against DMHC arise out of the same set of facts and law as those against Kaiser. It would be inefficient and create unnecessary costs and delays for the Court and the Parties to litigate these claims at different times. Therefore, if the FAA applies here, Plaintiffs request the Court to deny a Stay of Proceedings as it relates to nonarbitrable claims.

Further, to the extent the CAA instead of the FAA applies to Plaintiffs' claims, the CAA provides that a court "may refuse to enforce the arbitration agreement" when there is a third party to the court action. Cal. Code Civ. Proc. § 1281.2. If a court chooses to enforce the arbitration agreement, it "may stay arbitration pending the outcome of the court action." *Id.* Additionally:

> If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies.

Cal. Civ. Proc. Code § 1281.2. As such, if the CAA applies, Plaintiffs request the Court to not enforce the arbitration agreement, and if it does, stay the arbitration proceedings pending litigation.

1

## CONCLUSION

2      For the foregoing reasons, Plaintiffs respectfully request the Court to deny Defendant

3  Kaiser's Motion to Compel Individual Arbitration and Stay Proceedings.

4

5  DATED:  March 4, 2022

*/s/ Carly A. Myers*

CLAUDIA CENTER (SBN: 158255)

6  SILVIA YEE (SBN: 222737)
CARLY A. MYERS (SBN: 317833)

7  DISABILITY RIGHTS EDUCATION
AND DEFENSE FUND

8
ERNEST GALVAN (SBN: 196065)

9  MICHAEL NUNEZ (SBN: 280535)
ROSEN BIEN GALVAN & GRUNFELD LLP

10      Counsel for Plaintiffs and the Proposed Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT KAISER'S MOTION TO COMPEL