SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
MOE KESHAVARZI, Cal. Bar No. 223759
A. ALEXANDER KULJIS, Cal. Bar No. 299951
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398
E mail mkeshavarzi@sheppardmullin.com
akuljis@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
JOHN T. BROOKS, Cal. Bar No. 167793
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone: 619.338.6500
Facsimile: 619.234.3815
Email: jbrooks@sheppardmullin.com

Attorneys for Defendant
KAISER FOUNDATION HEALTH PLAN, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

GRACE SMITH and RUSSELL RAWLINGS, on behalf of themselves and all others similarly situated, and CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, a California nonprofit corporation,

Plaintiffs,

v.

MARY WATANABE, in her capacity as Director of the California Department of Managed Health Care; CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE; and KAISER FOUNDATION HEALTH PLAN, INC.,

Defendants.

Case No. 4:21-cv-07872-HSG

**DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: April 28, 2022
Time: 2:00 p.m.
Room: 2
Judge: Hon. Haywood S. Gilliam, Jr.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. THE COURT SHOULD COMPEL ARBITRATION ..... 2

A. The FAA Applies to Plaintiffs' Section 1557 Claim ..... 2

B. The Arbitration Clause Is Not Unconscionable ..... 6

1. The Arbitration Clause is Not Procedurally Unconscionable ..... 7

2. The Arbitration Clause is Not Substantively Unconscionable ..... 8

C. The Arbitration Clause Compels Arbitration of Plaintiffs' ERISA Claim ..... 9

1. The DOL Regulation Does Not Exempt Plaintiffs' ERISA Claim From Arbitration ..... 9

2. The Arbitration Agreement Does Not Exempt Plaintiffs' ERISA Claim from Arbitration ..... 11

3. The "Additional Review" Provision Does Not Preclude Arbitration of Statutory ERISA Claims ..... 12

III. THE COURT SHOULD COMPEL ARBITRATION ON AN INDIVIDUAL BASIS ..... 12

IV. THE COURT SHOULD STAY LITIGATION ..... 14

-i-

Case No. 4:21-cv-07872-HSG

DEFENDANT KAISER FOUNDATION HEALTH PLAN, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Alexander v. Anthony Int'l, L.P.*
341 F.3d 256 (3d Cir. 2003) .......... 14

*Am. Express Co. v. Italian Colors Rest.*
570 U.S. 228 (2013) .......... 3

*Baker v. Acad. of Art Univ. Found.*
No. 17-03444, 2017 WL 4418973 (N.D. Cal. Oct. 5, 2017) .......... 6

*Beard v. Santander Consumer USA, Inc.*
No. 11-1815, 2012 WL 1292576 (E.D. Cal. Apr. 16, 2012) .......... 12

*Bercovitch v. Baldwin Sch.*
133 F.3d 141 (1st Cir. 1998) .......... 3

*Bigler v. Harker School*
213 Cal.App.4th 727 (2013) .......... 6

*Chavarria v. Ralphs Grocery Co.*
733 F.3d 916 (9th Cir. 2013) .......... 7, 8

*Circuit City Stores v. Adams*
532 U.S. 105 (2001) .......... 2

*CompuCredit Corp. v. Greenwood*
565 U.S. 95 (2012) .......... 12

*Dorman v. Charles Schwab Corp.*
934 F.3d 1107 (9th Cir. 2019) .......... 9

*Engalla v. Permanente Medical Group, Inc.*
15 Cal.4th 951 (1997) .......... 8

*Gilmer v. Interstate/Johnson Lane Corp.*
500 U.S. 20 (1991) .......... 2, 3, 4, 5

*Green Tree Fin. Corporation-Alabama v. Randolph*
531 U.S. 79 (2000) .......... 2

*Hunter v. Kaiser Found. Health Plan, Inc.*
434 F.Supp.3d 764 (N.D. Cal. 2020) .......... *passim*

*Jock v. Sterling Jewelers Inc.*
646 F.3d 113 (2d Cir. 2011) .................... 14

*Kilgore v. KeyBank*
718 F.3d 1052 (9th Cir. 2013) .................... 6, 7

*Kilgore v. KeyBank, N.A.*
673 F.3d 947 (9th Cir. 2012) .................... 7

*Lamps Plus v. Varela*
587 U.S. __, 139 S. Ct. 1407 (2019) .................... 12, 13, 14

*Lang v. Skytap, Inc.*
347 F.Supp.3d 420 (N.D. Cal. 2018) .................... 6

*Legnaioli v. Chrysler Capital, LLC*
No. 15-00744, 2015 U.S. Dist. LEXIS 182773 (C.D. Cal. June 9, 2015) .................... 8

*Miller v. Public Storage Mgmt., Inc.*
121 F.3d 215 (5th Cir. 1997) .................... 3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*
473 U.S. 614 (1985) .................... 3

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*
460 U.S. 1 (1983) .................... 15

*OTO, LLC v. Kho*
8 Cal.5th 111 (2019) .................... 9

*Oxford Health Plans LLC v. Sutter*
569 U.S. 564 (2008) .................... 14

*Pinnacle Museum Tower Assoc. v. Pinnacle Market Dev. (US), LLC*
55 Cal.4th 223 (2012) .................... 7, 8

*Sanchez v. Valencia Holding Co., LLC*
61 Cal. 4th 899 (2015) .................... 8

*Sanzone-Ortiz v. Aetna Health of Cal., Inc.*
No. 15-03334, 2015 WL 9303993 (N.D. Cal. Dec. 22, 2015) .................... 10, 11

*Shearson/American Express v. McMahon*
482 U.S. 220 (1987) .................... 2, 3

*Snyder v. Federal Insurance Co.*
No. 08-00153, 2009 WL 700708 (S.D. Ohio Mar. 13, 2009) .................... 11

*Sosa v. PARCO Oilfield Services, Ltd.*
No. 05-00153, 2006 WL 2821882 (E.D. Tex. Sept. 27, 2006) .................................. 11

*Southern Communs. Servs. v. Thomas*
720 F.3d 1352 (11th Cir. 2013) .................................. 14

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*
559 U.S. 662 (2010) .................................. 13

*U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*
750 F.2d 1422 (9th Cir. 1985) .................................. 14

<u>Statutes</u>

Cal. Civ. Code § 1670.5 .................................. 6

Cal. Code Civ. Proc. § 1281.4 .................................. 15

Cal. Health & Safety Code § 1351(f) .................................. 4

<u>Other Authorities</u>

29 C.F.R. § 2560.503-1(c) .................................. 9, 10

# I.

# INTRODUCTION

Plaintiffs do not dispute that the FAA creates a strong presumption in favor of enforcing agreements to arbitrate, and none of the arguments Plaintiffs raise overcome this presumption.

*First*, Plaintiffs fail to carry their high burden of showing that Congress exempted Section 1557 claims from arbitration.  Indeed, even Plaintiffs do not contend that anything in the Affordable Care Act or any other federal statute evidences such a Congressional intent.  Instead, Plaintiffs merely argue that arbitration is somehow inherently inconsistent with the vindication of Section 1557 rights.  But Plaintiffs fail to show that there is anything about a claim for discrimination that makes it unsuitable for resolution in arbitration.  Their arguments boil down to factually and legally unfounded attacks on the efficacy or fairness of arbitration.  The Court should reject these attempts to evade the parties' agreements and the FAA.

*Second*, Plaintiffs fail to show that the arbitration agreement is unconscionable.  The agreements here are neither procedurally or substantively unconscionable, much less both. Plaintiffs' claims that the available arbitrators—which include many retired judges—are somehow incompetent to resolve statutory disputes or biased in Kaiser's favor are unsupported by a shred of evidence.  And their claims that the arbitration agreement requires them to give up important remedies are simply wrong.

*Third*, Plaintiffs fail to show that their ERISA claim is exempt from arbitration. Contrary to Plaintiffs' argument, the Department of Labor's claim process regulation does not preclude arbitration because the regulation applies only to appeals of adverse benefit determinations—that is, where a claim is denied because of a dispute about whether the contract as written entitles the member to a given benefit.  The DOL regulation does not apply to claims like Plaintiffs'—where Plaintiffs *admit* that they have no contractual right to wheelchair benefits above $2,000 and instead challenge that benefit *design* as illegal.

Because Plaintiffs have not overcome the FAA's strong presumption in favor of arbitration, the Court should enforce the parties' arbitration agreement. Further, it should do so on an individual, non-class basis because there is no clear, express intent to arbitrate class claims as required by U.S. Supreme Court law. Finally, the Court should stay the litigation in its entirety, including Plaintiffs' claims against the DMHC, until the arbitration is completed because parallel litigation would result in duplicated efforts and risk inconsistent rulings on overlapping issues.

## II.

## THE COURT SHOULD COMPEL ARBITRATION

### A.     The FAA Applies to Plaintiffs' Section 1557 Claim

Congress enacted the FAA to reverse the historical "hostility of American courts to the enforcement of arbitration agreements[.]" *Circuit City Stores v. Adams*, 532 U.S. 105, 111 (2001). Since the enactment of the FAA, courts reject "generalized attacks on arbitration that rest on 'suspicion of arbitration'" even where the underlying statutory clams are designed to forward important social policies. *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000).

Plaintiffs' lead argument is that the FAA doesn't apply to the claim under Section 1557 of the Affordable Care Act ("ACA"). But they do not dispute that their arbitration agreements as a whole are governed by the FAA, and they expressly concede that the agreements affect interstate commerce. (*See* Opp. (ECF 37) at 4-5.) Instead, Plaintiffs try to avoid arbitration of their Section 1557 claim by invoking the "doctrine of contrary congressional intent."

Plaintiffs have the burden to show that Congress intended to preclude arbitration of Section 1557 claims. *Shearson/American Express v. McMahon*, 482 U.S. 220, 226-27 (1987). Such intent must appear in the statute's text or the legislative history or, at a minimum, Plaintiffs must show an "inherent conflict" between arbitration and Section 1557's underlying purposes. *See id*. at 227. Further, any "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).

Plaintiffs do not and cannot carry their high burden. Plaintiffs cite nothing in text of the ACA or its legislative history that remotely suggests that Congress intended to exempt Section 1557 claims from arbitration. Nor do Plaintiffs cite a single case invalidating an arbitration agreement under the doctrine of contrary congressional intent with respect to *any* federal statute, including Section 1557 or otherwise. To the contrary, every case they cite *rejects* a party's appeal to that doctrine, which shows how high the burden is.[1]

Unable to cite any express indication of Congressional intent, Plaintiffs resort to arguing a supposed inherent conflict between arbitration and Section 1557's "underlying purposes." But plaintiffs fail to identify any such conflict. Certainly, there is nothing about statutory claims in general that makes them unsuited to arbitration. As the Supreme Court recognized, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi*, 473 U.S. at 628.

Nor is there anything about statutory discrimination claims in particular that makes them unsuitable for arbitration. To the contrary, courts have repeatedly compelled arbitration of disability discrimination claims brought under the statutes referenced by Section 1557. *See, e.g.*, *Bercovitch v. Baldwin Sch.*, 133 F.3d 141, 151 n. 11 (1st Cir. 1998) (holding plaintiffs must submit their ADA and Rehabilitation Act claims to arbitration: "Nothing in the Rehabilitation Act evidences a Congressional intent to preclude arbitration, even assuming *dubitante* that the Rehabilitation Act provides jurisdiction here."); *Miller v. Public Storage Mgmt., Inc.*, 121 F.3d 215, 218 (5th Cir.

---

[1] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 640 (1985) (holding antitrust claims under Sherman Act were arbitrable); *McMahon*, 482 U.S. at 238, 242 (1987) (holding Securities Exchange Act and RICO claims were arbitrable); *Gilmer*, 500 U.S. at 35 (1991) (holding claim under Age Discrimination in Employment Act was arbitrable); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 238-39 (2013) (holding antitrust claims under Sherman Act seeking treble damages were arbitrable).

1997) (holding ADA claim was subject to arbitration in part because the text of the statute "demonstrates Congress did not intend to exclude the ADA from the scope of the FAA.").

The Supreme Court's decision in *Gilmer* is on point. *Gilmer* analyzed whether arbitration was consistent with the statutory framework and purpose of the Age Discrimination in Employment Act ("ADEA"). *Gilmer*, 500 U.S. at 26-27. The Court held that no inconsistency existed between combatting discrimination and enforcing arbitration agreements. *Id.* The Court further held that generalized attacks on the efficacy of arbitration—including arguments resting on "suspicion of arbitration as a method of weakening the protections afforded in the substantive law"—are insufficient to overcome the FAA's policy favoring arbitration. *Id.* at 30.[2]

Plaintiffs' arguments here boil down to the sort of "suspicion of arbitration" *Gilmer* held to be insufficient to avoid the FAA. *First*, Plaintiffs suggest the cards are stacked against them because the arbitration rules were "created and designed by Kaiser." (Opposition (ECF 37) at 6.) But the important rules are the statutory rules and evidentiary rules, none of which were created by Kaiser. And in any event, there is nothing unusual in the arbitration agreement—which was reviewed and approved by the DMHC (*see* Cal. Health and Safety Code section 1351(f))—evincing a bias in Kaiser's favor. Nor do the actual *results* of arbitration suggest bias. To the contrary, in 2020 nearly half (46%) of claimants in arbitrations against Kaiser received compensation either through settlement or

---

[2] Plaintiffs' attempts to distinguish *Gilmer* lack merit. *Gilmer* did not base its decision on the fact that the ADEA creates a separate, independent forum for adjudicating claims, or on the fact that the ADEA requires administrative exhaustion before a plaintiff can bring a claim. To the contrary, it was the *plaintiff* in *Gilmer* who raised these attributes of the ADEA in an (unsuccessful) effort to avoid arbitration, arguing that permitting private arbitration would undermine statutory administrative enforcement procedures (e.g., the requirement to file charges with the EEOC before filing suit). *Gilmer*, 500 U.S. at 28-29. But the Court rejected that attempt to end-run the FAA, reasoning that "the mere involvement of an administrative agency in the enforcement of the statute is not sufficient to preclude arbitration." *Id*. Here, the ACA contains no such statutory administrative enforcement procedures, and so the failed arguments in *Gilmer* are even more off-point here.

award after hearing. *See* OIA Report, p. ix. Further, the rules require arbitrators to follow the Ethics Standards set forth in the California Rules of Court and AAA Code of Ethics for Arbitrators in Commercial Disputes. OIA Rule 4. Finally, the neutral arbitrators on the OIA panel have plaintiff, defense, and judicial backgrounds. OIA Report, p. xiii.

*Second*, simply because many OIA cases involve medical malpractice, Plaintiffs suggest that OIA arbitrators are incompetent to decide statutory claims. But again, many of the OIA arbitrators are retired judges who certainly are no strangers to statutory law. Further, the Supreme Court in *Gilmer* rejected a similar argument, declining "to indulge the presumption that the . . . arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." *Gilmer*, 500 U.S. at 30-32; *see also*, *Hunter v. Kaiser Found. Health Plan, Inc.*, 434 F.Supp.3d 764, 779 (N.D. Cal. 2020) (concluding that use of OIA arbitrators does not create an unconscionable advantage for Kaiser). Like the courts in *Gilmer* and *Hunter*, this Court should reject Plaintiffs' unsubstantiated suggestions regarding bias.

*Third*, Plaintiffs claim that it is "unclear" whether injunctive or other equitable relief would be available in arbitration. But they fail to cite anything in their EOCs, their enrollment applications, or in the OIA rules precluding relief that would redress their individual claims—that is, an order that Kaiser cover their wheelchair claims without regard to the $2,000 supplemental DME limitation. Because the agreements do not foreclose such individual relief, there is no basis to invalidate them on this ground. *See Hunter*, 434 F.Supp.3d at 778-79 (compelling arbitration based on similar Kaiser arbitration agreement).

Arbitration of public injunctive relief on the other hand—i.e., relief that would inure to the benefit of third parties—was not bargained for and Plaintiffs' claims do not seek it here. Thus, like class arbitration (*see* infra at Section III), an arbitrator would not have the power to award public injunctive relief. The absence of public injunctive relief does not allow plaintiffs to escape their agreements to arbitrate individual claims. However, if the Court ultimately determines that Plaintiffs' Section 1557 claim implicates public injunctive

relief, the Court should compel arbitration of Plaintiffs' individual claims and stay litigation as to any public injunction claim pending completion of the arbitrations.

*Finally*, Plaintiffs argue that the arbitration agreement "prohibits" an award of attorney fees. Not so. The fee provision states, "*except as otherwise mandated by laws* that apply to arbitrations under this 'Binding Arbitration' section, each party shall bear the party's own attorneys' fees . . . ." (Espinal Decl. (ECF 32-2) Ex. B, p. 95; Ex. E, p. 265) (emphasis added). Therefore, to the extent Plaintiffs' statutory claims allow recovery of attorney's fees, that law will apply in the arbitration here. Further, even if the arbitration agreement prohibited a fee award—it doesn't—that still would be no reason to invalidate the parties' arbitration agreement. Instead, the proper remedy is to sever the fee provision but enforce the remainder of the agreement. *See Baker v. Acad. of Art Univ. Found.*, No. 17-03444, 2017 WL 4418973, *5 (N.D. Cal. Oct. 5, 2017) (noting that California courts prefer to sever provisions rather than hold an entire agreement unenforceable); *Hunter*, 434 F.Supp.3d at 776-779 (severing fee splitting provision in arbitration agreement); *Bigler v. Harker School*, 213 Cal.App.4th 727, 737-38, 741 (2013) (severing provision for attorney's fees as requested by the defendant's counsel because it was easily done pursuant to Cal. Civ. Code Section 1670.5); *Lang v. Skytap, Inc.*, 347 F.Supp.3d 420, 433-34 (N.D. Cal. 2018) (compelling arbitration and finding cost-splitting and fee provisions "easily severable").

As even Plaintiffs concede, the U.S. Supreme Court has never invalidated an arbitration agreement on the ground that arbitration would not adequately protect the plaintiff's statutory rights. (Opposition (ECF 37) at 12:8-9). Likewise here, Plaintiffs fail to show that arbitration is inadequate to fairly resolve their claims. The Court should accordingly enforce the parties' agreements to arbitrate.

**B. <u>The Arbitration Clause Is Not Unconscionable</u>**

Plaintiffs' unconscionability argument fares no better. To prevail on this argument, Plaintiffs must prove both procedural and substantive unconscionability. *See Kilgore v. KeyBank*, 718 F.3d 1052, 1058 (9th Cir. 2013) ("*Kilgore II*"). A court cannot "relieve

Plaintiffs of their contractual obligation to arbitrate by manufacturing unconscionability where there is none." *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 964 (9th Cir. 2012) ("*Kilgore I*"), on reh'g en banc, *Kilgore II*, 718 F.3d 1052. "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Assoc. v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 247 (2012). Here Plaintiffs can prove neither procedural nor substantive unconscionability.

**1. The Arbitration Clause is Not Procedurally Unconscionable**

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). There was no such oppression or surprise here. Both Plaintiffs had the opportunity to review their applications and the membership agreements at their leisure. They were not pressured to agree or forced to sign. Further, it is not true as Plaintiffs assert (Opposition (ECF 37) at 10:12-14) that Plaintiffs had no choice to avoid Kaiser's arbitration clause. Plaintiffs could have enrolled with another heath plan. For example, Mr. Rawlings' enrollment form indicates that he could have chose a benefit plan with any one of seven other health plans (including Anthem Blue Cross, Health Net and United Healthcare). (Espinal Decl. (ECF 32-2) Ex. C, p. 162).

The arbitration provisions they signed were also conspicuous. They were clearly labeled in bold, separated from the rest of the enrollment application and are located directly above the signature lines. (Espinal Decl. (ECF 32-2) Ex. A, p. 7; Ex. C, p. 163).

Plaintiffs rely heavily on rhetoric—using loaded terms like "contract of adhesion"—but rhetoric is not enough. It is true that Plaintiffs did not individually negotiate their contracts, but that fact is true of most consumer contracts and yet has not prevented courts from routinely enforcing arbitration agreements in such contracts.

*Hunter* is on point. There, a Kaiser member enrolled in an individual (non-group) plan asked the court to void an arbitration agreement because she alleged her EOC was a contract of adhesion forced upon her by a more powerful party. *Hunter*, 434 F.Supp.3d at

775. The court rejected her argument, holding the amount of procedural unconscionability was low and she failed to demonstrate the high degree of substantive unconscionability required to prevent enforcement. *Id.* at 775-76. Here, Plaintiffs had greater bargaining power than the plaintiff in *Hunter*—Plaintiffs allege they enrolled through their employers, not individually through Covered California—and so the same result applies with even greater force. Likewise, *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951 (1997), cited by Plaintiffs, actually supports Kaiser. There, even though the contract had some of the attributes of adhesion, the California Supreme Court concluded that it did not lack "minimum levels of integrity" and thus was not unconscionable. *Id.* at 985-86.

**2. The Arbitration Clause is Not Substantively Unconscionable**

Because the amount of procedural unconscionability—if any at all—is low, Plaintiffs must demonstrate a high degree of substantive unconscionability. *See Hunter*, 434 F.Supp.3d at 776. "Substantive unconscionability pertains to the fairness of an agreement's actual terms . . . . A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather the term must be so one-sided as to shock the conscience." *Pinnacle*, 55 Cal.4th at 246; *see also*, *Chavarria*, 733 F.3d at 923 ("A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it 'shocks the conscience.'"); *Legnaioli v. Chrysler Capital, LLC*, No. 15-00744, 2015 U.S. Dist. LEXIS 182773, *10 (C.D. Cal. June 9, 2015) (applying the "shocks the conscience" standard in assessing substantive unconscionability); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 917, 921, 922 (2015) (finding several arbitration terms not so one-sided as to be substantively unconscionable).

Here, the terms of the arbitration provisions are bilateral and fair. (Espinal Decl. (ECF 32-2) Ex. B, pp. 93-95; Ex. E, pp. 263-265). Plaintiffs fail to show that the arbitration terms are one-sided at all, much less so tilted as to "shock the conscience." Instead, Plaintiffs repeat the same misplaced arguments they make against arbitration of their Section 1557 claim: namely, that OIA arbitrators are likely biased or incompetent, and that injunctive relief and attorney fees are unavailable. These arguments fail for the

same reasons discussed in Section II.A above. Therefore, like the court in *Hunter*, this Court should reject Plaintiffs' similar contentions. *Hunter*, 434 F.Supp.3d at 779.

Plaintiffs citation to *OTO, LLC v. Kho*, 8 Cal.5th 111 (2019) does not support a different result. In *OTO*, the arbitration agreement required a claimant to give up certain administrative procedures for the recovery of unpaid wages. *Id*. at 122-23. Those procedures (called a Berman hearing) provide an informal forum for employees to bring their unpaid wage claims, significantly reducing the costs and risks of pursuing a wage claim in court. *Id.* The Court held that the arbitration agreement, which provided arbitration rules similar to litigating in court, was substantively unconscionable because employees who agree to arbitrate claims for unpaid wages are forced to forgo the economical administrative procedures to which they would otherwise be entitled. *Id.* at 129-138 (recognizing that "cases have taken a different approach in evaluating the compelled arbitration of wage claims…"). Plaintiffs do not argue that the arbitration agreement deprives them of any more economical means of dispute resolution, so the rationale of *OTO* does not apply here.

**C. <u>The Arbitration Clause Compels Arbitration of Plaintiffs' ERISA Claim</u>**

**1. The DOL Regulation Does Not Exempt Plaintiffs' ERISA Claim From Arbitration**

Plaintiffs do not dispute that ERISA claims can be subject to mandatory arbitration. *See Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1111-12 (9th Cir. 2019) (overruling *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984) and citing *Italian Colors Restaurant.*, 570 U.S. at 233, which held that "federal statutory claims are generally arbitrable and arbitrators can competently interpret and apply federal statutes[.]"). Instead, they narrowly base their challenge on the Department of Labor's claim procedure regulation, 29 C.F.R. section 2560.503-1(c). Nothing in that regulation precludes arbitration of Plaintiffs' ERISA claim.

The DOL regulation relates to the internal claims appeals procedures that a health plan makes available to members and which members must generally exhaust "before

challenging the [claims] decision under section 502(a) of the act or other applicable law." 29 C.F.R. § 2560.503-1(c)(4)(ii). Under the regulation, those internal appeal procedures may not include mandatory arbitration unless:

> (i) The arbitration is conducted as one of the two appeals described in paragraph (c)(2) of this section and in accordance with the requirements applicable to such appeals; and
>
> (ii) The claimant is not precluded from challenging the decision under section 502(a) of the Act or other applicable law.

29 C.F.R. § 2560.503-1(c). Plaintiffs interpret this language as a universal bar on arbitration of their Section 502(a)(3) claim and ask this Court to ignore on point authority from this district construing the regulation, in favor of two distinguishable unpublished district court cases from outside the Ninth Circuit.

The reasoning of *Sanzone-Ortiz v. Aetna Health of Cal., Inc.*, No. 15-03334, 2015 WL 9303993 (N.D. Cal. Dec. 22, 2015) is sound, and the Court should not deviate from its holding. Like Plaintiffs here, the plaintiff in *Sanzone-Ortiz* challenged the "benefits cap" imposed by the plan contract on a particular category of coverage (namely, autism coverage). Like Plaintiffs here, the *Sanzone-Ortiz* plaintiff argued that the DOL regulation precluded arbitration of her claim challenging the plan's benefits structure. The *Sanzone-Ortiz* court rejected this attempted evasion of the arbitration agreement. It concluded that a plain reading of the DOL regulation shows that its limitations apply only to a plan's internal "claims procedures." *Sanzone-Ortiz*, 2015 WL 9303993 at *3. In other words, the regulation only applies to "the administrative procedures a plan fiduciary uses when conducting its own review of a claim." *Id.* at *2. The court reasoned that the plaintiff's challenge to the plan's benefits structure "[did] not directly concern the adverse benefits determination regarding her son's [autism] therapy," but instead raised a broader statutory challenge to the legality of the plan's limitation on coverage. *Id.* at *3. Accordingly, the DOL regulation did not apply.

The same is true here. Plaintiffs' complaint similarly does not directly concern an adverse benefits determination. For example, Plaintiffs' are not arguing that Kaiser made

an incorrect finding about medical necessity or otherwise denied benefits that are in fact covered under their contracts. Indeed, Plaintiffs *admit* that their plans do not cover the benefits they seek through the complaint. (FAC ¶¶ 57-61). Rather than raising a claim for improper denial of benefits due, Plaintiffs here (like the plaintiff in *Sanzone-Ortiz*) raise a broad statutory challenge to Kaiser's benefits structure, claiming that Kaiser plans uniformly fail to provide sufficiently-generous coverage for wheelchairs. The DOL regulation has nothing to do with a statutory challenge of this nature and thus does not permit Plaintiffs to evade their arbitration agreement.

The cases on which Plaintiffs rely—*Snyder v. Federal Insurance Co.*, No. 08-00153, 2009 WL 700708 (S.D. Ohio Mar. 13, 2009) and *Sosa v. PARCO Oilfield Services, Ltd.*, No. 05-00153, 2006 WL 2821882 (E.D. Tex. Sept. 27, 2006)—are not to the contrary. Unlike the statutory challenges Plaintiffs here raise, the plaintiffs in *Snyder* and *Sosa* were pursuing garden-variety non-statutory claims for the wrongful denial of benefits due under their plans—claims to which the DOL regulation did apply. *See Sanzone-Ortiz*, 2015 WL 9303993 at *3 (discussing and distinguishing *Snyder* and *Sosa*).

**2. The Arbitration Agreement Does Not Exempt Plaintiffs' ERISA Claim from Arbitration**

Plaintiffs contend that the ERISA Section 502(a) claim is exempt from arbitration because Ms. Smith's enrollment form excepts "claims subject to . . . the ERISA claims procedure regulation, and any other claims that cannot be subject to binding arbitration under governing law." (Espinal Decl. (ECF 32-2) Ex. A, p. 7). But as Plaintiffs concede (Opposition (ECF 37) p. 19:18-19), this contractual exemption is co-extensive with the DOL regulation discussed in Section C.1 above and thus applies only to a plan's internal administrative review of adverse benefits determinations, not to the statutory challenges to benefit structure that Plaintiffs raise. *See Sanzone-Ortiz*, 2015 WL 9303993 at *3. Accordingly, for the same reasons discussed in Section C.1, the contractual exemption in Ms. Smith's enrollment form does not excuse her obligation to arbitrate (nor could it

excuse Mr. Rawlings' obligation, given that his enrollment form does not even include that language).

**3. The "Additional Review" Provision Does Not Preclude Arbitration of Statutory ERISA Claims**

Plaintiffs' final argument—that the EOCs' Additional Review provisions expressly allow members to file a "civil action"—fails as well. The Additional Review provision states: "If your Group's benefit plan is subject to the Employee Retirement Income Security Act ("ERISA"), you may file a civil action under section 502(a) of ERISA." (Espinal Decl. (ECF 32-2) Ex. B, p. 93, Ex. E, p. 263).

The "Additional Review" section does not help Plaintiffs. All it says is that the member of an ERISA plan may, as the law permits, bring a "civil action" under ERISA. It does not say anything about in what forum the member may bring the action. Plaintiffs apparently assume that a "civil action" necessarily means only an action in court. But they cite no case so holding, and in fact the case law is to the contrary. As the Supreme Court has explained, a civil action does not refer exclusively to the right to bring an action in court in lieu of arbitration. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100-01 (2012); *see also*, *Beard v. Santander Consumer USA, Inc.*, No. 11-1815, 2012 WL 1292576, at *6 (E.D. Cal. Apr. 16, 2012), report and recommendation adopted, No. 11-1815, 2012 WL 1576103 (E.D. Cal. May 3, 2012) (citing *CompuCredit Corp.*). Because a civil action includes actions pursuing civil remedies regardless of forum, the Additional Review section does not reflect an agreement to exempt section 502(a) claims from arbitration.

## III.

## THE COURT SHOULD COMPEL ARBITRATION ON AN INDIVIDUAL BASIS

As discussed in the moving papers, "an ambiguous agreement [cannot] provide the necessary contractual basis for" concluding that the parties agreed to submit to class arbitration. *Lamps Plus v. Varela*, 587 U.S. __, __, 139 S. Ct. 1407, 1415 (2019). This conclusion follows "directly from [the Supreme Court's] decision in *Stolt- Nielsen*"

holding that a court may not compel class-wide arbitration when an agreement is silent about class arbitration. *Id.*; *see also Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp*., 559 U.S. 662, 685 (2010) ("An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate."). In *Lamps Plus*, the Supreme Court explained that:

> In individual arbitration, "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." [citation] Class arbitration lacks those benefits . . . Class arbitration . . . also raises serious due process concerns by adjudicating the rights of absent members of the plaintiff class . . .
>
> Because of these "crucial differences" between individual and class arbitration, *Stolt-Nielsen* explained that there is "reason to doubt the parties' mutual consent to resolve disputes through classwide arbitration." [citation] And for that reason, we held that courts may not infer consent to participate in class arbitration absent an affirmative "contractual basis for concluding that the party *agreed* to do so."

*Lamps Plus*, 139 S. Ct. at 1416 (citing *Stolt-Nielsen*, 559 U.S. at 684-87). *Lamps Plus* also noted that in California, an agreement is ambiguous "when it is capable of two or more constructions, both of which are reasonable." *Id*. at 1414-15 (citing *Varela v. Lamps Plus, Inc.*, 701 Fed. Appx., 670, 672 (9th Cir. 2018)).

The arbitration agreement here does not speak to class arbitration at all, much less unambiguously reflect an agreement to arbitrate class claims. Plaintiffs argue that the agreement's use of the term "any claim" implies an intention to allow class arbitration. But that is a strained construction of "any claim," which in context indicates an agreement to arbitrate any claim that a given individual might bring; if the parties had meant to agree to class arbitration, that would be a strange and vague way to say it. In any event, at most Plaintiffs have identified an arguable ambiguity, but that is insufficient under *Lamps Plus* to supply the requisite intent. *Lamps Plus*, 139 S. Ct. at 1416; *see also Hunter*, 434 F.Supp.3d at 780 (holding that there was "no clear provision for class-wide or group arbitration" in Kaiser arbitration agreement). Indeed, *Lamps Plus* is directly on point because the arbitration provision there extended to "any and all disputes claims or

controversies." *Lamps Plus*, 139 S. Ct. at 1427 (Sotomayor, J., dissenting). Despite this language, which is materially identical to the "any claim" language here, the Supreme Court concluded that provision was ambiguous with regard to class arbitration. *Id.* at 1416.

Plaintiffs' authority does not compel a different result. *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2008), *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113 (2d Cir. 2011), and *Southern Communs. Servs. v. Thomas*, 720 F.3d 1352 (11th Cir. 2013) were all decided before *Lamps Plus.* That alone is sufficient reason to disregard them. Further, those cases all arose in a different procedural context: namely, judicial review of an arbitrator's decision that a claim was subject to arbitration. In that context, the reviewing court's only task was to determine whether the arbitrators actually construed the arbitration contracts, *not* whether the arbitrators *correctly* did so. So long as the arbitrators were "arguably construing" the contracts, the courts had no power to overrule their determinations, even if they disagreed with them. *See Oxford Health Plans LLC*, 569 U.S. at 571-73; *Jock*, 646 F.3d at 122; *Southern Communs. Servs*., 720 F.3d at 1359-60. Thus, none of those courts actually ruled that an arbitration provision impliedly authorized arbitration of class-wide issues.

## IV.

## THE COURT SHOULD STAY LITIGATION

This court should stay the litigation as to all arbitrable claims. *Alexander v. Anthony Int'l*, *L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). Further, even if the court concludes that only one of Plaintiffs' two claims is arbitrable, the court has discretion to stay the entire case pending resolution of the arbitrable claim. *U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (affirming stay where trying non-arbitrable claim would duplicate effort). Similarly, if the court compels arbitration as one or both of the claims against Kaiser, this court may also stay this

litigation against DMHC. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 20, n.23 (1983) (court has discretion to stay litigation against non-arbitrating parties).[3]

Here, Plaintiffs' Section 1557 claim and ERISA claim involve similar and overlapping issues. Both claims address the extent of required coverage for wheelchairs and both require interpretation of state and federal law bearing on that issue, so concurrent litigation in separate forums would result in considerable duplication of effort and risk inconsistent outcomes. Similarly, the claims against the DMHC raise identical issues to the claims against Kaiser. The Court should accordingly stay litigation of the claims against the DMHC as well, because otherwise the Court would allow Plaintiffs to effectively avoid arbitration through the artifice of alleging identical claims against Kaiser's regulator. Thus, for the sake of judicial economy, to avoid inconsistent rulings, and to give force to Plaintiffs' agreement to arbitrate, this Court should stay the litigation as a whole pending completion of the arbitration.

Dated: March 25, 2022

By /s/ A. Alexander Kuljis

MOE KESHAVARZI
JOHN T. BROOKS
A. ALEXANDER KULJIS
Attorneys for Defendant
KAISER FOUNDATION HEALTH PLAN, INC.

[3] If the CAA applies—it does not—the Court retains discretion to issue a total stay of the litigation. Cal. Code Civ. Proc. § 1281.4.