UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE SMITH, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>MARY WATANABE, et al.,<br><br>            Defendants. | Case No. 21-cv-07872-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 32 |

Pending before the Court is Defendant Kaiser Foundation Health Plan, Inc.'s ("Kaiser") motion to compel arbitration, briefing for which is complete. *See* Dkt. Nos. 32, Def.'s Motion ("Mot."); 37, Pls'. Opp. ("Opp."); 41, Defs.' Reply ("Reply").[1]  The Court **GRANTS** the motion.

I.     **BACKGROUND**

Plaintiffs allege that they are enrolled in small group health insurance plans with Kaiser. *See* Dkt. No. 12 ("Am. Compl.") ¶¶ 16, 17.  Plaintiff Smith enrolled in a Kaiser healthcare plan in 2017.  *See* Dkt. No. 32-2, Ex. A.  Plaintiff Smith's Evidence of Coverage document contains the terms of her agreement with Kaiser.  *See* Dkt. No. 32-2, Ex. B, ("Smith EOC").  Plaintiff Rawlings enrolled in a Kaiser healthcare plan in 2020.  *See* Dkt. No. 32-2, Ex. C.  Plaintiff Rawlings' Evidence of Coverage document contains the terms of his agreement with Kaiser.  *See* Dkt. No. 32-2, Ex. E, ("Rawlings EOC").  Plaintiffs' Evidence of Coverage documents (collectively "EOCs") contain substantially similar terms.  This health care coverage is provided through the plaintiffs' employers.  *See id*.

"In 2010, Congress enacted the Patient Protection and Affordable Care Act" ("ACA") with the aim of "increas[ing] the number of Americans covered by health insurance and decreas[ing]

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted.  *See* Civil L.R. 7-1(b).

the cost of health care." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012). The ACA requires most Americans to maintain "minimum essential" coverage, which they can do through a variety of health insurance plans provided by their employer, the government, or private carriers. *See* 26 U.S.C. §§ 5000A(a)-(f). The ACA mandates that all individual and small group plans cover ten broad categories of essential health benefits ("EHBs"), including "[r]ehabilitative and habilitative services and devices." *See* 42 U.S.C. § 18022(b)(1)(G).

The ACA, however, does not compel plans to cover everything that might fall under the broad rubric of rehabilitative or habilitative services or devices. Instead, it directs the Secretary of Health and Human Services ("HHS") to define, subject to certain constraints, the specific "items and services" that must be covered within the enumerated categories of EHBs. *See* 42 U.S.C. § 18022(b)(1). The only Congressional limitation on the Secretary's power in that regard is that the scope of coverage for EHBs must be "equal to the scope of benefits provided under a typical employer plan[.]" *See* 42 U.S.C. § 18022(b)(2)(A).

The HHS Secretary, in turn, adopted the "benchmark" approach to specify what must be covered within each EHB category. *See* 45 C.F.R. §§ 156.20, 156.110; 156.111. Under the benchmark approach, each state is required to select one typical benefit health plan that health plans throughout the state may use as a model. *See id*. A plan providing EHBs must offer benefits that are "substantially equal" to the "benchmark" plan set by the state. *See* 45 C.F.R. § 156.115(a)(1).

In 2012, the California Legislature selected the Kaiser Small Group HMO 30 plan as the state's "Benchmark Plan." *See* Cal. Health & Safety Code § 1367.005(a)(2)(A); Cal. Ins. Code § 10112.27(a)(2)(A). The 2014 version of Kaiser's Small Group HMO 30 plan is presently California's Benchmark Plan. *See* Cal. Health & Safety Code §1367.005. In its list of covered "durable medical equipment" ("DME"), the Benchmark Plan does not include wheelchairs. *See id*.

Plaintiffs allege that "[a]ll Kaiser qualified health plans [] completely exclude or impose a $2,000 annual dollar limitation and 'home use' rule on the coverage of wheelchairs." *See* Am. Compl. ¶ 8. Plaintiffs further allege "[n]either California's benchmark plan nor any Kaiser

2

qualified health plan provides any exceptions or modifications to ensure that people with disabilities have meaningful access to appropriate wheelchairs." *Id*. ¶ 9.

Plaintiffs aver that "[t]he exclusion of wheelchairs from the California EHB-benchmark plan [] discriminates against people with disabilities" under Section 1557. *Id*. ¶ 10. Plaintiffs, in addition, assert an ERISA claim against Kaiser challenging Kaiser's $2,000 cap for "supplemental DME" coverage. *Id*. ¶¶ 59-60.

Kaiser moves to compel arbitration based on the mandatory arbitration provision ("Arbitration Agreement") included in the membership agreements between Kaiser and each plaintiff. *See* Mot. at 2. The plaintiffs acknowledge that they entered into an agreement with Kaiser that describes the disputes subject to arbitration. *See* Opp. at 2; Dkt. No. 32-2, Espinal Decl. Supp. Def.'s Mot. to Compel, ¶¶ 4, 6. Each plaintiff's Evidence of Coverage ("EOC") document contains the following arbitration provision:

> **Scope of arbitration**
> Any dispute shall be submitted to binding arbitration if all of the following requirements are met:
>
> - The claim arises from or is related to an alleged violation of any duty incident to or arising out of or relating to this *EOC* or a Member Part's relationship to Kaiser Foundation Health Plan, Inc. ("Health Plan"), including an claim for medical or hospital malpractice (a claim that medical services or items were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered), for premises liability, or relating to the coverage for, or delivery of, services or items, irrespective of the legal theories upon which the claim is asserted
>
> - The claim is asserted by one or more Member Parties against one or more Kaiser Permanente Parties or by one or more Kaiser Permanente Parties against one or more Member Parties
>
> - Governing law does not prevent the use of binding arbitration to resolve the claim

Dkt. No. 32-2, Espinal Decl. Supp. Def.'s Mot. to Compel, Ex. B at 93-94, Ex. E at 263. The agreement goes on to state:

> Members enrolled under this *EOC* thus give up their right to a court or jury trial, and instead accept the use of binding arbitration except that the following types of claims are not subject to binding

3

arbitration:

- Claims within the jurisdiction of the Small Claims Court
- Claims subject to a Medicare appeal procedure as applicable to Kaiser Permanente Senior Advantage Members
- Claims that cannot be subject to binding arbitration under governing law

Dkt. No. 32-2, Espinal Decl. Supp. Def.'s Mot. to Compel, Ex. B at 94, Ex. E at 264.

Each EOC contains a California choice of law provision. *See* Espinal Decl. Supp. Def.'s Mot. to Compel, Ex. B at 102, Ex. E at 272.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.* When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid

arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

## III. DISCUSSION

### A. Claims Subject to Arbitration

Plaintiffs acknowledge that they entered into contracts with Kaiser that contain arbitration provisions. *See* Opp. at 2. The Court finds that these are valid arbitration agreements that encompass Plaintiffs' claims against Kaiser, as the clauses are worded broadly to apply to "[a]ny dispute" where three conditions are met. *See* EOCs at 93-94, 263. Here, Plaintiffs have asserted claims "relating to the coverage for, or delivery of, services or items," namely, wheelchairs. *See* Am. Compl. ¶ 12. Both plaintiffs are "Member Parties" asserting a claim "against one or more Kaiser Permanente Parties[.]" *See* EOCs at 94, 264. Finally, governing law does not prevent the use of binding arbitration to resolve the claim.

#### 1. The FAA Applies to Plaintiffs' Section 1557 Claim

The FAA "requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). For a claim to be subject to the FAA, both the "contract" and "controversy" must be within the statute's scope. *See* 9 U.S.C. § 2 (2012). If the contract impacts interstate commerce, it is within the scope of the FAA. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). Here, Plaintiffs concede that Kaiser's contracts affect commerce, so whether the contract is within the scope of the FAA is not in dispute. *See* Opp. at 4-5. For the controversy to fall outside of the scope of the FAA, Plaintiffs must "show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987) (internal citations omitted). Such Congressional "intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purpose." *Id.* (internal citations omitted and alterations adopted).

Plaintiffs cite no authority supporting their claim that the text or legislative history of Section 1557 evidences a Congressional intent to exclude Section 1557 claims from arbitration.

5

1   Plaintiffs are correct that "a fundamental purpose of the ACA is to ensure that health services are
2   available broadly on a nondiscriminatory basis to individuals throughout the country." Final Rule,
3   81 Fed. Red. 31,376, 31,379 (May 18, 2016). But nothing about this purpose indicates that claims
4   arising under the statute are incompatible with arbitration. Moreover, Plaintiff cites no authority
5   in support of its statement that "Congress' intent in enacting Section 1557 [is] to provide health
6   care consumers an equal footing with health insurers." Opp. at 6. As Kaiser notes, Plaintiffs
7   identify no case in which any court has ever invalidated an arbitration agreement based on
8   contrary Congressional intent as to *any* federal statute, including Section 1557. *See* Reply at 3.
9   The Court finds that Plaintiffs have failed to establish that the FAA does not apply to their claims.

### 2. The Arbitration Agreement is not Unenforceable Under the CAA

The Court also rejects Plaintiffs' arguments that it should exercise discretion to rescind the Arbitration Agreement. As discussed above, the Arbitration Agreement does not violate the Congressional command doctrine, and as discussed below, the agreement is not unconscionable.

### B. Valid and Enforceable

#### 1. Kaiser's Arbitration Clause is not Unconscionable

Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280-81 (9th Cir. 2006). Procedural and substantive unconscionability need not be present in equal amounts. *See id.* The two are evaluated on a "sliding scale," meaning that a stronger showing of procedural unconscionability means that less evidence of substantive unconscionability is needed to establish overall unconscionability, and vice versa. *Id.*

##### i. The arbitration provision is not procedurally unconscionable

Plaintiffs advance only one argument that the Arbitration Agreement is procedurally unconscionable: that it amounts to a contract of adhesion. *See* Opp. at 10-11. California courts "recognize that showing a contract is one of adhesion does not always establish procedural unconscionability." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 n.9 (2015); *see also Nagrampa*, 469 F.3d at 1281. To determine whether a contract of

adhesion is oppressive and therefore procedurally unconscionable, California courts consider several factors, including: "(1) the relative bargaining power and sophistication of the parties, (2) the complaining parties' access to reasonable market alternatives, and (3) the degree to which an offending provision of a contract is buried in a lengthy . . . agreement." *Shierkatz Rllp v. Square, Inc.*, Case No. 15-cv-02202-JST, 2015 WL 9258082, at *9 (N.D. Cal. December 17, 2015) (internal quotation omitted); *see also Nagrampa*, 469 F.3d at 1281-84.

In weighing these factors, the Court finds a minimal degree of procedural unconscionability based on the adhesive nature of the agreements between Plaintiffs and Kaiser. The relative bargaining power between the parties favors Defendant, and the contracts were presented on a take-it-or-leave-it basis. *See* Opp. at 10-11. Plaintiffs allege that Kaiser is the largest health insurer in the state of California, but they do not allege that Kaiser was their only option among health insurance providers. *See* Am. Compl. ¶ 21. Moreover, the EOCs are fairly lengthy, at 100 pages or more, and the arbitration provisions appear on pages 74-76 (for Plaintiff Smith) and 78-80 (for Plaintiff Rawlings). *See* Smith EOC at 93-95; Rawlings EOC at 263-265.

### ii. The arbitration provision is not substantively unconscionable

In addition to procedural unconscionability, a contract must also be substantively unconscionable for a court to find the contract to be unenforceable. *See Nagrampa*, 469 F.3d at 1280-81. "[A]n arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided results.'" *Id.* (quoting Armendariz, 24 Cal.4th at 114); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). But "[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at 246 (internal quotations omitted).

First, Plaintiffs allege that Kaiser's Arbitration Agreement is substantively unconscionable because it requires claims to be heard by a tribunal that was "designed by Kaiser, only hears disputes involving Kaiser, and relies on a set of procedural rules that were explicitly developed 'in consultation with Kaiser.'" Opp. at 11. Such allegations are not enough, without showing why

7

this would result in unfair partiality, to sustain a finding of substantive unconscionability. *See Nagrampa*, 469 F.3d at 1285 (collecting cases).

Second, Plaintiffs argue that the Arbitration Agreement is unconscionable in light of the different rights and remedies available through the arbitration procedure. *See id*. The standard for whether a contract is substantively unconscionable, however, is not whether the arbitration treats claimants and respondents differently than courts treat litigants, but whether it treats claimants and respondents differently from each other. *See Nagrampa*, 469 F.3d at 1281 ("'The paramount consideration in assessing conscionability is mutuality.'" (quoting *Abramson v. Jupiter Networks, Inc.*, 115 Cal. App. 4th 638, 644, 9 Cal. Rptr. 3d 422, 427 (2004)) (alterations adopted)).

Finally, Plaintiffs argue that the absence of fee-shifting provisions contributes to the agreement's substantive unconscionability. *See* Opp. at 11. Plaintiffs' argument fails because fee-splitting provisions are "not per se substantively unconscionable under California law." *Nagrampa*, 469 F.3d at 1285 (citing Cal. Civ. Proc. Code § 1284.2). Plaintiffs' comparison of the absence of fee-shifting provisions and injunctive relief to the inaccessibility and unaffordability of the arbitration available to plaintiffs in *OTO, L.L.C. v. Kho* also fails. That case is distinguishable on several grounds. First, the *OTO* court found the contract unconscionable, but it required only a minimal degree of substantive unconscionability due to high procedural unconscionability. *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 130, 447 P.3d 680, 693 (2019). Second, the *OTO* court noted that it treated arbitration of wage claims cases differently from "the arbitration of other types of disputes." *Id*. at 133, 695. Third, Plaintiffs' comparison is inapposite because the *OTO* court's finding was that requiring claimants to waive a speedier, more expeditious process in exchange for one more closely resembling civil litigation, without the same mechanisms to enhance accessibility and affordability, is substantively unconscionable. *See id*. at 136-137, 698.

In summary, the Court finds that the Arbitration Agreement is not unconscionable.

### 2. Plaintiffs Can Seek to Vindicate Their Rights in Arbitration

Plaintiffs argue that they are unable to vindicate their rights in arbitration. *See* Opp. at 13. Specifically, Plaintiffs argue that the lack of express availability of injunctive relief in the Arbitration Agreement or Kaiser's Rules indicates that such relief is not available. *See id*. There

is no indication, however, in the arbitration agreement or the Rules, that such relief is unavailable to claimants.

### C. All Plaintiffs' Claims Fall Within the Scope of the Agreement

#### 1. Plaintiffs' ERISA Claim is Arbitrable

Plaintiffs advance several arguments in support of the proposition that their ERISA claims are not arbitrable, but each one fails. First, Plaintiffs argue that Plaintiff Smith's enrollment form's language providing that "claims subject to [] the ERISA claims procedure regulation[]" are not subject to binding arbitration exempts Plaintiffs' ERISA claim from arbitration. *See* Opp. at 19 (citing Espinal Decl., Ex. A at 7) (emphasis omitted). At the outset, Plaintiff Rawlings' enrollment form contains no such language, so this argument is inapplicable to his claims. Nevertheless, this argument fails as a matter of law for Plaintiff Smith too.

The Court agrees with Kaiser that the Department of Labor ("DOL") regulation at issue, 29 C.F.R. § 2560.503-1(c) "applies to the administrative claims procedure that a plan uses to conduct reviews of claims determinations, not the process through which statutory challenges should be litigated after all administrative appeals have been exhausted[.]" *Sanzone-Ortiz v. Aetna Health of California, Inc.*, No. 15-CV-03334-WHO, 2015 WL 9303993, at *3 (N.D. Cal. Dec. 22, 2015). Here, as in *Sanzone-Ortiz*, Plaintiffs are not challenging a benefits denial per se: instead, Plaintiffs challenge alleged systematic violations under ERISA and other statutes. *See id*. Nothing in the DOL regulation proscribes arbitration of ERISA claims.

Plaintiffs next argue that their ERISA claim is not arbitrable because the parties' agreements contain language permitting Plaintiffs to file civil actions under ERISA:

> **Additional Review**
>
> You may have certain additional rights if you remain dissatisfied after you have exhausted our internal claims and appeals procedure, and if applicable, external review:
>
> - If your Group's benefit plan is subject to the Employee Retirement Income Security Act (ERISA), you may file a civil action under section 502(a) of ERISA.

Dkt. No. 32-2, Espinal Decl. Supp. Def.'s Mot. to Compel, Ex. B at 93, Ex.

9

E at 263. This clause, which provides for unspecified additional review, in no way exempts Plaintiffs' ERISA claims from arbitration. That § 502(a) of the ERISA statute permits filing suit in a United States District Court does not imply that courts are the only appropriate fora. *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100-102 (2012) ("If the mere formulation of the cause of action in this standard fashion were sufficient to establish the 'contrary Congressional command' overriding the FAA, [] valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law." (internal citation omitted)).

### D. Arbitration Limited to Individual Claims

Plaintiffs' individual claims are referred to individual arbitration because the contract is silent on the issue of class-wide arbitration. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) ("[A] court may not compel arbitration on a classwide basis when an agreement is 'silent' on the availability of such arbitration.").

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant Kaiser's motion to compel arbitration and **STAYS** the claims against Kaiser pending resolution of the arbitration. As such, Defendant Kaiser's motion to dismiss in the alternative is moot. *See* Dkt. No. 33. The Court in its discretion denies Kaiser's request to also stay Plaintiffs' claims against DMHC, which is not a party to the arbitration agreements.

The parties are directed to file a joint status report regarding the status of the arbitration with Kaiser beginning 120 days from the date of this order and continuing every 120 days thereafter unless otherwise ordered. The parties are also directed to jointly notify the Court within 48 hours of the conclusion of the arbitration proceeding.

**IT IS SO ORDERED.**

Dated:   9/27/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge