UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE SMITH, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MARY WATANABE, et al.,<br><br>　　　　Defendants. | Case No. 21-cv-07872-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 34 |

Pending before the Court is the Motion to Dismiss filed by Defendants Department of Managed Health Care and Mary Watanabe. *See* Dkt. No. 34. The Court held a hearing on the motion, *see* Dkt. No. 60, and now **GRANTS** it.

## I.    BACKGROUND

The plaintiffs in this case are two disabled individuals and a foundation that supports Independent Living Centers and programs for persons with disabilities in California. *See* Dkt. No. 12, Am. Compl., ¶¶ 16-18. Plaintiffs filed this putative class action lawsuit on October 7, 2021, alleging that Kaiser Foundation Health Plan, Inc. ("Kaiser") and the Department of Managed Health Care ("DMHC") and its Director Mary Watanabe unlawfully exclude or limit coverage for wheelchairs.

"In 2010, Congress enacted the Patient Protection and Affordable Care Act" ("ACA") with the aim of "increas[ing] the number of Americans covered by health insurance and decreas[ing] the cost of health care." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012). The ACA requires most Americans to maintain "minimum essential" coverage, which they can do through a variety of health insurance plans provided by their employer, the government, or private carriers. *See* 26 U.S.C. §§ 5000A(a)-(f). The ACA mandates that all individual and small group plans cover ten broad categories of essential health benefits ("EHBs"), including "[r]ehabilitative

and habilitative services and devices." *See* 42 U.S.C. § 18022(b)(1)(G).

The ACA, however, does not compel plans to cover everything that might fall under the broad rubric of rehabilitative or habilitative services or devices. Instead, it directs the Secretary of Health and Human Services ("HHS") to define, subject to certain constraints, the specific "items and services" that must be covered within the enumerated categories of EHBs. *See* 42 U.S.C. § 18022(b)(1). The only Congressional limitation on the Secretary's power in that regard is that the scope of coverage for EHBs must be "equal to the scope of benefits provided under a typical employer plan[.]" *See* 42 U.S.C. § 18022(b)(2)(A).

The HHS Secretary, in turn, adopted the "benchmark" approach to specify what must be covered within each EHB category. *See* 45 C.F.R. §§ 156.20, 156.110; 156.111. Under the benchmark approach, each state is required to select one typical benefit health plan that health plans throughout the state may use as a model. *See id*. A plan providing EHBs must offer benefits that are "substantially equal" to the "benchmark" plan set by the state. *See* 45 C.F.R. § 156.115(a)(1).

In 2012, the California Legislature selected the Kaiser Small Group HMO 30 plan as the state's "Benchmark Plan." *See* Cal. Health & Safety Code § 1367.005(a)(2)(A); Cal. Ins. Code § 10112.27(a)(2)(A). The 2014 version of Kaiser's Small Group HMO 30 plan is presently California's Benchmark Plan. *See* Cal. Health & Safety Code §1367.005. In its list of covered "durable medical equipment" ("DME"), the Benchmark Plan does not include wheelchairs. *See id*.

Plaintiffs allege that "DMHC is responsible for implementing and enforcing the EHB-Benchmark standards in all individual and small group managed health care plans, and ensuring that such plans are otherwise in compliance with federal and state law." Am. Compl. ¶ 19. Plaintiffs sue Director Watanabe "only in her official capacity[]" based on her enforcement of the EHB-benchmark standards. *See id*. ¶ 20. Plaintiffs aver that "[t]he exclusion of wheelchairs from the California EHB-benchmark plan [] discriminates against people with disabilities" under Section 1557. *Id*. ¶ 10.

On February 4, 2022, Defendants filed three motions. DMHC and Director Watanabe

1  (together, the "State Defendants") moved to dismiss Plaintiffs' complaint on the grounds that the
2  Court lacks subject matter jurisdiction, Plaintiffs lack standing, Plaintiffs' claims are time-barred,
3  and Plaintiffs failed to plead claims upon which relief may be granted.  Kaiser separately filed
4  motions to compel arbitration and stay proceedings and to dismiss.  *See* Dkt. Nos. 32, 33.

## II. LEGAL STANDARD

A federal court must dismiss an action when it lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject matter jurisdiction exists."  *Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks omitted).  The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).  The party invoking subject matter jurisdiction has the burden of establishing that such jurisdiction exists.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

3

fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Even if the Court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

### A. Appropriate Standard for Dismissal

At the outset, the parties dispute the appropriate standard for dismissal. Plaintiffs urge the Court to proceed on the assumption that jurisdictional dismissal would be "exceptional" because State Defendants' jurisdictional attack is factual, not facial, in that State Defendants contest the truth of the allegations asserted rather than the sufficiency of the jurisdictional allegations themselves. Opp. at 2; *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."). However, courts in the Ninth Circuit consider a sovereign immunity defense "quasi-jurisdictional[,]" allowing it to "be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, n.2 (9th Cir. 2017). In other words, whether State Defendants may invoke Eleventh Amendment sovereign immunity is quasi-jurisdictional. Therefore, even if Plaintiffs were correct that State Defendants' attack is factual so as to trigger their proposed "exceptionalness" requirement under Rule 12(b)(1), a sovereign immunity defense is still available to State Defendants under Rule 12(b)(6).

In any event, the Court agrees with Defendants that the "exceptional" dismissal standard is applicable only in federal-question jurisdiction challenges. *See Safe Air for Everyone*, 373 F.3d at 1039 ("jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional") (internal citations and quotations omitted); *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d at 927 (9th Cir. 2017) (affirming dismissal of suit based on sovereign immunity without

4

considering "exceptional" standard for dismissal); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (analogizing sovereign immunity to foreign immunity in affirming dismissal on jurisdictional grounds). Here, Defendants argue that the Court lacks subject matter jurisdiction based on the sovereign immunity they enjoy as state entities. When a motion to dismiss is premised on subject matter jurisdiction and other grounds, the Court decides whether it has subject matter jurisdiction first. *See* C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1350 (3d ed.).

### B.    Sovereign Immunity

The State Defendants challenge the Court's subject matter jurisdiction. They contend that Plaintiffs' ACA claims are barred by the Eleventh Amendment because DMHC is a state agency that has not waived its immunity to suit. As a threshold matter, subject matter jurisdiction in this case hinges on whether State Defendants have waived their sovereign immunity. In particular, the Court's analysis will focus on whether State Defendants have waived such immunity as a condition of federal funding.

The Eleventh Amendment to the U.S. Constitution embodies the principle of "sovereign immunity" and bars a federal court from hearing claims by private citizens against state governments, their agencies, or the officials of those agencies unless the state consents to suit, or Congress has expressly abrogated the state's immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 116 S. Ct. 1114 (1996); *Natural Res. Def. Counsel v. Santa Monica Baykeeper, Inc.*, 96 F.3d 420, 421 (9th Cir. 1996).

A state may consent to suit by accepting federal funding that was conditioned on a waiver of sovereign immunity. *See Holley v. California Dep't of Corr.*, 599 F.3d 1108, 1111-12 (9th Cir. 2010). To be a valid waiver, a state's consent to suit must be "unequivocally expressed in the statutory text." *Id*. (citations omitted). Courts must "indulge every reasonable presumption against waiver," and waivers "must be construed strictly in favor of the sovereign and not enlarged beyond what the statutory language requires." *Id*. (citations omitted and alterations adopted).

No party here claims that any provision of the ACA abrogates DMHC's state sovereign immunity. *See Boyden v. Conlin*, 341 F. Supp. 3d 979, 998 (W.D. Wis. 2018) ("The court agrees that no provision of the ACA purports to abrogate state sovereign immunity[.]"). Rather,

Plaintiffs argue that DMHC's acceptance of federal funds amounted to a waiver of immunity under the Rehabilitation Acts Amendments of 1986. The relevant part of that law provides that:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, *or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance*.

42 U.S.C. § 2000d-7(1) (emphasis added).

### 1. DMHC Did Not Waive Its Sovereign Immunity By Virtue of Receiving Federal Financial Assistance

#### a. Plaintiffs Concede They Cannot Allege DMHC Is Presently Receiving Direct Federal Funding, and the Record Establishes As Much

Plaintiffs correctly note that Section 1557 of the ACA is a federal statute prohibiting discrimination by an entity receiving federal financial assistance. *See* 42 U.S.C. § 18116(a). However, it appears undisputed that DMHC has not received federal funds since September 2017, five years ago. *See* Dkt. No. 62, Tr. of Hr'g at 12:21-25. Plaintiffs accordingly concede that State Defendants are not currently directly receiving federal funds.

The Court reads the Ninth Circuit's decision in *Sharer v. Oregon*, 581 F.3d 1176 (9th Cir. 2009), as controlling authority supporting DMHC's argument that it is not currently a program receiving federal financial assistance. In that case, the plaintiff sued her former employer, Oregon's Office of Public Defense Services (OPDS), alleging disability discrimination in violation of the Rehabilitation Act. That law provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added). OPDS sought summary judgment on plaintiff's § 504 claim on the ground that it was not "receiving Federal financial assistance" at the time of the alleged discrimination. *Id.* at 1177.

The Ninth Circuit agreed that OPDS was not a "program or activity receiving Federal

1  financial assistance," and therefore held that Oregon "did not waive immunity for claims brought
2  against the agency under section 504." *Id*. at 1778.  Even though ODPS's predecessor had
3  subsidized plaintiff's wages using federal funds six years before the alleged discrimination
4  occurred, the Ninth Circuit held that Section 504's reach "encompasses a department or agency
5  receiving federal funds in only those periods during which the funds are accepted." *Id*. at 1180
6  (emphasis added); *see also Arbogast v. Kansas, Dep't of Lab.*, 789 F.3d 1174, 1185 (10th Cir.
7  2015) (explaining that the *Sharer* court held that the "receipt of federal funds by Judicial
8  Department did not waive Eleventh Amendment immunity for Rehabilitation Act claims against
9  agency").  This was true even when receipt of federal funds by the related organization may have
10 economically benefitted the program accused of discrimination.  *See Sharer*, 581 F.3d at 1181.

### b. Plaintiffs Cannot Show a Waiver of Sovereign Immunity on Grounds Other than Current Receipt of Funds

Plaintiffs also argue on several grounds that State Defendants have waived immunity by virtue of having received federal financial assistance for statutory purposes even though they are not presently directly receiving federal funds.  Each of these arguments fails as a matter of law.

### i. Federal Financial Assistance Is Not Imputed to Related State Agencies Under *Sharer*

First, Plaintiffs' argument that DMHC is bound by Section 1557 on the ground that it is an integral component of a larger system composed of sister and parent departments is unavailing. *See Sharer*, 581 F.3d at 1181 (finding that organizations do not receive federal financial assistance merely because their sister, parent, or predecessor organization is or was receiving such assistance).  For purposes of this argument, Plaintiffs do not rely on the receipt of federal funding by DMHC or a predecessor agency.  Instead, Plaintiffs argue that DMHC is covered by Section 1557 because it is part of the Health and Human Services Agency (HHSA) and has a sister organization — the Department of Health Care Services (DHCS) — that administers a program that allegedly receives federal funding.

Plaintiffs point to nothing in the record that would show that DMHC can be found to have waived sovereign immunity on this basis.  Plaintiffs' footnote purporting to show that DHCS receives federal funding is inapposite because DHCS is not a party to this action.  *See* Dkt. No. 36,

Pls.' Opp., ("Opp.") at 6, n. 9. In *Sharer*, after the court established a formal distinction between the defendant agency and the related agency allegedly receiving federal funds, the court went on to analyze "whether those entities are sufficiently independent from one another to constitute separate departments or agencies under" the controlling statute. *Sharer* at 1179-80 (internal citations and quotations omitted). In concluding that the agencies in question were sufficiently distinct, the Court examined the administration and the funding sources of the agencies. Here, DMHC and DHCS are organized under different statutes and have different directors. *See, e.g.*, Cal. Wlf. & Inst. Code § 10720; Cal. Health and Safety Code §§ 1340, 1341. The two are distinct agencies, and that they have engaged in interagency agreements only reinforces this fact. *See, e.g.*, Cal. Wlf. & Inst. Code § 14132.275(p).

      **ii.**  **Past Receipt of Federal Financial Assistance Does Not Impose Section 1557 Obligations Under *Sharer***

Second, Plaintiffs' arguments regarding DMHC's receipt of federal funding in the past are unpersuasive for similar reasons. Plaintiffs make the novel argument that irrespective of when DMHC received funds, it remains obligated to comply with Section 1557 based on nondiscrimination assurances it was required to provide to the federal government under Health and Human Services ("HHS") regulations. Plaintiffs argue that Defendant DMHC is covered by § 1557 because it received and used "millions of federal dollars" between August 9, 2010 and September 18, 2017 to build "data centers" like the "Health Plan Dashboard," which DMHC currently uses to communicate online with health care consumers about the plans it regulates. *See* Opp. at 3-5.

  The relevant regulation says that if the federal government provided financial assistance in the form of personal property, then the non-discrimination assurance "will obligate the recipient for the period during which it retains ownership or possession of the property." 45 C.F.R. § 84.5(b)(2). DMHC responds that the grants were not "in the form of real property or to provide real property or structures," and also were not for "personal property," so the assurance periods applicable to such forms of assistance do not apply. Dkt. No. 42 ("Reply") at 5 (citing 45 C.F.R. § 84.5(b)(1), (b)(2)).

1       The Court agrees with Defendants.  A waiver of sovereign immunity must be statutory, not

2  regulatory, so Plaintiffs' citations to regulatory requirements are irrelevant.  *See Holley*, 599 F.3d

3  at 1111-12.  Moreover, even considering the regulations on their face, Plaintiffs fail to establish

4  that the database constituted "real property" or "personal property" so as to trigger any arguable

5  ongoing waiver of sovereign immunity that could extend beyond the period during which

6  Defendants were receiving federal funds.

### 2. Director Watanabe's Sovereign Immunity

Plaintiffs' Opposition does not address Director Watanabe's argument that she is immune from suit under the Eleventh Amendment because the allegations lack a sufficient nexus to the alleged harm.  Plaintiffs make only conclusory allegations "nam[ing] Director Watanabe under *Ex parte Young*[]" for "continu[ing] to implement the discriminatory policy[.]"  Pl.'s Supp. Br. at 4. The Court finds dismissal of Watanabe is warranted on this ground.

### C.   Injunctive Relief is Not Available

Plaintiffs argue that injunctive or declaratory relief may be available under *Greater L.A. Council on Deafness v. Zolin*, 812 F.2d 1103, 1107-1112 (9th Cir. 1987).  In *Zolin*, the Ninth Circuit remanded to the district court, but only for consideration of whether declaratory relief was available against defendants who were *not* protected by any form of immunity.  *See id.* (rejecting quasi-judicial immunity, legislative immunity, qualified immunity, lack of involvement in allegedly discriminatory conduct, and Eleventh Amendment Immunity as defenses for the county and individual defendants, and remanding in any event for consideration of declaratory but not injunctive relief in light of the cessation of federal funding).  The *Zolin* court clarified that injunctive relief is not available against an entity that is not presently receiving federal financial assistance.  *See id.* at 1111 ("We cannot agree, however, that an injunction ordering an end to discriminatory behavior may properly issue under section 504 where, as here, federal funding has ended and there is no indication that it will be renewed.  The mandate of section 504 is simply inapplicable to future conduct unless there is a showing that the program or activity in issue is

receiving, or in the future will likely receive, federal funding.").[1]  Here, suit against DMHC is barred by the Eleventh Amendment, and Plaintiffs fail to advance sufficient allegations to sustain a claim against Director Watanabe.  So the Court's finding that Plaintiffs fail to establish subject matter jurisdiction in the face of Defendants' invocation of sovereign immunity also bars Plaintiffs' claim for injunctive relief.[2]

**IV. CONCLUSION**

The Court **GRANTS** State Defendants' motion to dismiss with leave for Plaintiffs to amend the Complaint.  Any amended complaint must be filed within twenty-eight (28) days from the date of this order.

**IT IS SO ORDERED.**

Dated:   9/27/2022

*Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[1] Plaintiffs fail to proffer any facts plausibly suggesting that DMHC is likely to receive federal funding in the future.  *See* Opp. at 8 ("In light of the enormous federal role in regulating and financing health plans under the ACA, and the recent history of direct federal grants to the department, it is likely that DMHC will again be a direct recipient of federal financial assistance during the pendency of this action.").  Given the undisputed fact that DMHC stopped accepting federal assistance in 2017, there simply is no basis for Plaintiffs' assertion that this decision is likely to be reversed, especially in light of the requirements that a purported waiver of immunity must be "unequivocal" and "construed strictly in favor of the sovereign."  *Holley*, 599 F.3d at 1111-12.

[2] Shifting gears, Plaintiffs now assert in their supplemental brief that they "seek declaratory relief . . . ."  Dkt. No. 63 at 4.  But the complaint contains no such request for declaratory relief.  Dkt. No. 1.