CLAUDIA CENTER – 158255
SILVIA YEE – 222737
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
3075 Adeline Street, Suite 210
Berkeley, California  94703
Telephone:     (510) 644-2555
Email:          ccenter@dredf.org
                syee@dredf.org

ERNEST GALVAN – 196065
MICHAEL S. NUNEZ – 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email:          egalvan@rbgg.com
                mnunez@rbgg.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| GRACE SMITH and RUSSELL RAWLINGS, on behalf of themselves and all others similarly situated, and CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, a California nonprofit corporation, | Case No. C 4:21-cv-07872-HSG |
| Plaintiffs, | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | Judge:    Haywood S. Gilliam, Jr. |
| CALIFORNIA HEALTH AND HUMAN SERVICES AGENCY and CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE, | Trial Date:        None Set |
| Defendants. | |

Individual and representative Plaintiffs Grace Elizabeth (Beth) Smith and Russell Rawlings, on behalf of themselves and all others similarly situated, along with Plaintiff California Foundation for Independent Living Centers (CFILC), an organization, allege:

## INTRODUCTION

1. Plaintiffs bring this action to challenge the exclusion of wheelchairs as an essential health benefit by the California state agency defendants, and to show that this exclusion discriminates on the basis of disability and unlawfully denies Plaintiffs meaningful access to wheelchairs by qualified health plans. Defendants are the California Health and Human Services Agency (CalHHS) and the California Department of Managed Health Care (DMHC).

2. Plaintiffs Smith and Rawlings are people with disabilities who are enrolled in qualified health plans in the State of California. They bring this complaint on behalf of themselves and those similarly situated.

3. Plaintiff CFILC is a nonprofit organization that serves and supports more than twenty Independent Living Centers across the state and leads several state-wide programs for Californians for disabilities. Plaintiff CFILC's constituents include people with disabilities who are enrolled in or covered by qualified health plans in the State of California, and who are deterred from enrolling in such plans.

4. Plaintiffs Smith and Rawlings and Plaintiff CFILC's constituents require wheelchairs due to their disabilities, but their health plans either exclude or place a $2,000 annual limitation on the coverage of medically necessary wheelchairs. The actual cost of a medically necessary wheelchair can exceed $40,000 – meaning that people with disabilities must either seek alternative sources of health insurance coverage, pay the remaining cost out-of-pocket, if they can, or go without the mobility device that they need. This can leave people bankrupt, immobile, and/or resorting to the use of an inferior or broken wheelchair that puts their health and safety at risk.

5. In enacting the Affordable Care Act (ACA), Congress sought to ensure that all individuals, including individuals with disabilities, have equal and comprehensive access to health insurance coverage. The ACA requires all individual and small group health plans to cover

SECOND AMENDED CLASS ACTION COMPLAINT

essential health benefits (EHBs), including "rehabilitative and habilitative services and devices," without exclusions, annual dollar caps, or other forms of discriminatory benefit design. 42 U.S.C. §§ 18022, 300gg-11.[1] These ACA-regulated plans are referred to as "qualified health plans." Each State selects an "EHC benchmark plan" as a reference point for the health care benefits that such health plans must cover. 45 C.F.R. § 156.100. The benchmark plan cannot have a benefit design that discriminates on the basis of disability. 45 C.F.R. §§ 156.110(d), 156.125.

6.     Federal law prohibits disability discrimination in health programs and activities that receive federal financial assistance. Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Section 1557 of the Affordable Care Act similarly prohibits discrimination on the basis of disability in "any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a).

7.     The State of California selected, and Defendants codified and now implement and enforce, the 2014 Kaiser Foundation Health Plan Small Group HMO 30 plan as its EHB benchmark plan. But this plan fails to include wheelchairs as a covered essential health benefit. *See* Cal. Code Regs. tit. 28, § 1300.67.005. It also includes a "home use" rule.[2] In turn, qualified health plans in California routinely exclude or impose a $2,000 annual dollar limitation and "home use" rule on the coverage of wheelchairs. This is true of all qualified health plans in California offered by Kaiser, the largest provider of qualified plans in the small group and individual markets.

8.     California's EHB benchmark plan provides no exceptions or modifications to

---

[1] This does not mean that the ACA requires all health plans to cover all treatments for all people at minimal or no cost to the individual. Plans can still use clinically indicated, reasonable medical management techniques when approving or denying services. 45 C.F.R. § 156.125. Plans can vary in terms of enrollee cost-sharing, plan premiums, the network of providers offered, and other factors. Insurers may offer plan-specific co-payments, co-insurance, and deductibles that are consistent with annual out-of-pocket limits. 42 U.S.C. §§ 18022(c), 300gg-6.

[2] Under its "home use" rule, Kaiser will only cover wheelchairs intended and appropriate for use inside the user's home. Thus, for example, if an individual can move around their home with a walker or by crawling, but they need a wheelchair to travel even 15 feet outside their home, then the wheelchair would not be covered.

1   ensure that people with disabilities have meaningful access to appropriate wheelchairs. In turn,

2   qualified health plans do not provide such modifications.

3       9.      The exclusion of wheelchairs from the California EHB benchmark plan

4   discriminates against people with disabilities in violation of Section 504 of the Rehabilitation Act

5   and Section 1557 of the Affordable Care Act.

6       10.     Through this lawsuit, Plaintiffs seek enforcement of their rights and the coverage of

7   medically necessary wheelchairs for themselves, their constituents, and/or all others similarly

8   situated. They seek injunctive relief requiring Defendants to change their policies and practices

9   regarding the coverage of medically necessary wheelchairs in regulated health plans. These

10  changes are necessary to remedy violations of federal laws and to ensure that persons with

11  disabilities have access to the equipment they need to move around, leave their homes, maintain

12  employment, and participate in their communities.

13                          **JURISDICTION AND VENUE**

14      11.     This Court has jurisdiction over the parties to this action. Plaintiffs Smith and

15  Rawlings and members of the proposed Class are residents of California. Plaintiff CFILC is a

16  resident of California, as are its constituents. All Defendants have their principal place of business

17  in, and engaged in the misconduct alleged herein in, the State of California. Jurisdiction over all

18  Defendants is further proper under 28 U.S.C. § 1343.

19      12.     This Court has subject matter jurisdiction over this action. Federal question

20  jurisdiction exists based on the assertion of claims under Section 1557 and Section 504.

21      13.     Venue for this action is proper in the Northern District because a substantial part of

22  the events or omissions giving rise to the claim occurred in this District, and because the two

23  entity Defendants reside in this district for purposes of venue. 28 U.S.C. § 1391(b)(1), (2), (c)(2).

24                              **PARTIES**

25  **The Plaintiffs**

26      14.     Individual and representative Plaintiff Beth Smith is a resident of Albany,

27  California and requires the use of a power wheelchair for mobility. Ms. Smith is a 62-year-old

28  woman who has cerebral palsy and a traumatic brain injury. Ms. Smith is enrolled in a Kaiser

Permanente Small Group Gold 80 HMO plan, which she obtained through her employer. Ms. Smith's Kaiser plan imposes a $2,000 annual dollar limitation and "home use" rule on its coverage of medically necessary wheelchairs. Plaintiff Smith is a "qualified individual with a disability" within the meaning of Section 504 of the Rehabilitation Act. 29 U.S.C. §§ 705(20), 794.

15.     Individual and representative Plaintiff Russell Rawlings is a resident of Sacramento, California and requires the use of a power wheelchair for mobility. Mr. Rawlings is a 44-year-old man who has cerebral palsy. Mr. Rawlings is enrolled in a Kaiser Permanente Small Group Platinum HMO A plan, which he obtained through his employer. Mr. Rawlings' Kaiser plan imposes a $2,000 annual dollar limitation and "home use" rule on its coverage of medically necessary wheelchairs. Plaintiff Rawlings is a "qualified individual with a disability" within the meaning of Section 504 of the Rehabilitation Act. 29 U.S.C. §§ 705(20), 794.

16.     The California Foundation for Independent Living Centers is a nonprofit corporation duly organized under the laws of California. Its mission is to increase access and equal opportunity for people with disabilities by supporting and building the capacity of Independent Living Centers (ILCs) throughout the State of California and by leading a number of state-wide programs for Californians with disabilities. Plaintiff CFILC has standing to challenge the policy that is the subject of this complaint. CFILC is led by a board that is majority (more than 51 percent) people with disabilities, and each board member is an Executive Director of an ILC. CFILC serves and supports more than twenty ILCs across the state of California. Each ILC is led by a board that is majority (more than 51 percent) people with disabilities. ILCs provide services and resources to support community living and independence of people with disabilities. Plaintiff CFILC is accountable to and responsive to its constituents, who include Californians with disabilities and the board, staff, and volunteers of each ILC. CFILC's constituents include people with disabilities who are enrolled in qualified health plans and who cannot obtain the wheelchair or wheelchair repair they need because of the discriminatory policies limiting coverage of medically necessary wheelchairs. CFILC's constituents also include people who are deterred from enrolling in qualified health plans because of the discriminatory policies limiting coverage of medically necessary wheelchairs. These constituents have standing to challenge the policy that is

the subject of this complaint, and there is no need for individual constituents to participate in this litigation. Access to appropriate wheelchairs is essential to the full integration and inclusion of people with disabilities, and this litigation advances CFILC's purposes.

**The Defendants**

17.     Defendant California Health and Human Services Agency (CalHHS) is the state agency that oversees a wide range of federally funded health programs, services, and activities in the State of California, including all programs, services, and activities of the Department of Managed Health Care (DMHC). *See* Cal. Gov't Code § 12803(a); Cal. Health & Safety Code § 1341(a); California Health & Human Services Agency, Departments & Offices, https://www.chhs.ca.gov/about/departments-and-offices/. Under California law, Defendant CalHHS, through its secretary, must hold responsible the head of DMHC for its administrative, fiscal, and program performance, and must periodically review DMHC's operations and evaluate its performance. Cal. Gov't Code § 12800(b). Defendant CalHHS must approve DMHC's budget and seek to improve its organizational structure, operating policies, and management information systems. *Id.* Defendant CalHHS receives federal financial assistance within the meaning of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act.

18.     Defendant California Department of Managed Health Care (DMHC) is the state department that oversees all private managed health care plans in the State of California and is responsible for implementing and enforcing the EHB standards in all individual and small group managed health care plans. Defendant DMHC determines whether each qualified health plan across the State meets the standards set out in state and federal law. Defendant DMHC receives federal financial assistance within the meaning of Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act.[3]

---

[3] The district court in this case previously determined that Defendant DMHC does not receive federal financial assistance. Plaintiffs seek to preserve all issues for appeal and therefore reallege herein the receipt of federal financial assistance. Further, as stated *infra*, Plaintiffs seek declaratory relief against all defendants. *See Greater L.A. Council on Deafness v. Zolin*, 812 F.2d 1103, 1113 (9th Cir. 1987).

**CLASS ACTION ALLEGATIONS**

19.     This action is brought by Plaintiffs on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent the following class:

> All persons with mobility disabilities who need or will need coverage for acquiring, maintaining, or replacing a medically necessary wheelchair and who are or who will be enrolled in or covered by an individual or small group qualified health plan in the State of California with no wheelchair coverage or with coverage that places dollar caps, "home use" rules, or other special limits on coverage of medically necessary wheelchairs.

20.     Based on the prevalence of qualified health plans in the State of California, and of people with mobility disabilities that require a wheelchair, there are likely thousands of class members.

21.     Many questions of law and fact in this action are common to the class and include the following:

        a.     Whether Defendants' wheelchair policies discriminate on the basis of disability within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794;

        b.     Whether Defendants' wheelchair policies discriminate on the basis of disability within the meaning of Section 1557 of the ACA, 42 U.S.C. § 18116; and

        c.     Whether Plaintiffs and class members are entitled to an Order enjoining the Defendants from implementing or continuing their wheelchair policies in their current form.

22.     The individual Plaintiffs' claims are typical of the class members' claims. Each of the individual Plaintiffs and class members has a mobility disability and needs a wheelchair for mobility, resides in California, and is enrolled in a qualified health plan. Each of them needs declaratory and injunctive relief in order to obtain, or in the future obtain, the wheelchair or wheelchair repair that they need to function.

23.     The Plaintiffs can and will fairly and adequately represent and protect the interests of the class. Plaintiffs have no interests that conflict with or are antagonistic to the interests of class members. Plaintiffs have retained attorneys who are competent and experienced in class actions, and particularly those that relate to the rights of people with disabilities. No conflict exists

between the Plaintiffs and class members.

24.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy. Many questions of law and fact are common to the class, and the requested declaratory and injunctive relief will affect the health care benefits of all class members.

25.     In the absence of a class action, Californians with disabilities enrolled in qualified health plans will continue to be deprived of the wheelchairs that they need to function, maintain their jobs, and participate in their communities.

**OVERVIEW OF SECTION 504 OF THE REHABILITATION ACT**

**AND THE AFFORDABLE CARE ACT**

26.     In 1973, President Richard Nixon signed the Rehabilitation Act, the first broad-based federal anti-discrimination law to benefit persons with disabilities in the United States. The heart of the Rehabilitation Act is Section 504, which provides that programs or activities that receive federal financial assistance may neither discriminate against persons with disabilities nor exclude such persons from participation in or the benefits of such programs or activities. 29 U.S.C. § 794(b). Section 504 defines "program or activity" to include "all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government … any part of which is extended Federal financial assistance." *Id.*

27.     In 1985, the Supreme Court reasoned that under Section 504, "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). "The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Id.* In considering whether meaningful access is denied, a court should evaluate the purposes of the program in question and the evidence of exclusion. *Id.* at 302-04.

28.     The Affordable Care Act (ACA) was enacted in 2010 and significantly reformed the U.S. healthcare system. The purpose of the ACA is to improve access to and the comprehensiveness of health insurance coverage. Prior to the ACA, people with disabilities were

commonly denied or terminated from health coverage, faced annual and lifetime benefit limits, and could not find affordable coverage.[4] Even if a disabled individual could find health insurance, it would often exclude coverage of pre-existing conditions, fail to offer essential benefits, or otherwise limit benefits based on health status or disability. With the ACA, Congress explicitly outlawed these longstanding discriminatory policies, and required that health care plans offer certain minimum features to meet the basic healthcare needs of all Americans, without dropping them unexpectedly or denying care because of their race, age, sex, or disability.[5]

29.     Defendant CalHHS receives billions of dollars of federal financial assistance each year, and thus its activities are subject to the inclusion and anti-discrimination requirements of Section 504.

**Guaranteed Package of Essential Health Benefits**

30.     The ACA required health care plans to improve the scope of their covered benefits. Specifically, Congress required all individual and small group health plans—whether offered on- or off-exchange—to cover ten categories of essential health benefits, including "rehabilitative and habilitative services and devices," without exclusions or annual dollar limitations. 42 U.S.C. §§ 18022, 300gg-6, 300gg-11; 45 C.F.R. § 147.126(a)(2).[6] These are considered qualified health plans.

31.     The ACA relies upon States to further define the package of essential health benefits, within parameters. State agencies identify a "base-benchmark plan" that meet the requirements of the ACA. 45 C.F.R. § 156.100. In California, the state agency responsible for

---

[4] See, e.g., H. Stephen Kaye, Disability-Related Disparities in Access to Health Care Before (2008–2010) and After (2015–2017) the Affordable Care Act, 109 Am. J. Pub. Health, no. 7, 1015–21 (July 2019); Valarie K. Blake, An Opening for Civil Rights in Health Insurance After the Affordable Care Act, 36 B.C. J. L. & Soc. Just. 235 (2016) (describing pre-ACA health insurance discrimination and how the ACA addressed those issues).

[5] Sara Rosenbaum et al., Crossing the Rubicon: The Impact of the Affordable Care Act on the Content of Insurance Coverage for Persons with Disabilities, 25 Notre Dame J. L. Ethics & Pub. Pol'y 235 (2014) (describing ACA nondiscrimination provisions and focusing on the function of essential health benefits).

[6] The prohibition on exclusions and caps in qualified health plans does not mean that such plans must cover all treatments for all people at minimal or no cost to the individual. *See* n.1.

identifying the ACA base-benchmark plan is Defendant CalHHS, acting through its sub-department, Defendant DMHC.

32.    In addition to mandating a package of essential health benefits, the ACA prohibits pre-existing condition exclusions and establishes that, as a minimum criterion, qualified health plans must not use "benefit designs that have the effect of discouraging the enrollment in such plan by individuals with significant health needs." *See* 42 U.S.C. §§ 300gg-3(b)(1), 18022, 18031(c)(1)(A).

33.    Wheelchairs are the quintessential rehabilitative and habilitative device within the meaning of the ACA's essential health benefits provisions. Thousands of disabled individuals rely upon wheelchairs for their basic mobility.

34.    Upon passage of the ACA, Congressman George Miller expressed his understanding of "rehabilitative and habilitative services and devices" as "benefits [that] are of particular importance to people with disabilities and chronic conditions … include durable medical equipment" and "will not be limited to 'in-home' use only." 111 Cong. Rec. 1882 (March 21, 2010).

**No Discrimination on the Basis of Disability**

35.    In addition to the inclusion and anti-discrimination requirements of Section 504, the ACA has its own anti-discrimination requirement. Section 1557 of the ACA prohibits discrimination on the basis of disability in health programs or activities receiving federal financial assistance. 42 U.S.C. § 18116(a).

36.    The U.S. Department of Health and Human Services issued regulations implementing Section 1557. The regulations define actionable discrimination to include discriminatory health plan "benefit designs." It provides: "A health insurance issuer … [cannot employ] benefit designs that will have the effect of discouraging the enrollment of individuals with significant health needs in health insurance coverage or discriminate based on an individual's race, color, national origin, present or predicted disability, age, sex, expected length of life, degree of medical dependency, quality of life, or other health conditions." 45 C.F.R. § 147.104(e). Plans that, for example, "place[e] most or all drugs that treat a specific condition on the highest cost

tiers,"[7] or "exclude bone marrow transplants regardless of medical necessity,"[8] would run afoul of Section 1557's prohibition on discriminatory benefit design, federal guidance explains.

37.     The U.S. Court of Appeals for the Ninth Circuit has affirmed that, following the enactment of the ACA, the "meaningful access" standard developed under Section 504 must be applied with reference to the content and purposes of the statute establishing the benefit. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210-12 (9th Cir. 2020). Here, the context for the Plaintiffs' discrimination claims is the ACA and its requirement that qualified health plans cover a package of ten essential health benefits – including "rehabilitative and habilitative services and devices" – without disability discrimination.

38.     Section 504's inclusion and anti-discrimination requirement, along with the ACA's essential health benefits and nondiscrimination requirements, work together to ensure that health insurers offer benefits to meet the basic healthcare needs of all individuals, regardless of race, age, sex, national origin, and disability.

## STATEMENT OF FACTS

39.     A person with a mobility impairment that requires the use of a wheelchair has an impairment that substantially limits one or more major life activities, and therefore has a "disability" under federal nondiscrimination laws. 28 C.F.R. § 35.108(d)(2)(iii)(D).

40.     A wheelchair is a type of durable medical equipment designed for locomotion. Durable medical equipment (DME) means rehabilitation and habilitation devices that are designed for repeated use and used for the treatment of a medical condition or injury or to preserve the patient's functioning and ability to perform activities of daily living. A wheelchair is an essential form of DME for a person with a mobility impairment requiring the use of a wheelchair.

---

[7] HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. 10,750, 10,822 (Feb. 17, 2015).

[8] Center for Medicare and Medicaid Services, Qualified Plan Certification Review Tools, Information and Guidance, https://www.qhpcertification.cms.gov/s/Review%20Tools (last accessed Oct. 7, 2021), internal link to "Review Process Guide (Updated 4/30/2021)," https://www.qhpcertification.cms.gov/s/ReviewProcessGuide_2022v1.1.xlsm?v=1 (last accessed Oct. 7, 2021) (spreadsheet, 15th tab, named "Non-Discrimination Guidance", Row 20).

41.     Wheelchairs come in many forms. Some wheelchairs are manually propelled by the user or pushed by another person. Other wheelchairs are powered by electric motors or batteries. Manual and power wheelchairs can be individually configured, and customization is required for long-term use. Wheelchairs can include adaptive seating, alternative positioning, adjustable tilt or recline, transitional sizing (e.g., for a growing child), and other features that require evaluation, fitting, design, and adjustment.

42.     An appropriate wheelchair is the standard of care for people with mobility disabilities who cannot walk or who have difficulty walking. An appropriate wheelchair is one that meets the user's needs and environmental conditions, provides a proper fit and postural support, has properly configured technology, and is safe and durable. Medical professionals determine what type of wheelchair is necessary and appropriate for the user.

43.     Wheelchairs enable people with mobility disabilities to become mobile, remain healthy, and participate fully in community life. An appropriate wheelchair can increase an individual's physical function, level of activity, and control over their own bodies and movements. With proper fitting and customization, it can improve respiration and digestion, prevent life-threatening pressure sores, minimize joint sprain and pain, and reduce the progression of an individual's impairment or secondary conditions. It also increases access to health care by facilitating travel to the doctor's office, physical and occupational therapy, mental health providers, and the pharmacy. Maintenance of health, in turn, improves quality of life and decreases future health care expenses.

44.     Wheelchairs also enable people with mobility disabilities to access education, employment, family life, and their communities. With an appropriate wheelchair, an individual can move around and outside of their homes—increasing independence and enabling travel to, from, and around their school, work, the grocery store, the library, and any other place a person may need or want to go. Wheelchairs enable people with mobility disabilities to earn an income that supports themselves and their families, pursue education and a career of their interest, and gain access to employer-sponsored health insurance. They reduce the risk that an individual with a mobility disability who uses a wheelchair will be institutionalized.

45.     An appropriate wheelchair costs far more than what many insured individuals in California can pay out of pocket.[9] Manual wheelchairs intended for daily use typically cost between $3,000 and $5,000. Most power wheelchairs cost a few thousand dollars. A power wheelchair can cost up to $50,000 depending on the customizations and features that the user needs.

46.     Wheelchairs need regular maintenance and repairs. Timely and quality wheelchair repairs are necessary to ensure that a wheelchair user remains safe and mobile. Wheelchairs must be replaced about every seven years.

47.     Plaintiff Smith's power wheelchair is about ten years old. She needs a replacement wheelchair that costs at least $15,000. Plaintiff Rawlings's power wheelchair is about eight years old. He needs a power wheelchair that costs more than $8,000.

**No Coverage of Wheelchairs in California's EHB Benchmark Plan**

48.     The ACA requires all private health insurance plans offered in the individual or small group markets to cover ten categories of enumerated essential health benefits (EHBs) and the items and services within each category. 42 U.S.C. § 18022(a), (b)(1). These plans must cover, as an EHB, "rehabilitative and habilitative services and devices." *Id.* § 18022(b)(1)(G).

49.     Each State selects an "EHC benchmark plan" that establishes a baseline of the items and services that each plan, at a minimum, must cover. 45 C.F.R. § 156.100. The EHB benchmark plan must include "[r]ehabilitative and habilitative services and devices." 45 C.F.R. § 156.110(a)(7). Habilitative benefits are "[h]ealth care services and devices that help a person keep, learn, or improve skills and functioning for daily living." 45 C.F.R. § 156.115(a)(5)(i). "[R]ehabilitative and habilitative services and devices" are intended to help a person "attain, []

---

[9] *See* Prosperity Now Scorecard, California, Financial Assets & Income (more than 44 percent of California households – and 70 percent of California households with a disability – have not saved any funds for emergencies), https://scorecard.prosperitynow.org/data-by-location#state/ca; Board of Governors of the Federal Reserve System, Economic Well-Being of U.S. Households in 2021 (May 2022) (32 percent of respondents said that they would have paid a $400 unexpected expense by borrowing or selling something or said they would not have been able to cover the expense), https://www.federalreserve.gov/publications/files/2021-report-economic-well-being-us-households-202205.pdf.

regain, maintain, or prevent deterioration of a skill or function" that was either "never learned or acquired due to a disabling condition" or "lost or impaired due to illness, injury, or disabling condition."[10] An EHB benchmark plan may "[n]ot include discriminatory benefit designs." 45 C.F.R. § 156.110(d). Discriminatory benefit designs include when a plan's coverage policies, or the implementation of such policies, "discriminates based on an individual's age, expected length of life, present or predicted disability, degree of medical dependency, quality of life, or other health conditions." 45 C.F.R. § 156.125(a).

50.     Consistent with the ACA, California statute requires all individual and small group plans to cover essential health benefits. Like the ACA, California law requires that "rehabilitative and habilitative services and devices" be covered as an EHB. Cal. Health & Safety Code § 1367.005(a)(1); Cal. Ins. Code § 10112.27(a)(1) *accord* Cal. Health & Safety Code § 1367.005(a)(1)-(3); Cal. Ins. Code § 10112.27(a)(1)-(3) (stating that in addition to coverage provided by the EHB benchmark plan, coverage for "habilitative services and devices" shall be provided as required by the ACA and by "federal regulations, and guidance" implementing the ACA). California defines "habilitative services" as "health care services and devices that help a person keep, learn, or improve skills and functioning for daily living." Cal. Health & Safety Code § 1367.005(p)(1); Cal. Ins. Code § 10112.27(q)(1).

51.     California law further prohibits a "health care service plan" from "employ[ing] benefit designs that will have the effect of discouraging the enrollment of individuals with significant health needs or discriminate based on an individual's race, color, national origin, present or predicted disability, age, sex, gender identity, sexual orientation, expected length of life, degree of medical dependency, quality of life, or other health conditions." Cal. Health & Safety Code § 1399.851(a)(3); Cal. Ins. Code § 10965.5(a)(3).

52.     California selected the "Kaiser Foundation Health Plan Small Group HMO 30 plan … [as] offered during the first quarter of 2014," and as supplemented by additional State requirements, as its EHB benchmark plan. Cal. Health & Safety Code § 1367.005(a)(2)(A); Cal.

---

[10] HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. 10,750, 10,811 (Feb. 17, 2015) (codifying and explaining the final EHB regulations).

Ins. Code § 10112.27(a)(2)(A). As noted, the selected plan does not cover wheelchairs. Nevertheless, Defendants took no steps to correct and supplement the benchmark plan by adopting regulations or taking other appropriate steps to require the coverage of medically necessary wheelchairs as a component of the mandated essential health benefit of "rehabilitative and habilitative services and devices."

53.    Ensuring that qualified health plans cover all essential health benefits without discrimination is within Defendants' authority and responsibility. Defendant CalHHS, acting through its sub-department Defendant DMHC, enforces the EHB benchmark standards in all individual and small group managed health care plans in the State of California. Cal. Health & Safety Code § 1367.005; Cal. Code Regs. tit. 28, § 1300.67.005 (requiring all individual and small group contracts subject to Cal. Health & Safety Code § 1367.005 to comply with DMHC's EHB regulations, including requiring the plans to file an "EHB Filing Worksheet" that records how the plan's benefit design complies with the regulations). It performs this function by comparing the components of these plans to its EHB regulations. Defendant CalHHS regulations state which health care services and devices a qualified health plan must offer as EHBs. Cal. Code Regs. tit. 28, § 1300.67.005(c)(2), (d)(5). Where Defendant CalHHS has not included an item or services in its EHC regulations, it does not consider it to be a required element and does not enforce its coverage.

54.    Defendant CalHHS regulations require coverage of only a few items of durable medical equipment (or their repair), and only for "home use":

Durable medical equipment for home use.[11]

(A) In addition to durable medical equipment otherwise required to be covered by the Act, the plan shall cover durable medical equipment for use in the enrollee's home (or another location used as the enrollee's home). Durable medical equipment for home use is an item that is intended for repeated use, primarily and customarily used to serve a medical purpose, generally not useful to a person who is not ill or injured, and appropriate for use in the home.

---

[11] The "home use" limitation is not found in the text of the ACA or its regulations. Legislative history further supports that Congress intended there to be no "home use" rule imposed on durable medical equipment. See 111 CONG. REC. 1882 (March 21, 2010) (statement of Congressman George Miller).

(B) The plan may limit coverage to the standard equipment or supplies that adequately meet the enrollee's medical needs. …

(C) The plan shall cover durable medical equipment for home use, substantially equal to the following:

(i)     Standard curved handle or quad cane and replacement supplies
(ii)    Standard or forearm crutches and replacement supplies
(iii)   Dry pressure pad for a mattress
(iv)    IV pole
(v)     Enteral pump and supplies
(vi)    Bone stimulator
(vii)   Cervical traction (over door)
(viii)  Phototherapy blankets for treatment of jaundice in newborns[, and]
(ix)    Dialysis care equipment

Cal. Code Regs. tit. 28, § 1300.67.005(d)(5)(C). Because Defendant CalHHS did not include wheelchairs in its regulations, it does not require any coverage of wheelchairs.

55.     Wheelchairs—a quintessential DME item on which thousands of Californians with mobility disabilities rely for basic mobility—are excluded from CalHHS's essential health benefit list. There are no exceptions or modifications to ensure that people with mobility disabilities have meaningful access to appropriate wheelchairs. CalHHS does not explain, or even make mention, of this omission, even though wheeled mobility devices make up the greatest portion of assistive devices in use and even though independence in mobility is one of the most important determinants of quality of life for individuals with disabilities.

56.     By excluding wheelchairs from its list of EHBs, CalHHS permits health issuers offering plans in the individual and small group markets, including Kaiser, to continue to place discriminatory exclusions and annual dollar limitations on the coverage of medically necessary wheelchairs.

**The Experiences of the Individual Plaintiffs and the Plaintiff Class**

57.     Because of her disabilities, Plaintiff Beth Smith requires the use of a power wheelchair. Ms. Smith needs a power wheelchair in order to move around her home, visit her family, and engage in community life. She also needs a wheelchair to travel to her place of employment, Through the Looking Glass (TLG). TLG is a community-based nonprofit

organization that provides research, training, and services for families with a child, parent or grandparent that has a disability or medical issue. As a Licensed Clinical Social Worker with a background in Early Childhood Development and Child Life, Ms. Smith works as a clinical supervisor at TLG. She needs a wheelchair to get to and from her office, to move around her office while working, and to perform a wide range of daily activities.

58.     Plaintiff Smith has an urgent need for a replacement wheelchair. Her current chair is about ten years old and regularly malfunctions, requiring repair. Ms. Smith has paid out-of-pocket for multiple replacement batteries and a new seat for the chair. Additionally, Ms. Smith has felt forced to arrange at-home repairs—relying on friends, family, and hardware store screws to keep her chair running. These at-home repairs are only a temporary solution, and Ms. Smith fears that her chair could fail at any moment, which in the wrong environment or situation could be dangerous. The current chair is no longer a safe and comfortable fit for Ms. Smith, who experiences chronic pain as a result of sitting in the chair.

59.     In April 2021, Plaintiff Smith was evaluated for a replacement wheelchair by National Seating and Mobility, Inc. (NSM), a mobility equipment provider that Kaiser contracts with. NSM provided Ms. Smith with a quote of approximately $15,000 for her medically necessary power wheelchair. In the quote, it states: "The client has a $2,000 DME limit; Kaiser will only fund $2,000."

60.     On April 20, 2021, after receiving the letter from NSM, Ms. Smith filed an appeal with her Kaiser health plan. In it, she explained her disability and critical need for a new wheelchair, and she asked Kaiser to cover the cost of her medically necessary wheelchair without the $2,000 limit.

61.     On May 19, 2021, Kaiser responded to Ms. Smith's appeal and denied her request. In Kaiser's letter, it states that Ms. Smith's health plan classifies wheelchairs as "supplemental" DME and it imposes a $2,000 annual benefit limit on the cost of her wheelchair and any other "supplemental" DME items. It states that Ms. Smith would be responsible for the remaining cost of her wheelchair, which would be approximately $13,000.

62.     Because of his disabilities, Plaintiff Russell Rawlings requires the use of a power

wheelchair. Mr. Rawlings needs a power wheelchair in order to move around his home, access healthcare and other essential services, engage in community life, and access the full scope of his employment. Mr. Rawlings is a California Education Organizer at Hand in Hand, the Domestic Employers Network. He needs a power wheelchair to travel to and from his office and to attend job-related meetings and conferences across the State.

63. Plaintiff Rawlings has an urgent need for a new power wheelchair. His current chair is approximately eight years old, requires frequent repair, and lacks adequate motor power. It also lacks power tilt and has improper seating positioning (Mr. Rawlings' feet, for example, cannot reach the peddles on his current chair). This places his health and safety at risk.

64. The medically necessary power wheelchair that Mr. Rawlings needs costs approximately $10,000.

65. Mr. Rawlings' Kaiser plan classifies wheelchairs as "supplemental" DME. It imposes a $2,000 annual dollar limitation on the sum of his wheelchair and any other "supplemental" DME that he may need. This means that Kaiser does not cover more than $2,000 of Mr. Rawlings' medically necessary wheelchair. Plaintiff Rawlings did not file a grievance with Kaiser regarding its coverage of the wheelchair he needs as such a grievance would be futile, given the response that Ms. Smith received to her grievance.

66. Members of the Plaintiff Class, as well as constituents of Plaintiff CFILC, face similar barriers to obtaining the wheelchairs that their medical professionals prescribe and that they need for social integration, access to education, employment, transportation, and family life, and equal access to public spaces. Without access to appropriate mobility equipment, an individual's health, functioning, and independence can be compromised. Without access to an appropriate wheelchair, some people are unable to leave their homes or even get out of bed. Others face institutionalization because they cannot function in their own homes without a wheelchair and do not have family support.

67. As a result of Defendants' exclusion of wheelchairs from its list of essential health benefits, and its failure to otherwise ensure meaningful access to coverage of wheelchairs, the health, safety, and daily functioning of the entire Plaintiff Class is put at risk.

## FIRST CAUSE OF ACTION

Discrimination on the Basis of Disability
In Violation of Section 504 of the Rehabilitation Act
(29 U.S.C. § 794 et seq.)
By All Plaintiffs Against All Defendants

68.     Plaintiffs reallege each allegation in each of the paragraphs above as if fully set forth herein.

69.     Section 504 of the Rehabilitation Act states that no "qualified individual with a disability in the United States … shall, solely by reason of [] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The term "program or activity" includes "all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government … any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b).

70.     Defendants are programs or activities receiving federal financial assistance for purposes of Section 504.

71.     By excluding wheelchairs from the list of Essential Health Benefits, and by failing to take other steps to ensure that individuals with mobility disabilities have meaningful access to coverage for wheelchairs, despite the characteristics of a qualified health plan under the ACA, which must provide a minimum package of essential benefits and have nondiscriminatory benefit design, Defendants have violated and continue to violate Section 504.

72.     Defendants are discriminating by proxy by excluding wheelchairs from the EHB benchmark. *See Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 958 (9th Cir. 2020). The use of a wheelchair is a proxy for mobility disability. All wheelchair users have a "physical or mental impairment that substantially limits one or more major life activities," including "walking." 42 U.S.C. § 12102(1)(A), (2)(A). The U.S. Department of Justice regulations recognize that "mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function." 28 C.F.R. § 35.108(d)(2)(iii)(D).

73.     Defendants are further discriminating by intentionally adopting a benefit design

which excludes wheelchairs from the EHB benchmark. This policy directly denies the benefits of effective coverage to people with disabilities. Denied adequate coverage for medically necessary wheelchairs, individuals with mobility disabilities are limited in their daily functioning. People without disabilities experience no such limitation.

74.     Defendants are further discriminating by refusing and failing to require that insurers provide exceptions or reasonable modifications to ensure that people with disabilities have meaningful access to coverage for appropriate wheelchairs, in violation of Section 504.

75.     Further, by imposing a "home use" rule on wheelchairs, Defendants discriminate against people with disabilities within the meaning of *Olmstead v. L.C.*, 527 U.S. 581 (1999). Limiting the coverage of wheelchairs to only those intended for use within the home unjustifiably limits people with disabilities from "enjoy[ing] the benefits of community living." *Olmstead*, 527 U.S. at 599. It places people with disabilities in the position of being dependent on others for activities such as shopping or getting healthcare services and exacerbates their risk of being homebound or institutionalized.

76.     By codifying and enforcing policies that exclude or severely limit coverage of medically necessary wheelchairs, which are "rehabilitative and habilitative services and devices" that people with disabilities rely on to maintain their health, daily functioning, and independence, Defendants have created and perpetuated an EHB benefit design that discriminates on the basis of disability, in violation of Section 504. As a result, the individual Plaintiffs, others similarly situated, and the constituents of Plaintiff CFILC are denied meaningful access to durable medical equipment including wheelchairs.

77.     Plaintiffs are entitled to declaratory relief, injunctive relief, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

**SECOND CAUSE OF ACTION**

Discrimination on the Basis of Disability
in Violation of Section 1557 of the Affordable Care Act
(42 U.S.C. § 18116)
By All Plaintiffs Against All Defendants

78.     Plaintiffs reallege each allegation in each of the paragraphs above as if fully set

forth herein.

79.     Section 1557 of the ACA provides that "[a]n individual shall not, on the ground prohibited under … section 794 of title 29 [Section 504 of the Rehabilitation Act] …, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance …" 42 U.S.C. § 18116.

80.     Defendants are health programs or activities receiving federal financial assistance for purposes of Section 1557.

81.     Defendants have discriminated within the meaning of Section 1557 by codifying EHB benchmark regulations that have a benefit design that excludes coverage of medically necessary wheelchairs that people with disabilities uniquely rely on to maintain their health, daily functioning, and independence. These regulations, which all individual and small group plans in the State of California model their benefit designs after, inhibit people with disabilities from accessing the basic devices they need to leave their homes, live integrated lives, maintain employment, and live in their communities. As a result, the individual Plaintiffs, others similarly situated, and the constituents of Plaintiff CFILC are denied meaningful access to durable medical equipment including wheelchairs.

82.     Plaintiffs are entitled to declaratory relief, injunctive relief, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated, request of this Court the following:

1.     An order certifying that the action may be maintained as a Class Action and appointing Plaintiffs and Plaintiffs' undersigned counsel to represent the Class;

2.     An order for declaratory relief, stating that Defendants' policies and practices are in violation of federal laws;

3.     An order enjoining Defendants from implementing or continuing its policies and practices in their current form, or such other appropriate injunctive relief;

1       4.      An award of reasonable attorneys' fees and costs; and

2       5.      Such other and further relief as this Court deems to be just and proper.

3

4   DATED:  October 25, 2022      Respectfully submitted,

5                    ROSEN BIEN GALVAN & GRUNFELD LLP

6

7                    By:   */s/Michael S. Nunez*

8                        Michael S. Nunez

9                    Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 4:21-cv-07872-HSG

SECOND AMENDED CLASS ACTION COMPLAINT