ROB BONTA
Attorney General of California
JENNIFER G. PERKELL
Supervising Deputy Attorney General
DANE C. BARCA
Deputy Attorney General
State Bar No. 294278
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3371
  Fax:  (415) 703-5480
  E-mail:  Dane.Barca@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **GRACE SMITH and RUSSELL RAWLINGS, on behalf of themselves and all others similarly situated, and CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, a** California nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**CALIFORNIA HEALTH AND HUMAN SERVICES AGENCY; and CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE,**<br><br>Defendants. | 4:21-cv-07872-HSG<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS CALIFORNIA HEALTH & HUMAN SERVICES AGENCY AND THE DEPARTMENT OF MANAGED HEALTH CARE TO DISMISS SECOND AMENDED COMPLAINT (Fed. R. Civ. P. 12(b)(1) & 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          March 30, 2023<br>Time:          2:00 p.m.<br>Dept:          Courtroom 2, 4th Floor<br>Judge:        The Honorable Haywood S. Gilliam, Jr.<br><br>Action Filed:  10/07/2021 |

1

## TABLE OF CONTENTS

2
**Page**

3  Notice of Motion & Motion to Dismiss ........................................................................ 1

4  Statement of Issues to Be Decided ............................................................................... 1

   Memorandum of Points and Authorities ...................................................................... 2

5  Introduction .................................................................................................................. 2

6  Background ................................................................................................................... 3

7      I.      Legal Background ........................................................................................ 3

8            A.     Federal and State Law Define "Essential Health Benefits" ................. 3

             B.     The Definition of EHB Includes Coverage of Durable Medical

9                     Equipment .......................................................................................... 5

10     II.     Order Granting Motion to Dismiss FAC ..................................................... 6

       III.    Summary of Plaintiffs' Allegations in the SAC ........................................... 7

11 Legal Standard for Motion to Dismiss ........................................................................ 9

12 Argument ................................................................................................................... 11

13     I.      As Amended, The Lawsuit Is Still Barred by Sovereign Immunity .................... 11

             A.     CHHSA's Alleged Receipt of Federal Funds Cannot Be Imputed to

14                    DMHC ............................................................................................. 12

15           B.     Plaintiffs Have Failed to Adequately Allege that CHHSA Actually
                      Receives Federal Funds ..................................................................... 14

16           C.     The Complaint Establishes No Other Basis for Subject Matter
                      Jurisdiction ...................................................................................... 14

17     II.     Plaintiffs Lack Article III Standing for Their Claims Against DMHC ................ 15

18           A.     There Is No Nexus Between State Defendants and Any Alleged
                      Harm ................................................................................................ 16

19           B.     State Defendants Cannot Redress Any Harm Alleged in the SAC ......... 17

20     III.    Plaintiffs' Claim Against State Defendants Is Time Barred ............................... 18

       IV.    Plaintiffs Fail to State a Claim for Disability Discrimination ........................... 19

21           A.     Plaintiffs Cannot Establish a Denial of "Meaningful Access" to an

22                    ACA-Covered Benefit ....................................................................... 19

             B.     Non-Discriminatory Plan Design Does Not Require All Services Be

23                     Covered ............................................................................................ 21

24           C.     The SAC Does Not Support an Allegation of "Discrimination by
                      Proxy" ............................................................................................. 23

25 Conclusion ................................................................................................................ 24

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Alexander v. Choate.*
    469 U.S. 287 (1985) ................................................................................ 19, 21

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ....................................................................................... 10

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ....................................................................................... 10

*Bostock v. Clayton Cty., Ga.*
    140 S. Ct. 1731 (2020) ................................................................................... 17

*Boyden v. Conlin*
    341 F. Supp. 3d 979 (W.D. Wis. 2018) ........................................................ 11

*Cent. Delta Water Agency v. United States*
    306 F.3d 938 (9th Cir. 2002) ......................................................................... 15

*Cetacean Cmty. v. Bush*
    386 F.3d 1169 (9th Cir. 2004) .................................................................... 9, 15

*ChryslerCorp v. Brown*
    441 U.S. 281 (1979) ....................................................................................... 20

*Conservation Force v. Salazar*
    646 F.3d 1240 (9th Cir. 2011) ....................................................................... 10

*Davis v. Commonwealth Election Comm'n*
    844 F.3d 1087 (9th Cir. 2016) ....................................................................... 23

*Davis v. Guam*
    932 F.3d 822 (9th Cir. 2019) ......................................................................... 23

*Doe v. BlueCross BlueShield of Tenn.*
    926 F.3d 235 (6th Cir. 2019) ......................................................................... 18

*Doe v. CVS Pharmacy, Inc.*
    982 F.3d 1204 (9th Cir. 2020) ................................................................... 18, 19

*Greater L.A. Counsel on Deafness v. Zolin*
    812 F.2d 1103 ......................................................................................... 6, 7, 14

1

## **TABLE OF AUTHORITIES**
**(continued)**

2

Page

3

*Hall v. U.S. Dep't of Agric.*
 984 F.3d 825 (9th Cir. 2020)..................................................... 9

4

*Holley v. Cal. Dep't of Corr.*
5 599 F.3d 1108 (9th Cir. 2010)................................................... 11

6

*Levine v. Vilsack*
7 587 F.3d 986 (9th Cir. 2009).................................................... 15

8

*Lewis v. Clarke*
 137 S. Ct. 1285 (2017) ........................................................ 14

9

*Lujan v. Defenders of Wildlife*
10 504 U.S. 555 (1992)..................................................... 15, 16

11

*Mark H. v. Lemahieu*
12 513 F.3d 922 (9th Cir. 2008)................................................ 19, 20

13

*Max. Comfort Inc. v. Sec'y of Health & Hum. Servs.*
 512 F.3d 1081 (9th Cir. 2007).................................................. 21

14

*Morris v. Williams*
15 433 P.2d 697 (Cal. 1967) ..................................................... 15

16

*Nat. Res. Def. Counsel v. Santa Monica Baykeeper, Inc.*
17 96 F.3d 420 (9th Cir. 1996)................................................... 11

18

*Nat'l Ass'n for the Advancement of Multijurisdiction Prac. v. Berch*
 773 F.3d 1037 (9th Cir. 2014)................................................. 15

19

*Nat'l Fed'n of Indep. Bus. v. Sebelius*
20 567 U.S. 519 (2012) .......................................................... 3

21

*Pareto v. F.D.I.C.*
22 139 F.3d 696 (9th Cir. 1998).................................................. 10

23

*Payan v. L.A. Cmty. Coll. Dist.*
 11 F.4th 729 (9th Cir. 2021)................................................... 19

24

*Preskar v. U.S.*
25 248 F.R.D. 576 (E.D. Cal. 2008) .............................................. 17

26

*Rochester Pure Waters Dist. v. E.P.A.*
27 960 F.2d 180 (D.C. Cir. 1992) ................................................ 17

28

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004)................................................................ 10

5

*Savage v. Glendale Union High Sch. Dist. No. 205, Maricopa Cty.*
    343 F.3d 1036 (9th Cir. 2003)................................................................ 10

6

7

*Seminole Tribe v. Florida*
    517 U.S. 44 (1996)................................................................................. 11

8

9

*Sharer v. Oregon*
    581 F.3d 1176 (9th Cir. 2009)......................................................... 6, 12, 13

10

*Snoeck v. Brussa*
    153 F.3d 984 (9th Cir. 1998)................................................................. 14

11

12

*Sprewell v. Golden St. Warriors*
    266 F.3d 979 (9th Cir. 2001)................................................................ 10

13

14

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*
    594 F.2d 730 (9th Cir. 1979)................................................................ 10

15

*Vega-Ruiz v. Northwell Health*
    992 F.3d 61 (2d Cir. 2021)................................................................... 17

16

17

*Weinreich v. L.A. Cnty. Metro. Transp. Auth.*
    114 F.3d 976 (9th Cir. 1997)................................................................ 20

18

19

*Ex Parte Young*
    209 U.S. 123 (1908)............................................................................. 14

20

**STATUTES**

21

United States Code, Title 28
    § 1658(a)............................................................................................. 17

22

23

United States Code, Title 29
    § 794(a)............................................................................................... 18

24

United States Code, Title 42
    § 1395x(n)........................................................................................... 21

25

    § 2000d-7(1).................................................................................... 6, 11

    § 18022.......................................................................................... 3, 4, 5

26

    § 18022(b)(1)(G)................................................................................... 3

27

    § 18022(b)(2)(A)......................................................................... 3, 8, 17

    § 18116................................................................................................. 9

28

## TABLE OF AUTHORITIES
### (continued)

**Page**

Affordable Care Act of 2010 .................................................................................................. *passim*

CALIFORNIA CIVIL PROCEDURE CODE
   § 338(a) ................................................................................................................................. 17

CALIFORNIA GOVERNMENT CODE
   § 12806 ............................................................................................................................. 9, 12

CALIFORNIA HEALTH & SAFETY CODE
   § 1340 ............................................................................................................................... 9, 12
   § 1367.005 ............................................................................................................................ 6, 9
   § 1367.005(a) ......................................................................................................................... 22
   § 1367.005(a)(1)–(5) .............................................................................................................. 4
   § 1367.005(a)(1), (2) .............................................................................................................. 4
   § 1367.005(a)(2) ................................................................................................................ 4, 19
   § 1367.005(a)(4), (5) .............................................................................................................. 4
   § 1367.005(a)(3), (o)(1) ......................................................................................................... 5
   § 1367.005(n) ....................................................................................................................... 15
   § 1367.005(n)(2), (3) ............................................................................................................ 15
   § 1374.30 ................................................................................................................................. 8

Rehabilitation Act § 504 .......................................................................................................... *passim*

CONSTITUTIONAL PROVISIONS

11th Amendment ............................................................................................................. 6, 11, 14

COURT RULES

Federal Rule of Civil Procedure
   12(b)(1) ................................................................................................................. 1, 9, 10, 11
   12(b)(6) ....................................................................................................................... 1, 10, 11
   19 .......................................................................................................................................... 17

OTHER AUTHORITIES

CALIFORNIA CODE OF REGULATIONS, Title 28
   § 1300.67.005 .................................................................................................................... 6, 18
   § 1300.67.005(d)(5) .............................................................................................................. 19
   § 1367.005(e) ......................................................................................................................... 6

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

Code of Federal Regulations, Title 45

4
    § 156.20 ............................................................................................................ 3

    § 156.100 .......................................................................................................... 3

5
    § 156.100(a)(1) ................................................................................................. 4

    § 156.110 .......................................................................................................... 5

6
    § 156.110(b), (c) .............................................................................................. 4

    § 156.110(f) ...................................................................................................... 5

7
    § 156.111 ....................................................................................................... 3, 6

    § 156.115(a)(5)(i) ............................................................................................ 5

8

9
FORBES HEALTH https://www.forbes.com/health/healthy-aging/best-electric-
    wheelchairs/ (last visited Dec. 1, 2022) ....................................................... 7

10

11
FREEDOM MOTORS https://www.freedommotors.com/how-much-does-a-new-
    wheelchair-cost/ (last visited Dec. 1, 2022) ................................................. 7

12
https://www.ebudget. ca.gov/2021-22/pdf/Enacted/GovernorsBudget/ 4000.pdf ...................... 13

13

14
Ind. Med. Rev. Search, DEPT. OF MANAGED HEALTH CARE
    https://wpso.dmhc.ca.gov/imr/ (last visited Dec. 1, 2022) ........................... 8

15

16
Indep. Med. Rev. & Complaint Rep., DEPT. OF MANAGED HEALTH CARE
    https://www.dmhc.ca.gov/filecomplaint/independentmedicalreviewandcompla
    intreports.aspx ............................................................................................... 8

17

18
Nondiscrim. in Health Programs and Activities, 81 Fed. Reg. 31,375, at 31,434
    (May 18, 2016) ............................................................................................. 21

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION & MOTION TO DISMISS

PLEASE TAKE NOTICE that on Thursday, March 30, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Judge Haywood S. Gilliam, Jr., in the United States District Court for the Northern District of California, located in the Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, CA 94162, Defendants California Department of Managed Health Care (DMHC) and the California Health and Human Services Agency (CHHSA) (collectively, State Defendants), will and hereby do move the court to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made on the grounds that: (1) Plaintiffs' claims are barred by sovereign immunity; (2) Plaintiffs lack Article III standing; (3) the action is barred by the applicable statute of limitations; and (4) the Second Amended Complaint (SAC) fails to state a claim for disability discrimination. State Defendants, therefore, request that the SAC be dismissed without leave to amend.

The motion will be and is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, the previously filed Declaration of Sarah Ream (ECF 34-2) and Request for Judicial Notice (ECF 34-1); the pleadings and papers filed herein; and the argument of counsel at the time of the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether this action against State Defendants is barred by Sovereign Immunity.

2. Whether Plaintiffs meet Article III standing requirements.

3. Whether this action is barred by the applicable statute of limitations.

4. Whether Plaintiffs fail to state a claim for disability discrimination.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

By their Second Amended Complaint (SAC), Plaintiffs fail to correct, or even meaningfully address, the fundamental defects of the First Amended Complaint (FAC) that led to this Court's dismissal of the FAC.  Plaintiffs' action improperly seeks to wield a nondiscrimination provision of the Affordable Care Act (ACA) to obtain a court order mandating that California health plans provide unlimited coverage for wheelchairs for persons with disabilities, unrelated to medical treatment, that neither Congress nor the California Legislature determined are required health care benefits under the ACA or state law.  Contrary to Plaintiffs' sympathetic but fundamentally misguided claims, the ACA's nondiscrimination mandate does not independently impose individual benefit mandates, but rather serves only as a bar to discrimination against protected groups in the design of those particular benefits that *are* mandated or otherwise provided in plans to which the ACA's requirements apply.  As wheelchairs are not a mandated benefit under California law, neither the Legislature, DMHC, CHHSA, nor any health plan unlawfully discriminates against persons with disabilities by not including wheelchairs as an element of the minimum package of covered benefits in ACA-qualified plans.

The Court should be under no misimpression:  if Plaintiffs' claims are allowed, this would have profound and far-reaching implications for the provision of health care in this State—if not nationally—that Congress clearly did not contemplate.  States and health plans would be subject to potential mandates to cover and fund virtually any type of service or item—whether related to medical treatment or not, and for an indefinite period and at whatever cost—that may be beneficial to the particular needs or well-being of any disabled person.  This is clearly not what Congress intended in protecting individuals against discrimination under the ACA in any health program or activity that accepts federal funding.  Plaintiffs' action must be dismissed.

The Court need not, however, reach the question of whether Plaintiffs have stated a cognizable claim against DMHC because the case fails on the threshold questions of this Court's subject matter jurisdiction since:  (1) Plaintiffs' claims are barred by sovereign immunity;

1 (2) Plaintiffs lack Article III standing; and (3) the action is barred by the applicable statute of

2 limitations.  Additionally, Plaintiffs also do not state a claim for disability discrimination.  As

3 Plaintiffs continue to fail to allege any facts beyond the coverage limitation to which they object,

4 Plaintiffs' lawsuit should be dismissed without leave to amend.

5 **BACKGROUND**

6 **I.   LEGAL BACKGROUND**

7 **A.   Federal and State Law Define "Essential Health Benefits"**

8 Congress enacted the Affordable Care Act of 2010 (ACA) to "increase the number of

9 Americans covered by health insurance and decrease the cost of health care."  *Nat'l Fed'n of*

10 *Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012); 42 U.S.C. § 18022.  As relevant here, the ACA

11 required small group health insurance plans to cover, beginning in 2014, ten broad categories of

12 essential health benefits (EHBs), including "Rehabilitative and habilitative services and devices."

13 42 U.S.C. § 18022(b)(1)(G).  Congress directed the Secretary of the Health & Human Services

14 Agency (Secretary or HHS) to provide definitions of those EHBs, subject to certain standards,

15 including that the scope of coverage be "equal to the scope of benefits provided under a typical

16 employer plan."  42 U.S.C. § 18022(b), (b)(2)(A).  Regulations issued by HHS pursuant to this

17 authority provide further general definitions of each of the ten EHB categories.  Ultimately,

18 however, the Secretary left it to the states to determine what specific services and items must be

19 covered under each benefit category.  45 C.F.R. §§ 156.110(a), 156.20.

20 In particular, states were required either to identify required minimum coverage by

21 selecting, under one of four alternatives among existing commercial and government health plan

22 options, a "benchmark plan" as the principal standard for essential health benefit coverage in each

23 state.  45 C.F.R. § 156.100.[1]  To the extent that the benchmark plan did not include coverage of

24 EHB, the plan was required to be supplemented.  *Id.* § 156.100(b), (c).  The benchmark plan, as

25

26 [1] Since January 1, 2020, states have the option to change their benchmark plans using the new options outlined in federal regulations and guidance. 45 C.F.R. § 156.111.  The Legislature has not changed California's benchmark plan pursuant to this authority.  The new regulation does not mention "wheelchair," but does explicitly state that a plan's scope cannot "exceed the genero[sity]" of the mandated comparison plans.  *Id.* at (b)(2)(ii).

27

28

supplemented, is then referred to as the "EHB-benchmark" plan, constituting the "standardized set of essential health benefits that must be met" by a health plan or insurer.  *Id.* § 156.20. Federal regulations require coverage of twelve "categories of benefits," but do not list any specific benefits that are required within those categories. 45 C.F.R. § 156.110(b), (c).  No federal statute or regulation requires the coverage of wheelchairs as part of a benchmark plan, plans must simply provide coverage in the essential categories in a manner commensurate, but not exceeding, the most common commensurate plans in a given state.  *Id.* §§ 156.110, 156.111(b)(2)(i)–(ii).

In 2012, the California Legislature selected from the delineated options provided under proposed federal regulations the Kaiser Foundation Health Plan Small Group HMO 30 plan (HMO 30 plan) as the State's base-benchmark plan. CAL. STATS. 2012, c. 854 (A.B. 1453), § 2. In 2015, the Legislature passed S.B. 43 to conform California's essential health benefits coverage to new ACA requirements.  To choose the state benchmark plan, the Legislature considered a separately commissioned analysis comparing the health services covered by a number of different plans as options for California's EHB-benchmark effective January 1, 2017.  B. Analysis, Off. of S. Floor Analyses (S.B. 43, 2015–2016 Reg. Sess.) at 6 (Sept. 1, 2015).  The Legislature elected to use the "small group market" health plan option for its base-benchmark plan, under which the largest plan by enrollment of any of the three largest products in the State's small group marked may be selected.  45 C.F.R. § 156.100(a)(1).  Pursuant to this process, the Legislature selected a 2014 version of the HMO 30 plan, which also would have been the default plan for the State.  *See* S.B. 43 B. Analysis at 6; CAL. HEALTH & SAFETY CODE § 1367.005(a)(1), (2).  The Legislature supplemented the plan with additional benefits to constitute the State's EHB-benchmark plan. *See* CAL. HEALTH & SAFETY CODE § 1367.005(a)(2), (4), (5).

California law generally includes the following in its definition of essential health benefits: (1) the ten categories of health benefits identified in the ACA (42 U.S.C. § 18022), as covered by the HMO 30 plan; (2) all benefits required to be covered by the plan pursuant to statutes enacted before December 31, 2011 (i.e., all existing state coverage mandates, including all basic health care services); and (3) everything else covered by the benchmark plan, even if that coverage is

above and beyond what was otherwise required to be covered.  CAL. HEALTH & SAFETY CODE § 1367.005(a)(1)–(5).  Benefits required to be covered solely by virtue of being included within the benchmark plan are referred to as "other health benefits."  *Id.* § 1367.005(a)(5).  California's coverage exceeds that of other states.

### B.    The Definition of EHB Includes Coverage of Durable Medical Equipment

Wheelchairs are not identified as a required item of EHB coverage in any federal statute or regulation.  *See* 42 U.S.C. § 18022; 45 C.F.R. § 156.110.  Habilitative services and devices are broadly defined in federal regulation as "services and devices that help a person keep, learn, or improve skills and functioning for daily living."  45 C.F.R. § 156.115(a)(5)(i).  Federal regulations permit the scope of habilitative services and devices to be defined by the State either in its benchmark plan or independently, providing that if the "benchmark plan does not include coverage for habilitative services, the State may determine which services are included in that category."  45 C.F.R. § 156.110(f).  Benchmarks are explicitly designed to lie within (and not exceed) the benefits offered by the most commonly used plans in a given state.  *Id.* at 156.111(b).

The California Legislature adopted the federal definition of habilitative services and devices and required that they be covered as required under state and federal law, including to the extent identified in the state benchmark plan.  CAL. HEALTH & SAFETY CODE § 1367.005(a)(3), (o)(1) ("'Habilitative services' means health care services and devices that help a person keep, learn or improve skills and functioning for daily living").

The benchmark plan adopted by the Legislature includes coverage for "durable medical equipment for home use."  *See* ECF 34-1, Exh. A at 29.  The definition of "durable medical equipment for home use" specifies that this coverage refers to items needed primarily for a "medical purpose" related to illness or injury, and lists the required covered items.  *Id.*  As the plan provides, "durable medical equipment for home use is an item that is intended for repeated use, primarily and customarily used to serve a medical purpose, generally not useful to a person

1  who is not ill or injured, and appropriate for use in the home." *Id.*  This benefit is "limited to the

2  standard item of equipment that adequately meets [the enrollee's] medical needs." *Id.*[2]

3         DMHC regulations identify these and other benefits as mandatory by their inclusion in the

4  Kaiser benchmark plan.  CAL. CODE REGS. tit. 28, § 1300.67.005.  These regulations specify that

5  benefits identified in the benchmark plan, that would *not* be mandatory if *not* included in the

6  base-benchmark plan, must nevertheless be covered as EHB as "[o]ther health benefits." *Id.*

7  § 1300.67.005(d).  As relevant here, these "other health benefits" include durable medical

8  equipment (DME) for "home use," which is defined identically as in the Kaiser base-benchmark

9  plan as items intended for repeated use for a "medical purpose" and that is generally "not useful

10  to a person who is not ill or injured." *Id*. § 1300.67.005(d)(5).  The regulation further specifies

11  that with respect to the DME for home use, the "plan may limit coverage to the standard

12  equipment or supplies that adequately meets the enrollee's medical needs." *Id.*

13  § 1300.67.005(d)(5)(B).  The regulations require that plans cover DME items that are

14  "substantially equal" to a list of DME items nearly identical to those identified in the Kaiser base-

15  benchmark plan. *Id*. § 1300.67.005(d)(5)(C).  In the event the list of "other health benefits" in

16  subdivision (d) omits benefits otherwise required pursuant to Health and Safety Code § 1367.005,

17  the provisions of Health and Safety Code § 1367.005 shall control.  CAL. CODE REGS. tit. 28,

18  § 1367.005(e).  The SAC concedes that DME includes wheelchairs. *See* SAC 2, 4, 16.

19  **II.    ORDER GRANTING MOTION TO DISMISS FAC**

20         In granting State Defendants' prior Motion to Dismiss, this Court ruled that sovereign

21  immunity barred Plaintiffs' claims against DMHC, and that—since DMHC has not received

22  ────────────────
           [2] The SAC alleges repeatedly and incorrectly that the Kaiser benchmark plan contains a
23  requirement that wheelchairs are only allowable as a benefit for home use and that a wheelchair
    that would operate outside the home would not be covered. *See*, *e.g.*, SAC 2 (asserting that if a
24  person needs "a wheelchair to travel even 15 feet outside their home, then the wheelchair would
    not be covered").  However, this prohibition does not appear in the plain language of the plan.
25  The plan does not state that wheelchairs (or any other equipment) are not covered if they are
    capable of leaving the home. *See* ECF 34, Exh. A at 29.  Rather, a far more reasonable inference
26  is that "home use" is being distinguished from hospital/clinical use, and not that coverage should
    be disallowed for an item that might also be used outside the home. *Id.*  The list of essential
27  health benefits includes numerous items that could quite obviously also be used outside the home,
    such as insulin pumps, canes, crutches, blood glucose monitors, peak flow meters, and nebulizers.
28  *Id.*

1   federal funds since 2017—the waiver of 11th Amendment immunity pursuant to 42 U.S.C.

2   § 2000d-7(1) did not apply to DMHC.  ECF 67 at 7–9; *see Sharer v. Oregon*, 581 F.3d 1176,

3   1181 (9th Cir. 2009); *see also Greater L.A. Counsel on Deafness v. Zolin*, 812 F.2d 1103, 1107–

4   12 (holding injunctive and declaratory relief barred where sovereign immunity applies).  The

5   Court further ruled that the Director of DMHC should be dismissed because Plaintiffs' allegations

6   against her were conclusory and "lack[ed] a sufficient nexus to the alleged harm."  ECF 67 at 9.

7   The Court separately granted Defendant Kaiser's motion to compel arbitration.  ECF 66.  Kaiser

8   is not named as a defendant in the SAC, raising the question of whether the harms alleged against

9   the patient plaintiffs can be redressed by the remaining defendants, who have no direct nexus with

10  the named plaintiffs' coverage denial by Kaiser.

11  **III.   SUMMARY OF PLAINTIFFS' ALLEGATIONS IN THE SAC**

12      Plaintiffs are two disabled individuals and a foundation that supports Independent Living

13  Centers and programs for persons with disabilities in California.  SAC 2.  The individual

14  plaintiffs, Beth Smith and Russell Rawlings, are enrolled in small group health plans with Kaiser

15  Permanente.  SAC 3–4.  Their health care coverage is provided by an agreement between the

16  Kaiser Foundation Health Plan, Inc., and Plaintiffs' employers.  *Id*.  While Plaintiffs allege that

17  Kaiser "either excludes [wheelchair] coverage or imposes a $2,000 annual dollar limitation on the

18  sum of all supplemental DME," none of the plans described in the SAC actually excludes

19  wheelchair coverage.  SAC 1, 4; *see* ECF 34, Ex. A at 29.  Instead, each plan provides for the

20  coverage of wheelchairs as a supplemental DME, and the crux of the SAC is that the $2,000.00

21  annual cap on DME is insufficient for the highly specialized wheelchairs Plaintiffs allege they

22  individually require.  *See* SAC 4; ECF 34, Ex. A at 29.[3]

23          [3] The $2,000.00 annual cap on DME is more than sufficient to pay for most standard
24  wheelchair models.  A simple Google search for "average wheelchair cost" reveals that virtually
    all manual wheelchairs and a significant percentage of power chairs fall well below the $2,000.00
25  annual cap alleged in the SAC.  Wheelchair use falls under a spectrum of need, and the named
    plaintiffs—who each suffer from cerebral palsy—allegedly require highly specialized, custom
26  power chairs that exceed conventional use for less pronounced disabilities.  *See, e.g., How Much
    Does a New Wheelchair Cost?*, FREEDOM MOTORS https://www.freedommotors.com/how-much-
27  does-a-new-wheelchair-cost/ (last visited Dec. 1, 2022) (the average cost of a new wheelchair is
    between $500.00 and $1,500.00); *The Best Electric Wheelchairs of 2022*, FORBES HEALTH
28

1    Plaintiffs have sued State Defendants alleging violation of the nondiscrimination provision

2  of the ACA, as well as § 504 of the Rehabilitation Act, for not mandating or providing unlimited

3  coverage of wheelchairs.  SAC 17–20.  Plaintiffs challenge the alleged "'home use' rule" (as well

4  as the $2,000.00 annual cap) on DME coverage under DMHC regulations and their Kaiser plans.

5  *See*, *e.g.*, SAC 2.  Plaintiffs do not identify a state or federal statute that would have required

6  DMHC to provide the unlimited coverage they seek and instead allege that DMHC's

7  implementing regulations violate section 504 of the Rehabilitation Act (§ 504) as well as

8  section 1557 of the ACA (§ 1557) (rather than the actual statutes the regulations implement,

9  which contain no requirement for the unlimited wheelchair coverage Plaintiffs seek).[4]

10    By the SAC, Plaintiffs allege that Kaiser denied their requests for $10,000.00 and

11  $15,000.00 power chairs, respectively.  SAC 16–17.  Plaintiff Smith filed an appeal with Kaiser,

12  which she alleges was denied, but Plaintiff Rawlings never contested Kaiser's denial of his

13  alleged benefit.  SAC 16–17.  Curiously, however, the SAC, unlike the First Amended Complaint

14  (FAC), has dropped Kaiser as a named defendant.[5]  The SAC does not allege that either named

15  plaintiff availed themselves of the administrative remedies available through DMHC's

16  Independent Medical Review Process (IMR).  Cal. Health & Safety Code § 1374.30; *see Indep.*

17  *Med. Rev. & Complaint Rep.*, DEPT. OF MANAGED HEALTH CARE https://www.dmhc.ca.gov/

18  fileacomplaint/independentmedicalreviewandcomplaintreports.aspx (last visited Dec. 1, 2022).[6]

19  https://www.forbes.com/health/healthy-aging/best-electric-wheelchairs/ (last visited Dec. 1, 2022)

20  (prices for power chairs range from $1,449.00–$2,899.00).

21    [4] Plaintiffs acknowledge that wheelchair coverage is not truly unlimited, and that the required scope of coverage is equal to that of a typical employer plan.  SAC 2; 42 U.S.C. § 18022(b)(2)(A); Dismissal Order, ECF 67 at 1.  However, while the SAC plays lip service to the legality of co-payments and deductibles—which the individual plaintiffs' Kaiser plans

22  uncontestedly include—the SAC contains no allegations regarding the scope of a typical employer plan, and the SAC does not actually contemplate that any restriction here might be appropriate.  SAC 2.  The SAC also alleges that the EHB Benchmark Plans "exclude" coverage

23  of wheelchairs, but each of the plans described in the SAC does contain coverage for DME

24  annually up to $2,000.00, which does include wheelchairs.  *See* SAC 1–2.

25    [5] Patient Plaintiffs have separately been ordered by this court to enter into arbitration with Kaiser as to their claims.  ECF 66.  It is distinctly possible patient plaintiffs' claims may be moot by virtue of their claims having been resolved by the time this motion is heard.

26    [6] Plaintiffs cannot assert the IMR process would be futile.  DMHC maintains a public

27  database of every IMR decision, and entering the keywords "medical necessity," "overturned decision of health plan," and "wheelchair" bring up numerous decisions where a healthcare plan's

28

As noted above, the SAC does not name Kaiser as a defendant; nor does it any longer name the Director of DMHC.  Instead, the SAC adds an agency defendant, CHHSA, which is DMHC's parent agency.[7]  However, the actions attributed by the SAC to CHHSA are all, in fact, actions by DMHC, and not CHHSA.  *See, e.g.*, SAC 9, 14 (CHHSA "acting through its sub-department Defendant DMHC"); *id.* at 14–15 (citing as "Defendant CalHHS regulations" regulations actually promulgated by DMHC, such as CAL. CODE REGS. tit. 28, § 1300.67.005).  The SAC asserts only the following actual duties for CHHSA: (1) "hold responsible the head of DMHC . . . [and] review DMHC's operations and evaluate its performance"; and (2) "approve DMHC's budget."  SAC 5.

The SAC alleges two causes of action against State Defendants for purportedly distinct violations of § 504 and § 1557 (SAC 18–20), while the FAC only alleged a single cause of action against State Defendants for violation of § 1557 (through the vehicle of § 504).  This Court considered and ruled on Plaintiffs' claims under both § 504 and § 1557 in its order dismissing the FAC.  ECF 67 at 6–9.  As before, Plaintiffs' causes of action against State Defendants for disability discrimination in violation of § 1557 and § 504 of the ACA (42 U.S.C. § 18116) allege that it "is discrimination by proxy to exclude wheelchairs from the EHB-benchmark," and that unspecified DMHC regulations discriminate against people with disabilities because they do not include coverage of wheelchairs.  SAC 18–20.  Plaintiffs do not challenge any state statute, including the Legislature's 2015 statutory adoption of the current State EHB-benchmark plan under California Health and Safety Code § 1367.005, requires wheelchair coverage.

### LEGAL STANDARD FOR MOTION TO DISMISS

A plaintiff's lack of standing under the Article III "case or controversy" requirement deprives a federal court of subject matter jurisdiction, and the case must be dismissed under

---

denial of wheelchair coverage has been overturned. *Ind. Med. Rev. Search*, DEPT. OF MANAGED HEALTH CARE https://wpso.dmhc.ca.gov/imr/ (last visited Dec. 1, 2022).

[7] "Agency" is a defined term in California designating a statutorily defined unit that oversees various departments and is led by a political appointee. CAL. GOV'T CODE §§ 12806 (creation of Secretary of CHHSA role), 1280 (delineating the duties of "Secretaries" and "Agencies" as defined terms in California Government), 12801 (establishing "Secretaries" as political, as opposed to civil service, appointments); CAL. HEALTH & SAFETY CODE § 1340 (establishing Director of DMHC).  The appointee position is analogous to a federal cabinet position.

1   Federal Rule of Civil Procedure 12(b)(1).  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir.

2   2004).  To satisfy requirements for standing, a plaintiff must establish three familiar and

3   "irreducible" elements:  (1) injury-in-fact, (2) causation, and (3) redressability.  *Hall v. U.S. Dep't*

4   *of Agric.*, 984 F.3d 825, 833 (9th Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

5   555, 560 (1992).

6        A motion under Rule 12(b)(1) motion can be made as a "speaking motion," supported by

7   evidence challenging the court's jurisdiction.  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,

8   594 F.2d 730, 733 (9th Cir. 1979).  Thus, the court may consider evidence outside the complaint

9   without converting the motion into a summary judgment motion.  *See Safe Air for Everyone v.*

10  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see Savage v. Glendale Union High Sch. Dist. No.*

11  *205, Maricopa Cty.*, 343 F.3d 1036, 1040 (9th Cir. 2003) (burden shifts to plaintiff to produce

12  evidence of standing).  In a speaking motion, "[t]he court need not presume the truthfulness of the

13  plaintiff's allegations." *Safe Air*, 373 F.3d at 1039.

14       Under Rule 12(b)(6), a district court properly dismisses a complaint for failure to state a

15  claim upon which relief may be granted if "there is a 'lack of a cognizable legal theory or the

16  absence of sufficient facts alleged under a cognizable legal theory.'"  *Conservation Force v.*

17  *Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).  To survive a Rule 12(b)(6) motion to dismiss, the

18  complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is

19  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial

20  plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable

21  inference" that the defendant may be liable.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

22  Although the court must accept as true all material allegations, as well as all reasonable

23  inferences to be drawn therefrom them, it is not "required to accept as true allegations that are

24  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Pareto v.*

25  *F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988

26  (9th Cir. 2001).  Determining whether a complaint states a plausible claim for relief is "a context-

27

28

1  specific task that requires the reviewing court to draw on its judicial experience and common

2  sense." *Iqbal*, 556 U.S. at 679.

3  **ARGUMENT**

4      The SAC fails to cure the defects of the FAC and, if anything, further weakens Plaintiffs'

5  case because it removes the only defendant that could realistically redress the harm alleged (i.e.,

6  Kaiser), as well as the only State Defendant against whom the claim for injunctive relief could

7  have been (but was not) properly alleged in order to establish subject matter jurisdiction (i.e.,

8  DMHC Director Watanabe).  The SAC should be dismissed without leave to amend because:

9  (1) Plaintiffs' claims are barred by sovereign immunity; (2) Plaintiffs lack Article III standing;

10  (3) the action is barred by the applicable statute of limitations; and (4) the SAC fails to state a

11  claim for disability discrimination or establish CHHSA's relationship to Plaintiffs' alleged harm.

12  Accordingly, this matter must now be dismissed without leave to amend.

13  **I.     AS AMENDED, THE LAWSUIT IS STILL BARRED BY SOVEREIGN IMMUNITY**

14      Plaintiffs' action against State Defendants is barred by sovereign immunity because

15  Defendants are state agencies that have not waived immunity to suit.  The SAC, therefore, must

16  be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or for failure to

17  state a claim pursuant to Rule 12(b)(6).  Because the defects in the pleadings cannot be cured by

18  amendment, this case must be dismissed without leave to amend.

19      The Eleventh Amendment bars a federal court from hearing claims by private citizens

20  against state governments, their agencies, or the officials of those agencies unless the state

21  consents to suit, or Congress has expressly abrogated the state's immunity.  *See Seminole Tribe v.*

22  *Florida*, 517 U.S. 44 (1996); *Nat. Res. Def. Counsel v. Santa Monica Baykeeper, Inc.*, 96 F.3d

23  420, 421 (9th Cir. 1996).  As relevant here, a state may consent to suit if they are presently

24  accepting federal funding that was conditioned on a waiver of sovereign immunity.  *See Holley v.*

25  *Cal. Dep't of Corr.*, 599 F.3d 1108, 1111–12 (9th Cir. 2010).  To be a valid waiver, a state's

26  consent to suit must be "unequivocally expressed in the statutory text."  *Id*.  Courts must "indulge

27

28

every reasonable presumption against waiver," and waivers "must be construed strictly in favor of the sovereign and not enlarged beyond what the statutory language requires." *Id.*

No party here claims that any provision of the ACA abrogates State Defendants' sovereign immunity. *See Boyden v. Conlin*, 341 F. Supp. 3d 979, 998 (W.D. Wis. 2018) ("no provision of the ACA purports to abrogate state sovereign immunity"). Rather, Plaintiffs argue that State Defendants' alleged acceptance of federal funds amounted to a waiver of immunity under the Rehabilitation Act's Amendments of 1986. 42 U.S.C. § 2000d-7(1). But, no waiver applies here because, as previously established, DMHC does not receive federal funds; and, even if Plaintiffs had adequately alleged that newly named Defendant CHHSA presently receives federal funds, they nevertheless fail to allege a sufficient connection between DMHC and CHHSA such that CHHSA's purported waiver of sovereign immunity can be imputed to DMHC.

### A.   CHHSA's Alleged Receipt of Federal Funds Cannot Be Imputed to DMHC

The SAC's allegations against DMHC largely repeat the allegations from the FAC that the Court already ruled inadequate to preclude application of sovereign immunity to bar this action. *See generally* ECF 67. For the same reasons that DMHC does not receive federal funds and has not waived its sovereign immunity, the SAC must be dismissed.

As the Court previously found, DMHC receives no federal funds. ECF 34-2 ¶ 3. In an attempt to have its purported waiver of sovereign immunity attributed to DMHC, Plaintiffs now include as a defendant DMHC's parent agency, CHHSA, alleging that CHHSA has general oversight responsibility and budget approval for DMHC. SAC 5. But, waiver of sovereign immunity based on receipt of federal funds cannot automatically be imputed from a sister or a parent agency simply by virtue of that relationship alone. *Sharer v. Oregon*, 581 F.3d 1176, 1180–81 (9th Cir. 2009). And Plaintiffs' new allegations fail to demonstrate waiver on an attribution theory because all relevant indicia demonstrate that DMHC and CHHSA are independent entities under the Ninth Circuit's *Sharer* analysis. CAL. GOV'T CODE §§ 12806 (creation of Secretary of CHHSA role), 1280 (delineating the duties of "Secretaries" and "Agencies" as defined terms in California Government),

1   12801 (establishing "Secretaries" as political, as opposed to civil service, appointments); CAL.

2   HEALTH & SAFETY CODE § 1340 (establishing Director of DMHC).

3       Under *Sharer*, the relevant question is whether the two government entities "are sufficiently

4   independent from one another to constitute separate 'department[s]' or 'agenc[ies]' under section

5   504." *Id*. at 1179–80.  This is primarily evidenced by the two entities' distinct sources of funding and

6   distinct administrative apparatuses.  *Id*.  Here, as this Court previously ruled with respect to

7   Department of Health Care Services (DHCS), CHHSA and DMHC "are organized under different

8   statutes and have different directors."  ECF 67 at 8; CAL. GOV'T CODE §§ 12806 (creation of Secretary

9   of CHHSA role), 1280 (delineating the duties of "Secretaries" and "Agencies" as defined terms in

10  California Government), 12801 (establishing "Secretaries" as political, as opposed to civil service,

11  appointments); CAL. HEALTH & SAFETY CODE § 1340 (establishing Director of DMHC).  Moreover,

12  the "Agency" and the "Department" have different sources of funding.  *See* ECF 34-2; *see also* ECF

13  36 at 6, n. 9 (citing https://www.ebudget.ca.gov/2021-22/pdf/Enacted/GovernorsBudget/

14  4000.pdf).[8]  In sum, Plaintiffs have failed—and are unable—to allege a sufficient connection between

15  DMHC and CHHSA that would permit them to be considered a single entity such that CHHSA's

16  alleged waiver of immunity can properly be imputed to DMHC.  *See* ECF 67 at 8 (rejecting Plaintiffs'

17  attempt to impute DHCS' federal funding to its sister organization, DMHC); *Sharer*, 581 F.3d at

18  1180–81.  Thus, Plaintiffs' addition of CHHSA as a defendant is insufficient to demonstrate that

19  DMHC waived its sovereign immunity.

20

21

22

23

24      [8] The parenthetical citation from ECF 36 details the funding for the different organizations
    under CHHSA's rubric.  ECF 36 at 6, n. 9 (citing https://www.ebudget.ca.gov/2021-
25  22/pdf/Enacted/GovernorsBudget/ 4000.pdf).  As noted by Plaintiffs, certain departments under
    CHHSA do receive federal funding, such as DHCS and CalFresh.  *Id.*  CHHSA does not itself
26  receive federal funding for initiatives that are under its own direct control (as opposed to its
    subsidiary departments), and it actually funds its own administrative and personnel needs through
27  a portion of the California Department of Social Services' budget.  *Id.*; *see* https://www.ebudget.
    ca.gov/2021-22/pdf/Enacted/GovernorsBudget/ 4000.pdf at 206 (this is the website cited by
28  Plaintiffs in ECF 36 at 6, n. 9).

**B.     Plaintiffs Have Failed to Adequately Allege that CHHSA Actually Receives Federal Funds**

Although Plaintiffs conclusorily allege, and premise their amended complaint on the notion, that CHHSA receives federal funds, they fail to allege any facts actually showing that that is true. Thus, even if CHHSA and DMHC were sufficiently related agencies for § 504-funding purposes under the *Sharer* analysis, Plaintiffs have nevertheless failed to establish a waiver of sovereign immunity by CHHSA in the first instance.

Specifically, Plaintiffs have alleged here (and elsewhere) only that CHHSA oversees *other* agencies (not DMHC) that receive federal funding, such as DHCS, which administers Medi-Cal. *See* SAC 5 ("[CHHSA] oversees a wide range of federally funded programs"); *id.* ("[CHHSA] receives federal assistance within the meaning of [§ 504] and [§ 1557]"); *id.* at 8 ("[CHHSA] receives billions of dollars in federal financial assistance each year"); *see also* ECF 36 at 6, n. 9 (alleging DHCS receives federal funding that should be imputed to DMHC, citing https://www.ebudget.ca.gov/2021-22/pdf/Enacted/GovernorsBudget/4000.pdf).  But notably absent from the SAC is any reference to any authority showing that CHHSA itself receives federal funding for any programs or services it directly administers (as distinct from the federal funding that some of its client departments—such as DHCS—receive).  Indeed, the only non-conclusory allegation in this regard identifies DHCS—not CHHSA or DMHC—as a recipient of federal funding.  ECF 36 at 6, n. 9 (asserting DHCS receives federal funding that should be imputed to DMHC, citing https://www.ebudget.ca.gov/2021-22/pdf/Enacted/GovernorsBudget/ 4000.pdf); *see*, *supra*, n. 8.  Thus, Plaintiffs have failed to even establish that newly added defendant CHHSA has waived its Eleventh Amendment immunity through receipt of federal funding.

**C.     The Complaint Establishes No Other Basis for Subject Matter Jurisdiction**

As noted above, by the SAC, Plaintiffs have dropped the Director of DMHC as a defendant in her official capacity.  Thus, Plaintiffs have abandoned any possibility that this Court could otherwise have subject matter jurisdiction under the *Ex Parte Young* exception.

1   The exception to sovereign immunity afforded by *Ex Parte Young* requires a complaint for

2   prospective injunctive relief to name a state official as a defendant in their official capacity and to

3   allege a sufficient causal connection between that defendant and the challenged governmental

4   action. *See generally Ex Parte Young*, 209 U.S. 123 (1908); *Snoeck v. Brussa*, 153 F.3d 984, 986

5   (9th Cir. 1998); *see also Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017). Here, because

6   Plaintiffs have now, with their amended complaint, opted to omit such a defendant, any

7   possibility they might have had of establishing this Court's jurisdiction on this separate basis is

8   definitively foreclosed.[9]

9   **II.   PLAINTIFFS LACK ARTICLE III STANDING FOR THEIR CLAIMS AGAINST DMHC**

10   Plaintiffs fail to and cannot allege facts demonstrating that any alleged injury is the result of

11   unlawful conduct by State Defendants or that any such injury may properly be redressed by a

12   favorable decision against State Defendants. To demonstrate standing under Article III to

13   maintain their lawsuit against State Defendants, Plaintiffs must allege facts sufficient to establish:

14   (1) that they suffered a particularized and concrete injury that is either actual or imminent; (2) that

15   the injury is fairly traceable to the Defendant's challenged conduct; and (3) that the injury is

16   likely to be redressed by a favorable court decision. *Levine v. Vilsack*, 587 F.3d 986, 991–92 (9th

17   Cir. 2009); *see also Lujan,* 504 U.S. at 560–61. Plaintiffs lack Article III standing because the

18   SAC fails to sufficiently allege traceability and redressability.[10]

19

20

21   [9] As this Court has previously pointed out, declaratory relief is similarly unavailable to
22   Plaintiffs in this matter under the theory Plaintiffs previously advanced based on the *Zolin* case.
     *Greater L.A. Counsel on Deafness v. Zolin*, 812 F.2d 1103, 1107–12 (9th Cir. 1987); ECF 67 at 9.
23   *Zolin* stands for the proposition that declaratory and injunctive relief may be applied where a
     defendant *is not protected* by any form of immunity *and is also* presently receiving federal
24   assistance. *Zolin*, 812 F.3d at 1107–12; ECF 67 at 9. Sovereign immunity applies to both State
     Defendants here, and the SAC does not, except conclusorily, allege that either state agency
25   presently receives federal funds.
     [10] "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,'
26   and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean
     Community*, 386 F.3d at 1174. The burden of establishing the required elements of standing
27   "falls upon the party asserting federal jurisdiction." *Cent. Delta Water Agency v. United States*,
     306 F.3d 938, 947 (9th Cir. 2002). The standing elements are "not merely pleading
28   requirements," but are an "indispensable part of the plaintiff's case." *Id.*

1

**A.    There Is No Nexus Between State Defendants and Any Alleged Harm**

To demonstrate standing, Plaintiffs must allege facts sufficient to demonstrate a causal connection between their alleged injury and State Defendants' conduct.  *Nat'l Ass'n for the Advancement of Multijurisdiction Prac. v. Berch*, 773 F.3d 1037, 1044 (9th Cir. 2014).  Plaintiffs' allegations fail to demonstrate any such causal relationship.

Plaintiffs specifically allege that DMHC has discriminated against them by "codifying EHB-benchmark regulations" that do not mandate coverage of wheelchairs.  SAC 20.  But Plaintiffs themselves acknowledge that it was the State Legislature that adopted relevant EHB-benchmark plan, and that the DMHC regulations merely "codify" the coverages identified in the Kaiser base-benchmark plan and state law, as it was required to do.  SAC 13–14; Cal. Health & Safety Code § 1367.005(n).  The Legislature directed DMHC to implement the benchmark statute in emergency regulations, identifying the regulations as "an emergency and necessary for the immediate preservation of the public peace, health, safety, or general welfare.  Cal. Health & Safety Code § 1367.005(n)(2), (3).  DMHC lacks authority, of course, to deviate from statutory mandates issued by the Legislature.  *Morris v. Williams*, 433 P.2d 697, 707 (Cal. 1967) (noting that regulations that alter or amend a statute or enlarge or impair its scope are invalid).

Nowhere do Plaintiffs allege that DMHC regulations fail to incorporate or improperly change the EHB requirements adopted by the Legislature.  Plaintiffs do not, and cannot, allege that DMHC (or CHHSA) independently adopted the coverage limitations to which they object or made any independent determinations in establishing or defining the scope of essential health benefits to be included in California's small group plans.  Thus, Plaintiffs fail to demonstrate that their alleged injury is in any way caused by or results from any action or inaction by DMHC which it was not otherwise required by law to take.

Furthermore, Plaintiffs fail to allege facts demonstrating any role or responsibility of newly added defendant CHHSA in administering or enforcing the challenged wheelchair exclusion.  Even if the SAC were not barred on the grounds discussed above, the SAC's conclusory allegations fail to establish a direct role for CHHSA in the administration or enforcement of the wheelchair exclusion,

and thus fail to establish any connection between CHHSA and the complained-of harm, or how CHHSA might redress that harm.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). Thus, where the SAC references "CHHSA," it is simply identifying a generic oversight duty or making a substitution without substance for "DMHC."  *See* SAC 5 (CHHSA "must hold responsible the head of DMHC" and "must periodically review DMHC's operations and review its performance"); *id.* at 9 ("[CHHSA] acting through its sub-department [DMHC]"); *id.* at 14 (same); *id.* (citing DMHC regulations as CHHSA regulations); *id.* at 15 (same).  Such conclusory allegations are insufficient to create standing to sue CHHSA.[11]

**B.    State Defendants Cannot Redress Any Harm Alleged in the SAC**

For similar reasons, Plaintiffs' alleged injury also cannot be redressed by a favorable decision against State Defendants, especially—as is now the case since Kaiser has been dropped from the SAC—where no defendant can plausibly redress the only actual harm alleged in the SAC (i.e., Kaiser's alleged denial of coverage of the named plaintiffs' wheelchairs).  The SAC seeks injunctive and declaratory relief requiring DMHC to amend their wheelchair regulations in order to achieve compliance with federal laws.  SAC 20–21.  However, as coverage required under DMHC's EHB regulations are dictated by the benchmark plan established by the Legislature, and Plaintiffs do not challenge the state statute under which the Legislature adopted the Kaiser benchmark plan and other coverage requirements, there is no relief this Court may grant on the SAC that would redress the alleged injury.

Plaintiffs cannot obtain an order from this Court mandating that State Defendants require health plans to cover services that the Legislature has not included as an essential health benefit. *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1738 (2020) ("If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives"); *Preskar v. U.S.*, 248 F.R.D. 576, 584 (E.D. Cal. 2008) (federal courts

---

[11] The only non-conclusory allegation of federal funding in this matter identifies DHCS—not CHHSA or DMHC—as a recipient of federal funding.  ECF 36 at 6, n. 9 (asserting DHCS receives federal funding that should be imputed to DMHC, citing https://www.ebudget.ca.gov/2021-22/pdf/Enacted/GovernorsBudget/ 4000.pdf).

1    lacked authority to unilaterally amend CAL. PENAL & EDUC. CODES); *see*, *e.g.*, *Rochester Pure*

2    *Waters Dist. v. E.P.A.*, 960 F.2d 180, 184 (D.C. Cir. 1992) (it is "beyond dispute" that a federal

3    court cannot order obligation of funds where no state appropriation).  DMHC lacks any ability to

4    cause the Legislature to adopt an unlimited wheelchair coverage requirement.[12]  For these

5    reasons, Plaintiffs fail to and cannot demonstrate that a favorable decision is likely to provide

6    redress for any injury they have alleged.

7    **III.    PLAINTIFFS' CLAIM AGAINST STATE DEFENDANTS IS TIME BARRED**

8         Plaintiffs' challenge to DMHC's EHB regulation for not including wheelchairs as an

9    essential health benefit is time-barred, in any event.  Claims under § 1557 are subject to the four-

10   year default statute of limitations for civil actions under all acts of Congress enacted after 1990.

11   28 U.S.C. § 1658(a); *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 66 (2d Cir. 2021) (holding that

12   the four-year statute of limitations applies to § 1557 claims).[13]  Even under the most generous

13   four-year statute of limitations, Plaintiffs' lawsuit is years too late.

14        Plaintiffs' discrimination claim against State Defendants accrued, at the latest, when

15   DMHC last took any action that could be part of Plaintiffs' claim; here, which would be its

16   promulgation of the EHB regulation, which was last amended on November 28, 2016.  CAL.

17   CODE REGS. tit. 28, § 1300.67.005.  The legislation adopting the Kaiser benchmark plan and other

18   EHB requirements on which the DMHC regulation is based was signed into law *earlier*, of

19   course, on October 8, 2015.  Stats. 2015, c. 648 (S. 43), § 2.  Thus, whether the three-year state or

20

21

22        [12] As stated above, the benchmark plan and the Kaiser plans alleged in the SAC do cover
23   wheelchairs as DME, subject to a $2,000.00 annual cap (absent a showing of medical necessity).
     Such a cap is consistent with the requirement that the benchmark only cover benefits to the extent
24   those benefits reflect the benefits typically covered in an employer-issued healthcare plan.
     SAC 2; 42 U.S.C. § 18022(b)(2)(A); Dismissal Order, ECF 67 at 1.  Similarly, there is no
25   requirement that benchmark plans cover numerous other medical issues plausibly related to
     disability, such as vision or dental care.  Even so, without Kaiser as a party, Plaintiffs do not
26   adequately allege a means whereby the harm they allege they have suffered might be remedied.
     *See* Fed. R. Civ. P. 19.
27        [13] Under California law, the applicable statute of limitations would be the three-year
     default for "actions upon a liability created by statute."  CAL. CIV. PROC. CODE § 338(a).

28

the four-year federal statute of limitations applies, this action is time-barred against any state entity.[14]

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR DISABILITY DISCRIMINATION

### A. Plaintiffs Cannot Establish a Denial of "Meaningful Access" to an ACA-Covered Benefit

Plaintiffs allege discrimination on the basis that they were denied meaningful access to a covered benefit. But because the item they assert they are being denied—wheelchairs costing more than $2,000.00—is not, in fact, a covered benefit, this claim must fail as a matter of law.

The ACA's anti-discrimination provision does not establish a new discrimination standard. Rather, to state a claim for a § 1557 violation on the basis of disability, a plaintiff "must allege facts sufficient to state a claim under § 504 of the Rehabilitation Act." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020); *see Doe v. BlueCross BlueShield of Tenn.*, 926 F.3d 235, 239 (6th Cir. 2019). Section 504 of the Rehabilitation Act provides that: no "otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To establish a violation of the Rehabilitation Act, a plaintiff must show that (1) he or she is a "qualified individual with a disability," (2) he or she was "either excluded from participation in or denied the benefits of" the "services, programs, or activities" of an entity, "or was otherwise discriminated against by the [. . .] entity," (3) the entity that denied him or her the services received federal financial assistance, and (4) "such exclusion, denial of benefits, or discrimination was by reason of his [or her] disability." *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021). The Ninth Circuit analyzes Rehabilitation Act claims under the standards

---

[14] The only dates alleged for Plaintiffs are April and May 2021 evaluations, letters and appeals with Kaiser regarding Plaintiff Smith's requested wheelchair. ECF 12 at 21. The SAC does not allege that either named plaintiff took advantage of DMHC's administrative process to seek relief or that either named defendant had any direct role in the rejection of their alleged claims.

articulated in *Alexander v. Choate*.  469 U.S. 287 (1985); *CVS Pharmacy*, 982 F.3d at 1210; *see Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008).

In *Choate*, Medicaid beneficiaries alleged that Tennessee's proposal to reduce the number of annual days of inpatient hospital care covered by its state Medicaid program from 20 to 14, would have a discriminatory impact on disabled beneficiaries.  469 U.S. at 289–90.  In considering "whether the effect upon the handicapped that this reduction will have is cognizable under [§ 504] or its implementing regulations," the Court held "that it is not."  *Id*. at 289.  The Court concluded that, "[§] 504 does not require the State to alter this definition of the benefit being offered simply to meet the reality that the handicapped have greater medical needs.  To conclude otherwise would be to find that the Rehabilitation Act requires States to view certain illnesses, i.e., those particularly affecting the handicapped, as more important than others and more worthy of cure through government subsidization."  *Id*. at 303–04.

Here, the Legislature has defined the medical equipment that must be covered as an essential health benefit in adopting the EHB-benchmark plan.  *See* CAL. HEALTH & SAFETY CODE § 1367.005(a)(2); *see also* CAL. CODE REGS. tit. 28, § 1300.67.005(d)(5).  That there may be additional items that would uniquely benefit those with certain disabilities does not mean that a state must cover that equipment.  "Under the test outlined in *Choate*, we first consider the nature of the benefit [plaintiffs] were allegedly denied," and "[s]econd, we analyze whether the plan provided meaningful access to the benefit."  *CVS Pharmacy, Inc.*, 982 F.3d at 1210–11.  The question is thus whether Plaintiffs have "adequately alleged they were denied meaningful access to an ACA-provided benefit."  *Id*. at 1211.  Here, Plaintiffs' allegations fail at the first prong, as they fail to establish that the item they seek is an ACA-provided benefit.  This necessarily means that they cannot establish that they were denied meaningful access to a covered benefit.

Plaintiffs' reliance on the statement of a member of Congress reflecting his understanding that coverage of durable medical equipment would not be limited to in-home use is misplaced.  SAC 9.  Congress did not mandate that plans cover any particular class of habilitative items in the express provisions of the ACA; to the contrary, as discussed above, Congress expressly left it to

HHS to define the particular benefits and items to be covered as essential health benefits.  In any event, the "remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."  *ChryslerCorp v. Brown*, 441 U.S. 281, 311 (1979).  Had Congress intended to expressly cover wheelchairs as an essential health benefit, it could have so stated or explicitly instructed the Secretary to require it; it did not.  There is no support in either statute or regulation for the assertion that the ACA intended to cover wheelchairs without limitation.  Thus, there is no basis for Plaintiffs' claim that they have been denied meaningful access to an item that is not an ACA-covered benefit under California law.

Moreover, even if Congress had specified particular items that must be covered, any failure by a state to mandate such coverage, while potentially a violation of the Act, would not necessarily constitute *discrimination* on the basis of disability—the only claim alleged by Plaintiffs against State Defendants.  Under the standards of the Rehabilitation Act, a defendant's alleged discriminatory conduct must be shown to have been taken "by reason of" a plaintiff's disability.  *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).  Thus, to support a claim of discrimination under § 504, Plaintiffs must demonstrate that they have been subject to *intentional* discrimination on the basis of disability.  *Mark H.*, 513 F.3d at 938.  However, the SAC is devoid of any allegations to support any inference whatsoever that the State Defendants have deliberately sought to discriminate against persons with disabilities in identifying the coverages set out in the base-benchmark plan as mandatory essential health benefit.  Indeed, Plaintiffs allege nothing more than that State Defendants performed the ministerial act of "codifying" in the EHB-benchmark regulations the benefit design mandated by the Legislature.  *See* SAC 13–14.

**B.    Non-Discriminatory Plan Design Does Not Require All Services Be Covered**

In addition to Plaintiffs' failure to allege any facts showing that State Defendants discriminatorily excluded Plaintiffs from access to a covered benefit, they also cannot establish, as a more general matter, that a plan benefit design requires coverage of all available devices.

Plaintiffs allege that not explicitly including wheelchairs in the EHB-benchmark plan is discriminatory because the plan allegedly includes a home use limitation[15] and a cap of $2,000 for durable medical equipment.  SAC 18–20.[16]  However, non-discrimination principles do not require coverage of all devices needed by persons with disabilities.  As HHS stated in adopting regulations pursuant to § 1557, covered entities are not required "to cover any particular procedure or treatment."  *Nondiscrim. in Health Programs and Activities*, 81 Fed. Reg. 31,375, at 31,434 (May 18, 2016).  Indeed, DME is defined under the Medicare Act to include "wheelchairs . . . used in a patient's home," similar to the language used under the base-benchmark plan adopted by the Legislature.  42 U.S.C. § 1395x(n); ECF 34-1, Exh. A at 29.  In upholding a 14–day limitation on inpatient coverage though the plaintiff needed a longer hospital stay, *Alexander v. Choate* confirmed that Medicaid programs need "not guarantee that each recipient will receive that level of health care precisely tailored to his or her needs."  *Choate*, 469 U.S. at 303. Similarly, here, it is not discrimination by the state Legislature under the ACA to not include unlimited wheelchair coverage as an essential health benefit.

Section 1557 of the ACA cannot be used to compel State Defendants to include services that have not been designated as essential health benefits.  Any such holding would require that any service or device that has not been designated by the State as an essential health benefit, and that is needed by a disabled person, must be covered in order to avoid discrimination.  Indeed, the purpose of the ACA's EHB requirement is to set the minimum threshold of services and items

---

[15] As noted, *supra* (n. 2), the inference that home use is a "requirement" does not follow from the plain language of the Kaiser benchmark plan. ECF 34-1, Exh. A at 29.  Neither the benchmark plan nor the relevant statutory section exclude wheelchairs that can be taken outside the home.  *Id.*; 42 U.S.C. § 1395x(n).

[16] Plaintiffs fail to support their conclusory allegations that the replacement wheelchairs they seek are "medically necessary."  SAC 15–17.  Plaintiffs fail to allege any facts sufficient to establish their medical necessity.  *See, e.g.*, *Max. Comfort Inc. v. Sec'y of Health & Hum. Servs.*, 512 F.3d 1081, 1087–88 (9th Cir. 2007) (holding HHS Secretary could require information beyond equipment supplier's certificate of medical necessity to determine whether wheelchairs were medically necessary for purposes of reimbursement under Medicare Part B).  The SAC does not allege either named plaintiff received a medical referral for a chair.  *See* SAC 16–17 (one plaintiff was alleged to have received a recommendation from a medical device company, and there is no allegation the other named plaintiff consulted any entity that recommended a wheelchair was medically necessary).  The Department does not dispute Plaintiffs' disabilities, but is also not in a position to make representations regarding Kaiser's documentation (or other) requirements for a finding of medical necessity.

1    that must be covered, not to require the provision of all health care services and items that may

2    possibly be beneficial to each individual's health and well-being.  *See Schmitt*, 965 F.3d at 949

3    (noting that EHB provisions intended to allow individuals to meet the ACA requirement that they

4    maintain "minimum essential coverage").

5        In sum, Plaintiff have failed to allege, nor could they, any facts showing that State

6    Defendants have engaged in any type of intentional discrimination on the basis of disability.  To

7    the contrary, Plaintiffs (incorrectly) allege only that wheelchairs that are capable of being used

8    outside the home have been excluded as an essential health benefit, and that certain people who

9    are disabled need wheelchairs outside the home.  These allegations fail to establish the

10   discriminatory exclusion of Plaintiffs by State Defendants from a covered benefit.  Accordingly,

11   Plaintiffs' discrimination claim must be dismissed.

12       **C.    The SAC Does Not Support an Allegation of "Discrimination by Proxy"**

13       Plaintiffs' conclusory allegation that "to exclude wheelchairs from the EHB-benchmark" is

14   "discrimination by proxy" also fails to state a cognizable claim.  SAC 18.  This is because

15   Plaintiffs fail to allege any facts that "would raise an inference of proxy discrimination or other

16   theory of relief" sufficient to state a claim.  *Schmitt*, 965 F.3d at 960.

17       As in *Schmitt*, Plaintiffs "allege no facts giving rise to an inference of intentional

18   discrimination by the exclusion itself."  *Id.* at 959.  Indeed, as fully explained above, DMHC's

19   EHB regulation in no way "excludes" coverage of wheelchairs.  The EHB requirements are

20   "minimum" benefit requirements for qualifying health plans.  *See* Cal. Health and Safety

21   Code § 1367.005(a).  A health plan may choose to provide coverage for DME, including for

22   wheelchairs, that is broader than the minimum EHB requirements.  ECF 12 at 5.

23       In addition, in cases finding "discrimination by proxy," courts have looked to "historical

24   and legislative context of the particular classification at issue."  *See Davis v. Guam*, 932 F.3d 822,

25   834 (9th Cir. 2019).  Others have considered whether there was any "stated intent" to make

26   distinctions based on a protected characteristic.  *See Davis v. Commonwealth Election Comm'n*,

27   844 F.3d 1087, 1093 (9th Cir. 2016).  But here, Plaintiffs fail to allege anything in the historical

28

1  background that would support a reasonable inference that DMHC sought to discriminate or ever

2  "stated" any intent to discriminate against particular persons with disabilities.

3  **CONCLUSION**

4  For the above reasons, the Court should dismiss Plaintiffs' lawsuit without leave to amend.

5  Dated: December 16, 2022                    Respectfully submitted,

6                                              ROB BONTA
                                               Attorney General of California
7                                              JENNIFER G. PERKELL
                                               Supervising Deputy Attorney General
8

9

10

11                                             DANE C. BARCA
                                               Deputy Attorney General
12                                             *Attorneys for Defendants*

13  SF2021402009/Notice of Motion and Motion to Dismiss.docx

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28