CLAUDIA CENTER – 158255
SILVIA YEE – 222737
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
3075 Adeline Street, Suite 210
Berkeley, California  94703
Telephone:    (510) 644-2555
Email:        ccenter@dredf.org
              syee@dredf.org

ERNEST GALVAN – 196065
MICHAEL S. NUNEZ – 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:        egalvan@rbgg.com
              mnunez@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| GRACE SMITH and RUSSELL RAWLINGS, on behalf of themselves and all others similarly situated, and CALIFORNIA FOUNDATION FOR INDEPENDENT LIVING CENTERS, a California nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA HEALTH AND HUMAN SERVICES AGENCY; and CALIFORNIA DEPARTMENT OF MANAGED HEALTH CARE, KAISER FOUNDATION HEALTH PLAN, INC.<br><br>Defendants. | Case No. 4:21-cv-07872-HSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Judge:   Hon. Hon. Haywood S. Gilliam, Jr.<br>Date:    March 30, 2023<br>Time:    2:00 pm<br>Crtrm.:  2, 4th Floor<br><br>Judge:   Hon. Haywood S. Gilliam, Jr.<br><br>Action Filed:    October 7, 2021<br>Trial Date:      None Set |

[4231157.3]

**TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................. 1

STANDARDS OF REVIEW ........................................................... 2

ARGUMENT ................................................................................ 2

I.   The State Defendants Are Covered by Section 504 and Section 1557 Through Their Receipt of Federal Financial Assistance and Have No Eleventh Amendment Defense. .............................................. 2

   A.   Defendant HHSA and All of Its Operations Are Covered by Section 504. .......................................................................... 3

   B.   Defendants HHSA and All of Its Operations Are Covered by Section 1557. ........................................................................ 6

   C.   Defendant DMHC is Independently Covered by Section 504 and Section 1557. ....................................................................... 8

   D.   Plaintiffs Are Entitled to Seek Declaratory Relief Against the State Defendants. ................................................................... 8

II.  Plaintiffs' Claims Are Timely. ................................................ 9

III. Plaintiffs Have Article III Standing to Bring Claims Against the State Defendants. ...................................................................... 11

   A.   Plaintiffs' Injuries Are Fairly Traceable to the State Defendants. ... 13

   B.   Plaintiffs' Injuries Are Redressable Through This Litigation. ....... 16

IV.  Plaintiffs State Claims for Disability Discrimination. ................... 18

   A.   Compliance with a Benchmark Plan Does Not Equate to Disability Nondiscrimination. ................................................................ 19

   B.   Plaintiffs Allege Unlawful Unintentional Discrimination. ........... 20

   C.   Plaintiffs Allege Unlawful Intentional Discrimination. ............... 21

   D.   Plaintiffs Allege Unlawful Failure to Provide Reasonable Modifications. ...................................................................... 24

   E.   The Meaningful Access Standard Is Bounded. .......................... 24

CONCLUSION ............................................................................ 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. Choate,*
    469 U.S. 287 (1985) ............................................................. 19, 21, 24, 25

*Am. Trucking Associations, Inc. v. Fed. Motor Carrier Safety Admin.,*
    724 F.3d 243 (D.C. Cir. 2013)............................................................ 13, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................... 2

*Bastek v. Fed. Crop Ins. Corp.,*
    145 F.3d 90 (2d Cir. 1998) .................................................................... 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................... 2

*Bostock v. Clayton Cty.,*
    140 S. Ct. 1731 (2020)........................................................................... 17

*Boyden v. Conlin,*
    341 F. Supp. 3d 979 (W.D. Wisc. 2018) ................................................. 3

*Cent. Delta Water Agency v. United States,*
    306 F.3d 938 (9th Cir. 2002) ................................................................ 12

*Corrales v. Moreno Valley Unified Sch. Dist.,*
    No. 08-00040-AC, 2010 U.S. Dist. LEXIS 57563 (C.D. Cal. June 10, 2010).......... 3

*Cota v. Maxwell-Jolly,*
    688 F. Supp. 2d 980 (N.D. Cal. 2010) ................................................... 15

*Crowder v. Kitagawa,*
    81 F.3d 1480 (9th Cir. 1996) ................................................................ 15

*De Long v. Brumbaugh,*
    703 F. Supp. 399 (W.D. Pa. 1989) ......................................................... 9

*Dep't of Com. v. New York,*
    139 S. Ct. 2551 (2019)........................................................................... 13

*Doe v. CVS Pharmacy, Inc.,*
    982 F.3d 1204 (9th Cir. 2020) ........................................................ 19, 20

*Douglas v. Cal. Dep't of Youth Auth.,*
    271 F.3d 812 (9th Cir. 2001) ................................................................ 10

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC,*
    753 F.3d 862 (9th Cir. 2014) ................................................................ 10

*Frame v. City of Arlington,*
   657 F.3d 215 (5th Cir. 2011) ................................................................................. 11

*Greater L.A. Council of Deafness v. Zolin,*
   812 F.2d 1103 (9th Cir. 1987) ................................................................................. 8

*Hamer v. City of Trinidad,*
   924 F.3d 1093 (10th Cir. 2019) ............................................................................... 11

*Harness v. Hosemann,*
   988 F.3d 818 (5th Cir. 2021) ................................................................................... 14

*Haybarger v. Lawrence Cty. Adult Prob. & Parole,*
   551 F.3d 193 (3d Cir. 2008) ................................................................................ 4, 5

*Hubbard v. SoBreck, LLC,*
   554 F.3d 742 (9th Cir. 2009) ................................................................................. 16

*Innovative Health Sys. v. City of White Plains,*
   931 F. Supp. 222  (S.D.N.Y. 1996) ...................................................................... 3, 4

*Levine v. Vilsack,*
   587 F.3d 986 (9th Cir. 2009) ................................................................................. 12

*Lopez v. Smith,*
   203 F.3d 1122 (9th Cir. 2000) ................................................................................. 2

*Los Angeles Cnty. Bar Ass'n v. Eu,*
   979 F.2d 697 (9th Cir. 1992) ............................................................................ 16, 17

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................................................... 12

*Mark H. v. Lemahieu,*
   513 F.3d 922 (9th Cir. 2008) ............................................................................ 20, 21

*Morris v. Williams,*
   67 Cal. 2d 733 (1967) ............................................................................................ 18

*Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch,*
   773 F.3d 1037 (9th Cir. 2014) .......................................................................... 10, 12

*Nat'l Audubon Soc'y, Inc. v. Davis,*
   307 F.3d 835 (9th Cir.), *opinion amended on denial of reh'g,* 312 F.3d 416
   (9th Cir. 2002) ........................................................................................................ 13

*Payan v. Los Angeles Cmty. Coll. Dist.,*
   11 F.4th 729 (9th Cir. 2021) ................................................................................... 20

*Pickern v. Holiday Quality Foods,*
   293 F.3d 1133 (9th Cir. 2002) ................................................................................ 10

*Planned Parenthood of Idaho, Inc. v. Wasden,*
   376 F.3d 908 (9th Cir. 2004) .................................................................................. 14

*Preskar v. United States*,
    248 F.R.D. 576 (E.D. Cal. 2008) ............................................................................. 18

*Renee v. Duncan*,
    623 F.3d 787 (9th Cir. 2010), *opinion supplemented on reh'g*, 686 F.3d
    1002 (9th Cir. 2012) .............................................................................. 14, 16, 17

*Rochester Pure Waters Dist. v. EPA*,
    960 F.2d 180 (D.C. Cir. 1992) ................................................................................ 18

*San Luis & Delta-Mendota Water Authority v. Salazar*,
    638 F.3d 1163 (9th Cir. 2011) ................................................................................ 14

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
    965 F.3d 945 (9th Cir. 2020) ......................................................................... passim

*Sharer v. Oregon*,
    581 F.3d 1176 (9th Cir. 2009) ........................................................................ 3, 5, 6

*Smith v. Watanabe*,
    No. 21-cv-07872-HSG, 2022 U.S. Dist. LEXIS 174999, at *5-7 (N.D. Cal.
    Sep. 27, 2022) ........................................................................................................... 2

*Spain v. Mountanos*,
    690 F.2d 742 (9th Cir. 1982) ................................................................................. 18

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ............................................................................................... 25

*Taniguchi v. Schultz*,
    303 F.3d 950 (9th Cir. 2002) ................................................................................. 11

*Thomlison v. City of Omaha*,
    63 F.3d 786 (8th Cir. 1995) ..................................................................................... 4

*V.L. v. Wagner*,
    669 F. Supp. 2d 1106 (N.D. Cal. 2009) ................................................................ 16

*Vega-Ruiz v. Northwell Health*,
    992 F.3d 61 (2d Cir. 2021) ...................................................................................... 9


**STATUTES**

28 C.F.R. § 35.108 ........................................................................................................ 23

29 U.S.C. § 794 ..................................................................................................... 1, 2, 3, 6

42 U.S.C § 2000 .......................................................................................................... 3, 4

42 U.S.C. § 12102 ........................................................................................................ 23

42 U.S.C. § 18116 ................................................................................................... 1, 2, 7

45 C.F.R § 84.4 ................................................................................................................ 21

45 C.F.R § 92.105 ............................................................................................................ 24

45 C.F.R. § 92.3 ................................................................................................................ 7

45 C.F.R. § 92.4 ................................................................................................................ 7

Cal. Gov. Code § 11135 .................................................................................................. 17

Cal. Gov. Code § 16360 .................................................................................................... 4

Cal. Gov't Code § 12800 ............................................................................................. 5, 14

Cal. Gov't Code § 12803 ............................................................................................. 5, 14

Cal. Health & Safety Code § 1341 .................................................................................... 5

Cal. Health & Safety Code § 1367.005 ..................................................................... 17, 18

Cal. Health & Safety Code § 1374.30 ............................................................................. 24

Cal. Health & Safety Code § 1399.851 ........................................................................... 17

Cal. Ins. Code § 10112.27 ............................................................................................... 17

Cal. Ins. Code § 10965.5 ................................................................................................. 17

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 2

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 2

# INTRODUCTION

The motion to dismiss filed by Defendants California Health and Human Services Agency ("HHSA") and California Department of Managed Health Care ("DMHC") (collectively, the "State Defendants") should be denied.[1] The State Defendants are covered by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504), and Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 (Section 1557), through their receipt of federal financial assistance. The Plaintiffs have standing, and their claims are timely. And under governing Ninth Circuit caselaw, Plaintiffs state a claim for disability discrimination under Section 504 and Section 1557 against the State Defendants.

# STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the State Defendants have Eleventh Amendment immunity against claims under Section 504 of the Affordable Care Act and Section 1557 of the Affordable Care Act, or whether they are recipients of federal financial assistance;

2.      Whether the disabled Plaintiffs, who are deprived of nondiscriminatory health insurance benefits to cover medically necessary wheelchairs, have Article III standing to challenge state policies and practices codifying and allowing the deprivation;

3.      Whether the claims of the disabled Plaintiffs, who face barriers caused by discriminatory health insurance benefit design, accrued at the time the state agency first promulgated its unlawful policies, or at the time the Plaintiffs actually encountered the barriers and were injured by them;

4.      Whether the disabled Plaintiffs here who are denied coverage for medically

---

[1] The State Defendants point out in various places that the Second Amended Complaint (SAC) does not include claims against Kaiser, and that any redress that requires action by Kaiser is out of reach for purposes of the redressability prong of Article III standing. *See* Mot'n at 7:7-10, 9:1-3, 17:10-19. Kaiser has not been "dropped from" the case. *Id.* at 17:11. Kaiser's motion to dismiss was denied as moot; its motion to compel arbitration was granted, and the claims against it were stayed pending resolution of the arbitration. ECF no. 66 at 10:14-18. Plaintiffs have not dropped claims against Kaiser, i.e., have not moved for voluntary dismissal of Kaiser, nor could they with a stay in place. Kaiser's status in the case is the subject of joint status reports every 120 days under completion of the arbitration. *Id.* at 10:19-20. They are omitted from the SAC only because the claims against them cannot be litigated in this forum now during the pendency of the stay.

1   necessary wheelchairs have stated a claim for relief under Section 504 of the

2   Rehabilitation Act and/or Section 1557 of the Affordable Care Act.

3                              **STANDARDS OF REVIEW**

4           This Court has stated the standards of review applicable here. *Smith v. Watanabe*,

5   No. 21-cv-07872-HSG, 2022 U.S. Dist. LEXIS 174999, at *5-7 (N.D. Cal. Sep. 27, 2022).

6   A federal court must dismiss an action when it lacks subject matter jurisdiction. *See* Fed.

7   R. Civ. P. 12(b)(1).

8           Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and

9   plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ.

10  P. 8(a)(2). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to

11  state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

12  544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that

13  allows the court to draw the reasonable inference that the defendant is liable for the

14  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

15          Even if the Court concludes that a 12(b)(6) motion should be granted, it should

16  "grant leave to amend even if no request to amend the pleading was made, unless it

17  determines that the pleading could not possibly be cured by the allegation of other facts."

18  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

19                                  **ARGUMENT**

20  **I.    The State Defendants Are Covered by Section 504 and Section 1557 Through
           Their Receipt of Federal Financial Assistance and Have No Eleventh**
21  **       Amendment Defense.**

22          Section 504 prohibits discrimination by "any program or activity receiving Federal

23  financial assistance." 29 U.S.C. § 794(a). Section 1557 similarly prohibits discrimination

24  by "any health program or activity, any part of which is receiving Federal financial

25  assistance, including credits, subsidies, or contracts of insurance." 42 U.S.C. § 18116(a).

26  Under the Rehabilitation Acts Amendments of 1986, state entities "shall not be immune

27  under the Eleventh Amendment of the Constitution of the United States from suit in

28  Federal court for a violation of section 504 of the Rehabilitation Act of 1973 … [or] any

1    other Federal statute prohibiting discrimination by recipients of Federal financial

2    assistance." 42 U.S.C § 2000d-7(1). This broad waiver of a state's Eleventh Amendment

3    immunity applies to claims under Section 1557. *See Boyden v. Conlin*, 341 F. Supp. 3d

4    979, 998-999 (W.D. Wisc. 2018); *Michelle v. California Dep't of Corr. & Rehab.*, No.

5    118CV01743NONEJLTPC, 2021 WL 1516401, at *11 (E.D. Cal. Apr. 16, 2021).

6        **A.    Defendant HHSA and All of Its Operations Are Covered by Section 504.**

7        The Civil Rights Restoration Act of 1987 amended the definition of "program or

8    activity receiving federal financial assistance" under the Rehabilitation Act to include "*all

9    of the operations of* … a department, *agency*, special purpose district, or other

10   instrumentality *of a State* … *any part of which is extended Federal financial assistance*."

11   29 U.S.C. § 794(b)(1) (emphases added). The amendment was designed to overturn

12   Supreme Court cases which had interpreted the Rehabilitation Act to apply only to specific

13   programs that directly received federal financial aid, even if other programs within the

14   same department or agency did receive such aid. *Sharer v. Oregon*, 581 F.3d 1176, 1178

15   (9th Cir. 2009); *Corrales v. Moreno Valley Unified Sch. Dist.*, No. 08-00040-AC, 2010

16   U.S. Dist. LEXIS 57563, at *29 (C.D. Cal. June 10, 2010) (citing *Innovative Health Sys. v.

17   City of White Plains*, 931 F. Supp. 222, 234 (S.D.N.Y. 1996)).

18       Here, Plaintiffs challenge the actions and inactions of defendant Department of

19   Managed Health Care, a subdepartment of defendant Health and Human Services Agency.

20   "All of the operations" of defendant state agency Health and Human Services Agency are

21   covered by the Rehabilitation Act. This is because several of its parts – including the

22   Department of Health Care Services – receive federal financial assistance.[2] The very

23

24   _____

     [2] *See* Plaintiffs' Request for Judicial Notice ("PRJN"), Exh. 1, Health and Human Services
25   Agency 2021-22 State Budget (hereinafter "HHSA 2021-22 Budget") at 57 (showing funding of
     $84,094,146,000 from Federal Trust Fund for DHCS), 64 (showing funding of $83,525,481 from
26   Federal Trust Fund for program "Medical Care Services (Medi-Cal)"),
     https://www.ebudget.ca.gov/2021-22/pdf/Enacted/GovernorsBudget/4000.pdf. The designation
27   "0890 Federal Trust Fund" refers to the state account "for the deposit of all moneys received by
     the state from the federal government where the expenditure is administered through or under the
28   direction of any state agency." PRJN, Exh. 2 (Manual of State Funds); *see also* Cal. Gov. Code

purpose and plain language of Section 794(b) is to prevent the argument advanced by the State Defendants here. Civil Rights Restoration Act of 1987 (S. 557), 102 Stat. 28 (Mar. 22, 1988), Sec. 2 ("The Congress finds that … legislative action is necessary to restore … *broad, institution-wide application* of those laws") (emphasis added); *Innovative Health Sys.*, 931 F. Supp. at 234.

Thus, in *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193 (3d Cir. 2008), the Third Circuit held that the Lawrence County Adult Probation and Parole Department – a department of the Fifty-Third Judicial District of Pennsylvania – was covered by Section 504. Although discovery revealed that the LCAPPD received no federal funds, the Domestic Relations Section (DRS) of the Fifty-Third Judicial District did receive federal funds earmarked specifically for child support enforcement. Because the LCAPPD and the DRS were both part of the Judicial District, the receipt of funds by DRS brought LCAPPD under Section 504. *Haybarger*, 551 F.3d at 200. The appellate court reasoned: "Once the department or agency is identified, … the statute encompasses all of its operations, regardless of whether a particular operation is federally assisted. … [A]lthough a particular function or operation might be the State's only link to federal funds, the waiver under § 2000d-7 is structural; it applies to 'all the operations' of the entity receiving federal funds." *Id.*; *accord Thomlison v. City of Omaha*, 63 F.3d 786, 789 (8th Cir. 1995) ("Because the definition of program or activity covers all the operations of a department, here the Public Safety Department, and part of the Department [the Police Division] received federal assistance, the entire Department is subject to the Rehabilitation Act."). The same reasoning applies here. The receipt of funds by DHCS and other components of HHSA brings all of the programs and activities of Defendant HHSA, including those of Defendant DMHC, under Section 504.

The outcome in *Sharer* is instructive. There, using the structural analysis described in *Haybarger*, the Ninth Circuit found that Oregon's Office of Public Defense Services

---

§ 16360 (creating "the Federal Trust Fund").

1  (OPDS) was not covered by Section 504 because it was a component of the Public Defense

2  Services Commission, which did not receive federal financial assistance. The appellate

3  court found that neither the OPDS nor the Commission were part of the Judicial

4  Department, which did receive federal financial assistance. The appellate court reasoned

5  that under state law, the head of the Judicial Department had no supervisory role over the

6  Commission. *Sharer*, 581 F.3d at 1180.

7          Here, under state law, the DMHC is a component of the Health and Human Services

8  Agency and is under the agency's authority, jurisdiction, and supervision. Cal. Gov't Code

9  § 12803(a) ("The California Health and Human Services Agency consists of the following

10  departments: Aging; Community Services and Development; Developmental Services;

11  Health Care Services; Managed Health Care; Public Health; Rehabilitation; Social

12  Services; and State Hospitals."); Cal. Health & Safety Code § 1341(a) ("There is in state

13  government, in the California Health and Human Services Agency, a Department of

14  Managed Health Care that has charge of the execution of the laws of this state relating to

15  health care service plans and the health care service plan business"). Under state law,

16  Defendant HHSA supervises Defendant DMHC, including its budget, operations, and

17  performance. The secretary of HHSA is "responsible for the sound fiscal management of

18  each department, office, or other unit within the agency." Cal. Gov't Code § 12800(b). The

19  agency must "review and approved the proposed budget of each department[.]" *Id.* The

20  secretary holds the head of each department responsible for its administrative, fiscal, and

21  program performance, and periodically reviews operations and evaluates the performance

22  of each department. *Id.* The secretary of Defendant HHSA "shall seek continually to

23  improve the organization structure, the operating policies, and the management

24  information systems of each department[.]" *Id.*[3] The official organizational chart depicts

25

26  [3] *Accord, e.g.*, PRJN, Exh. 3 CalHHS, Departments & Offices ("The California Health & Human
    Services Agency (CalHHS) oversees 12 Departments and five Offices that provide a wide range of

27  services[.] … More than 33,000 public servants work throughout CalHHS at headquarters in
    Sacramento, regional offices across California and state institutions and residential facilities as

28  well."), https://www.chhs.ca.gov/about/departments-and-offices/; PRJN, Exh. 4 CalHHS, Guiding

1   Defendant DMHC as a subsidiary department of Defendant HHSA.[4]

2        Thus, unlike in *Sharer*, Defendant DMHC is not an independent Commission that

3   acts outside of HHSA direction and authority – it is a department within and under the

4   jurisdiction of the state agency, and its expenditures are a component of the Agency's

5   unified budget which must be approved by the Agency.[5] Under 29 U.S.C. § 794(b)(1), all

6   of the operations of the defendant state agency (including those of Defendant DMHC) are

7   covered by Section 504 because "any part" of the agency receives federal financial

8   assistance. It is contrary to the text of Section 504 and congressional intent to allow a state

9   agency funded with billions of federal dollars to shield foundational program design

10  decisions from review by segregating this function in a distinct department that

11  purportedly does not receive federal funds. The State Defendants must comply with the

12  federal laws at issue here.

13      **B.     Defendants HHSA and All of Its Operations Are Covered by Section 1557.**

14

15      For similar reasons, the State Defendants are also covered by Section 1557. The

16  language of Section 1557 mirrors in important ways the language of Section 504 – it

17

18  Principles & Strategic Priorities (rev. 2/22), 7 (we will "integrate shared opportunities to meet

19  individual needs across departments"), 9 (we will "design programs and services across departments"), https://www.chhs.ca.gov/wp-content/uploads/2022/03/CalHHS-Guiding-

20  Principles_full-ada.pdf; PRJN, Exh. 5 About CalHHS ("The Office of Policy and Strategic

21  Planning is responsible for driving measurable outcomes on CalHHS's guiding principles and strategic priorities through system alignment and program integration across the agency's

22  departments and offices to build a Healthy California for All."), https://www.chhs.ca.gov/about/#organization-of-the-office; PRJN, Exh. 6 CalHHS, Secretary Dr.

23  Mark Ghaly ("Dr. Ghaly will oversee California's largest Agency which includes many key

24  departments that are integral to supporting the implementation of the Governor's vision to expand health coverage and access to all Californians."), https://www.chhs.ca.gov/wp-

25  content/uploads/2019/04/Dr.-Ghaly-Bio.pdf.

26  [4] PRJN, Exh. 7, Executive Branch Organizational Chart 9.20.22, https://www.gov.ca.gov/wp-content/uploads/2021/12/Exec-Branch-Org-Chart-1.14.22_fully-remediated.pdf.

27  [5] PRJN, Exh. 8, Health and Human Services 2021-22 Budget Summary,
    https://ebudget.ca.gov/2021-22/pdf/Enacted/BudgetSummary/HealthandHumanServices.pdf;

28  HHSA 2021-22 Budget, *supra* n.2.

covers "any health program or activity, *any part of which* is receiving Federal financial assistance." 42 U.S.C. § 18116(a). Defendant HHSA is such a health program or activity, as several parts of HHSA receive substantial federal financial assistance.[6]

The regulations implementing Section 1557 are consistent. The existing regulation states that Section 1557 applies to "[a]ny health program or activity, any part of which is receiving Federal financial assistance," and that "'health program or activity' encompasses all of the operations of entities principally engaged in the business of providing healthcare that receive Federal financial assistance." 45 C.F.R. § 92.3(a)(1), (b). Here, Defendant HHSA receives billions of federal financial assistance through its several departments, and the large majority of its activities and budget is dedicated to the provision of healthcare to California residents.[7]

The U.S. Department of Health and Human Services published a notice of proposed rulemaking on August 4, 2022, for which comments closed on October 3, 2022. 87 Fed.Reg. 47824, 47912 (Aug. 4, 2022).[8] The proposed regulation on the same matter states that a "health program or activity" means:

> (1) Any project, enterprise, venture, or undertaking to (i) Provide or administer health-related services, health insurance coverage, or other health-related coverage; (ii) Provide assistance to persons in obtaining health-related services, health insurance coverage, or other health-related coverage; (iii) Provide clinical, pharmaceutical, or medical care; (iv) Engage in health research; or (v) Provide health education for health care professionals or others;
>
> (2) All of the operations of any entity principally engaged in the provision or administration of any health projects, enterprises, ventures, or undertakings described in paragraph (1) of this definition, including, but not limited to, a State or local health agency ….

*Id.* (proposed 45 C.F.R. § 92.4 Definitions). This language also easily encompasses Defendant HHSA, which is a state agency principally engaged in all of the activities

---

[6] *See* n.2, *supra*.

[7] *See* Health and Human Services 2021-22 Budget Summary, *supra* n.5 (describing $209.9 billion budget for Agency); HHSA 2021-22 Budget, *supra* n.2 (reviewing department budgets including $129.1 billion for Department of Health Care Services, $4.7 billion for Department of Public Health, and $2.7 billion for Department of Public Hospitals).

[8] NPRM available at https://www.govinfo.gov/content/pkg/FR-2022-08-04/pdf/2022-16217.pdf.

1    delineated in subsection (1).

2    **C.    Defendant DMHC is Independently Covered by Section 504 and Section
     1557.**

3

4    Plaintiffs incorporate by reference their prior arguments regarding Defendant

5    DMHC's independent requirement to comply with Section 504 as a recipient of federal

6    financial assistance. Defendant DMHC presently retains possession of personal property

7    funded by earmarked federal financial assistance.[9] It is presently an integral and essential

8    component of health care systems that receive billions of dollars annually in federal

9    financial assistance, including the Medi-Cal program under Defendant CalHHS.[10]

10   Discovery would or could show the present indirect receipt of federal financial

11   assistance.[11] It is likely the Defendant DMHC will receive federal funds in the future. [12]

12   **D.    Plaintiffs Are Entitled to Seek Declaratory Relief Against the State
     Defendants.**

13

14   Plaintiffs seek declaratory relief. SAC at ¶¶ 18 n.3, 22, 24, 77, 82, Prayer for Relief

15   (2). Plaintiffs are entitled to declaratory relief against the State Defendants, even if the

16   Court finds that they are not recipients of federal financial assistance. The termination of

17   federal funding does not bar a claim for declaratory relief based on conduct that occurred

18   when the defendants were receiving federal funding. *Greater L.A. Council of Deafness v.*

19   *Zolin*, 812 F.2d 1103, 1112, 1113, 1116 (9th Cir. 1987). "The decision to grant declaratory

20   relief 'should always be made with reference to the public interest,' recognizing that

21

22   [9] ECF 36 at 3-5 (citing 45 C.F.R. §§ 84.5, 92.4(a), (b) and ECF 35, Exhs. 1-8).

23   [10] *Id.* at 6-8 (citing Cal. Gov. Code § 16360, Cal. Welf. & Inst. Code §§ 14132.275(p), 14186.4(e),
     14182.16(p) and ECF 35, Exhs. 9-10, 17).

24

25   [11] ECF 63 at 1 (citing *Herman v. United Bhd. of Carpenters*, 60 F.3d 1375, 1381 (9th Cir. 1995),
     *Nat'l Ass'n of the Deaf v. Florida*, 318 F. Supp. 3d 1338, 1347 (S.D. Fla. 2018), *aff'd*, 980 F.3d
     763, 775-76 (11th Cir. 2020); *T.W. v. N. Y. State Bd. of Law Exam'rs*, No. 16-cv-3029, 2017 U.S.

26   Dist. LEXIS 158060, at *9 (E.D.N.Y. Sep. 25, 2017), *Greater L.A. Council of Deafness v. Zolin*,
     607 F. Supp. 175, 181 (C.D. Cal. 1984), *aff'd*, 812 F.2d 1103, 1111 (9th Cir. 1987), *Sharer*, 581

27   F.3d at 1181).

28   [12] ECF 36 at 8-9 (citing *Zolin*, 812 F.2d 1103, 1111 (9th Cir. 1987)).

declarations can serve an important educational function for the public at large as well as for the parties to the lawsuit." *Id*. at 1112 (citations omitted). It should issue where it serves "as a vindication of plaintiffs' position and as a public statement of the extent of [disabled] persons' rights under section 504." *Id*. at 1113. It is appropriate where it will "aid in clarifying and settling the legal relations in issue." *Id*.; *see also De Long v. Brumbaugh*, 703 F. Supp. 399, 405-06 (W.D. Pa. 1989) ("We find that declaratory relief will aid in clarifying and settling the legal issues in this case and will afford the parties relief from the uncertainty and controversy they face.") (granting declaratory relief in case brought by prospective deaf juror). Here, the "legal relations in issue" include whether the State Defendants, with Defendant DMHC undisputedly the recipients of at least past federal financial assistance, and Defendant HHSA a current recipient of billions every year, have built an ACA framework that discriminates today based on disability against the Plaintiffs and other similarly situated wheelchair users. Declaratory relief would vindicate Plaintiffs' rights and could function to resolve the dispute. By contrast, denying declaratory relief would allow the State Defendants to shield foundational program design decisions from review by segregating the function in a distinct department that purportedly does not receive federal funds. Such an outcome would vitiate enforcement of the disability nondiscrimination principles guaranteed by Section 504 and the Affordable Care Act and Section 1557. Plaintiffs are entitled to declaratory relief.

## II.      Plaintiffs' Claims Are Timely.

The State Defendants correctly state that the statute of limitations is four years, *Vega-Ruiz v. Northwell Health*, 992 F.3d 61, 66 (2d Cir. 2021), but they misstate the date of the accrual of Plaintiffs' claim against the defendants. Plaintiffs' claims under Section 504 and Section 1557 accrue each time they encounter the discrimination contained in their insurance plans, not on the date that the State Defendants first created or approved of the discriminatory design. The challenged discrimination is ongoing as it is contained in the insurance plans that today cover the individual Plaintiffs – and who today need coverage for medically necessary wheelchairs. Moreover, Defendant DMHC participates

1   in an ongoing manner in the challenged discrimination, as it periodically reviews and

2   approves the plans at issue through its EHB Filing Worksheet process. Plaintiffs' claims

3   against the State Defendants are not time-barred.

4        The Ninth Circuit has recognized that the statute of limitations runs from each

5   encounter the disabled person has with the unlawful barrier. In *Pickern v. Holiday Quality*

6   *Foods*, 293 F.3d 1133 (9th Cir. 2002), the Ninth Circuit reversed the district court's

7   dismissal on statute of limitations grounds of a wheelchair user's challenge to barriers at a

8   public accommodation. The appellate court rejected the defendant's argument that the

9   statute of limitations began to run when the disabled patron first became aware of the

10  barrier, noting the plaintiff stated that barriers deterred him from entering the store just

11  before filing suit. "So long as the discriminatory conditions continue, and so long as a

12  plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Id*.

13  at 1137. And in *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862 (9th

14  Cir. 2014), the Ninth Circuit rejected defendants' argument that the statute of limitations

15  began to run the first time the deaf plaintiffs were denied an interpreter, and instead ruled

16  that a new claim accrued with each denial. "Even if the alleged violations were the result

17  of a discriminatory policy, that would not render the Ervines' claims for discrete

18  discriminatory acts untimely. … [E]ach and every discrete discriminatory act causes a new

19  claim to accrue under Section 504 of the Rehabilitation Act[.]" *Id*. at 871. Further, where

20  failure to comply with federal disability nondiscrimination laws constitutes a continuing

21  violation, either due to "serial" or "systemic" violations, the statute of limitations does not

22  commence until the discriminatory conditions cease. *See*, *e.g.*, *Douglas v. Cal. Dep't of*

23  *Youth Auth.*, 271 F.3d 812, 822-24 (9th Cir. 2001).[13]

24

---

25  [13] Further, a futile request by the individual Plaintiffs within the period of limitations is not required.
26  *Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch*, 773 F.3d 1037, 1044 (9th
    Cir. 2014) ("Although she has not applied to be admitted to the Arizona Bar pursuant to the AOM
27  Rule, such an application would be futile because she is a member of the State Bar of California,
    which does not have reciprocity with Arizona."); *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir.
28  2002) ('We have consistently held that standing does not require exercises in futility.')").

Similarly, the Fifth Circuit sitting *en banc* has rejected the theory that the statute of limitations for claims under Section 504 and the ADA runs from the date that a discriminatory barrier was first created, and held instead that the statute of limitations runs from when the disabled person encounters the barrier:

> [J]ust as a plaintiff may not sue until he is actually deterred from using a newly built or altered sidewalk, so his complete and present cause of action does not accrue until that time. …
>
> [T]he City nonetheless asserts that the plaintiffs' claims accrued as a matter of law at the time the City built or altered its inaccessible sidewalks. The key point the City fails to grasp is that a city's wrongful act and a disabled individual's injury need not coincide. A city acts wrongfully when it builds an inaccessible sidewalk without adequate justification, but a disabled individual is not injured until he is actually deterred from using that sidewalk.

*Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011). The Tenth Circuit reached a similar conclusion in *Hamer v. City of Trinidad*, 924 F.3d 1093 (10th Cir. 2019), finding that a plaintiff challenging inaccessible sidewalks and curb ramps "stops suffering a daily injury only when the public entity remedies the non-compliant" conditions. *Id*. at 1103. Here, the Plaintiffs are being presently denied coverage for medically necessary wheelchairs they need today. Their claims are timely.

## III.   Plaintiffs Have Article III Standing to Bring Claims Against the State Defendants.

Plaintiffs have alleged all elements of Article III standing. They have alleged a particularized and concrete injury – the denial of coverage for medically necessary wheelchairs that are required for disabilities. SAC at ¶¶ 4, 58-61, 63, 65-66, 73, 81.[14] They have alleged that the injury is fairly traceable to the State Defendants' challenged conduct – their regulations which sanction discriminatory plans in violation of Section 1557, their adoption of discriminatory benefit designs in violation of Section 1557, and their ongoing failure to enforce Section 1557 with regard to the health care plans under their review. SAC at ¶¶ 7, 52, 54-56, 67, 71-76, 81. The resulting injury is likely to be redressed by a

---

[14] The State Defendants do not challenge injury in fact, but causation and redressability. *See* State Defendants' MTD at 22-25.

favorable court decision, one that directs the State Defendants to require nondiscriminatory health insurance coverage of wheelchairs for people with disabilities in compliance with Section 504 and Section 1557. *See*, *e.g.*, SAC at ¶¶ 76-77, 80-81 & Prayer for Relief.

Unlike in cases cited by the State Defendants, Plaintiffs' standing to seek relief requires no chain of speculative events. *Compare Lujan v. Defenders of Wildlife*, 504 U.S. 555, 568-71 (1992) (finding that it was speculative that successful challenge to a federal regulation would remedy stated injury of wildlife conservation plaintiffs, where revised regulation might not be enforceable against third-party agencies funding the projects, and where projects purportedly injuring wildlife were primarily funded by other sources); *Levine v. Vilsack*, 587 F.3d 986, 993-95 (9th Cir. 2009) (finding that it would be speculative that a court ruling defining "livestock" in one federal law would lead to certain regulations under second federal law followed by compliance by third-party poultry processors). Instead, Plaintiffs are seeking changes from the State Defendants that would directly lead private insurers to provide the coverage sought. There is no speculation or lengthy chain of events in play here. *Accord Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) (any injury caused by excess salinity of certain waters controlled by Bureau of Reclamation would be "fairly traceable" to the Bureau's decisions on water release, and could be remedied by court order directing Bureau to use other methods to comply with federal law); *see also Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch*, 773 F.3d 1037, 1044 (9th Cir. 2014) (finding that member of State Bar of California who wished to practice in Arizona had Article III standing to challenge rule excluding admission of experienced members of bars of non-reciprocal jurisdictions).

Defendants HHSA and DMHC argue that they caused no injury to Plaintiffs because the Legislature, not the agencies, adopted the benchmark plan, and the agencies have no authority to act contrary to state law. Defendants' MTD at 23-24. The State Defendants understate their obligations and authority. The State Defendants cannot escape liability by arguing that they were following state law: Section 504 and Section 1557

require modification of any conflicting state laws, policies, or regulations. Nothing about the actions of the Legislature prohibit the State Defendants from complying with Section 1557 (and comparable state laws) and ensuring that Plaintiffs have access to nondiscriminatory health insurance coverage. Similarly, Kaiser's absence from the litigation does not defeat standing because, if this court issues relief, Kaiser would have to cure the discrimination in its insurance plans and thereby remedy the injury, which is enough to satisfy redressability.

### A.   Plaintiffs' Injuries Are Fairly Traceable to the State Defendants.

A chain of causation may have more than one link and still satisfy Article III so long as the connection between the injury and alleged cause is not hypothetical or tenuous. *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir.), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002) (bird watching association established traceability to challenge state law where law prompted others to remove predator traps, which increased predator population, which reduced bird population, which injured plaintiff). "[S]tanding will lie where 'a plaintiff demonstrates that the challenged agency action authorizes the conduct that allegedly caused the plaintiff's injuries, if that conduct would allegedly be illegal otherwise[.]'" *Am. Trucking Associations, Inc. v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243 (D.C. Cir. 2013) (causation for standing established in action challenging federal regulation extending truckers' permissible daily driving time where actions of non-party employer, not government defendant, directly caused the extended workday that was the truckers' alleged injury).

Traceability is satisfied in the circumstances present in this case. The Supreme Court and Ninth Circuit have held that traceability sufficient for standing exists in cases where the injury results from the predictable actions of third parties who are responding to the actions of government defendants. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565-66 (2019) (state government had standing to sue federal census agency even though chain of causation included households who would decline to respond to census resulting in loss of federal funds); *Renee v. Duncan*, 623 F.3d 787, 797 (9th Cir. 2010), *opinion*

*supplemented on reh'g*, 686 F.3d 1002 (9th Cir. 2012) (students and parents had standing to challenge federal No Child Left Behind Act regulations even though chain of causation included intervening state regulations). Traceability for standing exists because Kaiser's failure to provide Plaintiffs with legally adequate wheelchair coverage is a predictable result of the State Defendants' promulgation of regulations that do not require Kaiser or other health insurers to provide such coverage.

Further, HHSA cannot defeat standing based on traceability. Traceability for standing against a government agency to challenge the actions of a subordinate agency is satisfied where the first agency has some supervisory authority over, or right to participate in, the subordinate agency's activities. *Cf. Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919–920 (9th Cir. 2004) (plaintiff established traceability for standing to sue state attorney general to challenge provisions of state abortion law where county prosecutors primarily enforced law but attorney general could assist prosecutors with prosecutions even though attorney general could not "assert dominion and control" against prosecutor's wishes); *Harness v. Hosemann*, 988 F.3d 818, 820-821 (5th Cir. 2021) (felons had standing to sue secretary of state to challenge state law disenfranchising felons where county officials controlled voter rolls but Secretary developed and implemented the official statewide record of voters). Traceability for standing also exists against an agency where it has coercive influence over another agency that took the challenged action. *San Luis & Delta-Mendota Water Authority v. Salazar*, 638 F.3d 1163, 1170-1172 (9th Cir. 2011) (farmers had standing to sue Federal Fish and Wildlife Service for water diversion even though the diversion was directly caused by the Bureau of Reclamation because the Fish and Wildlife Services has the power to coerce or determine the Bureau's actions).

Here, although DMHC directly issued the challenged regulations, HHSA has authority to oversee DMHC's actions and HHSA's legal authority to review and approve DMHC's budget gives HHSA coercive power over DMHC. Cal. Gov't Code § 12803(a) ("California Health and Human Services Agency consists of the following departments: … Managed Health Care"); § 12800(b) (the HHSA secretary "shall review and approve the

1  proposed budget of each department, office, or other unit," "shall hold the head of each

2  department, office, or other unit responsible for management control over the

3  administrative, fiscal, and program performance of his or her department, office, or other

4  unit," and "shall review the operations and evaluate the performance at appropriate

5  intervals of each department, office, or other unit, and shall seek continually to improve

6  the organization structure, the operating policies, and the management information systems

7  of each department, office, or other unit."); *see also* footnotes 3-4, *supra*.

8          Nor can the State Defendants shield themselves from liability under Section 504

9  and Section 1557 by citing to purportedly contrary state law. Discriminatory policies and

10  practices are often reflected in state laws, and this reality does not shield state agencies or

11  other covered entities from their obligations to comply with federal disability

12  nondiscrimination mandates. In *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), the

13  Ninth Circuit reversed a ruling of summary judgment in favor of the Hawaii Department of

14  Agriculture and the state of Hawaii, ruling that state law and implementing regulations

15  requiring the quarantine of animals, including guide dogs for disabled people, were not a

16  defense to a claim brought under the ADA. The appellate court reasoned:

17          We are mindful of the general principle that courts will not second-guess the
        public health and safety decisions of state legislatures acting within their
18      traditional police powers. However, when Congress has passed
        antidiscrimination laws such as the ADA which require reasonable
19      modifications to public health and safety policies, it is incumbent upon the
        courts to insure that the mandate of federal law is achieved.
20

21  *Id.* at 1485 (citation omitted). Recently, the Ninth Circuit applied this principle in a case

22  brought under Section 1557 alleging discriminatory insurance design under the ACA.

23  *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 956-57 (9th Cir. 2020)

24  ("[W]hether or not [a state benchmark plan] complied with section 1557 is a question of

25  federal law on which we owe the state no deference."); *see also Cota v. Maxwell-Jolly*, 688

26  F. Supp. 2d 980, 996 (N.D. Cal. 2010) (enjoining state statute limiting eligibility for Medi-

27  Cal adult day health services in case brought under ADA and Section 504); *V.L. v.*

28  *Wagner*, 669 F. Supp. 2d 1106, 1123 (N.D. Cal. 2009) (enjoining state statute restricting

Medi-Cal home-care services in case brought under ADA and Section 504); *see also Hubbard v. SoBreck, LLC*, 554 F.3d 742, 744 (9th Cir. 2009) ("Federal law preempts state law if the state law 'actually conflicts' with federal law").

As this line of cases demonstrates, courts regularly remedy disability discrimination in the context of discriminatory state statutes, including with orders directed at state agencies. The State Defendants' deflection to the purportedly contrary direction of state statutory law is no basis to dismiss Plaintiffs' complaint.

**B.     Plaintiffs' Injuries Are Redressable Through This Litigation.**

The redressability requirement is "relatively modest." *Renee*, 623 F.3d at 797. Plaintiffs "need only show that there would be a 'change in legal status,' and that a 'practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Id.* at 797-98. "Plaintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision." *Id.* at 797.

Kaiser's absence from this litigation does not defeat redressability as Defendants argue. Defendants' MTD at 24. Plaintiffs satisfy the redressability requirement even where the chain of events necessary to redress plaintiffs' injury includes legally required actions of third parties, even where those actions are not guaranteed to occur. In *Renee*, 623 F.3d at 797-800, the defendant federal agencies asserted that plaintiff parents and students could get no redress in the absence of California's education agencies. The Ninth Circuit rejected this argument, holding that the injury was redressable if the non-party California agencies were likely to take action that would remedy the injury. *See also Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992) (bar association established redressability for standing to litigate constitutional challenge to dearth of state judges where redress of injury, delayed litigation, would depend on California legislature, most members of which were not party to the case, enacting legislation authorizing additional judges). Other circuits have found redressability satisfied under similar circumstances. *Am. Trucking*, 724 F.3d at 247-48 (trucker had standing to challenge government regulation that increased

number of hours that truckers could drive where non-party private employer, not government defendant, had required plaintiff to drive more hours as permitted by new regulation); *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 92 n.1 (2d Cir. 1998) (onion farmer established redressability for standing in action challenging federal insurance agency's method of computing recovery amount where private insurer, not government agency, insured farmer). Like in *Renee*, *Eu*, *American Trucking,* and *Bastek*, a court order requiring the State Defendants to mandate that health insurance plans cover medically necessary wheelchairs without discrimination would redress Plaintiffs' injury by legally obligating Kaiser and other insurers in the state to similarly cover wheelchairs.

Furthermore, nothing about California law prevents defendants from complying with Section 504 or Section 1557. Even if state statutory directives could shield the State Defendants, state statutory law does not prohibit the State Defendants from complying with Section 1557. To the contrary, state statutory law supports Plaintiffs' claims. California law requires "rehabilitative and habilitative services and devices" to be covered as an essential health benefit in the plans at issue in this litigation. Cal. Health & Safety Code § 1367.005(a)(1); Cal. Ins. Code § 10112.27(a)(1). It further defines "habilitative services" as "health care services and devices that help a person keep, learn, or improve skills and functioning for daily living." Cal. Health & Safety Code § 1367.005(p)(1); Cal. Ins. Code § 10112.27(p)(1). The "ordinary public meaning" of these provisions, *cf*. State Defendants' MTD at 24 (citing *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1738 (2020)), includes medically necessary wheelchairs for disabled people.

Moreover, state law prohibits health plans from employing "benefit designs that … discriminate based on an individual's … present or predicted disability, … or other health conditions. " Cal. Health & Safety Code § 1399.851(a)(3); Cal. Ins. Code § 10965.5(a)(3). As well, Section 11135 of the California Government Code prohibits disability discrimination by "any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state." Cal. Gov. Code § 11135(a).

Thus, the State's selection of a benchmark plan, comprised of the benefits set out in a particular Kaiser Foundation small group health plan together with additional state supplements, *see* Cal. Health & Safety Code § 1367.005(a), does not prevent the State Defendants from also complying with Section 1557 and other nondiscrimination mandates. Cal. Health & Safety Code § 1367.005(g) ("This section does not exempt a plan or a plan contract from meeting other applicable requirements of law."); *see also Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020) ("Compliance with a state's benchmark plan does not guarantee compliance with section 1557[.]").

Unlike in *Morris v. Williams*, 67 Cal. 2d 733, 747 (1967) – a state case that does not discuss Article III standing – the agency action sought by Plaintiffs would comport with state statutory law, not violate it. Unlike in *Preskar v. United States*, 248 F.R.D. 576, 584 (E.D. Cal. 2008), Plaintiffs are not seeking a court order directing the state legislature to amend state law. And unlike in *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 184 (D.C. Cir. 1992), Plaintiffs are seeking compliance with a federal nondiscrimination mandate, not an obligation of funds for which there is no appropriation.[15] Plaintiffs' injuries are traceable to State Defendants and can be redressed through this litigation.

## IV.    Plaintiffs State Claims for Disability Discrimination.

Plaintiffs' complaint states claims for disability discrimination in violation of Section 504 and Section 1557. Plaintiffs allege that they are denied "meaningful access" to the benefit of "rehabilitative and habilitative services and devices," due to the exclusions and caps applied to medically necessary wheelchairs needed by people with mobility disabilities. SAC at ¶¶ 1, 8, 55, 67, 71, 74, 76, 81. Plaintiffs' complaint alleges that the unlawful denial of meaningful access has been imposed through a discriminatory insurance design that has the effect of disability discrimination, that reflects an intentionally discriminatory insurance design, that denies benefits for a status that is proxy for disability, and that refuses to make reasonable modifications. *Id.* at 8, 55, 71, 72, 73, 76, 81. Plaintiffs not only allege that the

---

[15] Even if this action sought such state funds, this would not bar relief under Ninth Circuit law. *Spain v. Mountanos*, 690 F.2d 742, 746 (9th Cir. 1982).

State Defendants "codified" the challenged insurance design, *cf.* MTD at 21, but also that they implement and enforce the challenged design in its ongoing review of insurance plans. SAC at ¶¶ 7, 18, 52, 53. These allegations fit squarely within the holdings of the Ninth Circuit, and the State Defendants' motion to dismiss must be denied.

### A.    Compliance with a Benchmark Plan Does Not Equate to Disability Nondiscrimination.

The State Defendants aver that Plaintiffs' rights under Section 1557 are limited to access to the components selected by the Legislature in its benchmark plan, citing the outcome in *Alexander v. Choate*, 469 U.S. 287 (1985). Defendants' MTD at 22. This proposition is contradicted by controlling Ninth Circuit authority. In *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945 (9th Cir. 2020), hard-of-hearing plaintiffs challenged under Section 1557 a Kaiser benefit package that excluded all hearing loss treatment except cochlear implants. The Ninth Circuit ruled that "the ACA's nondiscrimination mandate imposes … constraints on a health insurer's selection of plan benefits," *id.* at 948, and "specifically prohibits discrimination in plan benefit design," *id.* at 949. The appellate court contrasted the ACA with the Medicaid scheme reviewed by the Supreme Court in *Choate*, and explained:

> While [the ACA] does not guarantee individually tailored health care plans, it attempts to provide adequate health care to as many individuals as possible by requiring insurers to provide essential health benefits. And it imposes an affirmative obligation not to discriminate in the provision of health care—in particular, to consider the needs of disabled people and not design plan benefits in ways that discriminate against them. Thus, the ACA allows a claim for discriminatory benefit design …

*Schmitt*, 965 F.3d at 955; *see also Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1211–12 (9th Cir. 2020) (affirming that a "meaningful access" claim must be evaluated in relation to the statute that establishes the benefit, here the ACA, including its guarantees, structures, and regulations).

The Ninth Circuit has specifically rejected the proposition that compliance with the state benchmark plan constitutes compliance with Section 1557, and has held instead that the prohibition on discriminatory benefit design may require more than coverage of the

minimum benefits contained in the state benchmark plan:

> Compliance with a state's benchmark plan does not guarantee compliance with section 1557. … [T]he ACA requires that essential health benefits not only include the ten specified categories of coverage, but also take into account the needs of persons with disabilities and not be designed in ways that discriminate against them. The ten general categories of benefits were intended to be a minimum requirement, subject to additional limitations and "[r]equired elements for consideration," such as nondiscrimination in benefit design. … [A] state-selected benchmark plan is only the starting point for determining essential health benefits. …

> The benchmark standards require the benchmark plan to include the ten essential benefit categories, but they also require that the plan "[n]ot include discriminatory benefit designs that contravene the non-discrimination standards," [45 C.F.R.] § 156.110(d). The nondiscrimination standards, in turn, provide that an insurer "does not provide [essential health benefits] if its benefit design … discriminates based on an individual's … present or predicted disability … or other health conditions." *Id.* § 156.125(a).

*Schmitt*, 965 F.3d at 955-56 (citations omitted, emphasis in original); *see also id.* at 956-57 ("whether or not [a state benchmark plan] complied with section 1557 is a question of federal law on which we owe the state no deference.").

### B.      Plaintiffs Allege Unlawful Unintentional Discrimination.

The State Defendants further argue that Plaintiffs do not state a claim because they have failed to allege that the benefit design was adopted to deliberately discriminate against individuals with disabilities. Defendants MTD at 21. This reasoning is wrong on the law and the facts alleged. Under controlling Ninth Circuit law construing Section 504 and Section 1557, Plaintiffs are entitled to seek remedies for discrimination that may be labeled unintentional or as falling under the "disparate impact" theory of disability discrimination. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1211 (9th Cir. 2020) (citing *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)); *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737-38 (9th Cir. 2021).[16] And Plaintiffs do allege such unintentional discrimination – that the State Defendants' actions and inactions including their methods of administrating the Affordable Care Act have the effect of unlawful

---

[16] To the extent that *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008), suggested otherwise, it has been superseded by the rulings in *Doe v. CVS* and *Payan*.

disability discrimination. Defendants' motion to dismiss should be denied. *Doe*, 982 F.3d at 1212 (vacating dismissal).

This form of unlawful discrimination is consistent with the U.S. Supreme Court's ruling in *Alexander v. Choate*, 469 U.S. 287 (1985), which found: "Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference – of benign neglect." *Id*. at 295-96. Further, governing regulations, adopted with the oversight of Congress, state that recipients may not "utilize criteria or methods of administration … that have the effect of subjecting qualified [disabled] persons to discrimination on the basis of handicap [or] that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to [disabled] persons[.]" 45 C.F.R. § 84.4(b)(4). Plaintiffs' complaint states a claim for disparate impact discrimination.

### C.     Plaintiffs Allege Unlawful Intentional Discrimination.

Plaintiffs also allege intentional conduct. As the appellate court explained in *Schmitt*, a claim for discriminatory benefit design is a claim of intentional discrimination. *Schmitt v. Kaiser Found. Health Plan of Wash*., 965 F.3d 945, 954 (9th Cir. 2020) ("The claim at issue here—that Kaiser designed its plan benefits in a discriminatory way— inherently involves intentional conduct.") (citing and quoting from *Mark H. v. Lemahieu*, 513 F.3d 922, 936 (9th Cir. 2008) ("To 'design' something to produce a certain, equal outcome involves some measure of intentionality."). Here, intentional conduct is particularly apparent, where the State Defendants selected and listed as required particular items of medical equipment, *see* SAC at ¶ 54, but made no reference to wheelchairs. *See* SAC at ¶ 55 ("Wheelchairs – a quintessential DME item on which thousands of disabled Californians rely for basic mobility – are excluded from DMHC's essential health benefit list. … DMHC does not explain, or even make mention, of this omission, even though wheeled mobility devices make up the greatest portion of assistive devices in use and even though independence in mobility is one of the most important determinants of quality of

life for individuals with disabilities."). Plaintiffs' complaint states a claim for intentional discrimination under Section 1557.

Further, Plaintiffs have properly pled a claim for discriminatory insurance design that denies benefits for a status that is a proxy for disability. In *Schmitt*, the plaintiffs alleged that the exclusion of hearing aids from coverage raised the inference of discrimination on the basis of hearing disability, but the appellate court concluded that more must be alleged to state a claim for disability discrimination. The court gave two reasons that a greater showing was needed, both related to whether the proxy's "fit" as alleged was sufficiently close: first, that some people affected by the exclusion are not disabled (proxy is overinclusive); and second, that some people with hearing disabilities receive adequate covered hearing loss treatment through cochlear implants (proxy is underinclusive). *Schmitt*, 965 F.3d at 959-60. Despite this conclusion, the Ninth Circuit found that amendment would not be futile and reversed the district court's decision not to allow amendment. *Id*. at 949, 960. The Ninth Circuit recognized the difficulty for plaintiffs to allege a proxy "fit" with statistical accuracy prior to discovery, "as this information may reside exclusively with Kaiser." *Id*. at 959 n.8. Given this, the appellate court noted that the showing might be met by "showing how the needs of hearing disabled persons differ from the needs of persons whose hearing is merely impaired such that the exclusion is likely to predominately affect disabled persons." *Id*.

Here, Plaintiffs have alleged proxy discrimination under *Schmitt*. SAC at ¶ 72. They can show that the needs of people with mobility disabilities differ from the needs of people with nondisabling mobility impairments such that the challenged wheelchair exclusions and caps predominantly affect disabled people. As to whether the proxy is "overinclusive," nondisabled people do not need a wheelchair designed for everyday use on an ongoing basis. A person who needs a wheelchair temporarily for a non-disabling condition may be able to make do with crutches (which are covered) or access low-cost rental and purchase options for equipment that is totally inappropriate for a person with a mobility disability requiring the use of a wheelchair. As to whether the proxy is "underinclusive," unlike the

fact pattern in *Schmidt*, there is no wheelchair "alternative" for people with mobility disabilities (such as cochlear implants compared to hearing aids) that is required to be covered by regulated plans and that dissipates the proxy form of discrimination that Plaintiffs allege. For example, there is no requirement that motorized scooters be covered. Crutches are covered, but this aid is totally ineffective for the disabled Plaintiffs, who have an ongoing medical need for a wheelchair.

Further, the ongoing need for an everyday wheelchair is a proxy for mobility disability. All wheelchair users have a "physical or mental impairment that substantially limits one or more major life activities," including "walking." 42 U.S.C. § 12102(1)(A), (2)(A). As recognized by the Department of Justice, "mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function." 28 C.F.R. § 35.108(d)(2)(iii)(D). For this group, there is a "predictable assessment" of disability. "[I]ndividualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage" as a person with a disability. 28 C.F.R. § 35.108(d)(2)(ii). "Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity." *Id*.

This is particularly true for the Plaintiffs and putative class members here, who need to have a wheelchair over time to commute, shop, work, attend school, and participate in society. *See* ¶ 19 (defining class members as "All persons with mobility disabilities who need or will need coverage for acquiring, maintaining, or replacing a medically necessary wheelchair …"). Plaintiffs' complaint alleges that their benefit does not cover the typical cost of wheelchairs intended for everyday use. SAC at ¶ 45. Finally, Plaintiffs' complaint alleges facts detailing the specific needs of people with mobility disabilities who use wheelchairs on a day-to-day basis. SAC at ¶¶ 39-47. The complaint explains that a medically appropriate wheelchair itself can ensure access to other forms of health care by, for example, "facilitating travel to the doctor's office, physical and occupational therapy, mental health providers, and the pharmacy." SAC at ¶ 43. Plaintiffs have properly alleged intentional discrimination through design and by proxy.

**D.     Plaintiffs Allege Unlawful Failure to Provide Reasonable Modifications.**

Section 504 and Section 1557 require that recipients ensure reasonable modifications necessary to avoid discrimination on the basis of disability. *Choate*, 469 U.S. at 300; 45 C.F.R. § 92.105. Plaintiffs allege that the insurance design created by the State Defendants fails to include any opportunity for them or other class members to seek a modification in coverage to allow the enjoyment of meaningful access to the benefit. SAC at ¶¶ 8, 55. The State Defendants suggest that Plaintiffs should have attempted the Independent Medical Review Process (IMR), but this argument is disingenuous. The IMR process by definition reviews medical necessity determinations – it does not consider or entertain modifications to plan terms.[17] Here, Plaintiffs' dispute is not about "medical necessity" – there is no dispute that the Plaintiffs have a medical necessity for the wheelchairs. The issue is that they cannot obtain wheelchairs because this rehabilitative device is not covered or is subject to unreasonable caps in violation of federal laws.

**E.     The Meaningful Access Standard Is Bounded.**

Permitting this complaint to proceed under the "meaningful access" standard does not mean that benefit plans must cover virtually any type of service or item that may be beneficial to the particular needs or well-being of any disabled person, as the State Defendants argue. *See* Defendants' MTD at 2, 21-23. Indeed, the U.S. Supreme Court adopted the "meaningful access" standard to create a balance between the mandate of disability nondiscrimination and the needs of benefit programs:

> The balance struck in *Davis* requires that an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.

---

[17] Cal. Health & Safety Code § 1374.30(b) (defining "disputed health care service" as any health care service *eligible for coverage and payment under a health care service plan* contract that has been denied, modified, or delayed due to a finding that the service is not medically necessary), (j)(2) (permitting enrollees to seek an IMR only when "[t]he disputed health care service has been denied, modified, or delayed … based in whole or in part on a decision that the health care service is not medically necessary").

*Choate*, 469 U.S. at 301. The *Choate* Court explained that meaningful access sometimes requires reasonable modifications to a program in order to afford people with disabilities an "equal opportunity" to benefit from a service or activity, but that it does not require "equal results." *Id*. at 300-01, 304-05. In considering whether meaningful access is denied, a court should evaluate the purposes and provisions of the program in question, and evidence of an "exclusionary effect." *Id*. at 302–04. Further, the defendants may present a defense that the remedy sought would result in a fundamental alteration of the program and/or an undue burden. *Id*. at 299, 307-08. This framework, the Court explained, is "responsive to two powerful but countervailing considerations – the need to give effect to [Section 504's] statutory objectives and the desire to keep [it] within manageable bounds." *Id*. at 299.

In this case, the State Defendants may present evidence that Plaintiffs have "meaningful access" to the benefits of an ACA-regulated plan or may show fundamental alteration or undue hardship. The State Defendants' prediction of "profound and far-reaching implications" across the state and nationally, see Defendants' MTD at 2, is unpersuasive. It is also premature. There is no federal pleading standard that requires Plaintiffs to preemptively address Defendants' floodgates arguments. The State Defendants' argument seeks a new judge-made amendment to Rule 8, which this Court should reject. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002).

## CONCLUSION

For all of the reasons stated, Defendants' motion to dismiss should be denied. In the alternative, should the Court find any error in Plaintiffs' pleading, Plaintiffs seek an opportunity to file an amended complaint.

DATED:  February 7, 2022            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By:  */s/ Michael S. Nunez*
     Michael S. Nunez

Attorneys for Plaintiffs